UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

FRANCISCO SANTOS,

                              Plaintiff,

v.                                                          9:19-cv-1610
                                                            (LEK/TWD)

C.O. B. SCHROEDER, et al.,

                              Defendants.

───────────────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

FRANCISCO SANTOS
Plaintiff, *pro se*
13-A-0532
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. LETITIA JAMES                              NICHOLAS LUKE ZAPP, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        This matter has been referred for a Report and Recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge.  *Pro se* Plaintiff Francisco Santos, an

inmate in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983 asserting claims

arising out of his incarceration at Auburn Correctional Facility ("Auburn").  (Dkt. No. 1.)  The

Court reviewed the sufficiency of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and

1915(A) and ordered Plaintiff's First Amendment retaliation claims against Correction Officer

("C.O.") B. Schroeder ("Schroeder"), Inmate Grievance Program ("IGP") Supervisor Cheryl

Parmiter ("Parmiter"), C.O. John Doe ("C.O. Doe"), Sergeant John Doe ("Sgt. Doe"), and

Lieutenant John Doe ("Lt. Doe") required a response. (Dkt. No. 5.) In lieu of answering,

Defendants Schroeder and Parmiter moved for summary judgment on exhaustion grounds. (Dkt.

No. 14.) Plaintiff opposed the motion, and Defendants submitted a reply. (Dkt. Nos. 21, 26.)

For the following reasons, the Court recommends Defendants' motion be denied.

## I.    BACKGROUND

### A.    Plaintiff's Verified Complaint

On August 18, 2019, Plaintiff received a misbehavior report (the "August MBR"), filed

by Schroeder and C.O. Doe, and approved by Sgt. Doe, charging Plaintiff with violating a direct

order and rules related to facility visiting. (Dkt. No. 1 at 13, 30.[1]) Non-party Lt. Rogofsky[2]

reviewed the August MBR, designated it as a "Tier II" violation, and ordered Plaintiff to remain

in "keeplock" pending a disciplinary hearing. *Id*. at 14, 31.

On August 23, 2019, Lt. Doe presided over a disciplinary hearing related to the August

MBR. *Id*. at 14, 31. Plaintiff immediately advised Lt. Doe the August MBR was issued in

retaliation for filing a grievance against Schroeder on July 26, 2019 ("Grievance AUB-76600-

19). *Id*. at 15. Lt. Doe adjourned the hearing and made "false entries" to extend the length of the

proceedings and maintain Plaintiff's keeplock status. *Id*. at 15-16.

---

[1] Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] Plaintiff's claims against Lt. Rogofsky were dismissed without prejudice on initial review. (Dkt. No. 5.)

On Septmeber 1, 2019, Plaintiff submitted a grievance outlining the retaliatory acts committed by Schroeder, C.O. Doe, Sgt. Doe, Lt. Doe, and Lt. Rogofsky. *Id*. at 16, 35-49. Plaintiff mailed the grievance to Parmiter and DOCCS executive staff. *Id*. at 17.

On Septmeber 6, 2019, the disciplinary hearing resumed. *Id*. at 17, 31. Lt. Doe found Plaintiff "not guilty" of the charges citing the lack of video evidence and staff testimony that "conflicted" with the August MBR. *Id*. at 17, 32.

On September 17, 2019, Parmiter acknowledged receipt of Plaintiff's Septmeber 1, 2019, grievance, but rejected the grievance as untimely. *Id*. at 17-19, 50-51. On September 18, 2019, Plaintiff sent a letter to Parmiter, "inquiring as to its meaning" and explained, *inter alia*, that he "timely and properly filed" the harassment grievance dated September 1, 2019, "by placing it in a sealed envelope and placing it in the Mail box" on September 1, 2019, "clearly within the 21 days timeframe required by the directive." *Id*. at 18, 51. Plaintiff further expressed his "concern" and "confusion" in that her memorandum acknowledged receipt of his "submitted" grievance dated September 1, 2019, but she did not "explain" if the "submitted" grievance was properly filed and processed "or it has not." *Id*. at 51.

On September 24, 2019, Parmiter responded and advised that "[y]our untimely grievance dated September 1, 2019[,] took two week to reach [our] office . . . [i]f you have mitigating circumstances for the untimely filing of your complaint, please advise me in writing." *Id*. at 18, 52. On September 26, 2019, Plaintiff wrote to Parmiter again explaining that he had placed the grievance in the facility mail on September 1, 2019, and that "the time and manner in which the envelope is transferred from the mail[] box to the addressed prison staff is out-of-[his] control." *Id*. at 18-19, 53-54. As to any "mitigating circumstances," Plaintiff stated that he was held in

keeplock confinement for 19 consecutive days as a result of the August MB and he was attempting to resolve the "retaliatory act" informally with the hearing officer, Lt. Doe. *Id*. at 54.

On Septmeber 27, 2019, Plaintiff stopped Parmiter in the A-Block to ask about that status of his grievance. *Id*. at 19. Parmiter responded that she did not file his grievance because it was received by her "two weeks after" and stated she would not "file" or "process" it because she "did not feel like doing so." *Id*. She also threatened Plaintiff with physical injury if he made further attempts to file his grievance. *Id*. Specifically, Parmiter stated that "if the plaintiff value his life, he [plaintiff] will not make any further attempt to file this grievance complaint because next time will be more than a 'keeplock' confinement." *Id*. (alternation in original).

Plaintiff claims he "exhausted all administrative remedies made available to him" prior to commencing this action. *Id*. at 20.

Construed liberally, Plaintiff alleges Schroeder issued the August MBR in retaliation for Grievance AUB-76600-19, which Plaintiff filed against Schroeder on July 21, 2019. (Dkt. No. 5 at 14.) Plaintiff also claims Parmiter threatened him with physical harm in retaliation for filing Grievance AUB-76600-19 and the grievance he attempted to file on September 1, 2019. *Id*. at 16.

### B.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment in lieu of an answer solely on exhaustion grounds. (Dkt. No. 14-1.) To that end, Parmiter and Rachel Seguin, the Assistant Director of the DOCCS IGP, submit declarations propounding Plaintiff never filed a grievance at Auburn regarding his underlying First Amendment retaliation claims in this action and never filed a grievance appeal to the Central Office Review Committee ("CORC"). (Dkt. No. 14-3 at ¶¶ 10, 15, 23, 26; Dkt. No. 14-4 at ¶¶ 11, 18.) Plaintiff did, however, appeal several other grievances to

CORC while confined at Auburn, including Grievance AUB-76600-19. (Dkt. No. 14-4 at ¶¶ 13, 16.)

For her part, Parmiter states Plaintiff *never* filed a grievance regarding his underlying retaliation claim against her. (Dkt. No. 14-3 at ¶¶ 15, 27.) She further declares that at no time did she ever make verbal threats to Plaintiff for any reason. *Id*. at ¶ 25.

With respect to the retaliation claim against Schroeder, Parmiter acknowledges Plaintiff *attempted* to file a grievance, but explains it was "rejected" as "untimely" and, therefore, never filed. (Dkt. No. 14-3 at ¶¶ 15-23.) In her declaration, Parmiter states the grievance dated September 1, 2019, was received by Auburn's grievance office via inter-facility mail on a date between September 15, 2019, and September 17, 2019. *Id*. at ¶¶ 16-17. She notes that it typically takes 2-3 days for inmate grievances to get to the grievance office via inter-facility mail once the inmate mails the grievance. *Id*. at ¶ 18.

On September 17, 2019, Parmiter returned Plaintiff's grievance and notified Plaintiff via memorandum that his grievance dated Septmeber 1, 2019, was untimely received by the grievance office beyond the 21-day timeline provided for in Directive #4040. *Id*. at ¶ 19.

On Septmeber 24, 2019, Parmiter advised Plaintiff via memorandum to provide her with "mitigating circumstances" for the "untimely" submission of his September 1, 2019, grievance complaint, in response to his letter dated September 18, 2019. *Id*. at ¶ 20.

As the IGP Supervisor, Parmiter is "the one that makes the determination on whether mitigating circumstances are present." *Id*. at ¶ 22. "Some examples of mitigating circumstances for filing a late grievance include: being in an outside hospital for prolonged medical treatment or having a broken hand/arm that would interfere with an inmate's ability to write a grievance." *Id*. at ¶ 21. Typically, Parmiter requires "outside verification from a reliable source that such

mitigating circumstances exist together with the inmate's explanation for filing a late grievance beyond the 21-day-timeline." *Id*. at ¶ 22.

Parmiter determined that Plaintiff's letter dated Septmeber 26, 2019, "did not include mitigating circumstances that justified the untimely submission of his grievance." *Id*. at ¶ 23. Therefore, Plaintiff's grievance dated September 1, 2019, "was rejected and never filed." *Id*.

Upon review of the records maintained in the regular course of business by DOCCS, Parmiter states Plaintiff never filed a subsequent grievance regarding the denial of his grievance dated Septmeber 1, 2019. *Id*. at ¶ 24.

## II.    STANDARD OF REVIEW

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). Rule 56(b) provides that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Thus, a party may move for summary judgment in lieu of an answer. *See, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010); *Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, at *1-2 (N.D.N.Y. Mar. 31, 2014).

The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred—the moving party must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 337 F.3d at 206. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely

in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, "is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist[.]" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Where a party is proceeding *pro se*, the court must "read [a *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.    Legal Standard

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of

the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so *properly*").

DOCCS has a well-established three-step administrative procedure for inmate grievances known as the IGP. *See* 7 N.Y.C.R.R. § 701.5. First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident. *Id.* § 701.5(a)(1). An inmate may request an extension of the time limit within 45 days of the date of the alleged occurrence. *Id.* § 701.6(g). A representative of the Inmate Grievance Review Committee ("IGRC") has 16 calendar days to informally resolve the issue. *Id.* § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within 2 working days after the conclusion of the hearing. *Id.* § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within 7 calendar days of receipt of the determination. *Id.* § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within 7 calendar days after receipt of the superintendent's determination. *Id.* § 701.5(d)(i). CORC must render a written decision within 30 days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Complaints of harassment are handled by an expedited procedure which provides that such grievances, once it is given a number and recorded by the IGP clerk, are forwarded directly to the superintendent of the facility, after which the inmate may appeal any negative determination to CORC. *Id.* §§ 701.8(h),(i).

Generally, a plaintiff must properly appeal through all three levels of the IGP before seeking relief in a federal court under § 1983. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations and citations omitted). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

As an affirmative defense, Defendants bear the burden of showing that Plaintiff failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  Plaintiff must then demonstrate exhaustion or unavailability of administrative remedies.  *Jones*, 549 U.S. at 216.

### B.    Analysis

The parties do not dispute that Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 14-2 at ¶¶ 7-11; Dkt. No. 21-2 at ¶¶ 7-11; *see also* Dkt. No. 21 at ¶¶ 55-59.)  The record evidence demonstrates Plaintiff never completed the first step of the IGP with respect to his underlying First Amendment retaliation claims against Schroeder or Parmiter.  (Dkt. No. 14-2 at ¶¶ 7-11.)  The inquiry therefore turns on whether Plaintiff's administrative remedies were unavailable under *Ross*.

As set forth above, an administrative remedy may be unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1858-1861).

In his complaint and in opposition to Defendants' motion, Plaintiff sets forth several arguments to establish his administrative remedies were unavailable.  Plaintiff claims that on September 1, 2019, he mailed the grievance and it was improperly rejected as "untimely" and not filed by Parmiter.  (Dkt. No. 1 at 17-18, 51, 53.)  He asserts that once he mailed the grievance via

inter-facility mail, the length of time in-transit, is out of his control. (Dkt. No. 1 at 16, 19, 51, 53; Dkt. No. 21 at ¶¶ 43-45.) He states Parmiter never considered his mitigating circumstances, i.e., that he was attempting to resolve the retaliatory August MBR informally with Lt. Doe during his disciplinary hearing, and she did not respond to his September 26, 2019, letter. (Dkt. No. 21 at ¶¶ 47, 50.) Plaintiff argues DOCCS Directive #4040 does not give "instruction nor does it have any provision on how to proceed" when the IGP Supervisor does not "file and assign a grievance calendar number" and the only way to "file" a grievance is by submitting with the IGP office. *Id*. at ¶ 46. Plaintiff claims he did not attempt to file any further grievances due to fear of retaliation following his September 27, 2019, conversation with Parmiter. *Id*. at ¶¶ 50-54.

Defendants maintain that Plaintiff's assertions are "conclusory" and unsupported by record evidence, including Parmiter's sworn statement that she never threatened Plaintiff with physical harm, grievances only take 2-3 days to arrive to the inmate grievance office once placed in inter-facility mail, and the fact that Plaintiff was able to file four other grievances at Auburn without issue between June 28, 2019, and November 8, 2019. (Dkt. No. 14-1 at 10.)

In support of their position, Defendants cite to various opinions holding that an inmate's "general claim" or speculation of a grievance being lost, destroyed, or misplaced does not excuse the exhaustion requirement. (Dkt. No. 14-1 at 10.) *See Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017); *Gibbs v. Gadway*, No. 9:19-CV-281 (GTS/DJS), 2019 WL 5191506, at * 5 (N.D.N.Y. Oct. 15, 2019). These cases are not directly on point, however, as the instant case does not contemplate a grievance "generally" alleged to have been "lost" in the filing process. Here, a question of facts exists as to whether Plaintiff "mailed" his grievance on Septmeber 1, 2019, despite it not being "received" by the IGP

office until more than two weeks later.  *See Thaxton v. Simmons*, No. 9:10-CV-1318

(MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as

to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that,

as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by

[d]efendants."); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *9 (S.D.N.Y. Sept. 28,

2018) (denying summary judgment where the record contains sufficient detail regarding the

plaintiff's attempts to file grievances) (collecting cases); *see also LionKingzulu v. Jayne*, 714 F.

App'x 80, 82 (2d Cir. 2018) (summary order) ("LionKingzulu's allegation that he filed a timely

grievance while at Wende but the grievance was not processed or accepted . . . presents a

stronger argument that remedies were unavailable."); *see also Woodward v. Lytle*, No. 9:16-CV-

1174 (NAM/DEP), 2018 WL 4643036, at *4-5 (N.D.N.Y. Sept. 27, 2018) (finding an issue of

fact as to the availability of the grievance process where plaintiff drafted and submitted a

grievance that was never filed or answered) (collecting cases).

    Defendants contend Plaintiff's reliance on *Williams* is unavailing because "unlike in

*Williams*, where the plaintiff was not provided any response to his grievance, Plaintiff in the

instant action was notified that his grievance was untimely and was given the opportunity to seek

an exception by providing mitigating circumstances to Defendant Parmiter."  (Dkt. No. 26 at 5.)

According to Defendants, Plaintiff has done "nothing" to counter Parmiter's discretionary

determination regarding mitigating circumstances not being present and, instead, Plaintiff

reiterates arguments that were "carefully considered" by Parmiter.  *Id.*  The Court disagrees.

    While Parmiter's declaration provides two examples of a mitigating circumstances, such

as prolonged medical treatment or having a broken hand that would interfere with an inmate's

ability to write, which she determined were not present, she does not mention "timely attempts to

resolve a complaint informally by the inmate," nor do Defendants in their moving or reply briefs.

(Dkt. No. 14-3 at ¶¶ 21-23.)  Yet her September 17, 2019, memorandum to Plaintiff states:

> In accordance with the provision of Directive #4040, Sec.
> 701.6(g)(1)(i)(1) "The IGP supervisor may grant an exception to
> the time limit for filing a grievance based on mitigating
> circumstances (e.g., timely attempts to resolve a complaint
> informally by the inmate, etc.).  An exception to the time limit may
> not be granted more than 45 days after the date of the alleged
> occurrence."

(Dkt. No. 1 at 50.)  The Court also notes the regulations governing the IGP encourage the inmate

to "resolve his/her complaints through the guidance and counseling unit, the program area

directly affected, or other existing channels (informal or formal) prior to submitting a grievance."

7 N.Y.C.R.R. § 701.3(a) (Inmate's Responsibility).

Moreover, Plaintiff avers that he never received a written response to his Septmeber 26,

2019, letter setting forth his "mitigating circumstances."  (Dkt. No. 21 at ¶ 47.)  Defendants have

not submitted any evidence to the contrary.  Viewed in the light most favorable to the non-

moving party, the Court finds this case more analogous to fact patterns where a grievance was

submitted but never filed or answered and, therefore, under *Williams*, was unavailable.  *See*

*Adams v. O'Hara*, No. 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *3 (N.D.N.Y. Feb. 15,

2019) ("It is important to note that, where an inmate does not know that an unprocessed

grievance (i.e., a grievance that has not been assigned a grievance number) may technically be

appealed, he need not appeal that unprocessed grievance, because the regulatory scheme advising

him of that right is too opaque.") (citing *Williams*, 829 F.3d at 126 ("Even if Williams

technically could have appealed his [unprocessed] grievance, we conclude that the regulatory

scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner

can use' [it pursuant to *Ross*].""));

13

Additionally, Defendants' contention that Plaintiff was able to successfully navigate the IGP as to other matters during the relevant time does not necessarily weaken Plaintiff's unavailability argument—his history of filing grievances could also suggest that, absent interference, he was capable of complying with it. *See Burrell v. Zurek*, No. 9:17-CV-0906 (LEK/TWD), 2019 WL 4051596, at *3 (N.D.N.Y. Aug. 28, 2019). Further, as pointed out by Plaintiff, the grievances he filed after Septmeber 27, 2019, did not involve any of the Defendants in this case but rather unrelated medical care. (Dkt. No. 21-1 at ¶ 22.)

Defendants argue Plaintiff "failed to file a follow up regarding the grievance's rejection" and "Plaintiff never filed a separate grievance and provides no explanation for not doing so." (Dkt. No. 14-1 at 10; Dkt. No. 26 at 6, *citing* DOCCS Directive #4040 ("An inmate may pursue a complaint that an exception to the time limit was denied by filing a separate grievance."); *see also* 7 N.Y.C.R.R. § 701.6.) However, contrary to Defendants' assertion, Plaintiff does provide an explanation in that he was confused on how to proceed and he feared retaliation.

Plaintiff claims DOCCS Directive #4040 does not give "instruction nor does it have any provision on how to proceed" when the IGP Supervisor does not "file and assign a grievance calendar number" and he never received a response from Parmiter. (Dkt. No. 21 at ¶ 13.[3]) *See Stephanski v. Allen*, No. 9:19-CV-0076 (BKS/CFH), 2020 WL 806331, at *10 (N.D.N.Y. Jan. 22, 2020) (finding genuine issue of material fact whether the plaintiff knew how to proceed when

---

[3] Plaintiff also attaches a letter, dated August 14, 2019, from DOCCS Deputy Commissioner Anne Marie McGrath, acting on behalf of Acting Commissioner Annucci, advising, *inter alia*, "Directive #4040 . . . makes no provision for an inmate to refer grievances directly to Central Office. Grievances should be submitted directly to the [IGRC] at your current facility." (Dkt. No. 1 at 56.) Plaintiff further states that "based on [this] correspondence letter . . . I understand the only way to file a grievance is by submitting with the IGP Office, in which, it need to be approved for filing by the IGP Supervisor (Defendant Cheryl Parmite[r]) and there is no other alternative way to file a grievance." (Dkt. No. 21 at ¶¶ 67, 68.)

he never received a response); *see also Reid v. Marzano*, No. 9:15-CV-0761 (MAD/CFH), 2017

WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) (holding that the plaintiff's deposition testimony

that he did not know how to proceed when he did not receive a response to his grievance is

sufficient to withstand summary judgment on the issue of exhaustion); *see also Woodward v.

Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4 (N.D.N.Y. Sept. 27, 2018)

(finding the IGP was unavailable as the process to appeal an unanswered grievance is

prohibitively opaque and noting that the defendants, in response to an inquiry by the plaintiff,

failed to explain that the plaintiff "had to appeal the non-response to his alleged unfiled

grievance to the CORC," but was told that Directive 4040 "makes no provision for an inmate to

refer grievances directly to the Central Office, and that specific grievance concerns should be

directed to the IGP Supervisor for the most expeditious means of resolution.").

Here, Plaintiff claims he was threatened by Parmiter on November 27, 2019, and feared

retaliation if he pursued filing the September 1, 2019, grievance or any grievance against

Parmiter. (Dkt. No. 1 at 18-19, Dkt. No. 21 at ¶ 53.) A plaintiff is estopped from exhausting his

administrative remedies where "defendants acted affirmatively to prevent an inmate from

availing him or herself of the grievance procedures." *Pridgen v. Beatie*, 9:16-CV-535

(DNH/CFH), 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018) (citations omitted). Defendants

"act affirmatively" to intimidate by making verbal and physical threats of retaliation, physically

assaulting the plaintiff, denying him grievance forms or writing implements, or transferring the

plaintiff. *See id.* (citations omitted). Thus, specific threats of retaliation or intimidation by

prison employees can render administrative remedies unavailable. *Ross*, 136 S. Ct. at 1860, n.3.

"However, generalized fear of retaliation is insufficient to overcome a failure to exhaust

administrative remedies." *Salmon v. Bellinger*, No. 9:14-CV-0827 (LEK/DJS), 2016 WL

4411338, at *5 (N.D.N.Y. July 5, 2016)); *see also Thompson v. Kelly*, No. 9:18-CV-1235

(LEK/DJS), 2019 WL 2374119, at *4 (N.D.N.Y. Apr. 4, 2019) (finding the plaintiff "merely

stated a 'generalized fear of retaliation,' without allegations of any specific threats or other

actions that would prevent him from filing a grievance") (collecting cases), *report-*

*recommendation adopted by* 2019 WL 2371607 (N.D.N.Y. June 5, 2019); *Rodriguez v. Cty. of*

*Suffolk*, No. CV 13-2070(SJF)(GRB), 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014)

("Courts tend to find mere 'generalized fear' when no actual threat was made." (quoting *Brown*,

687 F. Supp. 2d. at 297)).

 Here, Plaintiff avers he "feared for his life and wel[l]-being," based on a specific threat

alleged to have been made by Parmiter on September 27, 2019.  (Dkt. No. 21 at ¶ 78.)  Plaintiff

claims that during this conversation, Parmiter told Plaintiff if he "value[d] his life," he would not

pursue filing the Septmeber 1, 2019, grievance.  (Dkt. No. 1 at 19.)  She further threatened that

any further attempt would result in "more than a keeplock confinement."  *Id*.  As noted, Plaintiff

was confined to keeplock status from August 19, 2019, to Septmeber 6, 2019, as the result of the

August MBR.  (Dkt. No. 21 at ¶¶ 22, 39.)  Plaintiff  "feared and believed" Parmiter's "threat to

be true and can be easily accomplished" if he made "further attempts to file the grievance"

against Schroeder or "against her (defendant Parmiter)."  (Dkt. No. 21 at ¶ 53.)

 Although thin, the Court finds Plaintiff has alleged more than a "generalized fear of

retaliation" that raises a sufficient question of material fact as to whether administrative remedies

were available to him.  While Parmiter adamantly denies these allegations (*see* Dkt. No. 14-3 at ¶

25), "[w]hen questions of fact and issues of credibility exist regarding the failure to exhaust

administrative remedies, a court should neither engage in fact finding nor make determinations

as to credibility in addressing a defendant's motion for summary judgment for failure to

exhaust." *Curtis v. Bola*, No. 9:15-CV-00718 (GLS/TWD), 2016 WL 7735755, at *9 (N.D.N.Y. Nov. 1, 2016) (collecting cases).[4] This is particularly true, where, as here, the factual issues underlying the availability of administrative remedies are intertwined with the Plaintiff's substantive claim of retaliation against Parmiter.[5]

Considering the above, while it is undisputed that Plaintiff's Septmeber 1, 2019, grievance against Schroeder was never filed, and Plaintiff never filed a grievance against Parmiter for refusing to file that grievance and/or threatening Plaintiff on September 27, 2019, resolving all ambiguities and drawing all reasonable inferences in the non-moving party's favor, the Court finds that there are unresolved issues of material fact regarding availability under *Ross* precluding summary judgment in Defendants' favor on exhaustion grounds.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment in lieu of answer (Dkt. No. 14) be **DENIED**; and it is further

---

[4] To be clear, the Court is not making a finding that Parmiter threatened or impeded Plaintiff's ability to file a grievance. However, Plaintiff's allegations raise an unresolved question of fact regarding the "availability" of Plaintiff's administrative remedies. The question of whether Plaintiff's ability to file his grievance was obstructed by Auburn prison officials cannot be decided based on the documents submitted alone.

[5] The Court notes that to determine whether the IGP was available to Plaintiff, the Court would necessarily have to determine whether to discredit Plaintiff's testimony that Parmiter verbally harassed him on September 1, 2019, in retaliation for his filing previous grievances—Grievance AUB-76600-19 and the September 1, 2019, grievance—i.e., the ultimate factual issue underlying his retaliation claim against Parmiter. By contrast, were the Court to credit Defendants' version of events—that no such threat of retaliation occurred—and conclude that remedies were in fact available, it would effectively be ruling on Plaintiff's substantive claim of retaliation against Parmiter.

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: February 1, 2021
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2014 WL 1289601
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Charles Jacob RIEHL, Plaintiff,

v.

Donna MARTIN et al., Defendants.

No. 9:13–cv–439 (GLS/TWD).
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Charles Riehl, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, Douglas J. Goglia, Assistant
Attorney General, of Counsel, Albany, NY, for the
Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Charles Jacob Riehl commenced this
action against defendants Donna Martin, Howard Matasar,
and Harold Graham, alleging violations of the Religious Land
Use and Institutionalized Persons Act of 2000 (RLUIPA)[1]
and his First Amendment right to the free exercise of religion
pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1 at 11–
20.) Defendants moved for summary judgment in lieu of an
answer, (Dkt. No. 18), and Riehl responded to the motion
with new allegations, (Dkt. No. 21), and also sought to amend
certain dates alleged in his complaint, (Dkt. No. 20).[2]

[1]    See 42 U.S.C. §§ 2000cc–2000cc–5.

[2]    Riehl's request to amend the dates was granted.
(Dkt. No. 34 at 22.)

In an Order and Report–Recommendation (R & R) filed
December 19, 2013, Magistrate Judge Thérèse Wiley Dancks
recommended that all claims be dismissed with the exception
of Riehl's claim under § 1983 for a Free Exercise Clause
violation as against Martin and Matasar. (Dkt. No. 34 at 22.)

Judge Dancks also recommended that Riehl be granted leave
to amend his complaint. (*Id.*) Pending before the court are
Riehl's objections to the R & R. (Dkt. No. 37.) For the reasons
that follow, the R & R is adopted in its entirety.

### II. *Background*

Riehl, who was incarcerated at Auburn Correctional
Facility during the relevant time period, identifies himself as an
"observant orthodox Jewish man." (Defs.' Statement of
Material Facts (SMF) ¶¶ 1–3, Dkt. No. 18, Attach. 4; Compl.
at 13.) In dispute are Riehl's allegations that at the Passover
Seder in April 2012, his meal contained chametz, a leavening
agent, and was not prepared according to Jewish dietary law,
which resulted in him not being able to partake in the holy
day. (Compl. at 4, 22.) In response to defendants' motion for
summary judgment, Riehl alleged new facts that significantly
expanded upon his claim that he was served forbidden
foods. (Dkt. Nos. 21 and 24.) Riehl's new allegations were
considered by Judge Dancks. (Dkt. No. 34 at 11–13.)

### III. *Standard of Review*

Before entering final judgment, this court routinely reviews
all report and recommendation orders in cases it has
referred to a magistrate judge. If a party has objected to
specific elements of the magistrate judge's findings and
recommendations, this court reviews those findings and
recommendations *de novo*. *See Almonte v. N.Y. State Div.
of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at
*3, *5 (N.D.N.Y. Jan.18, 2006). In those cases where no
party has filed an objection, or only a vague or general
objection has been filed, this court reviews the findings and
recommendations of the magistrate judge for clear error.[3] *See
id.*

[3]    "[A] report is clearly erroneous if the court
determines that there is a mistake of fact or law
which is obvious and affects substantial rights."
*Almonte,* 2006 WL 149049, at *6.

### IV. *Discussion*

Riehl's objections do not take issue with any particular aspect
of Judge Dancks' recommendations. (Dkt. No. 37.) The thrust
of his objections is merely a rehashing of arguments made

in response to defendants' motion for summary judgment. (*Compare* Dkt. Nos. 21 and 24, *with* Dkt. No. 37.) In particular, Riehl "objects" to portions of the declarations of Matasar and Martin. (Dkt. No. 37 at 1–4.) Since Riehl's objections do not point out any specific shortcomings in the R & R, and, instead, regurgitate earlier-raised arguments, review for clear error is warranted. *See Almonte,* 2006 WL 149049, at *4, *6.

**\*2** Having thoroughly reviewed the R & R, the court finds no clear error in Judge Dancks' recommendations, and adopts it in its entirety.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Therèse Wiley Dancks' Order and Report–Recommendation (Dkt. No. 34) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 18) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to all claims against Graham; and

**GRANTED** as to Riehl's RLUIPA claim against Martin and Matasar; and

**GRANTED** as to any request for injunctive relief; and

**DENIED** in all other respects, leaving only a claim under 42 U .S.C. § 1983 for a violation of the Free Exercise Clause as to Martin and Matasar; and it is further

**ORDERED** that Riehl is granted leave to amend his complaint to assert the new allegations against Martin and Matasar raised in his opposition papers (Dkt. Nos. 21 and 24); and it is further

**ORDERED** that, with respect to any amended complaint filed by Riehl, he shall include factual allegations describing the role of Martin and Matasar sufficiently to allow the court to assess whether a plausible claim has been stated against them; and it is further

**ORDERED** that, if Riehl files an amended complaint, it shall be a wholly integrated and complete pleading with separately numbered allegations that does not rely upon, or incorporate by reference, the original complaint; and it is further

**ORDERED** that the Clerk provide a copy of this MemorandumDecision and Order to the parties.

**IT IS SO ORDERED.**

### *ORDER and REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This *pro se* civil rights action, commenced by Plaintiff Charles Riehl pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D .N.Y. L.R. 72.3(c). Plaintiff claims that while he was confined in Auburn Correctional Facility ("Auburn"), Defendants Donna Martin ("Martin"), Food Administrator at Auburn; Howard Matasar ("Matasar"), a Rabbi assigned to Auburn on a part-time basis; and Harold Graham ("Graham"), Auburn Superintendent, were guilty of violating his First Amendment right to the free exercise of religion, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.,* and of negligence in serving him food that violated Jewish law at the first Passover Seder in April of 2012. (*See generally* Dkt. No. 1.) Plaintiff seeks injunctive relief and compensatory and punitive damages. (Dkt. No. 1 at 21.)

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in lieu of answering Plaintiff's Complaint. (Dkt. No. 18.) Plaintiff has filed papers in opposition to the motion. (Dkt. Nos. 21 and 24.) Plaintiff has also filed a motion to amend his Complaint to change the dates for Passover in 2012 from April 18 through April 26, 2012 to the correct dates, April 6 through April 14, 2012. [1] (Dkt. No. 20.) Defendants have opposed the motion on futility grounds. (Dkt. No. 23.) I hereby grant Plaintiff's motion to amend his Complaint to reflect the correct dates for Passover in 2012, and direct that for purposes of this motion, Plaintiff's Complaint be deemed so amended. For the reasons that follow, the Court recommends that Defendants' motion for summary judgment (Dkt. No. 18) be granted in its entirety as to Defendant Graham. The Court

further recommends that the motion be granted in part and denied in part, without prejudice, as to Defendants Martin and Matasar, and that Plaintiff be granted leave to file an amended complaint asserting the new claims set forth in his opposition papers.

[1]    Plaintiff states in his motion to amend that "[a]lso in consideration of the courts in amending this complaint also plaintiff will ask the court to afford compensation for actual damages as well [as] punitive damages for relief." (Dkt. No. 20.) Inasmuch as Plaintiff's Complaint, as originally filed, seeks relief in the form of both compensatory and punitive damages, there is no need for amendment of the Complaint with regard to the relief sought. (Dkt. No. 1 at 21.)

## I. BACKGROUND

**\*3**  In his Complaint, Plaintiff identifies himself as an Orthodox Jew. (Dkt. No. 1 at 13.) Plaintiff claims that the food served to him at the Seder held on the first night of Passover in April 2012, was not prepared according to the kashrut (Jewish dietary law) in that it contained chametz,[2] which Jews are prohibited from eating during Passover. (Dkt. No. 1 at 4.) According to Plaintiff, because the foods were not prepared in accordance with the kashrut, he was unable to partake of the meal. *Id.* Plaintiff contends that the improper handling and preparation of food during Passover can result in physical and mental harm to observant Jews. *Id.* at 8–9. Plaintiff claims that Defendants Martin and Matasar were both negligent in violating his right under the free exercise clause to eat properly prepared food for Passover. (Dkt. No. 1 at 11, 14–16.)

[2]    The Torah directs Jews not to eat "chametz" during Passover. *See* Exodus 12:15. "Chametz" is "leven"—food made of grain and water that has been allowed to ferment and "rise." *See* http://www.chabad.org/librar     y/howto/wizard_cdo/aid/1755/jewish/1–What–isChametz.htm; *see also* Dkt. No. 1 at 22–23, 35–39.

Plaintiff has not described the meal about which he complains other than to allege in his Complaint (Dkt. No. 1) that it contained chametz, and in his opposition papers that sardines were removed from the can and placed in paper cups, and that the salad dressing, condiments, butter, and the hot meal served were not labeled kosher for Passover.[3] (Dkt. Nos. 21 at ¶ 1;

24 at ¶ 4.) Plaintiff has not identified the type(s) of chametz he found in the meal. (*See* Dkt. No. 1.)

[3]    Plaintiff claims to have told Defendant Matasar about the sardines in cups, and that the salad dressing, condiments and butters served on the first night Seder were not kosher for Passover. (Dkt. No. 24 at ¶ 4.)

Defendant Martin was Food Administrator at Auburn during Passover in 2012. (Dkt. No. 18–6 at ¶ 1.) As Food Administrator, Martin was responsible for overseeing and coordinating the preparation and provision of food to inmates, including ensuring that proper amounts of food were obtained; food was stored, handled and prepared properly; and kitchen facilities were properly maintained. *Id.* at ¶ 2. According to Martin, meals provided to Jewish inmates who keep kosher have been the same at Auburn for a number of years.[4] *Id.* at ¶ 4. The inmates are provided with cold alternative diets ("CADs"), which are kosher, or kosher for Passover as appropriate, on a daily basis. *Id.* An exception is made for the evening meals on certain Jewish holidays such as the two nights of Shavout, the two nights of Rosh Hashana, the first and last nights of Sukkoth, and all eight nights of Passover. *Id.*

[4]    *See also* Defendant Matasar's Declaration. (Dkt. No. 18–5 at ¶¶ 6–8.)

Observant Jewish inmates are provided with pre-packaged and prepared hot meals certified as kosher by the Union of Orthodox Congregations ("OU") for Shavout, Rosh Hashana, and Sukkoth. *Id* . at ¶ 5. The kosher meals, manufactured by Milmar Food Group, LLC, are sold under the "Valley Stream" label, and purchased from SYSCO Food Services Corporation ("SYSCO") by the Department of Corrections and Community Supervision ("DOCCS"). *Id.* Martin has submitted an exemplar of a label from the boiled seasoned beef dinner, bearing the OU kosher certification trademark, as an example of the meals served for Shavout, Rosh Hashana, and Sukkoth. *Id.;* Dkt. No. 18–7 at 1.

Regular kosher certification is not sufficient for Passover, and foods that are kosher during the rest of the year are not kosher for Passover. (Dkt. No. 18–5 at ¶ 8.) Therefore, according to Martin, on the eight nights of Passover, Jewish inmates are given pre-packaged and prepared hot Spring Valley meals certified by OU as "Kosher for Passover." (Dkt. No. 18–6 at ¶ 6.) Martin has also submitted an exemplar of a label from the packaging for the baked fish tomato herb dinner

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    3

labeled "Kosher for Passover." (Dkt. No. 18–8 at 1–2.) A March 21, 2012, invoice from SYSCO for meals delivered to the DOCCS Food Production Center in Rome, New York included a total of 147 kosher for Passover meals and 42 kosher beef in broth boiled dinners not labeled as kosher for Passover and not certified as kosher for Passover on the Orthodox Union December 28, 2011, kosher certification letter. [5] (Dkt. Nos. 18–10 and 18–9.) Martin's involvement in providing kosher and kosher for Passover meals to Jewish inmates is limited to ordering the proper number of meals from the Food Production Center, based on the count of observant Jewish inmates provided by the Facility Rabbi; ensuring that the meals are properly stored and refrigerated upon delivery; and making sure they are warmed before being served to the inmates. (Dkt. No. 18–6 at ¶ 9.) Defendant Matasar visits correctional facility kitchens approximately monthly to ensure that the food provided to Jewish inmates is prepared in accordance with Jewish dietary laws of kashrut. (Dkt. No. 18–5 at ¶ 3.) Matasar has no responsibility for, or direct involvement in, providing food to inmates, and he claims to have played no role in the preparation or provision of meals provided to Plaintiff during the 2012 Passover holiday. *Id.* at 18–5 at ¶¶ 3, 10.

[5] Except for noting that there are Jewish holidays in which regular Spring Valley kosher meals are served, Defendants have provided no explanation for why the 42 beef in broth boiled dinners, which were not certified as Kosher for Passover, were purchased at the same time as the Kosher for Passover meals and were identified as "frozen Passover dinners" on the description of goods received at the Food Production Center on March 21, 2012. (Dkt. Nos. 18–5 at ¶ 7; 18–6 at ¶ 5; 18–9 at 2.)

**\*4** Matasar and Martin both claim to be unaware of any instance in which Plaintiff has been denied a Passover meal, or provided with a meal that was not kosher for Passover, and to have no reason to suspect that the pre-packaged and prepared kosher for Passover hot meals provided to Plaintiff during Passover contained foods that were not kosher for Passover. (Dkt. Nos. 18–5 at ¶ 9; 18–6 at ¶ 10.) Like Plaintiff, Defendants have failed to describe the meal served to Plaintiff at the first Passover Seder in 2012.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint and applied for leave to proceed *in forma pauperis* in this action on April 22, 2013. (Dkt.

Nos. 1 and 2.) On June 10, 2013, Plaintiff moved for the appointment of counsel. (Dkt. No. 10.) In a Decision and Order filed on June 25, 2013, Chief Judge Sharpe granted Plaintiff's *in forma pauperis* application, denied his motion for the appointment of counsel without prejudice, and dismissed Plaintiff's claims for money damages against Defendants in their official capacities with prejudice on the grounds that the claims are barred by the Eleventh Amendment to the Constitution. (Dkt. No. 12.) The Summons and Complaint were served on Defendants Martin, Graham, and Matasar on July 2, 15, and 17, 2013, respectively. (Dkt.Nos.15–17.)

Defendants filed the motion for summary judgment in lieu of answering the Complaint now before me for Report and Recommendation on July 19, 2013. [6] (Dkt. No. 18.) Plaintiff thereafter filed his motion to amend his Complaint to reflect the proper dates for Passover in 2012 (Dkt. No. 20) and his opposition to Defendants' motion. (Dkt. Nos. 21 and 24.)

[6] Plaintiff moved for a default judgment on August 19, 2013, based upon Defendants' failure to answer the Complaint. (Dkt. No. 28.) Defendants opposed the motion and requested that the obligation to answer be stayed pending a decision on their summary judgment motion (Dkt. No. 29), and on September 19, 2013, the Court issued a Text Order granting Defendants' request for a stay. (Dkt. No. 32.)

In August of 2013, Plaintiff filed a second motion for assignment of counsel. (Dkt. No. 25.) The Court denied the motion in a September 27, 2013, Decision and Order. (Dkt. No. 33.)

## III. APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin,* 467 F.3d at 272–73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment. *Cordiano v. Metacon Gun Club, Inc.,* 575 F.3d 199, 204 (2d Cir.2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

**\*5** In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008). Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Salahuddin v. Coughlin,* 999 F.Supp. 526, 535 (S.D.N.Y.1998) ("pro se parties are to be given special latitude on summary judgment motions.") (citations and internal quotation marks omitted). However, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).[7]

[7]    Copies of unpublished decisions cited herein will be mailed to Plaintiff as a *pro se* litigant. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

## IV. ANALYSIS

### A. Deficiencies in Plaintiff's Opposition Papers

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se* ] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003). In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the Statement of Material Facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3).[8] Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record,[9] and (2) the nonmovant, if proceeding *pro se,* has been specifically advised of the possible consequences of failing to respond to the motion.[10] *See Champion, v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, and in light of the fact that Defendants have moved for summary judgment so early in the litigation, I have opted to review the entire record in determining if there are material facts in dispute.

[8]    L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Plaintiff's partial response to Defendants' Statement, found in his Motion to Dismiss Summary Judgment, is limited to disagreement with ¶¶ 14, 18, and 22 in Defendants' Statement, and as to those, Plaintiff has failed to set forth specific citations to the record where the claimed factual issue arises.

[9]    L.R. 7.1(a)(3) provides that *"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* However, *see Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d. Cir.2004) ("[I]n determining whether the moving

party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

10      Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion. (Dkt. No. 24 at 3.)

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann,* 604 F.3d 72, 81 (2d Cir.2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). Where, as here, the Court elects to conduct an independent review of the record on a motion for summary judgment, a plaintiff's verified complaint should be treated as an affidavit.[11] *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist ....") (citations omitted). Plaintiff's Opposition to the Declaration of Defendant Howard Matasar (Dkt. No. 24), which was signed under penalty of perjury, also constitutes admissible evidence that can be considered in opposition to Defendants' motion. *See* 28 U.S.C. § 1746 (authorizing the use of declarations made under penalty of perjury when an affidavit is required or permitted to be used).

11      Plaintiff's Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65–66 (2d Cir.1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746).

**\*6** Plaintiff's Motion to Dismiss Summary Judgment (Dkt. No. 21) is unsworn, and unsworn statements are generally inadmissible in opposition to a motion for summary judgment. *See, e.g., Witzenburg v. Jurgens,* No. CV–05–4827 (SJF)(AKT), 2009 WL 1033395, at \*11, 2009 U.S. Dist. LEXIS 32126 (E.D.N.Y. April 14, 2009) (unsworn declarations are inadmissible for purposes of Rule 56 and cannot be considered by the court in deciding the motion for summary judgment). Even so, on summary judgment motions involving *pro se* plaintiffs, courts have been known to consider unsworn submissions in opposition. *See, e.g., Hamm*

*v. Hatcher,* No. 05 Civ. 503(ER), 2013 WL 71770, at \*7, 2013 U.S. Dist. LEXIS 2203, \*19–20 (S.D.N.Y. Jan.7, 2013) (to afford *pro se* plaintiff special solicitude, the court considered unsworn statements in his opposition papers but only to the extent based on personal knowledge or supported by other admissible evidence in the record, on the assumption that if the allegations were sufficient to raise an issue of fact, plaintiff would be given the opportunity to submit an affidavit properly attesting to the allegations); *Robles v. Khahaifa,* No. 09CV718 (HBS), 2012 WL 2401574, at \*7, 2012 U.S. Dist. LEXIS 87834, at \*20–22 (W.D.N.Y. June 25, 2012). In deference to Plaintiff's *pro se* status, and because the action is at such an early stage, the Court will consider Plaintiff's unsworn Motion to Dismiss Summary Judgment in opposition to Defendants' motion.

## B. New Claims Raised by Plaintiff in his Opposition Papers

Plaintiff's Complaint alleges that there was chametz in the meal served at the Seder on the first night of Passover in 2012. (Dkt. No. 1 at 4, 18.) However, in his opposition to Defendants' summary judgment motion, Plaintiff goes well beyond the allegations in his Complaint. He claims that in addition to containing chametz, the salad dressing, condiments, butter, and the hot meal served at the first Seder were not labeled kosher for Passover. (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) Plaintiff also claims that the 42 kosher, but not kosher for Passover, beef in broth boiled dinners listed in the SYSCO invoice supplied by Defendants were given to inmates throughout Passover in 2012. (Dkt. No. 21 at ¶ 3.) He does not, however, specifically claim that he was served one of those beef dinners at the Seder on the first evening of Passover. In addition, in his opposition papers, Plaintiff complains that during Passover in 2012, the sardines and tuna served for lunch each day were taken out of the cans and placed in small dixie cups in violation of kashrut, the food in the lunch bags given inmates during Passover contained chametz, and the dressings, butters, and tuna fish were not kosher for Passover. (Dkt. No. 21 at ¶ 6.) According to Plaintiff, when he complained to Defendant Matasar about the lunch bags containing chametz and asked him to go to the kitchen and fix the situation, Matasar responded that Plaintiff was in prison and he should not come to prison if he wanted to eat kosher. Plaintiff claims Matasar told him he could eat the lunches or not. *Id.*

**\*7** In their Reply Memorandum of Law, Defendants argue that under well-settled law, Plaintiff cannot raise new claims in papers in opposition to a motion for summary judgment.

(Dkt. No. 22 at 4–5.) *See, e.g., Shah v. Helen Hayes Hosp.,* 252 F. App'x 364, 366 (2d Cir.2007) (holding that the district court did not err in disregarding allegations the plaintiff raised for the first time in response to the defendant's motion for summary judgment); *Jones v. Fischer,* No. 9:10–cv–1331 (GLS/ATB), 2013 WL 5441353, at *15, n. 23, 2013 U.S. Dist. LEXIS 140318, at *47, n. 23 (N.D.N.Y. Sept. 27, 2013) ("Generally a party may not raise new claims in his or her response to a motion for summary judgment.") (collecting cases). However, the stated rationale for disregarding claims first asserted in opposition to a motion for summary judgment does not fit in this instance. *See Beckman v. U.S. Postal Service,* 79 F.Supp.2d 394, 407–08 (S.D.N.Y.2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (citations and internal quotation marks omitted); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 963 F.Supp. 1342, 1359 (S.D.N.Y.1997) (attempt by plaintiff to add claim never addressed in the complaint is inappropriate in a brief in opposition to a motion for summary judgment made after the close of discovery without leave of court); *see also Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 219–20 (N.D.N.Y.2008) (McAvoy, J. *adopting* ReportRecommendation of Lowe, M.J.) (in an action filed in November of 2005, where discovery had closed in December of 2006, court concluded that new factual allegations raised by plaintiff in opposition to summary judgment motion should not be considered, where "the four new allegations [were] not made in response to a motion to dismiss (which typically occurs relatively early in an action, before discovery has occurred) ... [and] the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendants of the fair notice envisioned by *Fed.R.Civ.P. 8.*").

Because Defendants moved for summary judgment in lieu of filing an answer within weeks of service of Plaintiff's Complaint and prior to any discovery in the action, the Court will consider the new factual allegations and claims raised in Plaintiff's opposition papers.

**C. Plaintiff's Claims Under RLUIPA**

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA includes an express private cause of action: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). "Government" includes, *inter alia,* States, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law. 42 U.S.C. § 2000cc–5(4)(A).

**\*8** In his June 25, 2013, Decision and Order, Chief Judge Sharpe dismissed Plaintiff's RLUIPA and § 1983 claims for money damages against Defendants in their official capacities on the grounds that those claims are barred by the Eleventh Amendment. [12] (Dkt. No. 12 at 7.) Recently, in *Washington v. Gonyea,* 731 F.3d 143 (2d Cir.2013), the Second Circuit held that RLUIPA does not create a private cause of action against state officers in their individual capacities. *Id.* at 145–46. Therefore, I recommend that Defendants' motion for summary judgment dismissing Plaintiff's RLUIPA claims against them in their individual capacities be granted.

[12]   Plaintiff has requested a temporary restraining order against Defendants in his Complaint. (Dkt. No. 1 at 21.) All of the events of which Plaintiff complains took place at Auburn, where Defendants are employed. (*See generally* Dkt. No. 1.) Plaintiff has since been transferred from Auburn and is presently incarcerated at Great Meadow Correctional Facility ("Great Meadow"). (Dkt. No. 31.) Great Meadow is not one of the correctional facilities to which Defendant Matasar is assigned. (Dkt. No. 18–5 at ¶ 1.) Therefore, I recommend that Defendants be granted summary judgment dismissing Plaintiff's request for what appears to be injunctive relief under RLUIPA and the Free Exercise Clause as moot. *See Washington,* 731 F.3d at 144, n. 1; *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (transfer from a correctional facility generally moots a claim for injunctive relief against officials in the facility).

**D. Plaintiff's Free Exercise Claim Against Defendant Graham**

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.").* "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (citing *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 872, 873 (2d Cir.1995).[13]

---

[13]    The Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) has arguably nullified some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for

purposes of this motion that *Colon* remains good law.

The only allegations in the Complaint regarding Graham are that he does not have "a strong institutional interest in the effectiveness of beliefs in [Plaintiff's] religious practices of observing Judaism and the holy day of Passover," and that he was negligent with regard to the Passover menu.[14] (Dkt. No. 1 at 14.) In his opposition papers, Plaintiff's sole claim of personal involvement by Graham is that Graham told Defendant Martin to take the sardines and tuna out of the cans before serving them to the inmates which, according to Plaintiff, violated the kashrut. (Dkt. No. 21 at ¶ 6.)[15] "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). The reach of the free exercise clause extends to "an inmate's diet and participation in religious meals." *Johnson v. Guiere,* No. 9:04–CV–57 (DNH/DEP), 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 98781, *14–15 (N.D.N.Y. Oct.17, 2007) ("Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.").

---

[14]    Mere negligence is insufficient to establish liability on the part of a prison official under § 1983. *See Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

[15]    Plaintiff is required to demonstrate that the beliefs he professes are "sincerely held" and in his "own scheme of things, religious." *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citation and internal quotation marks omitted). Plaintiff has described himself as an "observant Orthodox Jewish man" (Dkt. No. 1 at 13), and Defendants have not disputed Plaintiff's self-characterization. Therefore, the Court will assume for purposes of Defendants' motion that Plaintiff's Jewish faith is a sincerely held religious belief.

**\*9** However, the protections afforded inmates by the First Amendment are not as extensive as the rights enjoyed by ordinary citizens because "[a] prison inmate ... retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir.2004) (citation and internal quotation

marks omitted); *see also Ford,* 352 F.3d 588 ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, ... are the interests of prison officials charged with complex duties arising from administration of the penal system.") (internal quotation marks and brackets omitted).

The governing standard in determining whether restrictions on an inmate's religious practices passes First Amendment muster is one of reasonableness. *Ford,* 352 F.3d at 588 ("the free exercise claims of prisoners are therefore judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights") (additional internal quotation marks omitted). A generally applicable policy will not be held to violate an inmate's right to free exercise of religion if the policy "is reasonably related to legitimate penological interests." *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (citation and internal quotation marks omitted).

In *Russell v. Ricks,* No. 9:02–CV–0940 (LEK/DEP), 2006 WL 1555468, at * 6, 2006 U.S. Dist. LEXIS 39772, at * 18 (N.D.N.Y. May 31, 2006), the district court noted that both district courts in the Second Circuit and New York appellate courts "have uniformly held that can tops constitute weapons." (punctuation omitted) (collecting cases); *see also Odom v. Dixion,* No. 04–CV–889F, 2008 WL 466255, at *7, 2008 U.S. Dist. LEXIS 11748, at *19–20 (W.D.N.Y. Feb.15, 2008) (accepting defendants' assertion that because can lids have sharp metal edges, they can be fashioned into weapons and rejecting plaintiff's claim that his free exercise rights were violated by permitting a non-Jew to open cans of sardines and tuna and place the contents in paper cups); *Dodge v. County of Orange,* 282 F.Supp.2d 41, 68–69 (S.D.N.Y.2003) (listing a bent can lid as a weapon); *People v. Jones,* 185 A.D.2d 470, 585 N.Y.S.2d 872, 873 (3d Dep't 1992) (testimony established that an altered can lid could be used as a weapon). In light of the general recognition that can lids can constitute weapons in the hands of inmates, the Court finds that even if Graham did direct Martin to take the sardines and tuna out of the cans, the directive was reasonably related to legitimate penological interests and, therefore, did not violate Plaintiff's rights. [16]

16    The same would be true as to Plaintiff's claims against Defendants Martin and Matasar with respect to removal of the sardines and tuna from cans.

Based upon the foregoing, I recommend that summary judgment be granted dismissing Plaintiff's First Amendment free exercise claim against Defendant Graham in his individual capacity.

### E. Plaintiff's First Amendment Free Exercise Clause Claim Against Defendants Martin and Matasar

**\*10** The free exercise claim against Defendants Martin and Matasar in Plaintiff's Complaint is limited to the alleged presence of chametz in the Seder meal served him on the first evening of Passover in 2012. (*See generally* Dkt. No. 1.) In his Complaint, Plaintiff has himself described Defendants Martin and Matasar's actions in allowing him to be served a meal that contained chametz at the first Passover Seder as a negligent violation of his constitutional rights. (Dkt. No. 1 at 11, 14– 16.) Given the evidence presented by Martin and Matasar of the established practice at Auburn of acknowledging inmates' religious dietary requirements by giving them prepackaged kosher for Passover evening meals, the record does not support a finding that the presence of chametz in Plaintiff's meal at the first Seder was the result of established prison policy or an intentional disregard of Plaintiff's right to food satisfying the dictates of his faith, as opposed to a mistake or negligence as Plaintiff has himself alleged. (Dkt. No. 1 at 11, 14–16.) Even if Martin and Matasar were negligent in failing to ensure that Plaintiff was given kosher for Passover food for the Seder, conduct "amount [ing] to [nothing] more than negligence, ... is not actionable under the First Amendment." [17] *Tafari v. Brown,* No. 9:10–CV–1065 (GTS/ DRH), 2012 WL 1098447, at *6, 2012 U.S. Dist. LEXIS 45055, at *16 (N.D.N.Y. Mar.30, 2012); *see also Gallagher v. Shelton,* 587 F.3d 1063, 1070 (10th Cir.2009) (allegations of isolated, negligent acts with respect to prisoner's receipt of a kosher diet did not state a First Amendment claim); *Lovelace v. Lee,* 472 F.3d 174, 201 (4th Cir.2006) ("[n]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"). [18]

17    Although Matasar has acknowledged that his responsibilities as Rabbi at Auburn included visiting the kitchen at Auburn to ensure that foods provided to Jewish inmates were prepared in accordance with kashrut, there is no evidence he was personally involved in purchasing, preparing, or serving Plaintiff's meal on the first night of Passover. (Dkt. No. 18–5 at ¶ 3.) As previously noted, personal involvement is a prerequisite to an

award of damages under § 1983. *McKinnon,* 568 F.2d 934.

18    Martin and Matasar also argue that even if Plaintiff did not receive a proper kosher for Passover meal the first Seder of Passover, it was *de minimis* and cannot be found to have substantially burdened his sincerely held religious beliefs. (Dkt. No. 18–2 at 9–12.) *See Salahuddin v. Goord,* 467 F.3d at 274–75 (inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."). There is a substantial amount of case law finding that denial of a religious meal on a small number of occasions is *de minimis* and does not give rise to a First Amendment claim. *See, e.g., Wilson v. Woodbourne Correctional Facility,* No. 9:11–CV–1088 (DNH/AT), 2012 WL 1377615, at *3, 2012 U.S. Dist. LEXIS 54989, at *8 (N.D.N.Y. March 21, 2012); (the withholding of a single religious meal is at most a *de minimis* burden on a prisoner's religious expression); *Odor v. Dixon,* 2008 466255, at *11 (failure to provide inmate with kosher meals on 7 out of 33 occasions not sufficient under the First Amendment). However, in *Ford,* 352 F.3d at 594, n. 12, the Second Circuit found that the Eid ul Fitr feast was sufficiently unique in its importance within Islam to distinguish that case from those in which the inability to provide a small number of meals commensurate with an inmate's religious beliefs was a *de minimis* burden, and indicated that the court was inclined to hold that the plaintiff had established a substantial burden as a result of missing the religious feast. *See also Shakur,* 391 F.3d at 120 (reversing the district court holding that "the missing of a single Eid ul Fitr feast simply does not amount to a 'substantial burden' on his religious exercise.") A Passover Seder has been recognized as being greatly significant to Jewish adherents. *See, e.g., Whitney v. Brown,* 882 F.2d 1068, 1074 (6th Cir.1989) (explaining Seder "marks the exodus of the Jewish people from Egypt. It is a most sacred time for believers in the Jewish faith, both for historic reasons and for its celebration of family and community ....."). Therefore, if Plaintiff was intentionally denied a meal that was kosher for Passover, whether or not the denial was *de minimis* could conceivably present a question of fact.

While there is no evidence establishing more than possible negligence on the part of Defendants Martin and Matasar with regard to the allegations regarding chametz in the food served at the first Seder, Plaintiff's opposition papers include new claims of the arguably knowing violation of his First Amendment rights by Martin and Matasar during Passover of 2012. Martin, who acknowledges being responsible for overseeing and coordinating the preparation and provision of food to inmates, and Matasar, who acknowledges being responsible for checking the kitchen at Auburn to ensure that food is prepared in accordance with kashrut, have stated that during Passover, Jewish inmates at Auburn are given meals that are kosher for Passover. (Dkt. Nos. 18–5 at ¶¶ 2, 6; 18–6 at ¶ 4.) However, in his opposition papers, Plaintiff claims that the salad dressing, condiments, and butter served at the first Seder were not kosher for Passover. (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) In addition, Plaintiff has described the CAD lunch bags given to Jewish inmates during Passover as containing chametz throughout the whole bag. (Dkt. No. 21 at ¶ 6.) Moreover, according to Plaintiff, when he complained to Matasar about the lunch bags containing chametz, Matasar told him if he wanted to eat kosher he should stay out of prison. *Id.* An intentional disregard of Plaintiff's right to a diet consistent with his sincerely held religious beliefs could constitute a violation of his First Amendment rights. *See Johnson v. Guiffere,* 2007 WL 3046703, at *4.

*11    Martin states in her Declaration that pre-packaged kosher, but not kosher for Passover, meals like the boiled seasoned beef dinner (Dkt. No. 18–7) are given to inmates on Jewish holidays other than Passover. (Dkt. No. 18–5 at ¶ 5.) However, Plaintiff claims that the boiled seasoned beef dinners were served throughout Passover, despite not being kosher for Passover. (Dkt. No. 21 at ¶ 3.) Given that the DOCCS Food Production Center receipt submitted by Martin includes the boiled beef dinners in the list of "frozen Passover dinners," it is conceivable that, whether inadvertently or intentionally, those meals were served during Passover as Plaintiff contends. (Dkt. No. 18–9.)

Plaintiff's new claims against Defendants Martin and Matasar have been asserted before discovery, at a point where it would not be prejudicial to Defendants to allow him to amend his complaint to include them. Therefore, giving due deference to Plaintiff's *pro se* status, the Court recommends that Defendants Martin and Matasar's motion for summary judgment with regard to Plaintiff's free exercise claim against them in their individual capacities be denied without prejudice, and that Plaintiff be granted leave to file an

amended complaint including the new claims asserted in his opposition papers. [19]

[19]     Had Defendants made a pre-discovery motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than a summary judgment motion in lieu of an answer, Plaintiff, as a *pro se* complainant, would likely have been found entitled to an opportunity to amend his Complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" unless "the problem with [the plaintiff's] causes of action is substantive" and could not be cured by a better pleading) (citation and internal quotation marks omitted).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's motion for leave to amend his Complaint to reflect the correct dates for Passover in 2012 (Dkt. No. 20) is *GRANTED;* and it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be *GRANTED* as to Defendant Graham; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be *GRANTED* in part and *DENIED* in part, without prejudice, as to Defendants Martin and Matasar as follows:

1. Summary judgment be *GRANTED* to Defendants Martin and Matasar on Plaintiff's claim under RLUIPA; and

2. Summary judgment be *DENIED* to Defendants Martin and Matasar, without prejudice, on Plaintiff's claim under 42 U.S.C. § 1983 for violation of his rights under the First Amendment Free Exercise Clause; and it is further

**RECOMMENDED** that Plaintiff be granted leave to amend his Complaint to assert the new claims against Defendants Martin and Matasar set forth in his papers in opposition to Defendants' motion for summary judgment (Dkt. Nos. 21 and 24); and it is further

**RECOMMENDED** that with respect to any amended complaint filed by Plaintiff, he be instructed to include factual allegations describing the role of Defendants Martin and Matasar sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that the amended complaint be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon, or incorporate by reference, the complaint previously filed in the action; and it is hereby

**ORDERED** that in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam), the Clerks Office provide Plaintiff with copies of the following unpublished decisions: *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876 (S.D.N.Y. Oct. 28, 1999); *Witzenburg v. Jurgens,* No. CV–05–4827 (SJF) (AKT), 2009 WL 1033395 (E.D.N.Y. April 14, 2009); *Hamm v. Hatcher,* No. 05 Civ. 503(ER), 2013 WL 71770 (S.D.N.Y. Jan.7, 2013); *Robles v. Khahaifa,* No. 09CV718, 2012 WL 2401574 (W.D.N.Y. June 25, 2012); *Jones v. Fischer,* No. 9:10–cv–1331 (GLS/ATB), 2013 WL 5441353 (N.D.N.Y. Sept. 27, 2013); *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919 (N.D.N.Y. Feb.28, 2012); *Johnson v. Guiffere,* No. 9:04–CV–57, 2007 WL 3046703 (N.D.N.Y. Oct.17, 2007); *Russell v. Ricks,* No. 9:02–CV–0940 (LEK/DEP), 2006 WL 1555468 (N.D.N.Y. May 31, 2006); *Tafari v. Brown,* No. 9:10–CV–1065 (GTS/DRH), 2012 WL 1098447 (N.D.N.Y. Mar.30, 2012); *Wilson v. Woodbourne Correctional Facility,* No. 9:11–CV–1088 (DNH/ATB), 2012 WL 1377615 (N.D.N.Y. March 21, 2012).

**\*12**  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

Filed Dec. 19, 2013.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1289601

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

**\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the
plaintiff was in keeplock because of an altercation with prison
guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with one hour
for recreation. (Affidavit of Anthony Annucci dated Dec. 1,
1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3).
Permission is granted unless prison officials determine that
the inmate's presence at the service would create a threat to
the safety of employees or other inmates. (Schneider Aff. ¶
3). The standard procedure at Green Haven is for the captain's
office to review all requests by inmates in keeplock to attend
religious services. (Schneider Aff. ¶ 3). Written approval is
provided to the inmate if authorization is granted. (Affidavit
of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.")
¶ 5). The inmate must then present the appropriate form to
the gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*
Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3

(S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

**B.** *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

---

[1]   In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

---

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 34 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

KeyCite Yellow Flag - Negative Treatment
Distinguished by  Sawyer v. Locy,  N.D.N.Y.,  December 16, 2020

2017 WL 2791063
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edy RODRIGUEZ, Plaintiff,
v.
J. CROSS, Sergeant, Clinton
Correctional Facility; et al., Defendants.

No. 15-CV-1079 (GTS/CFH)
|
Signed 05/09/2017

**Attorneys and Law Firms**

Edy Rodriguez, East Elmhurst, NY, pro se.

Ryan E. Manley, Harris, Conway & Donovan, Christopher J. Hummel, New York State Attorney General, Albany, NY, for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Christian F. Hummel, U.S. Magistrate Judge

 **\*1**  Plaintiff pro se Edy Rodriguez ("Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Sergeant ("Sgt.") J. Cross, Sgt. R. Furnia, Correction Officer ("C.O.") G. Falcon, and C.O. J. Roberts (collectively "Defendants") violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 1 ("Compl."). [2]

[2]    On March 27, 2017, this Court granted plaintiff an extension until May 1, 2017 to file a motion to amend his complaint. Dkt. No. 38. The deadline

has expired and plaintiff has not filed a motion to amend his complaint.

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for plaintiff's failure to exhaust administrative remedies before commencing this action. Dkt. No. 26. Plaintiff filed a response in opposition to defendants' motion. Dkt. No. 34. Defendants filed a reply. Dkt. No. 39.

**I. Background**

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra. At the relevant times giving rise to plaintiff's claims, plaintiff was an inmate incarcerated at Clinton Correctional Facility ("Clinton").

On July 10, 2014, plaintiff wrote a letter to Sgt. Cross "complaining about being harassed" by staff at Clinton. Compl. at 4. Plaintiff further alleges that he was taken out of his cell on July 14, 2014, brought to the second floor of the facility's hospital, and subjected to a "beating" by defendants. Compl. at 4-5. Sgt. Cross grabbed him by the hair; Sgt. Furnia punched him; and C.O. Falcon and C.O. Roberts punched him in the face, back, and neck. Id. at 4. Plaintiff alleges "each one of the blows" he suffered was from the named defendants, as well as other officers he cannot identify by name. Id. at 5-6. After the alleged incident, plaintiff was seen by a nurse with "about ten" officers present in the room, where he admits "having no choice," but to tell the nurse that officers had just beat him up. See Affirmation of Christopher J. Hummel ("Hummel Aff."), Dkt. No. 26-1, Exhibit ("Exh.") A [3] at 59-60. [4]

[3]    Exhibit A to the Affirmation of Christopher J. Hummel is a transcript of plaintiff's deposition, held on September 19, 2016 at Great Meadow Correctional Facility. See Dkt. No. 26-1.

[4]    When citing documents within the record, the Court uses the page numbers generated by CM/ECF.

While at Clinton, plaintiff filed five grievances. See Declaration of Christine Gregory ("Gregory Decl."), Dkt. No. 26-3 Exh. A at 6. Only one grievance was appealed. Declaration of Jeffrey Hale ("Hale Decl."), Dkt. No. 26-2 ¶¶ 12-13. The subject matter of the single appealed grievance

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 35 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

does not concern the matter before the Court. Id. ¶ 12. The only grievance filed that is pertinent to the pending motion was filed on July 29, 2014. See Gregory Decl. Exh. B at 8. This grievance alleges that plaintiff suffered "an assault by (C.O.)" and, following the assault, did not receive appropriate medical care. Id. The investigation into the July 29, 2014 grievance concluded that plaintiff saw his medical provider, and medicine was given to him without any further action. Id. at 10. The investigation did not mention anything about an assault. Id.

**\*2** Plaintiff alleges that he filed a grievance regarding the incidents described in his complaint, but an unidentified Sergeant destroyed the grievance. Compl. at 2. He also alleges that he was beaten by correction staff for filing the grievance. Id. Plaintiff also states that he filed a handwritten grievance (not on a grievance form) on July 19, 2014, regarding the July 14, 2014 incident. See Hummel Aff. Exh. A at 93. Plaintiff alleges that he sent a copy of this grievance to his mother and instructed her to send it directly to Clinton "[f]rom outside." Id. at 94. Defendants have no record of this grievance being filed. See Gregory Decl. Exh. A at 6. Plaintiff never inquired further about the July 19, 2014 grievance, but maintains that he has handwritten copies of the grievance since he did not have access to carbon paper when he originally drafted this grievance. See Hummel Aff. Exh. A at 94-95, 96-97. The July 19, 2014 grievance was drafted while plaintiff was in keeplock. Id. at 93.

Plaintiff further alleges, in his response to defendants' motion for summary judgment, that defendants have total control over facility mail and any failure to exhaust administrative remedies occurred because defendants strategically removed grievances from the mailbox to cover up their use of excessive force against plaintiff. See Dkt. No. 34 at 4. Plaintiff further alleges a general belief that there is a pattern of prison officials threatening and retaliating against inmates for filing grievances, thus making administrative remedies unavailable. Id. at 6. Lastly, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or the complaint does not involve staff misconduct. Id. at 8.

## II. Discussion [5]

[5] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

Plaintiff alleges that defendants retaliated against him in violation of the First Amendment, used excessive force against him in violation of the Eighth Amendment, and violated his Due Process rights under the First and Fourteenth Amendments. See Compl. at 7. Defendants argue that plaintiff's complaint should be dismissed in its entirety as plaintiff failed to exhaust his administrative remedies with respect to the causes of action outlined in the Complaint. See Defendants' Memorandum of Law, Dkt. No. 26-5 at 3.

### A. Legal Standard For Motions
### Pursuant to Fed. R. Civ. P. 56(a)

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 36 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)
2017 WL 2791063

Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

**\*3** Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law" ....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at \*4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d

170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

**\*4** Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may

**Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)**
Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 37 of 141
2017 WL 2791063

appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

### 1. Application

First, the Court will address whether there is any genuine dispute that plaintiff failed to exhaust his administrative remedies. Courts in the Second Circuit have consistently held that any informal resolutions or relief outside of the administrative procedures do not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless of whether prison officials know of plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); Ruggiero v. Cty. of Orange, 467 F.3d 170, 177-78 (2d Cir. 2006); Perez v. City of N.Y., No. 14 CIV. 07502(LGS), 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) ("Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process.").

Here, subsequent to the alleged events giving rise to the matter before the Court, plaintiff states he and family members contacted the Inspector General's Office to complain about prison conditions and concerns of plaintiff's safety. See Hummel Aff. Exh. A at 89, 90. Such correspondence does not satisfy exhaustion and falls outside of the grievance procedures. See Geer v. Chapman, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."); Salmon v. Bellinger, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), report and recommendation adopted by, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (holding that letters sent to the Inspector General do not satisfy exhaustion procedures).

*5 After the alleged incident of excessive force, plaintiff was seen by a nurse in a room with "about ten" officers present, where he admits "having no choice" but to tell the nurse that the officers had beat him up. Hummel Aff. Exh. A at 59-60. Plaintiff alleges filing grievances on July 19, 2014 and July 29, 2014 that mention the assault. See id. at 93; Gregory Decl. Exh. B at 6, 8-10. Defendants state that there is no record of appeal on any grievances pertaining to the alleged assault. Gregory Decl. ¶ 15. While plaintiff's complaints were aired verbally and in writing, plaintiff failed to utilize the procedures required to exhaust administrative remedies. Timmons v. Schriro, No. 14-CV-6606(RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."). Thus, there is no genuine dispute that plaintiff failed to exhaust administrative remedies.

As a result, the Court must determine whether administrative remedies were in fact available to plaintiff. See Ross, 136 S. Ct. at 1858 ("An inmate ... must exhaust available remedies, but need not exhaust unavailable ones"); Mena v. City of New York, No. 13-cv-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing Ross, 136 S. Ct. at 1862) ("[T]he lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him."). Plaintiff sets forth three factual arguments as to why administrative remedies were not available to him. First, plaintiff alleges that the grievance procedures were unavailable to him because he was denied access to paper and writing instruments. See Compl. at 3. Next, plaintiff alleges that he was physically beaten when he attempted to take steps to utilize the grievance process. Id. Lastly, plaintiff suggests that he never received a response to his grievance, his mail was tampered with, and his letters were not delivered. See Hummel Aff. Exh. A at 91-92, 94.

### a. Lack of Paper and Pen to Complete Grievance Procedures

The third prong of Ross is triggered by plaintiff's argument that he was denied access to pen and paper, as it shows an alleged attempt to stop him from taking part in the grievance process. When a plaintiff-inmate asserts that a defendant-facility withheld pens, courts have granted

2017 WL 2791063

summary judgment against a plaintiff when "the record does not show that "[p]laintiff indicated to prison officials that he needed a pen so he could file a grievance or that prison officials refused to provide him a pen for this purpose." Mena v. City of N.Y., No. 12 CIV. 6838(GBD), 2013 WL 3580057, at *2 (S.D.N.Y. July 10, 2013). When an inmate argues that a correction officer denies him access to pen or paper, even assuming the allegations are true, courts examine whether the inmate was drafting other documents during the same time period, or whether they were able to access materials from other sources. See Williams v. Ramos, No. 13 CV 826(VLB), 2015 WL 864888, at *3 (S.D.N.Y. Feb. 9, 2015) ("It is unclear how plaintiff was able to submit [other] grievances if defendants took his pens and paper and threatened him ... Moreover, when defendants allegedly stole his pens and papers, plaintiff testified he was able to file grievances on his commissary sheet."); Lahoz v. Orange Cty. Jail, No. 08 CIV. 4364(RWS), 2010 WL 1789907, at *3 (S.D.N.Y. Apr. 29, 2010) (stating that an inmate was not deprived of writing materials when he drafted a handwritten letter during the same time period as the grievance process).

Here, the Court notes contradictory statements within the complaint pertaining to plaintiff's access to writing instruments or paper. When prompted as to why facts relating to the complaint were not presented in the grievance program, plaintiff asserts that he was denied a paper or pen. Compl. at 3. However, plaintiff also states that he wrote a grievance, the grievance was destroyed by a Sergeant, and he was beaten in retaliation for writing the grievance. See id. at 2. The only time plaintiff asserts that he was denied a paper and pen was when he was taken to the Special Housing Unit ("SHU") [6] on July 14, 2014 after the alleged incident. See id. at 3; Hummel Aff. Exh. A at 68. In fact, records indicate that plaintiff filed grievances on July 19, July 29, August 4, and November 19 of that same year. [7] Gregory Decl. Exh. A at 6. Plaintiff does not allege any difficulties obtaining a pen and paper after the July 2014 SHU stay, but rather, admits having "a piece of paper that an inmate had and a pen" on at least one occasion. See id. at 94.

[6]    SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP. CODES R. & REGS. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or

security reasons, or in other circumstances as required. Id. at pt. 301.

[7]    Both the August and November grievances are unrelated to the cause of action before the Court. Gregory Decl. Exh. A at 6.

*6 Lastly, in his response to defendants' motion for summary judgment, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or if their complaint does not involve staff misconduct. Dkt. No. 34 at 8. Such general allegations without any factual support are insufficient to show that procedures were unavailable, coupled with the fact that, grievances can and have been submitted by plaintiff on plain paper. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1) ("If this form is not readily available, a complaint may be submitted on plain paper."); see Veloz v. N.Y., 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) (granting summary judgment where plaintiff does not allege that any specific officer thwarted his efforts to timely file a grievance); Hummel Aff. Exh. A at 94.

Even if the Court assumes that plaintiff was denied access to pen and paper while in the SHU, the grievances filed in July 2014 were filed within the twenty-one calendar days required, and his subsequent failure to exhaust administrative remedies regarding those grievances is unaffected by any denial of pen and paper that occurred in the past. Thus, the Court rejects plaintiff's argument as there is no genuine dispute of fact that administrative remedies were unavailable due a lack of writing instruments or paper.

### b. Allegation that Grievance Was Not Received and Mail Tampering

Courts have long held that where an inmate does not receive a response to a written grievance, the inmate must appeal to the next level of review. See Khudan v. Lee, No. 12-cv-8147(RJS), 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing a plaintiff's complaint where plaintiff failed to appeal to the next level of review after not receiving a response to his filed grievance); see also Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 39 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)
2017 WL 2791063

became clear to him that a response to his initial filing was not forthcoming.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is unfiled and unanswered. These cases have focused on the second prong of the Ross test, where a grievance process becomes unusable for an inmate. Ross, 136 S. Ct. at 1859. In Williams v. Priatno, the Second Circuit held that when an inmate's grievance is not filed, "the regulations plainly do not describe a mechanism for appealing a grievance." See 829 F.3d at 126. Thus, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." Id. The Williams ruling relied upon a scenario where an inmate is housed in a SHU and personally gives a grievance to a correction officer, as required by grievance procedures. Id. at 120-21. Additionally, adding to the "opaque" nature of the procedures, the plaintiff in Williams followed up when he did not receive a response after a week, but was subsequently transferred one week later without any resolution or knowledge of his grievance being filed. Williams, 829 F.3d at 120-21. Ultimately, the Williams Court held that "in giving his grievance to the correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." Id. at 126.

Here, in his September 19, 2016 deposition, plaintiff sets forth facts suggesting prison staff filtered his mail and "when they [saw] grievances" they were thrown to the side, not delivered, "and were never [ ] seen." See Hummel Aff. Exh. A at 91-92. The grievance that plaintiff allegedly filed on July 19, 2014 was sent to the Clinton grievance office by his mother. Id. at 94. Plaintiff never received a response on the grievance or followed up on the status of the grievance. Id. Without concrete facts, plaintiff states that his grievance was not resolved because "no civilian ... picks up your grievances. It's officers." Id. at 91. Plaintiff's allegations of mail tampering are conclusory and weakened by the fact that other correspondence, including complaints, were sent and received during the general time period material to the issues before the Court. Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) ("Plaintiff makes only a conclusory statement that his mailing was not allowed to leave the facility[,] ... his contention ... is belied by his admission that he was able to send other complaints about the matter to various New York State officials at around the same time."); see Hummel Aff. Exh. A at 89, 94 (providing

an example where plaintiff successfully sent legal mail to his mother).

**\*7** In plaintiff's response in opposition to defendants' motion for summary judgment, he raises general complaints about defendants having total control over facility mail and defendants strategically removing grievances from the mailbox to cover up their excessive use of force against plaintiff and other inmates. See Dkt. No. 34 at 2. Plaintiff's bare assertions do not excuse exhaustion requirements. Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations. Khudan, 2016 WL 4735364, at *6 (citations omitted) (holding that under Ross, mere stand alone contentions of mail tampering without support and particularity cannot deem administrative remedies unavailable); Veloz, 339 F. Supp. 2d at 516 (holding that summary judgment is proper where the plaintiff contends that officers misplaced his grievances, but offers no evidence to support his claim). In Khudan, the court did not consider or rely upon conclusory allegations when plaintiff attested he "was informed by other [unnamed] inmates that grievances routinely go 'missing.' " Khudan, 2016 WL 4735364, at *6. This is similar to plaintiff's conclusory theory of injustice and displeasure with mail procedures, and other "recurrent pattern[s]" in New York correctional facilities. Dkt. No. 34 at 2, 4; see Khudan, 2016 WL 4735364, at *6 ("Plaintiff's accusations, which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment.") (quoting Bolton v. City of N.Y., No. 13-CV-5749(RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015)).

Courts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU. See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485(MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016). This is distinguishable from plaintiff's alleged July 19, 2014 grievance drafted in keeplock.[8] Such a difference in inmate housing supports the notion that, "the Second Circuit's decision hinged on the 'extraordinary circumstances' specific to the case before it." Mena v. City of N.Y., No. 13-CV-2430(RJS), 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (quoting Williams, 829 F.3d at 119); see N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7 (explaining that there are different grievance filing procedures for an inmate housed in the SHU). Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are "essentially

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 40 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

unknowable" or unavailable. Id. at *5 (quoting Ross v. Blake, 136 S. Ct. at 1859).

8      "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3s 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

Plaintiff never followed up on the July 19, 2014 grievance. Hummel Aff. Exh. A at 94-95. However, on July 29, 2014, he filed a grievance in the facility that included medical complaints, but also a reference to the alleged assault on July 14, 2014. See Gregory Decl. Exh. B at 8. The Clinton grievance department received and responded to this grievance. Id. This grievance was not appealed. Id. ¶ 15. Even assuming, as the Court must on this motion, that plaintiff's allegations of mail tampering are true, he did not exhaust his administrative remedies when he failed to appeal the July 29, 2014 grievance to the next level of review. The fact that this grievance was subsequently filed and not appealed within close proximity to the July 19, 2014 grievance, coupled with three unrelated grievances filed within the next year, demonstrates that plaintiff's situation does not rise to the level where the grievance process is "opaque," unavailable, or unascertainable. See Hill v. Tisch, No. 02CV3901(DRH/AYS), 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (finding that the plaintiff failed to demonstrate that the grievance "procedures were essentially unknowable"); Gregory Decl. A at 6.

#### c. Allegation that Plaintiff Suffered Retaliation and Physical Beatings

Plaintiff's pleadings also suggest an inquiry under the third prong of Ross, whether "machination, misrepresentation, or intimidation" occurred. See Ross, 136 S. Ct. at 1860. Specifically, plaintiff alleges that he did not comply with the grievance procedures because he was subjected to physical beatings, retaliation, and intimidation after complaining about conditions at Clinton. See Compl. at 3, 4, 7. For these reasons, he believed the grievance procedures were unavailable. See id. at 2-3.

*8  Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable. Ross, 136 S. Ct. at 1860 & n.3. However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies. Salmon, 2016 WL 4411338, at *5. Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)). In Riles, the Second Circuit affirmed a district court's ruling that prison officials' alleged threats did not interfere with exhaustion efforts when plaintiff stated he was threatened "if he pushed the issue," but then subsequently filed a grievance in spite of the alleged threats. See Riles v. Buchanan, 656 Fed.Appx. 577, 581 (2d Cir. 2016) (summary order).

Relying on Ross, courts have carved out factual limitations to the third prong of unavailability concerning fear of retaliation. See, e.g., Aviles v. Tucker, No. 14-CV-08636(NSR), 2016 WL 4619120, at *3-4 (S.D.N.Y. Sept. 1, 2016) (citing Ross, 136 S. Ct. at 1860). In Aviles, the court noted a longstanding rule that general beliefs of retaliation or fears do not excuse the exhaustion requirement. Aviles, 2016 WL 4619120, at *4 (citations omitted). Circumstances that have met the threshold of unavailability by means of intimidation have included widespread beatings with assertions of fear for one's life, in conjunction with the plaintiff withholding all complaints until he was transferred to a different facility. See, e.g., id. (quoting Thomas v. Cassleberry, No. 03-cv-6394L, 2007 WL 1231485, at *2 (W.D.N.Y. Apr. 24, 2007)). Allegations of threats are conclusory where a plaintiff's allegation "does not indicate who threatened him, when he was threatened, or how he was threatened." See Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). In contrast, this Court has denied a summary judgment motion when a plaintiff alleged he was threatened by a specific correction that the officer would "break [plaintiff's] bones," and another specific correction officer threatened to beat plaintiff "a [sic] inch from life" if he filed a grievance. Galberth v. Durkin, No. 914CV115(BKS/ATB), 2016 WL 3910270, at *3 (N.D.N.Y. July 14, 2016).

Here, plaintiff offers conclusory allegations in his complaint that "[he] was beaten" while attempting to access Clinton's grievance program. Compl. at 2, 3. Plaintiff offers no information of when or how he was threatened or beaten after the July 14, 2014 incident. Some instances of threats alleged by plaintiff refer to a time period before he filed a grievance and he does not state how any specific threat or

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 41 of 141

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

subsequent act of violence impacted his ability to exhaust administrative remedies related to the events that occurred on July 14, 2014. See Aviles, 2016 WL 4619120, at *4 (finding grievance procedures available where plaintiff offers conclusory allegations of fear and does not substantiate what specific fears or past acts preclude him from advancing in grievance procedures); Harrison v. Stallone, No. 9:06-CV-902(LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of retaliation is not sufficient to excuse the exhaustion requirement.... If an inmate could simply state that he feared retaliation, there would no point in having a grievance procedure.") (citations omitted); see, e.g., Hummel Aff. Ex. A at 58. Much of plaintiff's fear is generalized. For instance, he notes that corrections officers become agitated when they see legal mail and "that's when harassment comes." Hummel Aff. Ex. A at 92. By his own admission, plaintiff denies any actual physical force being used against him that prohibited him from taking part in the grievance program. Hummel Aff. Ex. A at 99; see Salmon, 2016 WL 4411338, at *5 (stating there must be affirmative actions or specific instances of physical assault or threats of retaliation for plaintiff to show unavailability of the grievance process).

**\*9** The Court notes that plaintiff directly contradicted allegations in his complaint by statements made in his deposition. While the complaint alleges conclusory instances of being "beaten by staff," plaintiff admits that other than being cut on his face by an inmate in the yard on October 5, 2015, there has not been any other physical force used against him by inmates or correction officers since July 14, 2014. Hummel Aff. Ex. A at 99; Compl. at 3. This statement contradicts plaintiff's allegations of being beaten by staff. See Williams v. Doe, No. 12-CV-1147(HKS), 2016 WL 4804057, at *5 (W.D.N.Y. Sept. 14, 2016) (granting a motion for summary judgment after noting that any triable issue of fact on exhaustion of administrative remedies can be eliminated when plaintiff's prior representations to the court are "flatly contradict[ed]").

Further, this Court finds that plaintiff's failure to follow the grievance procedures cannot be excused by fears or intimidation, when he simultaneously made his complaints known through other means. After the alleged incident, plaintiff was seen by a nurse in a room with "about ten" officers, where he admits "having no choice," but to tell the nurse that they had beaten him. Hummel Aff. Exh. A at 57-58. Plaintiff also aired his complaints and concerns in writing outside of the grievance procedures, clearly identifying his complaints in full substance, including the identification of those who committed acts against him. See, e.g., Hummel Aff. Exh. A at 93; Gregory Decl. Exh. A at 8. Similarly in Johnson v. Fraizer, the Court rejected plaintiff's argument that administrative remedies were unavailable where the plaintiff alleged he was threatened by correction officers but continued to make and send formal complaints to prison officials and other New York State officials. Johnson v. Fraizer, No. 16-CV-6096 (CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). By plaintiff's own admission, it is clear that he sought to file the initial grievance and tell others about his complaints, which disprove any claim of intimidation or fear of retaliation. Quick v. Omittee, No. 14-CV-1503(TJM/CFH), 2016 WL 5219732, at *4 (N.D.N.Y. Aug. 11, 2016), report and recommendation adopted, No. 914CV1503 (TJM/CFH), 2016 WL 5107125 (N.D.N.Y. Sept. 20, 2016) (holding that fear of physical retaliation or assaults does not deem grievance procedures unavailable when plaintiff continuously sought to file complaints with officials). Like in Quick, where the plaintiff filed formal internal grievances and the grievance procedures were deemed available, here the plaintiff alleges drafting two internal grievances outlining the alleged July 14, 2014 incident. See id. at * 4; Hummel Aff. Exh. A at 93; Gregory Decl. Exh. B at 8. Thus, plaintiff has not shown that administrative remedies were unavailable due to intimidation and threats.

In conclusion, the Court finds that defendants have met their burden in showing that there is no genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies. Accordingly, the Court recommends that defendants' motion be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 26) on plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED** that plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties in this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F. 2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F. 2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2791063

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 5191506
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bryant GIBBS, Plaintiff,
v.
Christopher GADWAY, Defendant.

9:19-CV-281 (GTS/DJS)
|
Signed 10/15/2019

**Attorneys and Law Firms**

BRYANT GIBBS, 11-R-0220, Plaintiff, Pro Se, Five Points Correctional Facility, Caller Box 119, Romulus, New York 14541.

HON. LETITIA JAMES, Attorney General of the State of New York, OF COUNSEL: NICHOLAS L. ZAPP, ESQ., Assistant Attorney General, Attorney for Defendant, The Capitol, Albany, New York 12224.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Plaintiff, presently an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights. Dkt. No. 1, Compl. Following initial review of the Complaint under 28 U.S.C. §§ 1915(e) and 1915A, all claims other than an Eighth Amendment excessive force claim against Defendant Gadway were dismissed. Dkt. No. 7. In lieu of answering the Complaint, Defendant has moved for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies. Dkt. No. 14. Plaintiff opposes the Motion. Dkt. No. 17 ("Pl.'s Opp."). Defendant has filed a Reply. Dkt. No. 18. For the reasons which follow, the Court recommends that the Motion for Summary Judgment be granted.

**I. BACKGROUND**

Plaintiff alleges that he was assaulted by Defendant Gadway in June 2016. Compl. at p. 2. That same month Plaintiff filed an administrative grievance making this same allegation. Dkt. No. 14-3, Declaration of Christine Gregory ("Gregory Decl.") at Ex. B. Given that the grievance concerned alleged staff misconduct the grievance was forwarded directly to the facility Superintendent. Gregory Decl. at ¶ 12. On July 16, 2016, the Superintendent responded to the grievance. *Id.* at ¶ 12 & Ex. C. Plaintiff alleges that he then appealed the Superintendent's determination to DOCCS' Central Office Review Committee. Pl.'s Opp. at pp. 4-5. DOCCS has no record of any such appeal. Gregory Decl. at ¶ 15; Dkt. No. 14-4, Declaration of Rachael Seguin ("Seguin Decl."), ¶ 9 & Ex. A.

**II. LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*2** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir.

1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendant seeks summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies by failing to appeal the facility-level denial of his grievance. Dkt. No. 14-1, Def.'s Mem. of Law at pp. 6-7. Plaintiff counters that he attempted to exhaust his administrative remedies and that, even if he did not, he should be excused from the exhaustion requirement. Pl.'s Opp. at pp. 4-5.

#### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of

the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

**\*3** An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

#### B. Plaintiff's Failure to Exhaust Administrative Remedies

*1. Whether Plaintiff Actually Filed a Grievance*

The record before the Court establishes that while DOCCS has a record of Plaintiff's initial grievance, there is no record of any appeal of the decision on that grievance to CORC. Gregory Decl. at ¶ 15; Seguin Decl., ¶ 9 & Ex. A. "Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit." *White v. Drake*, 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011), *report and recommendation adopted*, 2011 WL 4478921 (N.D.N.Y. Sept. 26, 2011); *see also Berkley v. Ware*, 2018 WL 3736791, at *5 (N.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018) (citing cases).

Plaintiff makes a purely conclusory allegation that he appealed the grievance denial to CORC. Pl.'s Opp. at p. 4 ("Plaintiff appealed to the CORC"). [1] Significantly, Plaintiff has not provided a copy of the grievance appeal or even asserted on what date he filed the appeal. *Gough v. Morris*, 2018 WL 7199494, at *3 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019) ("there is no evidence in Plaintiff's opposition, or any other submission, of ... Plaintiff's alleged appeal to CORC."). In light of the documented proof that no such appeal was filed, such a conclusory statement is insufficient to create a material question of fact on this Motion. *Toliver v. Stefinik*, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016); *Richardson v. Eberth*, 2016 WL 1271078, at *4 (W.D.N.Y. Mar. 29, 2016).

[1]    Plaintiff did not submit a sworn statement attesting to the fact that he filed an appeal. Nor did he file a response to Defendant's Statement of Material Facts. Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Marino v. Watts*, 2018 WL 3121612, at *1 (N.D.N.Y. Mar. 7, 2018), *report and recommendation adopted sub nom. Marino v. Schult*, 2018 WL 1578163 (N.D.N.Y. Mar. 30, 2018), *aff'd*, 764 Fed. Appx. 73 (2d Cir. 2019). The Court therefore will deem the facts as set forth in Defendant's Statement of Material Facts admitted, to the extent they are properly supported by the record.

Under these circumstances, the record before the Court establishes that Plaintiff did not fully appeal his grievance regarding the alleged assault by Gadway. He, therefore, did not exhaust his administrative remedies.

### 2. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

*\*4  Plaintiff appears to make two arguments for finding that administrative remedies were unavailable to him: the lack of guidance in DOCCS' grievance procedure and alleged threats made against him. Pl.'s Opp. at p. 5. Neither is sufficient to defeat the pending Motion.

Plaintiff first claims that when he became aware that the appeal he claims to have filed was never received by CORC he looked to DOCCS's grievance procedure "for guidance on what to do ... and found no guidance whatsoever on what the next step would be." Pl.'s Opp. at p. 5. Relying on *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016), he contends he should be excused from the exhaustion requirement. *See* Pl.'s Opp. at p. 3.

At the outset, this case presents a readily distinguishable fact pattern from that which the Second Circuit was confronted with in *Williams*. In that case, the District Court had dismissed the complaint based on lack of exhaustion because Plaintiff had not administratively appealed his grievance, even though the grievance had never been officially filed by DOCCS personnel at the correctional facility. *Williams v. Priatno*, 829 F.3d at 121. The Second Circuit reversed, finding that DOCCS' grievance procedures "do not describe a mechanism

for appealing a grievance that was never filed." *Id.* at 126. On the contrary here, there is no dispute that Plaintiff filed a grievance at the facility and that he received a response. Gregory Decl., Exs. B & C. It is also clear that DOCCS regulations specifically address what should have been done in a situation such as this when an appeal has allegedly been filed, but not responded to. Specifically, the applicable regulation provides that "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R. § 701.5(d)(3)(i). This provision provided specific guidance to Plaintiff on how to proceed - when he did not receive notice that his appeal had been received by CORC he should have contacted the facility inmate grievance staff to verify that his appeal had been received and processed. There is no evidence that Plaintiff did so here and his failure cannot provide the basis for excusing him from the exhaustion requirement. This is not a situation, as in *Williams*, where the procedure was "so opaque and confusing" that the Plaintiff could have not understood how to proceed. *Williams v. Priano*, 829 F.3d at 126.

Finding Plaintiff's claims unexhausted is consistent with the decision in *Gizewski v. New York State Dep't of Corr. and Cmty. Supervision* which found that an inmate's claim is not exhausted if he fails to avail himself of the procedure in section 701.5(d)(3)(i). 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016). In *Gizewski*, the record established that the plaintiff had filed an administrative appeal, but DOCCS personnel had failed to timely forward it to CORC. *Id.* at *3. Plaintiff then filed his federal lawsuit before receiving a decision on the appeal from CORC. *Id.* at *13. The Court acknowledged DOCCS' failure to properly process the appeal, but nonetheless granted judgment to defendants in part because "Plaintiff [wa]s also at fault for not taking any further action" pursuant to section 701.5. *Id.* Plaintiff here has a less compelling case than in *Gizewski* since there is no admissible evidence that he ever, in fact, filed an appeal to CORC.

**\*5** Plaintiff also claims that he was threatened and retaliated against by Defendant. Pl.'s Opp. at p. 5. Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. Plaintiff's allegations are entirely conclusory, however. Plaintiff's Complaint claimed he was threatened only *after* filing the grievance, Compl. at p. 1, and he makes no claim that this alleged threat impacted his ability to appeal

the grievance. *McGinnis v. Crissell*, 2019 WL 4395410, at *6 (N.D.N.Y. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 3228867 (N.D.N.Y. July 18, 2019) (citing cases). There is no specific allegation made by Plaintiff at all that any retaliatory action was ever taken against him as a result of filing the grievance. Such "general and conclusory statements that he was threatened are insufficient to raise a triable issue of fact as to the unavailability of the grievance procedure because of intimidation by prison administrators." *Lewis v. Wasielewski*, 2018 WL 4732755, at *6 (W.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 4692476 (W.D.N.Y. Oct. 1, 2018) (citing cases). Plaintiff's conclusory claims, therefore, are no basis for denying summary judgment.

To the extent Plaintiff attempts to argue that his grievance appeal may have been tampered with, Pl.'s Opp. at p. 5 ("Once [inmate mail] is picked up plaintiff no longer has any control over what happens to that piece of mail."), his conclusory allegation in this regard is not sufficient to defeat summary judgment. "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *see also Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."); *Artis v. Dishaw*, 2016 WL 11266599, n.13 (N.D.N.Y. Sept. 12, 2016) (finding that plaintiff's failure to exhaust was not excusable, in part because, while the plaintiff "state[d] that some grievances were destroyed, but he has not submitted any copies of these grievances, nor does he specify when he attempted to file them.").

Accordingly, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 14) be **GRANTED**; and it is further

2019 WL 5191506

**RECOMMENDED**, that the Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2019 WL 5191506

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4806457
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ronnie THAXTON, Plaintiff,

v.

A. SIMMONS, Corrections Officer, Upstate
Correctional Facility, Bush, Corrections Officer,
Upstate Correctional Facility, K. Garneau, Nurse,
Upstate Correctional Facility, John Doe, Corrections
Officer, Upstate Correctional Facility, Defendants.

No. 9:10–CV–1318 (MAD/RFT).
|
Sept. 9, 2013.

**Attorneys and Law Firms**

Ronnie Thaxton, Ossining, NY, pro se.

Office of the New York State Attorney General, Christopher
W. Hall, AAG, of Counsel, Albany, NY, for Defendants.

Hon. Eric T. Schneiderman, Attorney General of the State
of New York, Christopher W. Hall, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

*1  *Pro se* plaintiff, Ronnie Thaxton, brought this civil
rights action pursuant to 42 U.S.C. § 1983 alleging (1)
Defendant Simmons retaliated against Plaintiff because of
past grievances he filed, (2) Defendants Bush and Doe
deprived Plaintiff of nutritional meals, and (3) Defendant
Garneau violated Plaintiff's First and Eighth Amendment
rights by his deliberate indifference to Plaintiff's serious
medical needs. *See* Dkt. No. 60 at 1. Defendants have moved
for summary judgment on the grounds that (1) Plaintiff failed
to exhaust the available administrative remedies regarding his
claims against Defendants Bush and Garneau, (2) Defendants
Bush and Simmons were not personally involved in the
claimed constitutional violations, and (3) Plaintiff did not
suffer a serious injury to support his medical deliberate

indifference claim against Defendant Garneau. *See* Dkt. No.
50–5. In a May 23, 2013 Report–Recommendation and Order,
Magistrate Judge Treece recommended that Defendants'
motion for summary judgement be granted.

Currently before the Court are Plaintiff's objections to
Magistrate Judge Treece's Report–Recommendation and
Order.

**II. BACKGROUND**

Plaintiff's claims arose from events between January 12,
2009, and April 28, 2009, while he was in the custody
of the New York State Department of Corrections and
Community Supervision ("DOCCS") as an inmate in the
Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No.
50–1 at ¶ 1.

On January 12, 2009, Plaintiff filed a grievance, which
the parties have agreed implicated Defendant Simmons,
complaining about receiving his meals later than other
prisoners. *See id.* at ¶¶ 2–3. On April 6, Defendant Simmons
delivered Plaintiff's evening meal which contained several
strands of hair. *See id.* Plaintiff complained to Defendant
Simmons about the hair and he promptly gave Plaintiff
another tray of food. *See* Dkt. No. 50–3 at 25. [1] Plaintiff
did not see anyone place the hair in his meal, did not see
Defendant Simmons remove the plastic wrap from the meal,
and Defendant Simmons stated that he had not "played"
with Plaintiff's food. *See id.* at 26, 28. Plaintiff contends that
Defendant Simmons placed the hair in the food as a means of
retaliating against him for the January 12 grievance. *See id.*
at 31.

[1]  To avoid confusion, any time the Court references a
specific page number for a document on the docket,
the Court will cite to the page number assigned by
the Court's electronic filing system.

On April 28, 2009, Defendants Bush and Doe served Plaintiff
his evening meal containing a piece of metal in his sardines.
*See* Dkt. No. 50–1 at ¶¶ 16–17, 25. Defendant Doe did not
touch the food and only delivered Plaintiff his Kool–Aid and
hot water. *See* Dkt. No. 50–3 at 39. Plaintiff did not see
Defendant Bush tamper with the food and discovered the
piece of metal when he bit into his sardine sandwich. *See id.*
at 38. Plaintiff "noticed drops of blood in the food" after the

2013 WL 4806457

piece of metal cut his mouth, at which point he called for medical attention. *See id.* at 45.

Defendant Nurse Garneau and Sergeant Lombard came to Plaintiff's cell within twenty minutes of his request for medical attention. *See id.* at 34. Defendant Garneau did not inspect Plaintiff's mouth, but stated that there was not much damage and that Plaintiff should not "be a cry baby." *See id.* at 34. Plaintiff's bleeding completely stopped within an hour and was not "actually a cut anymore" within three or four days. *See id.* at 50. Plaintiff experienced slight difficulty eating and sleeping directly after the incident, but was able to get the "right amount" of food and sleep. *See id.* at 54, 56. Plaintiff requested sick call at the Attica Correctional Facility ("Attica C.F.") about a week after the incident. *See id.* at 54. There, he saw another nurse and a dentist and neither reported any lasting injuries or effects from the incident. *See id.*

**\*2** In a May 23, 2013 Report–Recommendation and Order, Magistrate Judge Treece recommended that the Court grant Defendants' motion for summary judgment and close this case. *See* Dkt. No. 60. In his objections to the Report–Recommendation and Order, Plaintiff generally just reiterates arguments he made in opposing the motion for summary judgment. *See* Dkt. No. 61. Specifically, Plaintiff presents the following arguments: (1) the metal placed in his sardine sandwich deprived him of the "minimal civilized measures of life's necessities which was nutritionally adequate food that is 'prepared' and 'served' under conditions which do not present imminent danger to health and well being of inmates who consume it;" (2) Defendant Garneau violated his Eighth Amendment rights when she refused to examine or treat his injuries; and (3) that the injury to his mouth lasted approximately thirty days and he was prescribed Tylenol for the injury, which shows that it was more than a *de minimis* injury. *See* Dkt. No. 61 at 2–4.

## III. DISCUSSION

### A. Standard of review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations

for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36– 37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers,* 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**\*3** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (qquoting *Traguth v. Zuck,* 710 F.2d 90,

95 (2d Cir.1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Cary v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

**B. Exhaustion**

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5(b). Second, if the IGRC decision is appealed, the superintendent of the facility issues a decision after reviewing the IGRC's determination. *See id.* at § 701.5(c). Third, if the superintendent's decision is appealed, the final administrative decision is made by the Central Office Review Committee ("CORC"). *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. Bartlett,* 686 F.Supp.2d 238, 239 (W.D.N.Y.2010) (citing *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed the district courts to consider:

> "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff

> from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

**\*4** *Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y.2007) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).

In the current case, Defendants claim that Plaintiff failed to exhaust all available administrative remedies in his claims against Defendants Bush and Garneau for meal tampering and deliberate indifference because he did not file a timely grievance with the IGRC. *See* Dkt. No. 50–5 at 10. Plaintiff contends that he filed a timely grievance and that special circumstances prevented him from complying with the administrative procedural requirements. *See* Dkt. No. 54 at 11–13.

Plaintiff claims that on April 29, 2009, he filed a grievance for both incidents and sent the superintendent a letter describing the events. Plaintiff has provided a copy of both the grievance and the letter to support his claim. *See* Dkt. No. 55 at 4–5, 8–9. On June 1, 2009, Plaintiff followed up his grievance by requesting an update on its status and received notice on June 8 stating "there is no grievance on file" concerning his complaints allegedly filed on April 29, and that "[Plaintiff's] complaint is being returned to [him] to file at [his] present facility." *See id.* at 7. On June 16, 2009, Plaintiff filed another grievance with the IGRC at Lakeview Correctional Facility about the April 28 incidents which was denied because of untimely service. *See id.* at 8, 10. Plaintiff then appealed this decision to the superintendent, who affirmed the IGRC decision. *See id.* at 10. On June 22, Plaintiff made a final appeal to the CORC who affirmed the superintendent's decision. *See id.* at 13.

While an untimely grievance does not properly exhaust available administrative remedies under the PLRA, a question of fact exists as to whether Plaintiff never filed his initial grievance on April 29, as Defendants claim, or that, as Plaintiff claims, he filed a timely grievance that was lost or tampered with by Defendants. Such credibility assessments are to be resolved by a trier of fact. Accordingly, the Court finds that a material issue of fact exists as to whether Plaintiff's failure to exhaust administrative remedies should be excused

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 51 of 141
Thaxton v. Simmons, Not Reported in F.Supp.2d (2013)
2013 WL 4806457

due to special circumstances. Therefore, Defendants' motion for summary judgment is **DENIED** on exhaustion grounds.

## C. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Further, in regards to § 1983, "the doctrine of *respondeat superior* cannot be applied ... to satisfy the prerequisite of personal involvement." *Kinch v. Artuz,* No. 97 CIV. 2419, 1997 WL 576038, *2 (S.D.N.Y. Sept.15, 1997). Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556, U.S. 662, 676 (2009).

### 1. Defendant Simmons

 **\*5**  Plaintiff contends that, on April 6, Defendant Simmons delivered his tray of food covered with hair in retaliation for a grievance Plaintiff had previously filed. Plaintiff did not see Defendant Simmons place hair on the food or see him remove the plastic wrap from the food. *See* Dkt. No. 50–3 at 26. According to Plaintiff, Defendant Simmons stated that he did not play with Plaintiff's food, and if he did, "[Plaintiff] would know it." *See id.* Plaintiff further testified that "the only reason why I held [Simmons] responsible is because he's the one that's giving me the tray." *See id.* at 28.

Based upon the evidence presented, no rational juror could conclude that Defendant Simmons was personally involved in tampering with Plaintiff's food on April 6 merely because he served the food that day. Therefore, Defendants' motion for summary judgment on this matter is **GRANTED,** and Plaintiff's claim against Defendant Simmons is **DISMISSED.**

### 2. Defendant Bush

Similar to the claims against Defendant Simmons, Plaintiff claims Defendant Bush contaminated his food by placing a piece of metal in the meal served on April 28. *See id.* at 38. Plaintiff testified that Defendant Bush delivered his meal on this date, but Plaintiff did not see Defendant Bush tamper with the food. *See id* . Plaintiff assumed Defendant Bush was responsible for the metal because of "the relationship of ... the officers and when I told him that I had the metal in there, the smirk, the look that he had, that's what made me think he purposely put it in there, because he was smirking like it was a joke or something." *See id.*

Based upon the evidence presented, no rational juror could conclude that Defendant Bush was personally involved in contaminating Plaintiff's food simply because he delivered the meal and then "smirked" after Plaintiff complained of the metal. Therefore, Defendants' motion for summary judgment on this claim is **GRANTED,** and Plaintiff's claim against Defendant Bush is **DISMISSED.**

## D. Deliberate Indifference

In order for a plaintiff to effectively state an Eighth Amendment claim for denial of adequate medical care, he must demonstrate that the prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This does not mean that every prisoner that has not received adequate medical attention has an Eighth Amendment claim, but rather the alleged conduct must be "repugnant to the conscience of mankind" and constitute "an unnecessary and wanton infliction of pain." *Id.* at 105–06.

The deliberate indifference standard for denial of medical care requires demonstration of (1) a sufficiently serious depravation, and (2) deliberate indifference with a "sufficiently culpable state of mind." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citation omitted). The first element is an objective standard to assess the seriousness of a prisoner's medical condition. *See Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003) (citation omitted). This standard includes consideration of "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)) (other citation omitted). The Second Circuit has recognized that dental injuries may require unique attention due to the likelihood of continuing pain and discomfort, however, "not all claims regarding improper dental care will be constitutionally cognizable." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998). While the decision of whether or not to treat a prisoner's injury may rely on an assessment of its seriousness at the moment it occurs, "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter,* 316 F.3d 178, 187 (2d Cir.2003).

**\*6** The second element of the deliberate indifference standard is a subjective test requiring the plaintiff to show that the defendant acted with the requisite culpable state of mind. This state of mind is similar to criminal recklessness and requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In this case, it is uncontroverted that Defendant Garneau responded to Plaintiff's cell after he cut his mouth biting into a piece of metal on April 28, 2009. It is also uncontroverted that Defendant Garneau did not inspect Plaintiff's mouth and told him not to "be a cry baby." *See* Dkt. No. 50–3 at 34. Plaintiff testified that he experienced "pain in [his] teeth" and that, while he "was not leaking blood, [he] was cut, you know in the mouth." *See id.* at 49. The bleeding in Plaintiff's mouth completely stopped within one hour and the cut healed without medical attention within three or four days. *See id.* at 50. Plaintiff experienced some mild difficulty eating and sleeping directly after the incident but was still able to get the "right amount" of food and sleep. *See id.* at 54, 56. About a week after the incident, when Plaintiff requested sick call, his injury was "no longer a cut" and a subsequent examination by a dentist revealed no dental injuries. *See id.* at 54.

While Plaintiff claims that his injury was sufficiently serious to require medical care, "[t]he mere fact that plaintiff disagrees with defendants about the nature of his condition does not give rise to a genuine issue of material fact." *Tindal v. Goord,* 530 F.Supp.2d 465, 467 (W.D.N.Y.2008) (citing *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998)). Based on the evidence presented, no reasonable juror could conclude that Plaintiff's injury, which stopped bleeding within an hour and completely healed on its own accord within three or four days, was objectively a sufficiently serious injury. Since the Court finds that Plaintiff did not suffer a sufficiently serious medical injury, the Court need not determine if Defendant Garneau's actions of ignoring medical complaints and calling Plaintiff a "cry baby" rise to the requisite culpable state of mind of deliberate indifference. Therefore, Defendants' motion for summary judgment on this claim is **GRANTED** and the claims against Defendant Garneau are **DISMISSED.**

**E. Defendant Doe**

In Plaintiff's October 31, 2010 complaint, he named a John Doe Defendant. While the Court has reminded Plaintiff several times that he must ascertain the true identity of, and serve the Doe Defendant, Plaintiff has failed to do so. Rule 4 of the Federal Rules of Civil Procedure states that the plaintiff is responsible for service of the summons and complaint on each defendant within 120 days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m). The Northern District of New York requires that the plaintiff must effectuate service within sixty days. The Court may, upon motion or its own initiative, dismiss a case without prejudice as to any defendant that has not been properly served. *See id.* at 4(m). Since Plaintiff has failed to timely identify and serve the John Doe Defendant and no valid cause of action has been asserted, all claims against Defendant John Doe are **DISMISSED.**

## IV. CONCLUSION

**\*7** After carefully considering Magistrate Judge Treece's Report–Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Treece's May 23, 2013 Report–Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Defendant John Doe is **DISMISSED** due to Plaintiff's failure to timely identify and serve him; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Ronnie Thaxton brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that (1) Defendant Simmons retaliated against him for grievances

2013 WL 4806457

Plaintiff filed against him, (2) Defendants Bush and Doe deprived him of nutritional meals, and (3) Defendant Garneau was deliberately indifferent to his serious medical needs, in violation of his First and Eighth Amendment rights. *See* Dkt. No. 1, Compl. [1] Defendants have moved for Summary Judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendants Bush and Garneau, (2) Defendants Simmons and Bush were not personally involved in any constitutional violations, and (3) Plaintiff did not suffer a sufficiently serious injury to support his medical deliberate indifference claim against Defendant Garneau. *See generally* Dkt. No. 50–5, Defs.' Mem. of Law. We recommend that Defendants' Motion be **GRANTED**.

[1]     Plaintiff's Complaint contained additional claims and Defendants. However, the claims and Defendants outlined above are all that remain after the Court's initial review of the Complaint and Defendants' Motion to Dismiss. *See* Dkt. Nos. 6, Mem.-Dec. and Order, dated Mar. 29, 2011, & 31, Rep.-Rec. and Order, dated Jan. 5, 2012.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994)* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir.1992).*

**\*8** To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin, 344 F.3d 282, 287 (2d*

Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525–26 (2d Cir.1994).* To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin, 344 F.3d at 289* (citing *Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983)* and *Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995)*).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir.1998).* "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.1994).* Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994), accord, Soto v. Walker, 44 F.3d 169, 173 (2d Cir.1995).* Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991).*

## II. DISCUSSION

### A. Summary of Facts

The following facts are uncontroverted.

Plaintiff's claims arise out of events which occurred while he was an inmate at Upstate Correctional Facility ("UCF"), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 50–1, Defs.' Statement of Material Facts Pursuant to Local Rule 7.1(A)(3) (hereinafter "Defs.' 7.1 Statement"), at ¶ 1; *see generally* Compl.

2013 WL 4806457

On January 12, 2009, Plaintiff filed a grievance, complaining that he was getting his meals later than other prisoners; although not mentioned by name, it is agreed by the parties that this grievance implicated Defendant Simmons. Defs.' 7.1 Statement at ¶¶ 2 & 3. On April 6, Plaintiff found several strands of hair in the evening meal that Defendant Simmons had delivered to him. He talked to Defendant Simmons about the hair and Defendant Simmons stated that he had not "played" with Plaintiff's food, and if he had that Plaintiff "would know it." *Id.* at ¶¶ 7–10. Plaintiff did not see Defendant Simmons tamper with his meal. *Id.* at ¶ 13. After Plaintiff complained, Defendant Simmons gave him another food tray. *Id.* at ¶ 15.

**\*9** On April 28, 2009, Defendants Bush and Doe served Plaintiff his dinner meal. *Id.* at ¶¶ 16 & 25. Plaintiff later found a piece of metal in his food when he bit into his sardine sandwich. *Id.* at ¶ 17. Plaintiff "noticed drops of blood in the food," and requested medical attention. *Id.* at ¶¶ 17 & 31. Defendant Bush then left to get a sergeant and a nurse. *Id.* at ¶ 23. Plaintiff did not see Defendant Bush nor Defendant Doe tamper with his meal. *Id.* at ¶¶ 20 & 25.

Thereafter, Defendant Nurse Garneau and Sergeant Lombard [2] appeared at Plaintiff's cell. *Id.* at ¶ 27. Plaintiff requested that Defendant Garneau examine his mouth, to which Defendant Garneau stated that "she did not see much damage," that Plaintiff should not "be a cry baby," and then "walked off" without examining Plaintiff's mouth. *Id.* at ¶¶ 29–30.

[2]     Sergeant Lombard was dismissed as a Defendant in this action. Dkt. No. 32.

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citations omitted). Exhaustion

is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner,* 531 U.S. 731, 741 n. 6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord,* 255 F.3d 40, 43 (2d Cir.2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct.11, 2002) (citing *Booth v. Churner,* 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. [3] N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. .Bartlett,* 686 F.Supp.2d 238, 239 (W.D.N.Y.2010) (citing, *inter alia, Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)); *see also Neal v. Goord,* 267 F.3d 116, 121 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12.

[3]     The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP.CODES R. & REGS tit.7, § 701.4.

**\*10** In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

*Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y.2007) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).

Here, Defendants argue that Plaintiff's claims against Defendant Bush, for meal tampering, and Defendant Garneau, for deliberate indifference, were not properly exhausted because Plaintiff failed to timely file a grievance regarding the events of April 28, 2009. Defs.' Mem. of Law at pp. 8–11. Plaintiff alleges that certain special circumstances justify his failure in this regard. Dkt. No. 54, Pl.'s Mem. of Law, at pp. 5–7. Because we find that a material issue of fact exists as to whether Plaintiff's failure to exhaust should be excused, we recommend that Defendants' Motion for Summary Judgment be **DENIED** on exhaustion grounds.

Plaintiff's claims against Defendants Bush and Garneau arise out of Plaintiff's allegations that on April 28, 2009, Defendant Bush put metal in his food in which he bit into causing him to injure his mouth, and that thereafter, Defendant Garneau refused to treat his injury. *See* Compl. at ¶ 6, pp. 3–4. Plaintiff claims that on April 29, 2009, he grieved both of these issues and sent the superintendent a letter describing these events. Pl.'s Mem. of Law at p. 5. In support of this claim Plaintiff has produced a copy of both the grievance and the letter. *See* Dkt. No. 55, Pl.'s Exs., at (unnumbered) pp. 4–5, Lt., dated Apr. 28, 2009, & Grievance, dated Apr. 28, 2009. Defendants maintain that no such grievance was ever filed. Defs.' Mem. of Law at pp. 9–10; Dkt. No. 50–4, Grievance R.

On or about May 3, Plaintiff was transferred to Attica Correctional Facility ("ACF"). Dkt. No. 50–3, Ronnie Thaxton Dep., dated Aug. 3, 2012, at p. 50. On June 1, 2009, Plaintiff wrote to UCF's Superintendent inquiring about the status of his April 28, 2009, grievance. *Id.* at (unnumbered) p. 3, Lt., dated June 1, 2009. On June 8, 2009, while Plaintiff was incarcerated at Lakeview Correctional Facility ("LCF"), Plaintiff received a response to his June 1 letter, informing him that "there is no grievance on file ... with a written date of 4/28/09 concerning metal being put in your food .... [and that i]n accordance with [DOCCS] Directive # 4040 .... your complaint is being returned to you to file at your present facility." *Id.* at (unnumbered) p. 7, Mem., dated June 8, 2009. On June 15, 2009, Plaintiff filed a grievance at LCF about the incidents which occurred on April 28, 2009, and further complained that his grievance was tampered with in retaliation for previous grievances he filed. That grievance was rejected as untimely. It is uncontroverted that Plaintiff appealed the determination that his June 15, 2009 grievance

was untimely through each and every level of administrative appeal that was available to him. *Id.* at (unnumbered) pp. 8–13; Dkt. No. 50–4, Grievance R.; Defs.' Mem. of Law at pp. 8–11; Pl.'s Mem. of Law at pp. 5–7.

**\*11** Although it is true that filing an untimely grievance does not properly exhaust an issue for purposes of the PLRA, *see Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), a question of fact exists as to whether or not Plaintiff actually filed a timely grievance on April 29, 2009, and whether it was lost or tampered with by Defendants. If Defendants lost or tampered with Plaintiff's April 29 grievance, then this Court would be inclined to recommend that Defendants' actions bar them from asserting the affirmative defense of exhaustion. *See Singh v. Goord,* 520 F.Supp.2d at 495–96. However, given that both sides have produced documentary evidence, in order to reach such a determination we would have to make credibility assessments that would be improper at the summary judgment stage. *See Scott v. Coughlin,* 344 F.3d at 287–89. Because such a determination can only be made by a trier of fact, we recommend that Defendants' Motion for Summary Judgment be **DENIED** on this ground.

## C. Personal Involvement

Plaintiff claims that Defendant Simmons put hair in his food on April 6, 2009, in retaliation for a grievance that he filed against Defendant Simmons on January 12, 2009, and that Defendant Bush deprived him of adequate nutrition by giving him a tray of food contaminated with a piece of metal on April 28, 2009. Compl. at ¶ 7, Third and Fourth Causes of Action. Defendants argue that Plaintiff cannot prove that Defendant Simmons or Defendant Bush were personally involved in either incident. Defs.' Mem. of Law at pp. 5–7.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz,* 1997 WL 576038, at *2 (S.D.N.Y. Sept.15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."

*Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### i. Defendant Simmons

Plaintiff claims that on April 6, Defendant Simmons delivered him a tray of food that was covered in hair. Compl. at ¶ 6, p. 1. According to Plaintiff's Deposition testimony, the meals at UCF are served in styrofoam containers that are assembled in the kitchen, completely wrapped in cellophane, and then brought to the inmates in their cells on a cart. The cellophane is then removed from the styrofoam and the meal is given to the inmate through the feed up slot in the cell door. Thaxton Dep. at pp. 25–26. It is uncontroverted that on April 6, the cellophane wrapper was removed from Plaintiff's meal before it was given to him, however, it is also uncontroverted that Plaintiff did not see Defendant Simmons either remove the cellophane wrapper nor tamper with his food. *Id .* at p. 26–27. Plaintiff alleges that he confronted Defendant Simmons, asking him why "it seems like he always had an attitude and a problem when dealing with [his] food," and Defendant Simmons stated "I don't play with your food. I wouldn't play with your food. If I did, you would know it." *Id.* at p. 19. Plaintiff testified that "the only reason why I held him responsible is because he's the one that's giving me the tray." *Id.* at p. 27.

 **\*12**  Based upon the evidence presented, no rational juror could conclude that Defendant Simmons tampered with Plaintiff's food on April 6, 2009, merely because he happened to deliver it that day and made a statement denying he had done so. Therefore, we recommend that Defendant Simmons be **DISMISSED.**

### ii. Defendant Bush

Likewise, based on the record, no reasonable juror could conclude that Defendant Bush contaminated Plaintiff's food with a piece of metal on April 28, 2009. Just as above, it is uncontroverted that Plaintiff did not see Defendant Bush tamper with his food. Thaxton Dep. at pp. 36–37. Moreover, when asked how he knows that Defendant Bush was responsible for placing the piece of metal in his food, Plaintiff admitted that he assumed Defendant Bush was responsible "because of his reaction with the smirk on his face." *Id.* at p. 37. And stated further that "I believe it because the relationship of, you know, the officers and when I told

him that I had the metal in there, the smirk, the look that he had, that's what made me think he purposely put it in there, because he was smirking like it was a joke or something." *Id.*

Because no rational juror could conclude that Defendant Bush was personally involved in contaminating Plaintiff's food merely because Defendant Bush delivered Plaintiff's meal and then smirked at Plaintiff, we recommend that Defendant Bush be **DISMISSED.**

### D. Eighth Amendment

Plaintiff claims that Defendant Garneau was deliberately indifferent to his serious medical needs in contravention of the Eighth Amendment when she failed to examine or treat him for injuries he claims he sustained after biting into a piece of metal concealed in his anchovy sandwich. Compl. at ¶ 7, Second Cause of Action. Defendants argue that Plaintiff cannot establish such a claim because he did not suffer from a sufficiently serious medical condition. Defs.' Mem. of Law at pp. 11–13. We agree.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain ." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 57 of 141
Thaxton v. Simmons, Not Reported in F.Supp.2d (2013)
2013 WL 4806457

an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

**\*13** It is uncontroverted that Defendant Garneau responded to Plaintiff's cell on April 28, 2009, in response to his claims that he had injured his mouth by biting down on a piece of metal concealed in his food. It is also uncontroverted that she neither examined the inside of Plaintiff's mouth nor provided him with any treatment. With regards to the extent of his injury Plaintiff maintains that while "I was not leaking blood, I was cut, you know in the mouth. It was a little bit on the side of my jaw and it was more to my teeth. The pain in [his] teeth was more actually than the blood was." And that, within an hour the bleeding stopped. Thaxton Dep. at p. 49. Thereafter, Plaintiff experienced some continuing pain, an inability to eat on the right side of his mouth, paranoia, and some sleeplessness. *Id.* at pp. 52–55. Three or four days after the incident, Plaintiff was transferred to Attica Correctional Facility ("ACF"). *Id.* at p. 50. Plaintiff did not request sick call between April 28 and the day that he was transferred to ACF. By the time he requested sick call at ACF, about a week after April 28, his injury was "no longer a cut," and he was given Tylenol. *Id.* at pp. 49–51 & 53.

Although we certainly do not countenance ignoring the medical complaints of inmates as merely the petulant whining of a "cry baby," it is clear that the Constitution is not invoked every time a prison nurse chooses not to immediately treat a broken lip or cut tongue. While Plaintiff's injury may have been painful, no rational juror could conclude that an injury which healed on its own in a matter of days was objectively sufficiently serious to sustain an Eighth Amendment deliberate indifference claim. Therefore, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** as to this claim.

### E. Defendant Doe

In his Complaint, filed on October 31, 2010, Plaintiff named a John Doe Defendant. *See generally* Compl. However, to date, and despite multiple reminders by this Court, [4] Plaintiff has failed to identify the Doe Defendant. Under FED. R. CIV. P. 4(c)(1) and 4(m), the plaintiff is responsible for service of the summons and complaint for each defendant within 120 days of the filing of the complaint. [5] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.* at 4(m). Because Plaintiff has failed to timely identify and serve the John Doe Defendant, and because as outlined above, no cognizeable cause of action is asserted herein, we recommend dismissal of all claims asserted against him. *Cooks v. Delpiano,* 2008 WL 4186337, at *1 n. 1 (N.D.N.Y. Sept.10, 2008); *Pravada v. City of Albany,* 178 F.R.D. 25, 26 (N.D.N.Y.1998).

[4]  This Court has specifically directed, or reminded, Plaintiff of his obligation to ascertain the true identity of, and serve the Doe Defendant on at least four separate occasions. *See* Dkt. Nos. 6, Order, dated Mar. 29, 2011, at pp. 9–10, 31, Rep.-Rec., dated Jan. 5, 2012, at p. 7 n. 6, & 32, Order, dated Feb. 2, 2012, at p. 5; *See also* Text Order, dated June 14, 2012.

[5]  Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b)

### III. CONCLUSION

For the reasons stated herein, it is hereby

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 58 of 141
Thaxton v. Simmons, Not Reported in F.Supp.2d (2013)

2013 WL 4806457

**RECOMMENDED,** that Defendants' Motion for Summary Judgment (Dkt. No. 50), be **GRANTED in its entirety;** and it is further

 **\*14 RECOMMENDED,** that the Doe Defendant be dismissed due to Plaintiff's failure to timely identify and serve him; and it is further

**RECOMMENDED,** that, in light of the above recommendations, this matter be closed; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4806457

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 59 of 141

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by   White v. Westchester County,   S.D.N.Y.,   December 21, 2018

2018 WL 4682784

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Joseph TERRY, Plaintiff,

v.

CO James HULSE Jr.; CO Matthew Burns; CO
Chad Esterbrook; CO Bruce Tucker; CO Alan
Hanson; Sergeant William Cole, Defendants.

16-CV-252 (KMK)
|
Signed 09/28/2018

**Attorneys and Law Firms**

Joseph Terry, Elmira, NY, Pro Se Plaintiff.

Bradley Gordon Wilson, Esq., New York State Office of the
Attorney General, New York, NY, Counsel for Defendant.

OPINION & ORDER

KENNETH M. KARAS, United States District Judge

*1 Plaintiff Joseph Terry ("Plaintiff"), currently an inmate
at Elmira Correctional Facility Facility ("Elmira"), brings this
pro se action under 42 U.S.C. § 1983 against Defendants
Correction Officer ("CO") James Hulse Jr. ("Hulse"),
CO Matthews Burns ("Burns"), CO Chad Estabrook
("Estabrook"), CO Bruce Tucker ("Tucker"), CO Alan
Hanson ("Hanson"), and Sergeant William Cole ("Cole,"
and collectively with Hulse, Burns, Estabrook, Tucker, and

Hanson, "Defendants"). (See Compl. (Dkt. No. 2).) [1] Plaintiff
alleges that Defendants violated his constitutional rights by
assaulting him and then retaliating against him after he
reported the assault. (Id. ¶¶ 30–47.) Before the Court is
Defendants' Motion for Summary Judgment (the "Motion").
(Notice of Motion (Dkt. No. 66).) For the reasons that follow,
Defendants' Motion is granted in part and denied in part.

[1]  Plaintiff's Complaint also named New York
State Department of Corrections and Community
Supervision ("DOCCS") as a Defendant. In

response to an Order to Show Cause as to why
the claims against DOCCS should not be dismissed
under the Eleventh Amendment, (Dkt. No. 8),
Plaintiff consented to the dismissal of DOCCS as a
Defendant, (Dkt. No. 11).

I. Background

A. Factual Background

The following facts are taken from Defendants' statement
pursuant to Local Civil Rule 56.1, (Defs.' Rule 56.1 Statement
("Defs.' 56.1") (Dkt. No. 68) ), the exhibits submitted by
Defendants, (Decl. of Matthew Burns in Supp. of Mot. for
Summ. J. ("Burns Decl.") (Dkt. No. 69); Decl. of William
Cole in Supp. of Mot. for Summ. J. ("Cole Decl.") (Dkt. No.
70); Decl. of Chad Estabrook in Supp. of Mot. for Summ. J.
("Estabrook Decl.") (Dkt. No. 71); Decl. of Alan Hanson in
Supp. of Mot. for Summ. J. ("Hanson Decl.") (Dkt. No. 72);
Decl. of Bruce Tucker in Supp. of Mot. for Summ. J. ("Tucker
Decl.") (Dkt. No. 73); Decl. of Cory Proscia in Supp. of
Mot. for Summ. J. ("Proscia Decl.") (Dkt. No. 74); Decl.
of Rachel Seguin in Supp. of Mot. for Summ. J. ("Seguin
Decl.") (Dkt. No. 75); Decl. of Bradley G. Wilson, Esq. in
Supp. of Mot. for Summ. J. ("Wilson Decl.") (Dkt. No. 76),
as well as Plaintiff's Complaint, (Compl.), his Opposition and
accompanying exhibits, (Pl.'s Opp'n to Defs.' Mot. for Summ
J. ("Pl.'s Opp'n") (Dkt. No. 96) ), and Plaintiff's deposition
transcript, (Letter from Barbara K. Hathaway, Esq. to Court,
Ex. A ("Pl.'s Dep.") (Dkt. No. 100) ), and are recounted in
the light most favorable to Plaintiff, the non-movant. See
Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir.
2018). [2]  The facts as described below are not in dispute,
except where indicated.

[2]     Local Civil Rule 56.1(a) requires the moving
party to submit a "short and concise statement,
in numbered paragraphs, of the material facts
as to which the moving party contends there is
no genuine issue to be tried." The nonmoving
party, in turn, must submit "a correspondingly
numbered paragraph responding to each numbered
paragraph in the statement of the moving party,
and if necessary, additional paragraphs containing
a separate, short[,] and concise statement of
additional material facts as to which it is contended
that there exists a genuine issue to be tried." Local
Civ. R. 56.1(b). "A pro se litigant is not excused
from this rule," Brandever v. Port Imperial Ferry

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

Corp., No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted), and "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the [C]ourt to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same). Here, Defendants filed and served their statement pursuant to Rule 56.1, (Defs.' 56.1), and filed and served a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Notice to Pro Se Litigant (Dkt. No. 77) ). Despite this notice, Plaintiff failed to submit a response to Defendants' 56.1 Statement of Facts. Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible. *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," including Plaintiff's deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1 statement."); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) (italics omitted) ("[W]here a pro se plaintiff fails to submit a proper ...Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the

plaintiff's arguments, where actually supported by evidentiary submissions." (italics and internal quotation marks omitted) ); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

### 1. The January 13, 2013 Assault

**\*2** Plaintiff asserts that on January 13, 2013, he was working in the pantry at Sullivan Correctional Facility ("Sullivan") serving inmates food. (Compl. ¶ 20; Pl.'s Dep. 9.) Plaintiff alerted Burns, who then alerted Hulse, of a food shortage during the evening meal. (Pl.'s Dep. 9; Compl. ¶¶ 21–23.) Hulse allegedly told Plaintiff "I don't give a shit," (Compl. ¶ 24), and Plaintiff replied "that's fucked up," (id. ¶ 25). Hulse, however, "thought that [Plaintiff] said fuck him," which caused a verbal altercation between the two. (Pl.'s Dep. 9.) Plaintiff was then instructed to "lock into his cell," but Hulse blocked Plaintiff from doing so. (Id.) Hulse told Plaintiff to hit him and that he "need[ed] a vacation," and Plaintiff asked if he could move out of the way. (Id.) Hulse spit on and punched Plaintiff and then Hulse and Burns threw Plaintiff to the ground, and Plaintiff ended up on top of Hulse and Burns landed on top of Plaintiff. (Pl.'s Dep. 10; Compl. ¶¶ 30–31.) Both continued to punch and poke Plaintiff in the eye. (Pl.'s Dep. 10; Compl. ¶ 30.)

A response team arrived, consisting of Estabrook and Tucker, who also allegedly assaulted Plaintiff. (Compl. ¶ 32; Pl.'s Dep. 12.) Plaintiff alleges he was placed in mechanical restraints and Hulse grabbed Plaintiff by his hair and "starting banging [his] head against the ground." (Pl.'s Dep. 10.) The attack continued, despite Plaintiff being in mechanical restraints. (Pl.'s Opp'n ¶ 3.) Plaintiff further contends that as he was being escorted out of his housing unit, Estabrook and Tucker "bang[ed] ... [P]laintiff['s] head against the gate and choked [him]." (Compl. ¶ 34; Pl.'s Dep. 10.) However, "the other officers said there w[ere] cameras in the hallways" and to "stop hitting [Plaintiff] until [they] g[o]t to the dry cell area." (Pl.'s Dep. 11.) After Plaintiff was escorted to the dry cell area the "attacks started again." (Id.) One of the Defendants allegedly "thr[ew] [Plaintiff] to the floor and hit [him] with a nite [sic] stick/baton." (Compl. ¶ 37; Pl.'s Dep. 11.) Plaintiff alleges that Estabrook stated "I will kill you

nigger," (Compl. ¶ 37), and "put the nightstick ... between [the] crack of [his] ass" and threatened to "shove it in until it came out of [his] mouth," (Pl.'s Dep. 11); *see also id.* at 8 ("I had a nightstick placed between my ... buttocks ... and said it would be shoved in there if I didn't stop screaming until it came out of my mouth."). Cole came in, and Plaintiff asked him to "take it easy on [him];" however, Cole stepped out and Plaintiff was beat again. (Pl.'s Dep. 11.) [3]

[3] Plaintiff testified at his deposition that Cole "didn't lay a hand on [him]" but that he saw the attack and "did nothing to prevent it." (Pl.'s Dep. 40.) Additionally, "[Cole] knew of the possible initial attack that was going to take place and he still did nothing to stop it." (*Id.*)

Following the incident, Plaintiff was ordered to strip down to his boxers so that Hanson could take photos of his injuries. (Compl. ¶ 39; Pl.'s Opp'n ¶ 7.) Hanson was not present during the use of force incident. (Defs.' 56.1 ¶ 11; *see also* Pl.'s Dep. 40.) According to Plaintiff, Cole allegedly told Hanson that "we can't let the superintendent see this," (Pl.'s Opp'n ¶ 7), and not to "show the close up ... [w]e can't let that register," (Pl.'s Dep. 11–12), so Hanson "made sure that out of all photos the close up facial photo didn't register," (Pl.'s Opp'n ¶ 7; Pl.'s Dep. 40 (testifying that Hanson made the first picture "not register[ ] intentionally after being instructed by Sergeant Cole").) According to Hanson, "one photograph was cut off because of a software glitch. This was unintentional, and [he] do[es] not even know if it is possible to intentionally create such a glitch. In any event, [he] did not do so." (Hanson Decl. ¶ 7; *see also id.* ¶ 9 ("The failure to register the close-up photographs was a software glitch. There was no conspiracy to cover up any of [Plaintiff's] injuries, as demonstrated by the other pictures and by the immediate attempts to rectify the situation after the glitch was discovered. [Hanson] never conspired with the other officers to cover up anything.").) Two or three days later, Officer Roser re-took the photos, (Pl.'s Opp'n ¶ 7), and they "revealed that [Plaintiff] had more injuries" than previously documented, (Pl.'s Dep. 12). [4]

[4] As a result of the injuries sustained in the incident, Hulse went on medical leave until at least June 30, 2013. (Defs.'56.1 ¶ 9.)

2. Plaintiff's Grievances

**\*3** On or about January 13, 2013, Plaintiff "wrote to the superintendent and ... wrote numerous grievances all to no avail." (Pl.'s Opp'n ¶ 3; *see also id.* ¶ 5 (stating "[P]aintiff wrote a grievance multiple times").) In total, Plaintiff wrote around three or four grievances. (Pl.'s Dep. 33; *see also id.* at 34 (testifying he couldn't remember exactly how many he wrote, but it was somewhere between three and six).) At the time, Plaintiff was housed in the Special Housing Unit ("SHU"), and in accordance with prison procedures for filing grievances in SHU, Plaintiff gave his grievances to a corrections officer in SHU to be turned in and filed. (Pl.'s Opp'n ¶ 5; *see also* Pl.'s Dep. 34 (testifying that Plaintiff "can't go to the grievance department ... It's in the officers' hands to do that. The officers ... are supposed to turn them in and they didn't").) However, "[o]nce Plaintiff s[aw] that they weren't being turned in," he started writing letters to other people informing them of the assault. (Pl.'s Dep. 33; *see also* Seguin Decl. Ex. B (memorandum to Plaintiff regarding letter he sent to Superintendent Griffin regarding the January 2013 incident).) Between January and March 2013, Plaintiff also wrote the Inspector General; the Superintendent; the Commissioner of Corrections; the Department of Justice; the FBI; the New York State Trooper barracks at Liberty, New York; Senator Kirsten Gillibrand; and unnamed lawyers. (Pl.'s Dep. 33–34.) [5]

[5] In response to his letter to the Inspector General, Plaintiff was interviewed by "Investigator Smith." (Pl.'s Opp'n ¶ 6; Pl.'s Dep. 33.) However, "instead of punishing the officers ... [P]aintiff was charged in Sullivan County Court with assault." (Pl.'s Opp'n ¶ 5; *see also* Pl.'s Dep. 12.) However, following a trial, Plaintiff was found not guilty. (Pl.'s Dep. 12.)

Plaintiff was transferred from Sullivan to Upstate Correctional Facility on February 24, 2013. (Defs.' 56.1 ¶ 14.) After numerous other transfers, (Pl.'s Dep. 36), Plaintiff was then transferred to Auburn Correctional Facility in 2014, and, having never received a response to the grievances filed at Sullivan, Plaintiff filed another grievance at Auburn complaining about the fact that he received no response to the grievance filed at Sullivan. (Pl.'s Opp'n ¶ 6; Pl.'s Compl. ¶ 45; Seguin Decl. ¶ 6.) Following an investigation, Plaintiff was told there was no record of a grievance at Sullivan regarding the January 2013 incident. (Pl.'s Compl. ¶ 45; Seguin Decl. ¶ 6; Seguin Decl. Ex. B (Auburn grievance forms).) Someone at Auburn allegedly informed Plaintiff "that staff assaults are

Terry v. Hulse, Not Reported in Fed. Supp. (2018)
2018 WL 4682784

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 62 of 141

not grievable" and according to "grievance [staff] at Auburn and Directive 4040," there was no "remedy." (Pl.'s Opp'n ¶ 6.)

There is no record of a grievance concerning the January 13, 2013 incident ever being filed in Sullivan records. (Defs.' 56.1 ¶ 15; Seguin Decl. ¶ 6; Proscia Decl. ¶ 4.) And, no record of an appeal exists with the Central Office Review Committee ("CORC"). (Defs.' 56.1 ¶ 16; Seguin Decl. ¶ 6.) The only grievance on record that Plaintiff filed and appealed as of May 2016 was related to his grievance at Sullivan going unanswered. (Seguin Decl. ¶ 6.)

### 3. Retaliation

Because he wrote a grievance, Plaintiff alleges he was "retaliated against," and "officers in the SHU area deprived [him] of his normal rations of food, [his] mail was not sent out," he was delayed in receiving his property and some of his property was lost, and he was denied callouts. (Pl.'s Opp'n ¶¶ 5, 7; *see also* Pl.'s Dep. 8 ("I was harassed, deprived of food, a whole bunch of things."); *id.* at 28 (testifying that he received empty food trays); *id.* at 29–30 (testifying he was denied callouts, was not receiving his mail, and his property was lost).) Plaintiff also claims he was "threaten[ed] repeatedly," (Pl.'s Opp'n ¶ 7), and told to "drop the lawsuit," and that "they [were] gonna [sic] kill [him]," (Pl.'s Dep. 30). In 2017, Plaintiff's jaw was broken by someone he does not know, and he believes corrections officers "put a hit out on [him]." (Pl.'s Opp'n ¶ 7.) Plaintiff believes he was transferred to other prisons as a "tactic" to get the instant Action thrown out. (*Id.*) Plaintiff reported the retaliation, and "the Superintendent sent someone to investigate, but the [investigator] tr[i]ed to misconstrue and discredit [Plaintiff]." (*Id.*)

Defendants contend that they were not aware that Plaintiff filed a grievance, (Defs.' 56.1 ¶¶ 20–24); they had no practical ability to interfere with Plaintiff's meals or mail, (*id.* ¶¶ 25–29); and they did not arrange for or personally cause Plaintiff to be deprived of food or mail, nor did they retaliate against Plaintiff any other way, (*id.* ¶¶ 30–34).

### B. Procedural History
**\*4** Plaintiff filed the Complaint on January 12, 2016. (Compl.) After receiving two extensions, (Dkt. Nos. 31, 33), Defendants filed an Answer on July 6, 2016, (Dkt. No. 34). On October 13, 2016, the Court held an initial conference;

however, Plaintiff refused to come to the phone for the conference, (*see* Dkt. (entry for Oct. 13, 2016) ), and the Court adopted a discovery schedule, (Dkt. No. 37). [6] On August 24, 2017, Defendants filed a pre-motion letter indicating the grounds on which they would move for summary judgment. (Letter from Bradley G. Wilson, Esq. to Court (Aug. 24, 2017) (Dkt. No. 61).) The Court held a pre-motion conference on September 8, 2017 and set a briefing schedule. (Dkt. No. 64.)

[6]    On October 21, 2016, Plaintiff's first Application for Appointment of Counsel was docketed. (*See* Application for Appointment of Counsel (Dkt. No. 38).) In an Order dated November 4, 2016, the Court denied the request without prejudice. (Dkt. No. 39.) On October 16, 2017, Plaintiff's second Application for Appointment of Counsel was docketed. (*See* Second Application for Appointment of Counsel (Dkt. No. 65).) On February 6, 2018, the Court denied the second request without prejudice. (Dkt. No. 83.) Plaintiff again requested counsel on February 12, 2018, (Dkt. No. 87), which the Court again denied without prejudice, (Dkt. No. 88).

Defendants filed the instant Motion and accompanying papers on November 8, 2017. (Notice of Motion; Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 67); Defs.' 56.1; Burns Decl.; Cole Decl.; Estabrook Decl.; Hanson Decl.; Tucker Decl.; Proscia Decl.; Seguin Decl.; Wilson Decl.) Plaintiff did not oppose the Motion by the January 5, 2018 deadline, and on January 17, 2018, counsel for Defendants wrote to the Court requesting the Motion be deemed fully submitted. (Dkt. No. 79.) The Court granted the request. (Dkt. No. 80.) In a letter dated January 14, 2018, Plaintiff wrote to the Court requesting an extension of time to respond to the Motion because he was in the hospital with a broken jaw, (Dkt. No. 81), which Defendants opposed, (Dkt. No. 82). The Court granted Plaintiff an extension until March 8, 2018. (Dkt. No. 83.) In a letter dated February 4, 2018, Plaintiff wrote to the Court requesting another extension, (Dkt. No. 87), and the Court granted Plaintiff an extension until March 20, 2018, (Dkt. No. 88). Plaintiff missed the March 20, 2018 deadline, and at Defendants' request, (Dkt. No. 89), the Court deemed the Motion fully submitted, (Dkt. No. 91). On April 20, 2018, Plaintiff filed an Opposition to the Motion, (Pl.'s Opp'n), and a letter explaining that he was transferred to other facilities and hindered from sending the Opposition, (Dkt. No. 93). Defendants requested the Court decline to consider the untimely Opposition or, in the

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 63 of 141

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

alternative, to grant Defendants an extension to reply. (Dkt. No. 97.) The Court granted the extension request. (Dkt. No. 98.) On May 11, 2018, Defendants filed their reply. (Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Reply") (Dkt. No. 99).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and ... resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry*, 137 F. Supp. at 521 (same).

**\*5** "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion ..., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,' " *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ), "and cannot rely on mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading....."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on [declarations] ... to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated.' " *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4) ).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344, and a court should construe "the submissions of a pro se litigant ... liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted). And, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vermont Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should ... be[ ] in light of the opposing party's pro se status" (italics omitted) ). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence ... are insufficient

Terry v. Hulse, Not Reported in Fed. Supp. (2018)
2018 WL 4682784

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 64 of 141

to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and internal quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B. Analysis

Defendants move for summary judgment as to all claims on the ground that Plaintiff has failed to exhaust his administrative remedies. Additionally, Defendants seek dismissal on the merits only of Plaintiff's (1) First Amendment retaliation claims against all Defendants and (2) all claims against Hanson. The Court will address each of these arguments in turn.

### 1. Exhaustion of Administrative Remedies

**\*6** As an initial matter, Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* (Defs.' Mem. 4–7.)

### a. Administrative Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates " 'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' ... [which] entails ... 'completing the administrative review process in accordance with the applicable procedural rules.' " *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration and citations

omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006) ); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

As a general matter, the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities. The IGP provides for a three-step grievance process. *See* 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c) ) ). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. *See* 7 N.Y.C.R.R. § 701.5(a)(1). That complaint must provide a specific description of the problem. *See id.* § 701.5(a)(2). The second step in the tripartite framework is for the grievant or any direct party to appeal the Inmate Grievance Resolution Committee's ("IGRC") decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the CORC, which the prisoner must do within seven days of the superintendent's written response to the grievance. *See id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit. *See id.* "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

**\*7** Grievances claiming employee harassment "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. 7 N.Y.C.R.R. § 701.8.[7] Although an inmate must still follow the procedures identified above and contained in 7 N.Y.C.R.R. § 701.5(a), the regulations also provide that "[a]n inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee," although "this is not a prerequisite for filing a grievance with the IGP." *Id.* § 701.9(a). Additionally, the framework provides that "[a]ll

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 65 of 141

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

documents submitted with [a grievance alleging harassment] must be forwarded to the superintendent by close of business that day," *id.* § 701.8(b), and that the superintendent personally or through a designee "shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in [§] 701.2," *id.* § 701.8(c), which defines "[h]arassment grievances" as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate," *id.* § 701.2(e). If it is not, the grievance is returned to the IGRC for normal processing. *Id.* § 701.8(c). If it is a bona fide harassment issue, however, the superintendent must then (1) initiate an in-house investigation into the allegations by higher-ranking supervisory personnel, (2) request an investigation by the inspector general's office, or (3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation. *Id.* § 701.8(d). The superintendent then must render a decision within 25 calendar days of receipt of the grievance, *id.* § 701.8(f), and, if she does not, the grievant may appeal to the CORC, *id.* § 701.8(g). When a grievant wishes to appeal the superintendent's response to the CORC, the grievant must do so within seven days of the receipt of that response. *Id.* § 701.8(h).

7       Section 701.8 has been found applicable to claims
        of excessive force. *See, e.g., Torres v. Carry*, 691 F.
        Supp. 2d 366, 369–70 (S.D.N.Y. 2009).

A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in federal court. Indeed, "[w]hen a prisoner does not properly exhaust his administrative remedies before filing suit, the action *must* be dismissed." *Mateo v. Alexander*, No. 08-CV-8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *see also Harris v. Gunsett*, No. 12-CV-3578, 2013 WL 3816590, at *6 (S.D.N.Y. July 22, 2013) (same). "This is so even if the claim has since been exhausted." *Mateo v. Ercole*, No. 08-CV-10450, 2010 WL 3629520, at *3 (S.D.N.Y. Sept. 17, 2010). Defendants bear the burden of proving that Plaintiff failed to exhaust available administrative remedies. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." (alteration, citations, and internal quotation marks omitted) ); *see also Powell v. Schriro*, No. 14-CV-6207, 2015 WL 7017516, at *6 (S.D.N.Y. Nov. 12, 2015) (same).

Here, it is undisputed that Plaintiff did not complete the requisite three-step grievance process before filing his lawsuit related to the January 2013 incident, and thus failed to exhaust his administrative remedies. (Proscia Decl. ¶ 4; Seguin Decl. ¶ 5.)

### b. Availability of Administrative Remedies

Failure to exhaust a technically available administrative remedy, however, does not end the inquiry. The PLRA "contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court recently explained in *Ross*:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust ... has real content.... [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859; *see also Williams v. Priatno*, 829 F.3d 118, 123–24 & n.2 (2d Cir. 2016) (applying *Ross* but noting that "the three circumstances discussed in *Ross* do not appear to be exhaustive"). [8] First, an "administrative procedure is unavailable when ... it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859 (citing *Booth*, 532 U.S. at 736, 738). Second, a remedy is unavailable where "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. These three circumstances "do not appear to be exhaustive," *Williams*, 829 F.3d at 123 n.2, but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 66 of 141

2018 WL 4682784

[8]     Because, as in *Williams*, the circumstances delineated in *Ross* are also relevant to the facts of this case, the Court "do[es] not opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.

**\*8** Shortly after *Ross*, the Second Circuit applied the *Ross* availability analysis in *Williams*. 829 F.3d 118. The question of availability addressed by the court in *Williams* governs this case as well. In *Williams*, the plaintiff alleged he was beaten by two correction officers. *Id.* at 120. On January 15, 2015, Williams claimed to have drafted a grievance while he was in SHU, and gave it to a corrections officer to forward to the grievance office as required by the grievance procedures that applied to inmates in SHU. *Id.* at 120–21. A week later, Williams asked the superintendent why he had not received a response and was told she knew nothing about it and would look into it. *Id.* at 121. Several days later, Williams was transferred to another facility. *Id.* He never received a response to his grievance and claimed that the correction officer never filed it for him. *Id.* He never appealed the grievance but commenced a § 1983 action, and the defendants moved to dismiss on the basis that Williams failed to exhaust his administrative remedies. *Id.* Accepting as true the allegation that the corrections officer never filed Williams' grievance, the *Williams* court determined that the governing regulations only contemplated appeals of grievances that are actually filed; the regulations did not specify a process to appeal or otherwise exhaust when a grievance by a prisoner housed in SHU is given to a corrections officer to file as per the specified procedure, but the officer fails to file it. *Id.* at 124. As "the regulations give no guidance whatsoever to an inmate whose grievance was never filed," the Second Circuit concluded that the regulations were " 'so opaque' and 'so confusing that ... no reasonable prisoner can use [them].' " *Id.* (quoting *Ross*, 136 S. Ct. at 1859.); *id.* at 126 (finding "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it"). In so concluding, the Second Circuit noted that the fact that the inmate in *Williams* was transferred between facilities approximately two weeks after handing off his grievance made the procedure even more obscure. *See id.* at 126. "At the heart of the Second Circuit's analysis was the inescapable quandary that inmates find themselves in when their grievances are not filed—namely, that current regulations do not guarantee recourse for an inmate whose grievance was never filed." *McRae v. Cordero*, No. 15-CV-4334, 2018 WL 3611964, at *6 (S.D.N.Y. July 26, 2018)

The Court in *Williams* analyzed the same regulations as the instant case. 829 F.3d at 125– 26 (citing 7 N.Y.C.R.R. §§ 701.5, 701.6, 701.8). As in *Williams*, Plaintiff here has similarly alleged that he gave his grievance to an officer while housed in SHU, and his grievance was never filed. (Pl.'s Dep. 26 (testifying "[m]y grievance was never turned in" and "[t]hey were never even submitted"); *id.* at 33 (testifying his grievances "weren't being turned in"); *id.* at 34 (testifying the officers were "supposed to turn [the grievances] in and they didn't"); Pl.'s Opp'n ¶ 5 (stating that Plaintiff "gave [the grievances] to the officers in the SHU area to be turned in and filed"); *id.* ¶ 7 (stating that an exception to exhaustion should apply because "the officer's [sic] are not filing [the grievances]").) Like the Plaintiff in *Williams*, Plaintiff was transferred from Sullivan to Upstate about a month and a half after allegedly filing his grievance. (Defs.' 56.1 ¶ 14 (stating Plaintiff was transferred from Sullivan to Upstate on February 24, 2013).)[9] Plaintiff also argues that "Directive 4040 is confusing and [there] isn't any procedure[ ] in place ... that explains how to report when these types of misdeeds on behalf of staff happens if an officer throws your grievance in the trash." (Pl.'s Opp'n ¶ 7.)[10] The Court agrees. Plaintiff was faced with the same "opaque" and "confusing" set of regulations the *Williams* court found "incapable of use." *Williams*, 829 F.3d at 126 (internal quotation marks omitted).[11] However, because the Motion before the Court is one for summary judgment, unlike in *Williams*, the Court need not accept as true the allegation that the corrections officer never filed Plaintiff's grievance. *See id.* at 124 (accepting as true the allegation that the correction officer never filed the plaintiff's grievance). Thus, the Court must determine whether the record adequately supports Plaintiff's contention that the corrections officer never filed Plaintiff's grievances.

[9]     It bears noting that the transfer was not itself determinative in *Williams*. The Court specifically noted that "if the regulations ... were not already so confusing that no ordinary prisoner can discern or navigate them, their obscurity was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer." *Id.* at 126 (alteration, citation, and internal quotation marks omitted).

[10]    DOCCS Directive 4040 is the document given to inmates that outlines the DOCCS inmate grievance regulations. (Defs.' Reply Mem. 2.)

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

[11]    Although the Second Circuit in *Williams* addressed a motion to dismiss, the legal analysis for determining whether an exception to exhaustion applies is the same for a summary judgment motion. *McRae*, 2018 WL 3611964, at *5 n.7 (noting that '[the fact] that Williams was decided on a motion to dismiss and not on a summary judgment motion does not change the analysis.' " (quoting *Medina v. Napoli*, 725 F. App'x. 51, 54 (2d Cir. 2018) ).

**\*9** The Second Circuit has not yet provided published guidance regarding what record evidence is sufficient to find a genuine issue of material fact as to whether the grievance process was "available" under the *Ross* and *Williams* exhaustion analysis. However, in a recent unpublished opinion, the Second Circuit considered alleged actions that "b[ore] a strong similarity to those of the defendants in *Williams*." *Medina v. Napoli*, 725 F. App'x. 51, 53 (2d Cir. 2018). The plaintiff, Medina, like Williams, was an inmate in SHU who was required to rely on correction officers to file his grievances, and "both Medina and Williams alleged that those officers intentionally discarded the grievances or prevented them from being filed." *Id.* at 53–54. The Second Circuit concluded that "[t]he record establishes that Medina's allegations, supported by witness testimony, about defendants' actions to prevent the filing of Medina's grievances concerning the June 2007 incident are sufficient, when viewed in the light most favorable to Medina, to raise a genuine issue of material fact as to whether the grievance process was 'available' to Medina." *Id.* at 54. Although not in the context of a summary judgment motion, the Second Circuit in *Williams* considered the claim plausible that the correction officer never filed his grievance "given Williams's allegations that he asked superintendent Perez about his grievance one week after giving it to the correction officer and Perez said that she had no knowledge of it." 829 F.3d at 124 & n.3. Because it was a harassment grievance, had it been filed, it should have been forwarded to Perez the same day. *Id.* at 124 n.3. Thus, "[a]t the motion to dismiss stage, the allegation that she had no knowledge of the grievance support[ed] Williams's allegation that it was not filed." *Id.* In contrast, in *Hicks v. Adams*, 692 F. App'x 647 (2d Cir. 2017), the Second Circuit found the allegation "that prison staff did not transmit appeals [the plaintiff] attempted to submit" insufficient to plausibly allege that prison officials thwarted his attempt to appeal, because "he d[id] not state when he submitted the appeals, to whom, and what, if any, steps he took after the documents were not filed." *Id.* at 648.

Here, Plaintiff has consistently alleged in his Complaint, (Compl. ¶¶ 17, 42, 48), deposition testimony, (Pl.'s Dep. 26, 33–34), and Opposition to the Motion, (Pl.'s Opp'n ¶¶ 3, 5, 7), that around January 13, 2018, he wrote at least three grievances, and, as required by regulations for an inmate in SHU, gave those grievances to officers to file for him. Plaintiff testified that he kept a copy of the grievance; however, his property was either destroyed or taken by a corrections officer. (Pl.'s Dep. 32, 35.) After changing facilities multiple times, (Pl.'s Dep. 36), on February 7, 2014, Plaintiff filed another grievance regarding the unanswered grievances he had filed at Sullivan, (Compl. ¶ 17; Pl.'s Opp'n ¶ 6). Furthermore, deposition testimony, as well as the subsequent grievance from Auburn regarding the unanswered grievance from Sullivan, also work to create a genuine dispute of material fact regarding whether Plaintiff attempted to filed a timely grievance at Sullivan in January 2013. Viewing these facts in the light most favorable to Plaintiff, the Court finds the record evidence sufficient to raise a genuine issue of material fact as to whether the grievance process was "available" to Plaintiff. Although there is no witness testimony other than Plaintiff's to support the allegation, *Medina*, 725 F. App'x at 54 (finding additional witness testimony sufficient to create genuine dispute of material fact), the evidence in the record contains sufficient detail regarding when and how Plaintiff attempted to file his grievances. This holding is in accord with numerous other district courts in the Second Circuit that have denied summary judgment based on similar record evidence. *See, e.g., Jackson v. Downstate Corr. Facility*, No. 16-CV-0267, 2018 WL 3650136, at *8 (S.D.N.Y. July 31, 2018) (finding "[the] [d]efendants' argument that [the] [p]laintiff never actually filed his grievance ... of no moment," because the plaintiff's deposition "demonstrates that [the] [p]laintiff made attempts to file a grievance in October of 2015, though there is no record of such a grievance with the IGRC"); *McRae*, 2018 WL 3611964, at *6 (finding the plaintiff's deposition testimony, and a subsequent grievance concerning the superintendent's non-response to his grievance, sufficient to create a material dispute of fact regarding whether the plaintiff had filed a grievance); *Trahan v. Capozzola*, No. 12-CV-4353, 2017 WL 9512406, at *5–6 (E.D.N.Y. June 26, 2017) (denying summary judgment for two claims based on sworn testimony that the plaintiff filed his grievance by giving it to a corrections officer, but granting summary judgment for the one claim where the plaintiff did "not state when he filed the grievance and otherwise proffer[ed] no details regarding its submission"), *adopted by* 2017 WL 4286620 (E.D.N.Y. Sept. 27, 2017); *Carter v. Revine*, No. 14-CV-1553, 2017 WL 2111594, at *12 (D. Conn. May 15,

2017) (finding the plaintiff's affidavit that he submitted to two named individuals, and "other available employees," six medical requests and a "written grievance in reference to the lack of response to [his] requests for medical care ... sufficient evidence for the [c]ourt to conclude he tried to submit the grievance by and through the assistance of correctional officers while he was housed in the [Restrictive Housing Unit]" (alterations and internal quotation marks omitted); *Reid v. Marzano*, No. 15-CV-761, 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) (denying summary judgment based on the plaintiff's deposition testimony that his grievance was not filed); *Juarbe v. Carnegie*, No. 15-CV-1485, 2016 WL 6901277, at *4 (N.D.N.Y. Nov. 23, 2016) (concluding "questions of fact remain regarding the filing of the grievances, which precludes summary judgment," where the plaintiff alleged he filed grievances, but no record of the grievances being received or processed existed). *But see Hicks*, 692 F. App'x at 648 (approving dismissal where there was no assertion regarding when and to whom a grievance was filed, and what subsequent steps were taken after the grievance was not filed).

**\*10** Defendants argue that Plaintiff has to provide "something more than the general claims made in his deposition that his grievance was thrown away," and cite to cases from the Northern District holding that the "mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations." (Defs.' Mem. 6 (quoting *Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), *adopted by* 2017 WL 2790530 (N.D.N.Y. June 27, 2017)).) However, *Rodriguez* did not involve an inmate housed in SHU who was dependent on the officers to file a grievance for him, and the court explicitly distinguished its holding granting summary judgment from those cases "den[ying] a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU," because "[i]nmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are essentially unknowable or unavailable." *Rodriguez*, 2017 WL 2791063, at *7 (internal quotation marks omitted). And, as explained above, the Court agrees with the numerous courts that have denied summary judgment based on sworn deposition testimony from the Plaintiff creating a dispute of material fact regarding whether a Plaintiff's grievance was submitted. *See, e.g.*, *Trahan*, 2017 WL 9512406, at *5 ("While [the] [d]efendants argue that there is no evidence to support [the] [p]laintiff's claim that he handed timely grievances to

corrections officers, [the] [p]laintiff's position is supported by his sworn testimony, which is sufficient to defeat summary judgment."); *Reid*, 2017 WL 1040420, at *3 (finding that the plaintiff could rely on his deposition testimony and rejecting the defendants' argument that "mere allegation of submitting a grievance, without supporting evidence" was insufficient to withstand summary judgment as "it [wa]s unclear what evidence [the] [d]efendants expect[ed] [the] [p]laintiff to produce of his grievances that were allegedly discarded by corrections officers") (italics and internal quotation marks omitted); *see also Icangelo v. Cty. of Suffolk*, No. 16-CV-1982, 2018 WL 1867108, at *6–7 (E.D.N.Y. Feb. 8, 2018) (finding that despite testimony from the plaintiff that was contradicted by his own deposition testimony regarding whether he did, in fact, write a grievance, and testimony from a Correction Sergeant with the Claim Investigation section at the jail who searched for and was unable to find the grievance, the court nonetheless, "drawing all inferences in the light most favorable to [the plaintiff]," concluded "the facts ... weigh against a finding of non-exhaustion"), *adopted by* 2018 WL 1115349 (E.D.N.Y. Feb. 28, 2018).

As such, drawing all inferences in Plaintiff's favor, there is a dispute of material fact regarding whether Plaintiff's grievance went unfiled. Because the grievance procedures were incapable of use, they are considered "unavailable" to Plaintiff, and Plaintiff "need not exhaust remedies if they are not 'available.' " *Ross*, 136 S. Ct. at 1855, 1858. Accordingly, Defendants' motion for summary judgment based upon lack of exhaustion is denied.

## 2. First Amendment Retaliation

Plaintiff also alleges First Amendment retaliation claims against Defendants, which fail as a matter of law. (Pl.'s Dep. 26.) "To state a First Amendment retaliation claim ..., a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) ); *see also Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5970355, at *19 (S.D.N.Y. Oct. 13, 2015) (same); *Ramrattan v. Fischer*, No. 13-CV-6890, 2015 WL 3604242, at *12 (S.D.N.Y. June 9, 2015) (same). The Second Circuit has made clear that courts are to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken

Case 9:19-cv-01610-BKS-TWD Document 28 Filed 02/01/21 Page 69 of 141
Terry v. Hulse, Not Reported in Fed. Supp. (2018)
2018 WL 4682784

against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted); *see also Dolan*, 794 F.3d at 295 (same); *Corley v. City of New York*, No. 14-CV-3202, 2015 WL 5729985, at *8 (S.D.N.Y. Sept. 30, 2015) (same).

"It is well-established that inmates' filing of grievances is a constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances." *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013) (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ); *see also Andino v. Fischer*, 698 F. Supp 2d 362, 382 (S.D.N.Y. 2010) (same). However, with respect to the second prong, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Davis*, 320 F.3d at 353 (internal quotation marks omitted). The "ordinary firmness" inquiry is not subjective, and a prisoner may still suffer adverse action even where undeterred. *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also id.* at 384 ("[T]he fact that a particular plaintiff ... responded to retaliation with greater than 'ordinary firmness' does not deprive him of a cause of action."); *Nelson v. McGrain*, No. 12-CV-6292, 2015 WL 7571911, at *1 (W.D.N.Y. Nov. 24, 2015) ("[A] prisoner can state a retaliation claim in the absence of actual deterrence." (quoting *Nelson v. McGrain*, 596 F. App'x 37, 38 (2d Cir. 2015) ) ). Plaintiff alleges he was subject to two types of adverse actions: first, verbal threats, (Pl.'s Dep. 30, 35; Pl.'s Opp'n ¶ 7), and second, harassing conduct, that included serving him empty food trays, tampering with his mail, and destroying and taking his property, (Pl.'s Dep. 8, 28–30; Pl.'s Opp'n ¶¶ 5, 7). The Court addresses each in turn.

**\*11** Courts have found that, while verbal threats may qualify as adverse actions, they must be "sufficiently specific and direct" to be actionable. *Mateo*, 2013 WL 3863865, at *5; *see also Quezada*, 2015 WL 5970355, at *21 ("The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." (internal quotation marks omitted) ); *Lunney v. Brureton*, No. 04-CV-2438, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007) (noting that "verbal threats may constitute adverse action ... depend[ing] on their specificity and the context in which they are uttered"). Plaintiff does not know the names of the officers who threatened him. (Pl.'s Dep. 35 (responding to a question about which officers threatened him with, "[h]ow

am I supposed to know their names when I'm sitting in a cell, locked inside a cell. [They] [w]alk by and threaten me.").) The threats Plaintiff received including "telling him to drop the lawsuit," (*id.* at 30), and that they were "gonna kill [him]," (*id.* at 30– 31). The Court finds these threats to be lacking in specificity and directness. "[S]o long as the putative threat's directness and specificity matter, it is difficult to understand how Plaintiff's claims ... are sufficient." *Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *18 (S.D.N.Y. Mar. 30, 2016) (citation omitted) (holding statement that officer "told Plaintiff that grievances were unlikely to succeed and said that he would handle things 'his way' " was insufficiently specific or direct); *see also Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The opacity of [the defendant's] threats to [the plaintiff]—that [the plaintiff] should 'wait till he put his hands on me,' and that 'one day he and I will party,'—softens the deterrent effect considerably." (citations omitted) ); *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (granting summary judgment in favor of a defendant who told an inmate that " 'me and my boys ... going to get you' while brandishing a copy of a grievance"); *Bilal v. N.Y. State Dep't of Corr.*, No. 09-CV-8433, 2010 WL 2506988, at *16 (S.D.N.Y. June 21, 2010) ("Neither [the defendant's] comment ... that [the plaintiff] was 'lucky' because correction officers 'usually fuck people up for writing a bunch of bullshit grievances' nor his ... comment that "[y]ou're not the only one who can write. I'm willing to bet you'll break or get broke up,' was a 'direct' nor 'specific' threat." (alterations and citations omitted) ), *aff'd sub nom. Bilal v. White*, 494 F. App'x 143 (2d Cir. 2012). There is nothing in the record to indicate that any Defendant made a sufficiently direct or specific threat to Plaintiff to state a retaliation claim based on alleged verbal threats.

Defendants also argue that Plaintiff's other allegations of harassing conduct lack specificity, as "Plaintiff has provided minimal detail about the actual actions purportedly taken against him: no description of when they occurred, who did it, or how the Defendants were behind it." (Defs.' Mem. 8.) The Court agrees. Plaintiff testified that "a couple of times ... 'they' would send a tray in my cell, but then you open the top and it's only like a half a spoon of food inside the tray." (Pl.'s Dep. 27.) Plaintiff "wouldn't count" how many times this happened, because "nobody counts shit like this." (*Id.* at 28.) Also, Plaintiff speculates that he "could have 30, 40 letters sitting up in the mail room" because he "ha[s] people telling [him] that mail was written to [him] [but] [he] never received it." (*Id.* at 30.) Additionally, "property" of Plaintiff's "was lost," and he was getting items stolen from his cell by officers.

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 70 of 141

Terry v. Hulse, Not Reported in Fed. Supp. (2018)

2018 WL 4682784

(*Id.* at 30; *see also id.* at 35 (testifying he was not able to keep a copy of the grievance because his "property [wa]s being destroyed").) As is true in response to any motion for summary judgment, Plaintiff is required to provide evidence sufficient to allow a jury to find in his favor, as "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Plaintiff's allegations regarding this harassing conduct are lacking in any specifics regarding how Defendants were involved in the alleged conduct and how frequently it occurred. Defendants provided sworn statements that they did not even know a grievance was filed, did not have the capacity to interfere with Plaintiff's food or mail, and did not arrange for or personally retaliate against Plaintiff, (Defs.' 56.1 ¶ 25–29), which Plaintiff does not contest. This fatally undercuts Plaintiff's claim. *See Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *8 (S.D.N.Y. Sept. 28, 2016) ("Plaintiff's claim is similarly handicapped by its failure to allege or otherwise suggest that Defendants even knew of the complaints filed against other correction officers."); *Alston v. Pafumi*, No. 09-CV-1978, 2016 WL 81785, at *7 (D. Conn. Jan. 7, 2016) (granting partial summary judgment where the plaintiff identified "no record evidence from which a reasonable jury could infer that any other defendant was aware of [the plaintiff's] complaints"), *reconsideration denied*, 2016 WL 447423 (D. Conn. Feb. 4, 2016); *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *10 (S.D.N.Y. Feb. 23, 2015) ("Absent evidence that any defendant knew about his ... grievance, [the plaintiff] has failed to provide any basis to believe that they retaliated against him for a grievance in which they were not named."), *adopted in relevant part by* 2015 WL 4476027 (S.D.N.Y. July 22, 2015); *Wesley v. Kalos*, No. 97-CV-1598, 1997 WL 767557, at *5 (S.D.N.Y. Dec. 11, 1997) ("To establish a claim of retaliatory transfer requires [the plaintiff], at a minimum, to assert facts to show that the [d]efendants knew of [the plaintiff's] complaints prior to the transfer.").

**\*12** To the extent Plaintiff alleges that other—unnamed—officers retaliated against him based on Plaintiff's attempt to grieve the January 2013 incident, Plaintiff has not established a nexus between his protected activity and the alleged retaliation. "Retaliation claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer." *Jones v. Fischer*, No. 10-CV-1331, 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013); *see also Henson v. Gagnon*, No. 13-CV-590, 2015 WL 9809874, at *12 (N.D.N.Y. Dec. 10, 2015) ("The record is devoid

of evidence ... that supports [the] [p]laintiff's conclusory assertion that [the defendant] planted evidence and issued the [m]isbehavior [r]eport based upon evidence in retaliation for grievances [the] [p]laintiff had filed against other corrections officers."), *adopted by* 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (holding that the plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in) (collecting cases); *Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright*, 554 F.3d at 274) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was a complaint about a prior incident by another corrections officer). In this case, Plaintiff's speculation that unnamed individuals retaliated against Plaintiff based on his attempt to grieve the 2013 incident is not supported by the record. Therefore, Defendants' Motion is granted as to the First Amendment retaliation claims, and Plaintiff's retaliation claims against Defendants are dismissed.

### 3. Claims Against Hanson

Defendants argue the claims against Hanson should be dismissed, because there is no dispute that Hanson's only involvement in the alleged constitutional deprivations was taking photographs of Plaintiff after the alleged assault and Plaintiff has failed to allege a conspiracy to cover up the extent of Plaintiff's injuries. (Defs.' Mem. 9.)

A Section 1983 conspiracy claim requires "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (same); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 464–65 (S.D.N.Y. 2012) (same). "[C]onspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (internal quotation marks omitted). [12] To state a conspiracy claim, Plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). Thus, Plaintiff must

Terry v. Huise, Not Reported in Fed. Supp. (2018)
Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 71 of 141

2018 WL 4682784

"make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations and internal quotation marks omitted).

12    Defendants argue that Plaintiff's conspiracy claims should be dismissed according to the "intracorporate conspiracy doctrine," which provides that employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together. (Defs.' Mem. 9–10.) *Hill v. City of New York.* No. 03-CV-1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ). Although the Second Circuit has recognized the intracorporate conspiracy doctrine in the context of § 1985, *see Herrmann*, 576 F.2d at 459; *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976), it has not yet extended the doctrine to § 1983, *see Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (collecting cases). The Court therefore declines to grants summary judgment based on this argument. Regardless, Plaintiff's claims fit within the "personal stake" exception to the rule. "The intracorporate conspiracy doctrine does not apply to bar conspiracy claims against individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Id.* at 282 (internal quotation marks omitted). Construing the facts in the light most favorable to Plaintiff, Plaintiff has alleged facts which, if true, would show that Defendants acted in their own interests and outside the normal course of their duties for DOCCS if they did indeed attempt to cover up the use of force against Plaintiff. "This is consistent with cases from th[e] [Second] [C]ircuit in which district courts have found that the personal stake exception applied when police officers were alleged to have: covered up the use of excessive force, engaged in race-based false arrests to improve their chances of promotions and benefits, and assaulted a prisoner in retaliation for his participation in a federal lawsuit." *Id.* (collecting cases) (citations omitted).

*13   Plaintiff alleges that Defendants, including Hanson, conspired to cover up the alleged use of excessive force

against him. (Pl.'s Dep. 40.) As evidence, he points to the conversation between Cole and Hanson as the photographs were being taken on January 13, 2013 immediately following the assault. According to Plaintiff, Cole told Hanson to not let the superintendent see the close up photo, and that they "can't let [the close up] register." (Pl.'s Dep. 11; Pl.'s Opp'n ¶ 7.) Further, the close-up photos did not, in fact, register. (Pl.'s Dep. 12, 40; Pl.'s Opp'n ¶ 7.) Based on this evidence, Plaintiff has created a fact dispute regarding whether there was an agreement between Cole and Hanson. "[T]his is not a case where evidence shows that the defendants merely worked together, or communicated generally with each other." *Deskovic*, 894 F. Supp. 2d at 466 (collecting cases). Further, Plaintiff has also provided "details of time and place and the alleged effects of the conspiracy," *Warren*, 33 F. Supp. 2d at 177 (internal quotation marks omitted), as well as "overt acts which [D]efendants engaged in which were reasonably related to the promotion of the alleged conspiracy," *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545,565 (E.D.N.Y. 2011) (internal quotation marks omitted). *See also Hill v. City of New York*, No. 03-CV-1283, 2005 WL 3591719, at *5 (E.D.N.Y. Dec. 30, 2005) ("Given that a jury may rationally infer that the defendant officers participated in a conspiracy to cover-up unconstitutional acts, summary judgment is not appropriate on [the] plaintiff's conspiracy claim."). And, the fact that the close-up photo was, in fact, unable to be recovered serves as circumstantial evidence in further support of the conspiracy. *See DeMeo v. Kean*, 754 F. Supp. 2d 435,447 (N.D.N.Y. 2010) (finding that erased and destroyed video recordings in control of defendants was "sufficient circumstantial evidence to permit a jury to determine whether [the defendants] conspired ... to partially erase and/or destroy the video evidence."). Thus, the Court denies Defendants' motion for summary judgment as to the claims again Hanson.

### III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment is granted as to the First Amendment retaliation claim, and denied as to the rest of Plaintiff's Claims. The Court will hold a conference on November 8, 2018 at 10:30 a.m. to discuss the status of the remaining claims. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 66), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 72 of 141

**Terry v. Hulse, Not Reported in Fed. Supp. (2018)**
2018 WL 4682784

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4682784

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

Woodward v. Lytle, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 73 of 141

2018 WL 4643036

KeyCite Yellow Flag - Negative Treatment
Distinguished by Sawyer v. Locy, N.D.N.Y., October 21, 2020

2018 WL 4643036
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn WOODWARD, Plaintiff,

v.

LYTLE, Correctional Officer, Cape Vincent
Correctional Facility, et al., Defendants.

9:16-CV-1174 (NAM/DEP)
|
Signed 09/27/2018

**Attorneys and Law Firms**

SHAWN WOODWARD, Plaintiff Pro Se, 00-A-6563,
Collins Correctional Facility, P.O. Box 340, Collins, New
York 14034.

Attorneys for Defendants: Hon. Barbara D. Underwood,
Attorney General of the State of New York, Helena Lynch,
Esq., Assistant Attorney General, The Capitol, Albany, New
York 12224.

**MEMORANDUM-DECISION AND ORDER**

Hon. Norman A. Mordue, Senior U. S. District Judge

### I. INTRODUCTION

**\*1** Plaintiff *pro se* Shawn Woodward, a New York State
prison inmate, brings this 42 U.S.C. § 1983 action against
seven individual Defendants employed by the New York
State Department of Corrections and Community Supervision
("DOCCS"), alleging civil rights claims related to his
confinement at Cape Vincent Correctional Facility ("Cape
Vincent"). (Dkt. No. 1). Plaintiff's remaining claims are
for First Amendment retaliation against all Defendants
and Eighth Amendment excessive force against Defendant
Dawley. (Dkt. Nos. 30, 36). On February 9, 2018, Defendants
filed for summary judgment, on the basis that Plaintiff's
claims are barred based on his failure to exhaust the
available administrative remedies prior to filing this action.
(Dkt. No. 41). The matter was referred to United States
Magistrate Judge David E. Peebles, who, on August 13,
2018, issued a Report & Recommendation, recommending

that Defendants' motion for summary judgment be granted
and that the case be dismissed because Plaintiff failed to
exhaust his available administrative remedies. (Dkt. No.
57). Plaintiff then filed timely objections to the Report
& Recommendation, arguing, *inter alia*, that he could not
have exhausted his administrative remedies since they were
"opaque and incapable of use." (Dkt. No. 60, p. 12).

### II. STANDARD OF REVIEW

This court reviews *de novo* those portions of the Magistrate
Judge's findings and recommendations that have been
properly preserved with a specific objection, as is the case
here. *Petersen v. Astrue*, 2 F.Supp.3d 223, 228-29 (N.D.N.Y.
2012); 28 U.S.C. § 636(b)(1)(C).

Summary judgment may be granted only if all the
submissions taken together "show that there is no genuine
issue as to any material fact and that the moving party is
entitled to judgment as a matter of law." *In re World Trade
Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202,
210 (2d Cir. 2014). A fact is material if it "might affect the
outcome of the suit under the governing law." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91
L.Ed.2d 202 (1986); *see also Jeffreys v. City of New York*, 426
F.3d 549, 553 (2d Cir. 2005). A fact is genuinely in dispute
"if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Id.* In ruling on a summary
judgment motion, the court "must construe the facts in the
light most favorable to the non-moving party and must resolve
all ambiguities and draw all reasonable inferences against the
movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d
775, 780 (2d Cir. 2003). Where the plaintiff proceeds *pro se*,
the Court must read his submissions liberally and interpret
them "to raise the strongest arguments that they suggest."
*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)
(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ).

### III. DISCUSSION

#### a. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C.
§ 1997e(a), requires an inmate to exhaust all available
administrative remedies prior to bringing a federal civil rights
action. *See Espinal v. Goord*, 558 F.3d 119, 123–24 (2d Cir.
2009). To properly exhaust his administrative remedies, an
inmate must complete the administrative review process in
accord with the applicable state procedural rules. *Jones v.*

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 74 of 141

Woodward v. Lytle, Not Reported in Fed. Supp. (2018)

2018 WL 4643036

*Bock*, 549 U.S. 199, 218–19, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91, 126 S.Ct. 2378. The defendant bears the burden of proving that a plaintiff failed to exhaust available administrative remedies. *See Samuels v. Fischer*, 168 F.Supp.3d 625, 651 (S.D.N.Y. 2016).

**\*2** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. §§ 701.5(a)(1), (b). The grievance must be filed within 21 days of the alleged occurrence, using an "inmate grievance complaint form (form #2131)," but if this form is not readily available, "a complaint may be submitted on plain paper." *Id.* at § 701.5(a)(1). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* at § 701.5(c) (1). If the grievant wishes to appeal to the Superintendent, "he or she must complete and sign the appeal section on the IGRC response form (form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id.* Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d)(1). If the grievant wishes to appeal to the CORC, "he or she must complete and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." *Id.* If the grievance concerns employee harassment, there is an expedited process: the grievance skips the IGRC level and goes to the Superintendent, who has twenty-five days to make a decision, after which the inmate has seven days to appeal to the CORC. *Id.* at § 701.8. During the grievance process, "matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g)(2). Inmates in special housing units have access to Form #2131, and "[t]he IGP supervisor shall monitor and ensure the proper functioning of the grievance procedure in SHU's." *Id.* at § 701.7.

There is also an exception to the mandatory exhaustion requirement, in the event the administrative remedies are "unavailable." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016) ). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S.Ct. at 1858. The Supreme Court has identified three circumstances in which

an administrative remedy, while "officially on the books," is not available. *Id.* at 1859. An administrative remedy is unavailable when: (1) "it operates a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123–24 (quoting *Ross*, 136 S.Ct. at 1859–60).

### b. Evidence of Exhaustion & Availability

On or about April 3, 2015, Plaintiff was incarcerated at Cape Vincent Correctional Facility in Cape Vincent, New York. (Dkt. No. 1, p. 3). Plaintiff helped other inmates prepare complaints about corrections staff, and he was allegedly warned by the staff against "writing up staff" and "testifying at hearings" in support of other inmates, and he was allegedly subjected to retaliation for doing so. (*Id.*, pp. 7–12). On or about July 3, 2015, Plaintiff was confined to the Special Housing Unit ("SHU"), after being found guilty of charges of fighting and drug use. (*Id.*, p. 13). Although the determinations were eventually reversed, Plaintiff spent nearly two months in the SHU as a result of the charges. (*Id.*). Plaintiff alleges that, on July 14, 2015, while in the SHU, he submitted a grievance complaining of retaliatory conduct by various Defendants, but that "[l]ater that week when the Inmate Grievance Program Supervisor made her rounds [,] she told me that she was not filing my grievance because she knew some of the officers and did not believe what I was saying." (Dkt. No. 52-2, pp. 1–2). There is no record of this particular grievance being filed. (*See* Dkt. No. 41-3). On July 22, 2015, Plaintiff successfully filed a grievance related to the food served in the SHU. (Dkt. No. 41-4).

On July 27, 2015, Plaintiff wrote a letter to Acting DOCCS Commissioner Anthony Annucci, informing him that Plaintiff had attempted to file a grievance on July 14, 2015 but was thwarted by the IGP Supervisor. (Dkt. No. 52-2, p. 1). Plaintiff wrote that "because of this [,] I sent a handwritten copy to the facility's superintendent since he is the next in the chain of the grievance appeal process." (*Id.*, p. 2). Plaintiff wrote that he spoke with the Superintendent on July 27, 2015, who referred him back to the "grievance department." (*Id.*). Plaintiff continued:

**\*3** Therefore, because step one (1) and two (2) in the grievance level are refusing to file my complaint, I'm sending it to you to either one (1) order the facility's Grievance Program Supervisor to file such or two (2) delegate this matter to Central Office Review Committee (CORC)[.]

(*Id.*). Annucci referred Plaintiff's letter to Karen Bellamy, the DOCCS Director of the IGP, who wrote Plaintiff in response on August 3, 2015. (Dkt. No. 52-3). In relevant part, Bellamy wrote as follows:

Contact with the [Cape Vincent] administration reveals that the IGP Supervisor did not receive or refuse to file a July 15, 2015 complaint from you alleging staff misconduct. Further, she does not recall speaking with you during rounds on July 15, 2015.

You are advised that Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution.

(*Id.*). On August 27, 2015, Plaintiff wrote again to Annucci, addressing the Bellamy letter. (Dkt. No. 52-4). Plaintiff expressed confusion as to what to do next, writing that:

This is problematic because if a facility's IGP's Supervisor refuses to file an inmate grievance [,] then what can the inmate do? Especially when as in this case the facility's Superintendent also refuses to except [sic] an inmate's grievance for filing?

(*Id.*). Plaintiff asked that his grievance be forwarded "to the proper facility's staff for filing," since by that time he had been transferred to Southport Correctional Facility in Pine City, New York. (*Id.*). By letter dated October 8, 2015, Bellamy responded to Plaintiff, writing in relevant part that: "Please be advised that your IGP issues were addressed in my

August 3, 2015 letter to you ... You have not presented any compelling evidence to indicate that your grievances are not being processed in accordance with Directive #4040." (Dkt. No. 52-5). According to DOCCS, "[n]either Plaintiff's July 27, 2015 letter nor his August 27, 2015 letter was a grievance or an appeal of a grievance." (Dkt. No. 52-1, ¶ 7). There is no record of an appeal related to the alleged July 14, 2015 grievance. (*See* Dkt. No. 41-5).

### c. Analysis

In their motion for summary judgment, Defendants argued that Plaintiff failed to exhaust his administrative remedies and could not show that the administrative remedies were unavailable to him. (Dkt. No. 41-1). In the Report & Recommendation, Magistrate Judge Peebles correctly found that Plaintiff failed to exhaust his administrative remedies, since Plaintiff never actually filed a grievance related to the claims in this action, nor did he appeal any such grievance to the CORC. (Dkt. No. 57). That left one question: "whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies." (*Id.*, p. 18). After careful review of the record, the Court finds that an issue of fact remains as to this question, in accordance with the Second Circuit's decision in *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

In that case, the plaintiff was housed in the SHU at Downstate Correctional Facility, and while there, he allegedly drafted a grievance concerning staff misconduct and then gave it to a correction officer to forward to the grievance office on his behalf. *Williams*, 829 F.3d at 120–21. The plaintiff never received a response to the grievance, he never appealed it, and he was transferred to another facility about two weeks later. *Id.* at 121. He alleged that the correction officer in the SHU never filed the grievance for him. *Id.* The plaintiff filed a civil rights action, but the defendants successfully moved to dismiss, on the basis that the plaintiff failed to exhaust his administrative remedies, citing records that he never filed an appeal of the grievance. *Id.* But the Second Circuit reversed, finding that the administrative remedies were unavailable to the plaintiff under the circumstances, where he had an unfiled and unanswered grievance:

**\*4** However, even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]."

Woodward v. Lytle, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 76 of 141

2018 WL 4643036

*Ross*, 136 S.Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

*Williams*, 829 F.3d at 124. The Circuit explained that the regulations do not outline any process to appeal an unfiled grievance:

> On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id.* § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

*Id.* The Circuit concluded that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. Further, the "obscurity" of the regulations "was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer," since the regulations also do not provide guidance "on how a transferred inmate can appeal his grievance with the original facility without having received a response." *Id.* The Circuit recommended that, to avoid confusion going forward, "DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred." *Id.* at 126–27.

Likewise, there is evidence in this case that: 1) Plaintiff drafted a grievance while in the SHU on or about July 14, 2015; 2) he gave it the IGP Supervisor for filing; and 3) the grievance was never filed or answered. (Dkt. No. 1; Dkt. No. 52-2). On the other hand, there is evidence that the IGP Supervisor never received or refused to file any such grievance. (Dkt. No. 52-3). It is undisputed that DOCCS has no record of this grievance or any related appeal. Drawing all inferences in the non-moving party's favor, Plaintiff drafted and submitted the grievance, but it went unfiled and unanswered. Under these particular circumstances, "the process to appeal an unfiled and unanswered grievance is

prohibitively opaque, such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126. Moreover, Plaintiff was also transferred after attempting to file the grievance, further compounding the problem. *Id.* Plaintiff's understandable confusion about the process is evident in his letters dated July 27, 2015 and August 27, 2015 to Acting Commissioner Annucci. (Dkt. No. 52-2, 52-4). And in response, DOCCS made no attempt to explain that Plaintiff had to appeal the non-response to his alleged unfiled grievance to the CORC, the position taken by Defendants in this case.[1] In fact, Plaintiff was advised that "Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution." (Dkt. No. 53-3). Plaintiff correctly identifies this confounding situation in his objections to the Report & Recommendation. (Dkt. No. 60, p. 16).

[1] The obscurity of this Kafkaesque suggested process is further demonstrated by the fact that the regulations spell out that any appeal to the CORC requires Form #2133, while inmates in the SHU only have access to Form #2131. *Compare* N.Y.C.R.R. §§ 701.5(d)(1), 701.7(a); *see also Davis v. State of New York*, 311 F. App'x 397, 399 n.2 (2d Cir. 2009) (explaining that Form #2133 is the form which has the Superintendent's grievance decision printed on the top half of a single sheet and on the bottom half contains the form an inmate is required to file to appeal the Superintendent's decision to the CORC).

**\*5** In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that an issue of fact exists as to the availability of the grievance process, which precludes summary judgment.[2] *See Williams*, 829 F.3d at 126–27; *see also Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) ("The record establishes that Medina's allegations, supported by witness testimony, about defendants' actions to prevent the filing of Medina's grievances concerning the June 2007 incident are sufficient, when viewed in the light most favorable to Medina, to raise a genuine issue of material fact as to whether the grievance process was 'available' to Medina under the *Ross* and *Williams* exhaustion analysis."); *Jackson v. Downstate Correctional Facility*, No. 16 Civ. 267, 2018 WL 3650136, at \*9, 2018 U.S. Dist. LEXIS 128980 (S.D.N.Y. July 31, 2018) (denying summary judgment motion based on failure to exhaust administrative remedies where evidence showed that the plaintiff "submitted a grievance, but that

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 77 of 141

Woodward v. Lytle, Not Reported in Fed. Supp. (2018)

2018 WL 4643036

grievance was never filed," and the appeal procedures were "prohibitively opaque") (citing *Williams* ); *Hurst v. Mollnow*, No. 16 Civ. 1062, 2018 WL 4178226, at *10, 2018 U.S. Dist. LEXIS 122624 (N.D.N.Y. July 20, 2018) ("In light of *Williams*, the Court finds material issues of fact as to the availability of the grievance process and whether Plaintiff attempted to exhaust his administrative remedies, precluding summary judgment."), *report and recommendation adopted*, No. 16 Civ. 1062, 2018 WL 4153926, 2018 U.S. Dist. LEXIS 147670 (N.D.N.Y. Aug. 30, 2018); *Fann v. Graham*, No. 15 Civ. 1339, 2018 WL 1399331, at *6, 2018 U.S. Dist. LEXIS 6717 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies...."), *report and recommendation adopted*, No. 15 Civ. 1339, 2018 WL 1399340, 2018 U.S. Dist. LEXIS 43887 (N.D.N.Y. Mar. 19, 2018); *Reid v. Marzano*, No. 15 Civ. 761, 2017 WL 1040420, at *3, 2017 U.S. Dist. LEXIS 38547 (N.D.N.Y. Mar. 17, 2017) (denying summary judgment motion based on exhaustion argument, noting that "it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame").

2    The fact that Plaintiff successfully filed one grievance while in the SHU related to the food

served there does not demonstrate that he could have filed one about employee misconduct or that he could have appealed an unfiled grievance to the CORC, so as to eliminate the issue of fact as to the availability of administrative remedies.

**IV. CONCLUSION**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Peebles's Report & Recommendation (Dkt. No. 57) is **REJECTED**; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 41) is **DENIED without prejudice** to renew should the Defendants request an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4643036

---

End of Document    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4051596
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ako K. BURRELL, Plaintiff,

v.

Lisa ZUREK, et al., Defendants.

9:17-CV-0906 (LEK/TWD)
|
Signed 08/27/2019
|
Filed 08/28/2019

**Attorneys and Law Firms**

Ako K. Burrell, Attica, NY, pro se.

David A. Bagley, Kernan Professional Group, LLP, Oriskany, NY, for Defendants.

**DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Ako Burrell filed this 42 U.S.C. § 1983 action alleging that his constitutional rights were violated while he was in pretrial custody at Oneida County Correctional Facility ("Oneida CCF"). This Court reviewed the sufficiency of Plaintiff's Complaint, Dkt. No. 1 ("Complaint"), pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A) and ordered that the following claims survived initial review: (1) Fourteenth Amendment excessive force, sexual abuse, and failure to intervene against Defendants Lieutenant Jack Breen, Deputy Dustin Lewis, and Deputy Jeffrey Jones; (2) First Amendment claims against Defendants Captain Lisa Zurek, Sergeant Clayton Smith, Lewis, and Jones stemming from denial of Plaintiff's access to newspapers and other reading material; (3) Fourteenth Amendment due process claims relating to Plaintiff's L-2 classification against Defendant Deputy Todd Woodland; and (4) First Amendment retaliation claims against Defendants Breen, Lewis, and Deputy Christopher Getchell. Dkt. No. 10 ("November 2, 2017 Order").

The parties conducted discovery and Defendants have now moved for Summary Judgment. Dkt. Nos. 41 ("Summary Judgment Motion"); 45 ("Response"); 46 ("Reply"); 47 ("Supplemental Response"). The Honorable Thérèse Wiley Dancks, United States Magistrate Judge, issued a Report-Recommendation and Order, recommending Defendants' Motion for Summary Judgment be granted in part and denied in part. Dkt. No. 50 ("Report-Recommendation"). Defendants timely filed objections to the Magistrate Judge's Report-Recommendation. Dkt. No. 51 ("Objections"). For the reasons that follow, the Court approves and adopts the Report-Recommendation.

**II. RELEVANT BACKGROUND**

The facts and allegations in this case were detailed in the November 2, 2017 Order and the Report-Recommendation, familiarity with which is assumed.

**A. Magistrate Judge Dancks's Report-Recommendation**

Magistrate Judge Dancks recommends granting summary judgment on: (1) the Fourteenth Amendment due process claims relating to Plaintiff's L-2 classification against Woodland; (2) the First Amendment retaliation claims against Breen, Lewis, and Getchell; and (3) all claims against Defendants in their official capacities. She recommends denying summary judgment on: (1) the Fourteenth Amendment excessive force, sexual abuse, and failure to intervene claims against Breen, Lewis, and Jones based on failure to exhaust administrative remedies; (2) the First Amendment denial of access to newspapers and other reading material claims against Zurek, Smith, Lewis, and Jones; and (3) the affirmative defense of qualified immunity raised by Zurek, Smith, Lewis, and Jones. She further recommended that Court conduct a hearing on the administrative exhaustion issue or refer the hearing to her to conduct. R & R at 33–34.

**B. Defendants' Objection to the Report-Recommendation**

Defendants raise three objections to the Report-Recommendation: (1) Breen, Lewis, and Jones should have been granted summary judgment on Fourteenth Amendment excessive force, sexual abuse, and failure to intervene claims because Plaintiff failed to exhaust administrative remedies; (2) Zurek, Smith, Lewis, and Jones should have been granted summary judgment on the First Amendment claim based on denial of access to newspapers and other reading materials because this limitation had a legitimate penological basis; and (3) Zurek, Smith, Lewis, and Jones should have been granted

summary judgment on qualified immunity grounds because it was objectively reasonable for them to believe the limitation on reading materials was constitutional. Objs.

## III. LEGAL STANDARD

**\*2** Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review only that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

## IV. ANALYSIS

After carful review of the papers and Magistrate Judge Dancks's Report-Recommendation, the Court finds no clear error in the unobjected-to portions of the Report-Recommendation. And after reviewing de novo the portions of the Report-Recommendation to which Defendants object, the Court finds no error. Magistrate Judge Danck's employed the proper legal standards, accurately recited the facts alleged, and correctly applies the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein.[1] The Court adds the following discussion of Defendants' three objections.

[1]     As noted below, the while the Court reaches the same conclusion as the R & R on the issue of qualified immunity, its differs in its reasoning.

### A. Exhaustion of Fourteenth Amendment claims against Breen, Jones, and Lewis

On the issue of Plaintiff's Fourteenth Amendment claims, there is no dispute that Plaintiff was required to exhaust his administrative remedies, 42 U.S.C. § 1997e(a), that Plaintiff was required to file a formal grievance within five days of the incident complained about in order exhaust those remedies, Dkt. 41-4, Exhibit 1 ("Oneida County Sheriff's Office Policy") at 11,[2] and that Plaintiff did not timely file a formal grievance. R & R at 18; Objs. at 2. Rather, the dispute hinges on whether Oneida CCF staff members prevented Plaintiff from timely filing a formal grievance. See Ross v. Blake, 136 S. Ct. 1850, 1858, 1860 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies." A remedy is unavailable and thus exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

[2]     The cited page numbers for documents refer to those generated by the Court's electronic filing system ("CM/ECF").

The alleged incidents giving rise to the excessive force, sexual abuse, and failure to intervene claims took place on March 30 and April 1, 2017. Plaintiff claims that after he filed informal complaints on April 2, 2017, grievance coordinator Robert Carollo was supposed to provide him with formal grievance forms but failed to do so. Pl.'s Resp. at 6. While Defendants do not provide evidence directly contradicting this claim, they counter that an April 7, 2017 Incident Report, No. 17-0678, documents that Plaintiff "improperly assigned his own numbers" to some grievances that he had submitted to Carollo. Objs. at 2; Dkt. No. 45-1 at 182 ("Incident Report, No. 17-0678"). Defendants state that after Plaintiff was informed he needed to re-file those grievances, Plaintiff did not "mak[e] any complaints of having been hindered in the process" and "waited a month, until May 6, 2017, when he filed additional Complaints regarding the same incidents." Id. However, as the incident report itself notes, Plaintiff apparently stated that Carollo was "a liar and that he didn't get the complaint forms." Incident Report, No. 17-0678. Thus, while Defendants claim Plaintiff is "using unsupported averments, to manufacture an issue of fact," Objs. at 4, the

evidence suggests Plaintiff had at least raised the issue of not being provided the formal grievance forms at the time.

**\*3** Defendants' suggest that "the fact that Plaintiff was thoroughly versed in grievance procedures, having filed 178 of them" indicates that Plaintiff alone was responsible for his failure to file a formal timely grievance in this case. Objs. at 2 n.2; SJ Mot. at 7 n.2. But this does not necessarily weaken Plaintiff's claims—his extensive history of filing grievances could also suggest that, absent interference, he was aware of the five day rule and capable of complying with it.

The R & R found that this dispute creates a genuine issue of material fact about whether Plaintiff's effort to administratively exhaust his claim was thwarted. R & R at 19. The Court agrees. See Ortiz v. Annucci, No. 17-CV-3620, 2019 WL 1438006, at \*8 (S.D.N.Y. Mar. 29, 2019) ("If, in fact, Plaintiff timely attempted to file his grievance by handing it to an officer while in SHU and that officer failed to file the grievance, Plaintiff's avenues for pursuing the grievance would be unavailable ... excusing him from any further exhaustion requirements."). However, as the burden is on Plaintiff to show unavailability of the grievance procedure, Jenkins v. Cordero, No. 17-CV-1592, 2019 WL 2121655, at \*3 (S.D.N.Y. May 15, 2019) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)), and there remains "confusion regarding whether the [grievance process] was available to Plaintiff," R & R at 19, the Court also agrees that a hearing on the exhaustion issue would be beneficial, and refers the hearing Judge Dancks to conduct.

### B. First Amendment Claims again Zurek, Smith, Lewis, and Jones for denial of access to reading materials

Defendants argue that denying Plaintiff all reading materials except a Bible, Koran, or holy book on account of his L-2 Classification did not violate the First Amendment because it was "based on legitimate penological interests."[3] Objs. at 4. The R & R correctly assessed whether this was a "reasonable" limitation on Plaintiff's First Amendment rights by applying Turner v. Safley, 482 U.S. 78, 89–91 (1987). See Young v. Scott, No. 16-CV-44, 2017 WL 3662443, at \*6 (M.D. Fla. Aug. 24, 2017), reconsideration denied, No. 16-CV-44, 2018 WL 1805147 (M.D. Fla. Apr. 17, 2018) (applying Turner factors to First Amendment claim raised by pre-trial detainee); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (same). Under Turner, the Court assesses four factors to determine whether a regulation is reasonable: 1)

whether "there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates"; 3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates"; and 4) whether there is "an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." Turner 482 U.S. at 89–91 (internal quotations omitted).

3      As detailed in the R & R, L-2 classification was for inmates "reclassified 'due to their propensity towards facility violence and/or repeated non-compliance with facility rules and regulations' ... Inmates on L2 status were, among other things, restricted to one hour of recreation a day or one and a half hours five days a week, limited to non-contact visits at special times, allowed limited telephone calls and commissary privileges, and allowed no books other than the Bible, Koran, or Holy book." R & R at 5. Plaintiff was placed on L-2 status on December 26, 2016, after an incident in which he injured a guard. See Dkt. No. 41-4 at 56 ("Incident Report"). The classification was abolished in August 2017 after the Citizen's Policy and Complaint Review Council ("CPCRC") determined that the restrictions violated New York Regulations. See Dkt. No. 41-4 at 121–22 ("CPCRC Letter").

**\*4** With respect to the first and fourth factors, Defendants state "there was a clear relationship to a legitimate government interest in the good order of the Facility" and "it is difficult to imagine a less onerous alternative means in the circumstances for the Correction Facility to have acted in relation to Plaintiff." Objs. at 7. But Defendants are unable to substantiate these conclusory claims. Their Objection asserts that the regulations "were intended to give inmates who were determined ... to be prone to conduct inimical to good order, an incentive to correct their behavior," Id. at 6, but the only citation for this is the Affidavit of Deputy Woodland, which merely states that the L-2 classification was "intended to ensure the safety and good order of the Facility" and makes no direct claims about how limiting reading materials promotes good behavior. Dkt. No. 41-5 ("Woodland Affidavit") ¶ 16. Defendants' reliance on Beard v. Banks, 548 U.S. 521 (2006), which upheld limitations on the most uncooperative prisoners' access to reading materials on the grounds that such limitations could incentivize good behavior, is misplaced. In that case, the defendants "articulated connections between

newspapers and magazines, the deprivation of virtually the last privilege left to an inmate, and a significant incentive to improve behavior." [4] Id. at 531–32. Here, in contrast, as the Report-Recommendation correctly notes, Defendants "failed to identify specific legitimate penological interests for the ban." R & R at 22. Further, despite the Beard defendants' acknowledgment that they were depriving prisoners of "virtually the last privilege left," the regulations were still more generous than the L-2 regulations at issue here, as they allowed for "legal and personal correspondence, religious and legal materials, two library books, and writing paper." Id. at 526.

[4]    The Beard court further noted that "[t]he undisputed facts statement added that the Policy encourages progress and discourages backsliding by level 1 inmates. These statements point to evidence that the regulations serve the function identified." Beard v. Banks, 548 U.S. 521, 522 (2006).

The second factor also favors Plaintiff because there was no apparent alternative means for Plaintiff to exercise his First Amendment rights. While Defendants state that Plaintiff could have modified his behavior and been reclassified during the monthly classification review, Plaintiff states that Woodland told him "you have 19 felonies, you might never come off this status." Compl. ¶ 59. Finally, on the third factor, Defendants' assertion that "allowing Plaintiff to escape any consequences of having injured an officer could well have an undesirable 'ripple effect' on the behavior of other inmates" is unpersuasive as it provides no explanation for why anything short of a blanket deprivation on reading materials would be "allowing Plaintiff to escape any consequences." Objs. at 7.

Thus, while Courts "must accord substantial deference to the professional judgment of prison administrators," Overton v. Bazzetta, 539 U.S. 126, 132 (2003), Defendants' failure to articulate any specific justification in this case follows the "general rule" that "[a]bsolute bans on inmate access to newspapers and magazines ... violate the First Amendment because they are an 'exaggerated response' to legitimate penological needs." Nelson v. Hjorth, No. 18-CV-88, 2018 WL 2050571, at *6 (D. Neb. May 2, 2018) (quoting Mann v. Smith, 796 F.2d 79, 82 (5th Cir. 1986)).

**C. Qualified Immunity for First Amendment claims against Defendants Zurek, Smith, Lewis, and Jones**

Defendants' Objections raises only one ground on which they are entitled to qualified immunity: "it was objectively reasonable for them to believe" that "the limitations imposed by L-2 status were indeed proper penologically-based restrictions" because the L-2 classification "had remained in place and operation unquestioned for over 20 years." Objs. at 8. Defendants do not, however, cite any cases to back the assertion that because a policy has been in effect for a long time, it is objectively reasonable to believe it is constitutional. And the Second Circuit has held a defendant's actions can be objectively unreasonable even if that defendant was following a policy. See Sorensen v. City of New York, 42 F. App'x 507, 510–11 (2d Cir. 2002) (affirming denial of qualified immunity and rejecting defendants' argument "that they were simply low-level employees following orders and that it was objectively reasonable for them to believe that a policy promulgated by the City was constitutional ... immunity has been granted [in such cases] only when the orders were facially valid ... the strip-search policy at issue here, however, had twice been declared unconstitutional by this court, and so was not facially valid.") [5],[6] Thus, Defendants are not entitled to qualified immunity at this time.

[5]    Defendants do not object to the Report-Recommendation's finding that a detainee's First Amendment right of access to reading material is "clearly established." R & R at 23–24 (citing Turner 482 U.S. at 89–90; Beard 548 U.S. at 535). The Court notes that because "public officials are held to constructive knowledge of the law, the issue here is not whether a reasonable person would have known what the law was, but simply whether the law was clearly established." Sorensen 42 F. App'x at 510.

[6]    The R & R found that Defendants were not entitled to qualified immunity in part because there was a need for more fact finding about whether Zurek denied reading materials to punish Plaintiff's filing of a sexual abuse claim. R & R at 24 n.9. The Court notes that because it is denying summary judgment based on qualified immunity on the grounds that Defendants have not shown that their reliance on a longstanding policy is per se objectively reasonable, the Court does not rely on the Report-Recommendations reasoning on the issue of qualified immunity. Not relying the ambiguity of Zurek's motivations does not, of

course, preclude additional fact finding on the issue should it be relevant.

**V. CONCLUSION**

**\*5**  Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 50) is **APPROVED and ADOPTED in its entirety**, except that Defendants' assertion they are entitled to qualified immunity is denied because they have not shown that their compliance with a longstanding policy was objectively reasonable; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 41) on all claims asserted against them in their official capacities is **GRANTED**; and it is further

**ORDERED**, that Defendants Woodland and Getchell's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED**, that Defendants Breen and Lewis's Motion for Summary Judgment on Plaintiff's First Amendment retaliation claims is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's Fourteenth Amendment claims for excessive force, sexual abuse, and

failure to intervene against Defendants Breen, Jones, and Lewis; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's First Amendment claims for denial of access to reading material against Defendants Zurek, Smith, Lewis, and Jones; and it is further

**ORDERED**, that Defendants Motion for Summary Judgement is **DENIED** with respect to Defendants Zurek, Smith, Lewis, and Jones's assertion of qualified immunity, without prejudice to reconsideration of the issue of qualified immunity at trial; and it is further

**ORDERED**, that Judge Dancks recommendation that a hearing be conducted on the issue of exhaustion is **GRANTED and REFERRED** to Judge Dancks to conduct; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 4051596

---

Adams v. O'Hara, Not Reported in Fed. Supp. (2019)

2019 WL 652409

2019 WL 652409
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, III, Plaintiff,
v.
David O'HARA, Corr. Officer, Auburn Corr.
Fac.; K. Kirkwood, Corr. Officer, Auburn Corr.
Fac.; C. Curtis, Corr. Officer, Auburn Corr.
Fac.; L. Seery, Corr. Officer, Auburn Corr.
Fac.; P. Dilallo, Corr. Officer, Auburn Corr.
Fac.; and S. Walshvelo, Corr. Serg., Auburn
Corr. Fac., a/k/a S. Walshevo, Defendants.

9:16-CV-0527 (GTS/ATB)
|
Signed 02/15/2019

**Attorneys and Law Firms**

OF COUNSEL: NOLAN J. LAFLER, ESQ., BLITMAN
& KING LLP, 443 North Franklin Street, Franklin Center,
Suite 300, Syracuse, NY 13204-1415, Pro Bono Counsel for
Plaintiff.

HON. LETITIA A. JAMES, OF COUNSEL: DENISE P.
BUCKLEY, ESQ., KONSTANDINOS D. LERIS, ESQ.,
Assistants Attorney General, Attorney General for the State
of New York, The Capitol, Albany, NY 12224, Counsel for
Defendants.

## DECISION and ORDER

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** The trial in this prisoner civil rights action, filed
*pro se* by Robert Adams, III ("Plaintiff") pursuant to 42
U.S.C. § 1983, began with an evidentiary hearing before the
undersigned on February 12, 2019, regarding the affirmative
defense of the six above-captioned correctional employees
("Defendants") that Plaintiff failed to exhaust his available
administrative remedies, before filing this action on May 4,
2016, as required by the Prison Litigation Reform Act. At the
hearing, documentary evidence was admitted, and testimony
was taken of Plaintiff as well as Defendants' three witness
(Auburn Correctional Facility Lieutenant Timothy C. Abate,
Auburn Correctional Facility Inmate Grievance Program
Supervisor Cheryl Parmiter, and New York State Department

of Corrections and Community Supervisor Inmate Grievance
Program Assistant Director Rachael Seguin), whom Plaintiff
was able to cross-examine through *pro bono* trial counsel.
At the conclusion of the hearing, the Court indicated that a
written decision would follow. This is that written decision.
For the reasons stated below, Plaintiff's Second Amended
Complaint is dismissed because of his failure to exhaust his
available administrative remedies before filing this action.

## I. RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires
that prisoners who bring suit in federal court must first
exhaust their available administrative remedies: "No action
shall be brought with respect to prison conditions under §
1983 ... by a prisoner confined in any jail, prison, or other
correctional facility until such administrative remedies as are
available are exhausted." 42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve
the quality of prisoner suits" by "afford[ing] corrections
officials time and opportunity to address complaints internally
before allowing the initiation of a federal case." *Porter
v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard,
exhaustion serves two main purposes. First, it protects
"administrative agency authority" by giving the agency "an
opportunity to correct its own mistakes with respect to the
programs it administers before it is haled into federal court,
and it discourages disregard of the agency's procedures."
*Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion
promotes efficiency because (a) "[c]laims generally can be
resolved much more quickly and economically in proceedings
before an agency than in litigation in federal court," and (b)
"even where a controversy survives administrative review,
exhaustion of the administrative procedure may produce
a useful record for subsequent judicial consideration."
*Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion
requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some
other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State
Department of Corrections and Community Supervision
("DOCCS") has made available a well-established inmate
grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the
DOCCS Inmate Grievance Program ("IGP") involves the
following three-step procedure for the filing of grievances. 7
N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7. [1]

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 84 of 141

Adams v. O'Hara, Not Reported in Fed. Supp. (2019)

2019 WL 652409

1    *See also Murray v. Palmer,* 03-CV-1010, 2010 WL
     1235591, at \*1 & n.1 (N.D.N.Y. March 31, 2010)
     [citation omitted].

**\*2**  <u>First</u>, an inmate must file a complaint with the facility's
IGP clerk within a certain number of days of the alleged
occurrence. [2] If a grievance complaint form is not readily
available, a complaint may be submitted on plain paper. A
representative of the facility's inmate grievance resolution
committee ("IGRC") has a certain number of days from
receipt of the grievance to informally resolve the issue. If
there is no such informal resolution, then the full IGRC
conducts a hearing within a certain number of days of receipt
of the grievance, and issues a written decision within a certain
number of days of the conclusion of the hearing.

2    The Court uses the term "a certain number of
     days" rather than a particular time period because
     (1) since the three-step process was instituted, the
     time periods imposed by the process have changed,
     and (2) the time periods governing any particular
     grievance depend on the regulations and directives
     pending during the time in question.

<u>Second</u>, a grievant may appeal the IGRC decision to the
facility's superintendent within a certain number of days of
receipt of the IGRC's written decision. The superintendent is
to issue a written decision within a certain number of days of
receipt of the grievant's appeal.

<u>Third</u>, a grievant may appeal to the central office review
committee ("CORC") within a certain number of days of
receipt of the superintendent's written decision. CORC is to
render a written decision within a certain number of days of
receipt of the appeal.

Moreover, there is an expedited process for the review
of complaints of inmate harassment or other misconduct
by correction officers or prison employees. 7 N.Y.C.R.R.
§ 701.8. In the event the inmate seeks expedited review,
he or she may report the misconduct to the employee's
supervisor. The inmate then files a grievance under the
normal procedures outlined above, but all grievances alleging
employee misconduct are given a grievance number, and
sent immediately to the superintendent for review. Under
the regulations, the superintendent or his designee shall
determine immediately whether the allegations, if true, would
state a "bona fide" case of harassment, and if so, shall
initiate an investigation of the complaint in one of three

ways: "in-house," by the New York State Office of the
Inspector General, or by the New York State Police's Bureau
of Criminal Investigation. An appeal of the adverse decision
of the superintendent may be taken to the CORC as in the
regular grievance procedure. A similar special procedure is
provided for claims of discrimination against an inmate. 7
N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards.
For example, if an inmate could not file such a complaint
within the required time period after the alleged occurrence,
he or she could apply to the facility's IGP Supervisor
for an exception to the time limit based on mitigating
circumstances. If that application was denied, the inmate
could file a complaint complaining that the application was
wrongfully denied. [3] Moreover, any failure by the IGRC
or the superintendent to timely respond to a grievance or
first-level appeal, respectively, can–and must–be appealed to
the next level, including CORC, to complete the grievance
process. [4]

3    *See Murray v. Palmer,* 03-CV-1010, 2010 WL
     1235591, at \*2 & n.3 (N.D.N.Y. March 31, 2010)
     (citing *Groves v. Knight,* 05-CV-0183, Decision
     and Order at 3 [N.D.N.Y. filed Aug. 4, 2009],
     an appeal from which was subsequently dismissed
     as frivolous, *see Groves v. Knight,* No. 09-3641,
     Mandate [2d Cir. filed Jan. 15, 2010].)

4    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided
     within the time limits may be appealed to the next
     step."); *see also Murray,* 2010 WL 1235591, at
     \*2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. §
     701.8(g) ("If the superintendent fails to respond
     within the required 25 calendar day time limit the
     grievant may appeal his/her grievance to CORC.").

**\*3**  It is important to note that, where an inmate does
not know that an unprocessed grievance (i.e., a grievance
that has not been assigned a grievance number) may
technically be appealed, he need not appeal that unprocessed
grievance, because the regulatory scheme advising him of that
right is too opaque. *See Williams v. Corr. Officer Priatno,*
829 F.3d 118, 126 (2d Cir. 2016) (finding that, "even if
Williams technically could have appealed his [unprocesseed]
grievance, we conclude that the regulatory scheme providing
for that appeal is 'so opaque' and 'so confusing that ... no
reasonable prisoner can use' [it pursuant to *Ross v. Blake,* 136
S. Ct. 1850 (2016) ]").

It is also important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

> A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

> B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

> C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord, Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may

have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

**\*4** However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id.* In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id.* In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 86 of 141

Adams v. O'Hara, Not Reported in Fed. Supp. (2019)

2019 WL 652409

jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of providing that a prisoner has failed to exhaust his available administrative remedies. [5] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability. [6] As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

[5]   *Id.* at *4 [citation omitted].

[6]   *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, ... justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

**II. ANALYSIS**

According to Plaintiff, he made three attempts to exhaust his available administrative remedies regarding the claims at issue in this action: (1) he filed a grievance at Auburn Correctional Facility ("Auburn C.F."); (2) he sent a letter of complaint to the New York State Office of the Inspector General ("Inspector General"); and (3) he filed a grievance at Southport Correctional Facility ("Southport C.F."). (Hrg. Tr.) [7]

[7]   The Court notes that Defendants' Answers timely asserted this affirmative defense. (Dkt. No. 101, at ¶ 18 [Defs.' Answer]; Dkt. No. 102, at ¶ 17 [Def. Walshvelo's Answer].)

**A. Plaintiff's First Attempt: Filing a Grievance at Auburn C.F.**

**\*5**   The Court begins by finding that, if a correctional sergeant ripped up Plaintiff's grievance in front of him and threatened him not to further pursue the grievance as Plaintiff testified, sufficient grounds would exist to deem his administrative remedies to have been effectively rendered unavailable (despite his having continued to complain through avenues other than the grievance process at Auburn C.F.). This is because the unavailability inquiry is an objective one, [8] which survives the Supreme Court's decision in *Ross*. [9]

[8]   *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available.... Moreover, it should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.").

[9]   *See, e.g., Davis v. Doe*, 16-CV-0994, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017) (Stewart, M.J.) (continuing to apply objective test after *Ross* ), *adopted*, 2018 WL 1582230 (N.D.N.Y. March 27, 2018) (D'Agostino, J.); *accord, Allen v. Graham*, 16-CV-0047, 2017 WL 9511168, at *6 (N.D.N.Y. Sept. 26, 2017) (Baxter, M.J.), *adopted*, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017) (Suddaby, C.J.); *White v. Dishaw*, 14-CV-0002, 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017) (Stewart, M.J.), *adopted*, 2017 WL 4326074 (N.D.N.Y. Sept. 27, 2017) (Sharpe, J.); *Cole v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 14-CV-0539, 2016 WL 5394752, at *10 (N.D.N.Y. Aug. 25, 2016) (Peebles, M.J.), *adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016) (Sannes, J.).

However, after carefully considering the matter, the Court finds that Plaintiff has failed to offer any credible evidence that, while he was at Auburn C.F. between January 20 and January 22, 2015, he submitted a grievance that a correctional employee either ripped up or threatened him not to continue pursue. (*See generally* Hrg. Tr.) In finding

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 87 of 141

Adams v. O'Hara, Not Reported in Fed. Supp. (2019)

2019 WL 652409

that Plaintiff's hearing testimony lacks credibility, the Court relies on the following eight facts: (1) Plaintiff's unconvincing demeanor and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during his testimony; [10] (2) the fact that Plaintiff contradicted himself by initially testifying at the hearing that he did not "actually observe" (but only "heard") the correction officer who picked up his grievance and then later testifying that he *did* see, and indeed made eye contact with, that correction officer (which is consistent with his prior deposition testimony); [11] (3) the inconsistency between Plaintiff's testimony that he had "[a]t least twice" filed grievances at Auburn C.F. "on the standard form for inmate grievances" (other than the grievance he purportedly submitted regarding the events of this litigation) and the unchallenged hearing testimony of IGP Supervisor Parmiter that Plaintiff *never* filed a grievance at Auburn C.F. (as well as Plaintiff's apparent stipulation that he never filed a grievance at Auburn C.F.); [12] (4) the inconsistency between Plaintiff's hearing testimony that an unidentified sergeant ripped up his first grievance about the assault (which stopped Plaintiff from filing another grievance at Auburn C.F.) and Plaintiff's assertion (in his letter of June 1, 2015) that the interception of his grievance about the assault occurred "on two separate occasions, by S.H.U. Supervisors"; [13] (5) the inconsistency between Plaintiff's hearing testimony that complaining about the individual who had threatened him would have been like "throwing a ball in the dark" because Plaintiff "wasn't able to identify [him]" [14] and the fact that Plaintiff knew the individual's (a) rank ("sergeant"), (b) hair color ("brown"), (c) approximate height ("5-10 to 6 foot"), (d) approximate weight ("two [hundred pounds] and some change, 220"), and most importantly (e) his *job assignment* (as the admitted supervisor of the correction officers who had allegedly assaulted Plaintiff); [15] (6) the fact that it is difficult to believe that Plaintiff would not have even *tried* to avail himself of the opportunity to place his sealed grievance directly through a slot into the locked mailbag (beyond the reach of correctional employees until it reaches the grievance office), given his belief that "keep[ing] everything inside quiet, on the hush" is "what they do up there [in S.H.U.] ... they want total control"; [16] (7) the fact that it is difficult to believe that a correctional sergeant would take off his name tag (which in itself would subject him to discipline) and then stand before an inmate's cell in SHU and tear up the inmate's grievance, knowing that the act would be captured on video and that the video would be retained for a period of two weeks (and even longer if the inmate complained of

the incident, in which case the video would be saved to a DVD); [17] and (8) the fact that it is difficult to believe that Plaintiff would write to the Inspector General on January 22, 2015, complaining about the intimidation he experienced two days before by Correction Officer "K. Deford" (who purportedly banged on Plaintiff's cell in the Mental Health Unit and stated, *inter alia*, "There's more where that came from. We're not finished w[ith] you yet") without mentioning that a sergeant purportedly ripped up Plaintiff's grievance earlier in the day on January 22. [18]

10    *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

11    (*Compare* Hrg. Tr. at 10, 21 [Plf's Hrg. Testimony] *with* Hrg. Tr. at 10, 22-23, 31-32 [Plf.'s Hrg. Testimony] *and* Hrg. Ex. D-5, at 127 [Plf.'s Depo. Tr.].)

12    (*Compare* Hrg. Tr. at 7-8 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 55 [Parmiter Hrg. Testimony] *and* Hrg. Tr. at 4 [Tr. of Parties' Stipulations, in which Plaintiff's counsel stated, "We also understood that there was going to be testimony from the defense that the internal grievance files at Auburn were searched and that no record of a grievance from the plaintiff was located. We can stipulate to that issue as well."].)

13    (*Compare* Hrg. Tr. at 6-7, 24, 33 [Plf.'s Hrg. Testimony] *with* Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015].)

14    (Hrg. Tr. at 32 [Plf.'s Hrg. Testimony].)

15    (Hrg. Tr. at 11-14 [Plf.'s Hrg. Testimony, stating, *inter alia*, that the sergeant referred to the offending corrections officers as "my officers"]; Dkt. No. 138, Attach. 4, at ¶ 3 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt." and stating that he referred to the offending correction officers as "my officers"]; Dkt. No. 138, Attach. 3, at ¶ 18 [Plf.'s Sworn Statement,

2019 WL 652409

identifying the individual as "the SHU Block Sgt."].)

16    (Hrg. Tr. at 41-44, 38, 50 [Abate's Hrg. Testimony]; Hrg. Tr. at 33 [Plf.'s Hrg. Testimony].) The Court notes that, despite Lieutenant Abate's (somewhat vague) indication that a prisoner had to "hand[ ] [his grievance] to an officer," a fair reading of Lieutenant Abate's hearing testimony leads the Court to believe that, had he wanted to, Plaintiff could have "directly place[d]" his grievance "into the mailbag." (Hrg. Tr. at 42, 44, 50 [Abate's Hrg. Testimony].)

17    (Hrg. Tr. at 11-14, 32 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 39-41, 45-47 [Abate's Hrg. Testimony].)

18    (Hrg. Tr. at 28-31, 33-34 [Plf.'s Hrg. Testimony]; Hrg. Ex. P-1, at 7 [attaching page "5" of Plf.'s Letter to IG dated Jan. 22, 2015].)

**B. Plaintiff's Second Attempt: Sending a Letter of Complaint Directly to the Inspector General**

*6  Setting aside (for the sake of brevity) the fact that Plaintiff never obtained a referral from the superintendent before complaining to the Inspector General, no record evidence exists either that Plaintiff received a finding of substantiation by the Inspector General or that he appealed to CORC any finding of unsubstantiation by the Inspector General. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 58 [Seguin's Hrg. Testimony]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC]; D-5, at 129-32 [Plf.'s Depo. Tr.]; Hrg. Ex. P-1 [Plf.'s Letter to IG dated Jan. 22, 2015]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

As this Court has previously explained, "There is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC." Smith v. Kelly, 985 F. Supp.2d 275, 285 (N.D.N.Y. 2013) (Suddaby, J.) (collecting cases), accord, McPherson v. Rogers, 12-CV-0766, 2014 WL 675830, at *7 (N.D.N.Y. Feb. 21, 2014) (report-recommendation of Peebles, M.J., adopted by Hurd, J.).

This is especially true after the Supreme Court's June 6, 2016, decision in Ross. See, e.g., Kearney v. Gebo, 15-CV-0253, 2017 WL 61951, at *6 (N.D.N.Y. Jan. 4, 2017) ("As discussed above, however, the Supreme Court recently rejected the Second Circuit's 'special circumstances' exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaint to the Inspector General, which does not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust."), aff'd, 713 F. App'x 39 (2d Cir. 2017) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures unavailable to him, such that he is excused from complying with those ordinary procedures. Their pendency did not preclude him from filing a grievance. Nor did any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted).

Analyzed through the framework set forth by Ross, here, the pending nature of the Inspector General's investigation in no way precluded Plaintiff from filing a grievance. See Kearney v. Gebo, 713 F. App'x 39, 42 (2d Cir. 2017) ("[The pendency of] Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction ... did not preclude him from filing a grievance."). Nor did any assurance that Plaintiff received that the Inspector General was considering his complaint warrant a finding that prison administrators thwarted Plaintiff from pursuing the ordinary grievance procedures "through machination, misrepresentation, or intimidation." See Kearney, 713 F. App'x at 42 ("Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted). To the contrary, Plaintiff swears that, after interviewing Plaintiff for an hour, the Inspector General's investigator instructed Plaintiff to contact the Inspector General if he experienced further issues or retaliation. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

**C. Plaintiff's Third Attempt: Filing a Grievance at Southport C.F.**

*7  The grievance that Plaintiff filed at Southport C.F. was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness. (Hrg.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 89 of 141

Adams v. O'Hara, Not Reported in Fed. Supp. (2019)

2019 WL 652409

Tr. at 19-20 [Plf.'s Hrg. Testimony]; Hrg. Ex. D-5, at 138-39 [Plf.'s Depo. Tr.]; Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015]; Hrg. Ex. P-3 [Southport C.F. IGP Supervisor's Letter to Plf. dated June 2, 2015]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC].)

Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies. *See Cole v. Miraflor*, 02-CV-9981, 2006 WL 457817, at *5 (S.D.N.Y. Feb. 23, 2006) ("Contrary to Cole's claim that administrative remedies were no longer available to him because DOCS did not find mitigating circumstances to excuse his late grievance, ... the very fact that DOCS' policies provide for the filing of late grievances where there are mitigating circumstances, demonstrates that administrative remedies were available to Plaintiff."), *aff'd*, 305 F. App'x 781 (2d Cir. 2009); *Galberth v. Durkin*, 14-CV-0115, 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (Baxter, M.J.) ("An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances."), *adopted*, 2016 WL 3910270 (N.D.N.Y. July 14, 2016) (Sannes, J.); *Burns v. Zwillinger*, 02-CV-5802, 2005 WL 323744, at *3 (S.D.N.Y. Feb. 9, 2005) ("Since [plaintiff] failed to present mitigating circumstances for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher*, 339 F.Supp.2d 592, 595 (S.D.N.Y. 2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") (collecting cases).

As explained by the Court,

> If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement: affording corrections officials the time and opportunity to quickly and economically correct its own mistakes internally, and producing a useful

record for litigation, before allowing the initiation of a federal case.

*Smith v. Kelly*, 985 F. Supp.2d 275, 290-91 (N.D.N.Y. 2013) (Suddaby, J.); *see also Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (report-recommendation of Lowe, M.J., adopted by Hurd, J.) ("If the rule were to the contrary, then, as a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement.").

### D. Conclusion

None of Plaintiff's three attempts to exhaust his available administrative remedies was sufficient under the PLRA, *Ross* and *Hemphill*. As for Plaintiff's first attempt (on which he appeared to rely most strongly at the hearing), simply stated, the Court agrees with Defendants that, after Plaintiff learned that his hasty complaint directly to the Inspector General had not been substantiated, and after he learned that he would not be able to file a timely grievance at Southport C.F., he fabricated the story that his grievance had been destroyed and he had been threatened while at Auburn C.F. (Hrg. Tr. at 31.) The Court is not convinced by Plaintiff's contradictory and incredible hearing testimony.

**\*8 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DISMISSED in its entirety with prejudice** [19] for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

19    The Court notes that this dismissal is with prejudice because "it is not possible for Plaintiff to obtain a waiver to file a late appeal to CORC." *Nickelson v. Annucci*, 15-CV-0227, 2019 WL 396003, at *1 & n.2 (N.D.N.Y. Jan. 31, 2019) (Suddaby, J.) (citing 7 N.Y.C.R.R. § 701.6[g] [2007] and *Murray v. Goord*, 03-CV-1010, 2008 WL 2522324, at *19 [N.D.N.Y. June 20, 2008] ); *see also Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) ("[T]he broader dictum that dismissal for failure to exhaust 'should'

2019 WL 652409

be without prejudice would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."); *McCoy v. Goord*, 255 F. Supp.2d 233, 252 (S.D.N.Y. 2003) ("[W]here a plaintiff is effectively barred from administrative exhaustion–such as when the time for administrative exhaustion

has expired and the inmate has been denied a waiver to file a late grievance–courts have not hesitated to dismiss with prejudice.").

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 652409

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 806331
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul STEPHANSKI, Plaintiff,

v.

Randy ALLEN, Sergeant, Cape Vincent Correctional
Facility; Thomas Stackle, Correctional Officer,
Cape Vincent Correctional Facility; and
Brandon Payne, Correctional Officer, Cape
Vincent Correctional Facility, Defendants.

9:18-CV-0076 (BKS/CFH)
|
Signed 01/22/2020

**Attorneys and Law Firms**

PAUL STEPHANSKI, 99-B-2439, Plaintiff pro se, Marcy
Correctional Facility, P.O. Box 3600, Marcy, New York
13403.

HON. LETITIA JAMES, Attorney General for the State
of New York, OF COUNSEL: AIMEE COWAN, ESQ.,
Assistant Attorney General, Attorney for Defendants, 300
South State Street, Suite 300, Syracuse, New York 13202.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]     This matter was referred to the undersigned for
report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Paul Stephanski ("Stephanski"), an
inmate who was, at all relevant times, in the custody of
the New York Department of Corrections and Community
Supervision ("DOCCS"), brings this action pursuant to
42 U.S.C. § 1983 against Defendants Sergeant Randy
Allen ("Allen") and Correctional Officers Thomas Stackle
("Stackle") and Brandon Payne ("Payne") for alleged
violations of his rights under the Eighth Amendment. Dkt.
No. 1 ("Compl."). Presently before the Court is Defendants'
motion for summary judgment. Dkt. No. 39. Stephanski
opposed the motion, and Defendants submitted a reply. Dkt.

Nos. 44, 45. For the following reasons, it is recommended that
Defendants' motion for summary judgment be denied.

## I. BACKGROUND

### A. FACTS [2]

[2]     The parties provided exhibits with their
submissions, without objection or challenges to
the authenticity of any of the opposing parties'
documents. Therefore, to the extent that the "facts"
asserted by the parties are supported by the record,
the undersigned will consider the facts and relevant
exhibits or documents in the context of the within
motion. See U.S. v. Painting known as Hannibal,
No. 07-CV-1511, 2010 WL 2102484, at *1, n.
2 (S.D.N.Y. May 18, 2010) (citing Daniel v.
UnumProvident Corp., 261 F. App'x 316, 319 (2d
Cir. 2008) (summary order) ("[A] party is not
required to authenticate documents on a summary
judgment motion where, as here, authenticity is
not challenged by the other party)). In light of the
procedural posture of the case, the recitation of
facts is derived from the record now before the
Court, with all inferences drawn and ambiguities
resolved in non-moving party's favor. Terry v.
Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

In support of their motion, Defendants filed a Statement of
Material Facts. [3] Dkt. No. 39-9. The facts are reviewed in the
light most favorable to Stephanski as the non-moving party.
See subsection II.A.1 infra.

[3]     Local Rule 7.1(a)(3) states:
Summary Judgment Motions
Any motion for summary judgment shall
contain a Statement of Material Facts. The
Statement of Material Facts shall set forth,
in numbered paragraphs, each material fact
about which the moving party contends there
exists no genuine issue. Each fact listed shall
set forth a specific citation to the record
where the fact is established. The record for
purposes of the Statement of Material Facts
includes the pleadings, depositions, answers to
interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

### 1. Use of Force Incident

**\*2** On September 30, 2015, a use of force incident involving Stephanski and Defendants occurred at Cape Vincent Correctional Facility ("Cape Vincent C.F."). Compl. at 5-6. [4] At approximately 5:30 P.M., Stephanski was smoking a cigarette in his cell, C29, in the Special Housing Unit ("SHU"). Dkt. No. 39-2 at 26-27. Payne and Stackle came to Stephanski's cell and directed him to put his hands out of the hatch to be handcuffed. [5] Id. at 29. Stephanski complied, and Defendants handcuffed him with his arms behind his back. Id. at 30-31, 40. One of the officers told Stephanski to walk to the center of the cell. Id. at 34. Stephanski complied, and Payne and Stackle "rushed in." Dkt. No. 39-2 at 34. Stackle grabbed Stephanski and pushed him to the corner of the room while Payne searched the cell. Id. Stackle punched Stephanski twice in the ribcage, and Payne punched him six to eight times in the back. Id. at 34-41. Defendants forcibly removed Stephanski from his cell. Id. at 39.

[4] The Court's citation to page numbers in materials filed on the docket refer to the pagination generated by CM/ECF located at the header of each page.

[5] Stephanski had not met Payne or Stackle before the September 30, 2015 incident. Dkt. No. 39-2 at 32-33.

Payne and Stackle escorted Stephanski to the strip frisk room where they were met by Allen. Dkt. No. 39-2 at 41. Allen directed Stephanski to lie on the floor of the room and then punched him eight times in the back of his right leg while Payne twisted his right ankle and Stackle "mush[ed] [his] face

into the floor." Id. at 43-46. After the incident, Stephanski was confined to the SHU and remained on "special watch" for eleven days. Dkt. No. 39-8 at 4. On November 6, 2015, Stephanski was transferred to Southport Correctional Facility ("Southport C.F."). [6] Dkt. No. 39-2 at 62-63; Dkt. No. 39-4 at 7.

[6] Stephanski was confined at Cape Vincent C.F. from March 2015 until November 2015. Dkt. No. 39-4 at 7.

### 2. Grievances

Stephanski testified that between October 7, 2015 and October 9, 2015, he attempted to file two grievances while confined in Cape Vincent C.F. SHU Cell A-1-1. [7] Dkt. No. 39-3 at 14-15. Stephanski claims that he handed the grievances to an officer who collected mail and that he observed the officer put the mail in a locked box. Id. Stephanski alleges that the grievances, "never got to [the Inmate Grievance Committee]." Dkt. No. 39-2 at 60-62. Stephanski did not receive a response to his grievances. Id. at 62.

[7] Defendants dispute this contention.

After Stephanski arrived at Southport C.F., he wrote a letter to the Cape Vincent Grievance Committee inquiring about the status of his grievance(s) related to the September 2015 incident. [8] Dkt. No. 39-2 at 61-62; Dkt. No. 39-8 at 11. The letter reads, "[w]hen I was at your facility I wrote a grievance on a assault that took place in your box-against C.O. Stackle, C.O. Payne and Sgt. Allen - what is the status on that grievance - please respond." Id.

[8] The letter, attached as an exhibit to Defendants' motion, is undated. Dkt. No. 39-8 at 11.

On November 27, 2015, Stephanski submitted a written grievance to the Inmate Grievance Resolution Committee ("IGRC") at Southport C.F. related to the September 2015 incident. Dkt. No. 39-2 at 64-65; Dkt. No. 39-6 at ¶ 11. In the grievance, Stephanski described the use of force incident and claimed, "I also filed a grievance got no response - I also wrote and reported it to IG in Albany - still haven't heard anything so I now file this at Southport C.F. due to mitigating circumstances." Dkt. No. 39-8 at 5-6. Stephanski also alleged that his grievances and letters were "tampered with[.]" [9] Id.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 93 of 141

9        Stephanski proffers a copy of the grievance filed
         at Southport C.F. Dkt. No. 44-5 at 6-7. Defendants
         also provided a copy of the grievance. Dkt. No.
         39-8 at 5-6.

On November 30, 2015, Tami Hartz ("Hartz"), the Inmate
Grievance Program ("IGP") Supervisor at Cape Vincent C.F.,
responded to Stephanski's inquiry. The response states, "This
is in response to your note received on 11/30/15. A review of
the IGRC log reveals there is no record of a grievance from
you in 2015." Dkt. No. 39-2 at 61-62; Dkt. No. 39-8 at 10. On
November 30, 2015, the IGP Supervisor denied the grievance
as "untimely." [10] Dkt. No. 39-2 at 64; Dkt. No. 39-6 at ¶ 13.

10       The record does not contain a copy of this decision.

 **3**  On December 1, 2015, Stephanski wrote a letter to "H.
Martin," the IGP Supervisor at Southport C.F., "returning the
grievance" because it "need[ed] a number." Dkt. No. 39-2
at 64; Dkt. No. 39-8 at 4. Stephanski indicated, "I do not
know if Cape Vincent Correctional Facility filed my original
complaint[.]" Dkt. No. 39-8 at 4. Stephanski noted, "this
needs to be filed and given a number - your response [that
it] is untimely - that's fine - please give it a number so it's on
file." Id. Stephanski argued that "mitigating circumstances"
excused the late filing. Id.

On December 2, 2015, the IGRC received and filed the
grievance as SPT-61355-15. Dkt. No. 39-6 at ¶ 15; Dkt. No.
39-8 at 2.

On December 4, 2015, DOCCS issued a document entitled
"Inmate Grievance Program - Investigation", denying
Grievance No. SPT 61355-15. [11] Dkt. No. 39-8 at 2, 3, 9.
Under the heading "Investigative Report," the decision states:
"Denied: According to Cape Vincent C.F. no grievance was
filed concerning this issue. Grievant was informed by mail
dated 11/30/15. The incident is untimely and will not be
investigated." Dkt. No. 39-8 at 9. The Investigative Report
also contains the following notation:

1/27 - IGPS Hartz

No F/U with IGPS prior to 11/6 T/F to SPT.

Dkt. No. 39-8 at 9.

11       The signature of the "Report Writer" is illegible.
         Dkt. No. 39-8 at 9. Under the heading, "Name of

Person(s)/Title and/or Department Involved" is the
name "T. Hartz IGPS". Id.

On December 9, 2015, Stephanski appealed the IGRC's
decision to the Superintendent. Dkt. No. 39-8 at 3. On
December 10, 2015, the Superintendent denied the grievance.
Id. at 2, 7. The response reads:

> Upon full hearing of the facts and
> circumstances in the instant case, the
> action requested herein is denied.
> According to our investigation Cape
> Vincent CF has advised that no
> grievance concerning this issue was
> ever received and filed. Grievant was
> informed by mail dated 11/30/15 that
> the issues in his complaint are now
> beyond the timeframes established in
> Directive 4040. Therefore, any issues
> raised in grievant's complaint which
> exceed the time frames for filing a
> grievance will not be addressed and
> should not be the subject of another
> grievance.

Dkt. No. 39-8 at 7.

On December 14, 2015, Stephanski appealed the decision to
the Central Office Review Committee ("CORC") arguing that
"[d]ue to Cape Vincent not filing grievance - this should be
accepted and investigated fully." Dkt. No. 39-8 at 2, 3, 7.

On February 17, 2016, CORC issued a decision and
"unanimously denied [the appeal] as without merit." Dkt.
No. 39-8 at 1; Dkt. No. 39-6 at ¶ 16. CORC reasoned that
Stephanski could not avail himself of Section 701.6(g)(1)(i)
(a) [12] because "an exception to the time limit may not be
granted more than 45 days after an alleged occurrence." Dkt.
No. 39-8 at 1; Dkt. No. 44-5 at 9.

12       § 701.6(g)(i)(i)(a) provides:
         Time limit exceptions and extensions.
         (1) Time limit for filing a grievance or appeal:
         (i) An inmate may request an exception to the
         time limit for filing a grievance, or for filing an
         appeal to the superintendent or to CORC. Such a
         request shall be in writing and shall be submitted

to the grievance clerk with the grievance or appeal the inmate wishes to file.

(a) The IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances (e.g., timely attempts to resolve a complaint informally by the inmate, etc.). An exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence.

N.Y.C.R.R. tit. 7, § 701.6

### B. Procedural History

*4 On January 18, 2018, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendants to respond to the Eighth Amendment claim. Dkt. No. 9. On June 1, 2018, Defendants filed an Answer to the Complaint. [13] Dkt. No. 18. On November 21 and December 7, 2018, Stephanski appeared at depositions. [14] Dkt. No. 39-2 and 39-3. On June 26, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Stephanski's Eighth Amendment claim. Dkt. No. 39.

[13]    In the Answer, Defendants pleaded, inter alia, the affirmative defense that Stephanski failed to exhaust his administrative remedies. Dkt. No. 18 at ¶ 19.

[14]    The November 2018 deposition was continued due to time constraints. Dkt. No. 39-3 at 5.

### II. DISCUSSION

Stephanski contends that Defendants used excessive force during the September 2015 incident in violation of the Eighth Amendment. See generally Compl. Defendants move for summary judgment on Stephanski's Eighth Amendment claim arguing that he failed to exhaust his administrative remedies. See generally Dkt. No. 39.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving

party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion [15]

[15]    Unpublished decisions cited herein have been provided to plaintiff pro se.

**\*5** Defendants contend that the motion for summary judgment must be granted because Stephanski failed to exhaust his administrative remedies through available grievance procedures. See Dkt. No. 39. The PLRA requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court of the United States has held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ––– U.S. ––––, 136 S. Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [16]

[16]   In Williams v. Priatno, the Second Circuit debated Ross' effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y.C.R.R. tit. 7, § 701.5 (2015). First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

**\*6** If it is found that the plaintiff has not exhausted all available administrative remedies, his or her case generally should be dismissed without prejudice. Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted). Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing

administrative remedies has not expired, a prisoner ... can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003), amended 2004 (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

Where the grievance involves allegations of employee excessive force, as alleged by Stephanski, there is an expedited administrative process. N.Y.C.R.R. tit. 7, § 701.8; see Torres v. Carry, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009). Complaints and grievances of this nature are forwarded directly to the superintendent of the facility. Bell v. Napoli, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *2 (N.D.N.Y. Dec. 11, 2018). In such cases the superintendent is required to order an investigation and render a decision within twenty-five (25) days. Id. § 701(a)-(f). If the superintendent fails to respond within the twenty-five (25) time limit the inmate may appeal his grievance to the CORC. Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC. See N.Y.C.R.R., title 7,§ 701.8-(g)-(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. See Hall v. County of Saratoga, No. 1:10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

**1. Did Plaintiff Exhaust his Administrative Remedies?**

The Court will address whether there is any genuine dispute that Stephanski failed to exhaust his administrative remedies. Stephanski does not dispute that a grievance process existed at Cape Vincent C.F. and that he was aware of the process. Dkt. No. 39-2 at 58-59. Stephanski sets forth two arguments to establish that he exhausted his administrative remedies. First, Stephanski alleges that he verbally complained about the incident and wrote letters to the Inspector General. Id. at 55-58; Dkt. No. 39-8 at 6. Second, Stephanski alleges that he exhausted his administrative remedies because he filed a grievance at Southport C.F. and appealed the unfavorable determination to CORC. Dkt. No. 44 at 2-3; Dkt. No. 44-4 at 6.

**a. Verbal Complaints and Letters**

Stephanski testified that he complained to Captain Hanson and sent letters to the Inspector General regarding the September 2015 incident. [17] Dkt. No. 39-2 at 55-58. Insofar as Stephanski argues that he sufficiently exhausted because he verbally complained to Hansen, "[t]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." Timmons v. Schriro, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015). Similarly, assuming as true that Stephanski wrote to the Inspector General, a plaintiff's letters to prison officials or other officials outside of the grievance chain of command are insufficient to properly exhaust administrative remedies. See Geer v. Chapman, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), Report-Recommendation adopted, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (citing Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.")). Thus, these actions are insufficient to constitute proper exhaustion.

[17]   Stephanski has not proffered evidence of such letters.

**b. Southport C.F. Grievance**

***7** In support of the motion for summary judgment, Defendants submitted the Declaration of Tami Hartz. Dkt. No. 39-5. Hartz reviewed Cape Vincent C.F. records and found that Stephanski submitted no grievances related to allegations of excessive force on or around September 30, 2015. Id. at ¶ 8. Defendants also provided the Declaration of Rachael Seguin ("Seguin"), Assistant Director of DOCCS' Inmate Grievance Program. Dkt. No. 39-6. Seguin avers that "DOCCS [ ] provides for an expedited procedure for the review of grievances alleging harassment or misconduct by DOCCS employees." Id. at ¶ 6. The procedure allows an inmate to directly forward the grievance to the Superintendent of the facility however, the inmate must still appeal the determination to CORC. Id. Seguin reviewed CORC records for determinations on any Stephanski grievance appeals and found that there were none filed at Cape Vincent C.F. with respect to the September 2015 incident. Id. at ¶ 10.

According to Seguin, "[i]t appears that while at Southport Correctional Facility, Plaintiff submitted a complaint to the IGRC dated November 27, 2015 related to the September 30,

2020 WL 806331

2015 incident at Cape Vincent." Dkt. No. 39-6 at ¶ 11. The grievance was assigned a number and denied as untimely. Id. at ¶ 13, 15, 16; see Part I(A)(2). Stephanski's appeals to the Superintendent and to CORC were denied. Stephanski's request for an exception to the time limit for filing a grievance based upon "mitigating circumstances" was also denied. Dkt. No. 39-8 at 1.

An inmate must submit a grievance within twenty-one calendar days of the alleged occurrence. See N.Y.C.R.R. tit. 7, § 701.5(a). "An inmate may request an exception to the time limit for filing a grievance, ... and the IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances[.]" Id. at § 701.6(g). "An exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." Id. "A grievance which is denied as untimely does not satisfy the PLRA's exhaustion requirements." Burrell v. Zurek, No. 9:17-CV-0906 (LEK/TWD), 2019 WL 5197519, at *15 (N.D.N.Y. June 21, 2019). Further, "[f]iling an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies." Adams v. O'Hara, No. 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *7 (N.D.N.Y. Feb. 15, 2019) (finding that the plaintiff failed to exhaust his administrative remedies because his grievance was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness). "An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances." Galberth v. Durkin, No. 9:14-CV-115 (BKS/ATB), 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (citations omitted).

Here, Stephanski's grievance filed at Southport C.F. was denied as untimely and outside the time period in which to seek an extension. Accordingly, Stephanski failed to exhaust his Eighth Amendment claim. See LionKingzulu v. Jayne, 714 F. App'x 80, 82 (2d Cir. 2018) (summary order) (citing § 701.6(g)(1)(i)(a)); see also Armand v. Mosko, No. 13-CV-5, 2019 WL 2374948, at *4 (W.D.N.Y. Apr. 9, 2019) ("Plaintiff's belated attempt to file a grievance from Southport plainly does not satisfy the exhaustion requirement because the PLRA requires proper exhaustion of administrative remedies."). Defendants have met their burden of demonstrating that a grievance procedure existed, and that Stephanski failed to exhaust administrative remedies related to the 2015 use of force incident. As a result, the Court

must assess whether administrative remedies were available to Stephanski.

**2. Availability of Administrative Remedies**

**\*8** Administrative remedies may be unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860. However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint because he failed to appeal to the next level of review after receive no response on his filed grievance). Thus, if an inmate suspects that his or her grievances were discarded, he or she must appeal the grievance despite the lack of response at the first step of review. Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 (W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is both unfiled and unanswered. In Williams v. Priatno, 829 F.3d 118 (2d Cir. 2016), the plaintiff, like Stephanski, alleged that he attempted to file a grievance while he was in the SHU. Id. The plaintiff contended that he gave his grievance to a correction officer to be filed, and that the correction officer must have disposed of the grievance because the facility had no record of the grievance. Id. The Williams Court accepted the plaintiff's allegation that the correction officer failed to file the grievance, and held that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." Id. Indeed, the Second Circuit notes in detail the confusing nature of the timelines set forth in the DOCCS' regulations governing the grievance procedure. See id. at 124-25. Ultimately, the Second Circuit held that the DOCCS "regulations plainly do not describe a mechanism for appealing a grievance that was never filed." Id. at 126. Following Williams, this Court has denied a

2020 WL 806331

defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU. See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485 (MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016).

In this case, Hartz avers that inmates in the Cape Vincent C.F. SHU were provided with inmate grievance complaint forms and envelopes upon request. Dkt. No. 39-5 at ¶ 4. Hartz further declared that an IGP staff member was required to make weekly rounds to SHU cells to collect grievances. Id. at ¶ 5. Stephanski disputes this account by contending that he never saw a grievance staff member in the SHU, and arguing that inmates are not permitted "to give a civilian staff member any type of envelope, it is against the code of ethics." Dkt. No. 44-3 at ¶ 6. Stephanski testified that SHU inmates handed their grievance to a correction officer and that the officer "drop[ped] it in the box." Dkt. No. 39-2 at 59. The next morning, the mailbox is unlocked and opened by the officer. Id.

Stephanski alleges that grievance procedures were not available to him because he attempted to file two grievances while confined in the SHU at Cape Vincent C.F., and the grievances were intercepted "due to the seriousness of the incident." Dkt. No. 39-2 at 60-61; Dkt. No. 39-3 at 13-15; Dkt No. 44-1. Stephanski testified that, while confined in the Cape Vincent C.F. SHU cell A-1-1, he gave two grievances to the officer who collected mail.[18] Dkt. No. 39-3 at 14-15. Stephanski witnessed the officer put the grievances in a locked box. Id. Stephanski suspects that the grievances were intercepted and alleges that the "C.O.s" have the only key to the box and that he "assumes" that Stackle or Payne told the officer, "[i]f there's any grievances that come through from Stephanski, take them out." Dkt. No. 39-2 at 60-61; Dkt. No. 39-3 at 14-15. Stephanski did not receive a response to his grievances. Dkt. No. 39-3 at 17.

[18]    This officer is not named as a defendant herein. Dkt. No. 39-3 at 15.

**\*9** Defendants contend that Stephanski has no direct knowledge or evidence that any defendant or other person interfered with his grievances and his only support for this accusation are his own conclusory allegations. Dkt. No. 39-10 at 10-12; Dkt. No. 45 at 7. Defendants point out that, "[c]onveniently, Plaintiff does not have any copies of the grievances he alleges that he filed while at Cape Vincent" or copies of letters he wrote to the IGRC. Dkt. No. 39-10 at 11. Although Defendants are correct regarding the absence

of copies, Stephanski testified during his deposition that he attempted to file the grievances while confined in the SHU and that he did not have carbon paper to make copies. Dkt. No. 39-2 at 64. Although Stephanski fails to proffer copies of the grievance(s) he attempted to file at Cape Vincent C.F., his claims are supported by evidence suggesting that he attempted to file a grievance at Cape Vincent C.F. including: (1) Stephanski's deposition testimony; (2) Stephanski's letter to the Cape Vincent Grievance Committee; (3) Stephanski's letter to Mrs. Martin; (4) grievance SPT 61355-15; and (5) Stephanski's Appeal Statement referring the Superintendent's decision to CORC for review.[19] Dkt. No. 39-8 at 4, 5-7, 11; see Reid v. Marzano, 9:15-CV-761 (MAD/CFH), 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) ("[I]t is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers[,]" while "[the] [p]laintiff would have ideally made a photocopy of his grievances for his own personal file, inmates in the SHU do not have regular access to the law library[.]").

[19]    Defendants do not contest the admissibility of the documents Stephanski produced and have annexed copies of the same documents to their motion papers.

Stephanski's allegations of mail tampering are further supported by the fact that the CORC has no record of any grievance filed while he was incarcerated at Cape Vincent C.F. Dkt. No. 39-6 at ¶ 8, 10; Dkt. No. 39-7 at 5; see Ortiz v. Annucci, No. 17-CV-3620, 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) ("The absence of any official records of Plaintiff's grievance or appeal comports with Plaintiff's assertion that the officer to whom he handed his grievance failed to file it."); Zulu v. Barnhart, No. 9:16-CV-1408 (MAD/DEP), 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22, 2019), report-recommendation adopted, 2019 WL 2150628 (N.D.N.Y. May 17, 2019) ("The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

Upon review of the record, the Court finds sufficient evidentiary support to withstand Defendants' motion for summary judgment for Stephanski's claim that he attempted to file a grievance at Cape Vincent C.F. See Burroughs v. Petrone, No. 9:15-CV-818 (DNH/ATB), 2018 WL 7291419, at *5 (N.D.N.Y. Dec. 27, 2018), Report-Recommendation adopted, 2019 WL 587090 (N.D.N.Y. Feb. 13, 2019) (finding

that documentary evidence, even though it is evidence that the plaintiff "apparently had no recollection of during his deposition," coupled with the inmate's "necessary reliance on SHU officers to deliver his grievance," are some of "several factors" that the Court "may consider when evaluating the question of exhaustion" on a motion for summary judgment.) (citation omitted).

Defendants attempt to distinguish this case from Williams and cite several cases in support of their position that Stephanski's failure to submit evidence supporting his claim that his grievances were intercepted fails to create a genuine issue of material fact regarding unavailability. See, e.g., Smith v. Dodge, No. 9:18-CV-1066 (MAD/TWD), 2019 WL 2250552 (N.D.N.Y. May 24, 2019) (granting summary judgment where the plaintiff failed to respond to the defendant's statement of material facts or offer any evidence detailing where he mailed his grievance, when he mailed it, who he gave it to, or what, if anything, prevented him from timely filing the grievance); Sankara v. Montgomery, No. 9:16-CV-885 (FJS/TWD), 2018 WL 4610686 (N.D.N.Y. June 25, 2018) (granting summary judgment where the plaintiff failed to respond to the defendants' statement of material facts and "submitted no documentary evidence whatsover that supports his conclusory assertions that he submitted grievances [...] or demonstrates any follow up on his part when he allegedly received no response."); Grayson v. Courtney, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296 (N.D.N.Y. Dec. 3, 2018) (granting summary judgment and finding no issue of material fact as to exhaustion because the only evidence on record was the plaintiff's deposition testimony regarding his efforts to file grievances); Khudan, 2016 WL 4735364 (finding no issue of material fact as to whether the plaintiff appealed to CORC as the plaintiff's affidavit made "no mention of submitting an appeal to the CORC," and at his deposition the plaintiff "asserted that he sent an appeal of his grievance to 'Albany,' " but "failed to specify where in Albany he sent his grievance and fails to provide any other details, including the approximate date he submitted his appeal and whether he properly used a 'notice of decision to appeal' form."); Nelson v. Artus, No. 14-CV-6634, 2016 WL 1023324 (W.D.N.Y. Mar. 8, 2016) (finding no material issue of fact on exhaustion where the "[p]laintiff had the ability to file an appeal regarding his grievance in this case, but chose not to do so. There is no allegation – much less any evidence – that [the p]laintiff was in any way prevented from accessing the grievance process as it relates to this incident, and there are no special circumstances alleged or proven that would justify the [p]laintiff[']s failure to comply with DOCCS' grievance

procedures."). However, there are discernable differences between the facts in those cases, and the facts at hand. Here, Stephanski properly and timely responded to Defendants' Motion for Summary Judgment and Statement of Material Facts, testified under oath (on two occasions) regarding his efforts to file grievances at Cape Vincent C.F., and submitted some corroborating documentary evidence.

**\*10** Defendants also argue that, even assuming Stephanski attempted to file grievances at Cape Vincent C.F., he has not established that the grievance process was unavailable because he made no effort to follow up on the status of the grievances until "long after the 21-day deadline and long after he was transferred to Southport C.F." and "nearly 60 days after the alleged incident occurred." Dkt. No. 39-10 at 13; Dkt. No. 45 at 6. However, the record contains credible evidence suggesting that, from September 30, 2015 until December 14, 2015, Stephanski made a good-faith effort to exhaust his claims. Stephanski testified that he did not follow up on the status of his grievances while he was in the SHU at Cape Vincent C.F. because he was "out of there pretty quick." Dkt. No. 39-3 at 16. According to DOCCS' records, Stephanski was "referred" to Southport C.F. on October 26, 2015, "effective" November 6, 2015. Dkt. No. 39-4 at 7. Upon arriving at Southport C.F., he wrote to the grievance committee at Cape Vincent C.F. Dkt. No. 39-8. On November 27, 2015, before he received a response to that correspondence, Stephanski filed a grievance at Southport C.F. Dkt. No. 39-8 at 5-6. When the grievance was denied without a grievance number, Stephanski re-submitted the grievance. After the grievance was accepted and denied, Stephanski appealed the IGRC decision to the Superintendent, and appealed the Superintendent's decision to CORC. Accordingly, the Court finds that Stephanski has credibly documented his efforts to file grievances and to follow up in a timely manner. See Zulu, 2019 WL 2997226, at \*13 (excusing the plaintiff from the exhaustion requirement due to his "persistent efforts to follow up, re-file, and appeal the grievances").

Defendants next argue that, even assuming Stephanski's grievance was intercepted, the motion must be granted because he failed to complete "steps two and three" of the grievance process. Dkt. No. 45 at 10. Stephanski plainly knew how to file a grievance, and proves as much where he states that he twice attempted to give his grievance regarding the September 30, 2015 incident to a correction officer while he was in the SHU. Dkt. No. 39-3 at 14-15. However, it is clear to the Court from Stephanski's deposition testimony that there is

a genuine issue of material fact whether knew how to proceed when he never received a response. During his deposition, Stephanski testified:

> Q. So although you never heard back about those two Cape Vincent grievances did you ever appeal those grievances?
>
> A. Well you can't appeal if you don't get the grievance back.

Dkt. No. 39-3 at 17.

Plaintiff's confusion about the process is supported by his follow up letter to the Cape Vincent Grievance Committee and Hartz's brief response. Dkt. No. 39-8 at 10-11. Hartz's response reads, "[t]his is in response to your note received on 11/30/15. A review of the IGRC log reveals there is no record of a grievance from you in 2015." Id. at 10. Hartz did not provide any information about how to pursue administrative remedies when a grievance is unfiled and unanswered. See Woodward v. Lytle, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4 (N.D.N.Y. Sept. 27, 2018) (finding that the grievance process was unavailable as the process to appeal an unanswered grievance is prohibitively opaque and noting that the defendants, in response to an inquiry by the plaintiff, failed to explain that the plaintiff "had to appeal the non-response to his alleged unfiled grievance to the CORC," but was told that Directive 4040 "makes no provision for an inmate to refer grievances directly to the Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditions means of resolution."). Moreover, Stephanski did not receive Hartz's memorandum until November 30, 2015, after the twenty-one day deadline and the forty-five day limit on requesting an extension of time to file a grievance based on mitigating circumstances. See Hamlet v. Stotler, No. 9:17-CV-0939 (GLS/TWD), 2018 WL 2729263, at *8 (N.D.N.Y. Apr. 27, 2018) (reasoning that the IGP Supervisor's response to the plaintiff's inquiry that no grievances had been filed, did not render Williams inapplicable when it was issued beyond the twenty-one day deadline and forty-five day limit on requesting an extension based upon mitigating circumstances).

Defendants fail to set forth evidence showing that Stephanski received information about how to pursue administrative remedies when a grievance is unfiled and unanswered. See, e.g., Juarbe, 2016 WL 6901277, at *1 ("In Williams, the Second Circuit held that when a plaintiff's grievance is both unfiled and unanswered, the regulations do not clearly outline the process to appeal or otherwise exhaust administrative remedies, and therefore, the administrative remedies are unavailable under Ross."). Consequently, this Court reaches the same conclusion as the Second Circuit in Williams. Viewing the facts in the light most favorable to Stephanski, the record suggests that he submitted grievances while confined in the Cape Vincent C.F. SHU, but the grievances were unfiled and unanswered, creating an issue of material fact as the availability of the grievance process, and, thus, whether administrative remedies were available to him. See Williams, 829 F.3d at 126 (concluding that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."); Thaxton v. Simmons, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."). Accordingly, it is recommended that Defendants' motion for summary judgment, insofar as it raises the affirmative defense of nonexhaustion, should be denied.

### III. CONCLUSION

**\*11  WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 39) be: **DENIED**; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

2020 WL 806331

**All Citations**

Slip Copy, 2020 WL 806331

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Reid v. Marzano, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 102 of 141

2017 WL 1040420

2017 WL 1040420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph J. REID, Sr., Plaintiff,
v.
V. MARZANO, Correctional Officer,
Watertown Correctional Facility; M. Verne,
Correctional Officer, Watertown Correctional
Facility; and Sgt. Matthew Rozanski,
Watertown Correctional Facility, Defendants.

9:15-CV-761 (MAD/CFH)
|
Signed 03/17/2017

**Attorneys and Law Firms**

JOSEPH J. REID, SR., 15-R-1021, Great Meadow
Correctional Facility, Box 51, Comstock, New York 12821,
pro se.

OFFICE OF THE NEW YORK STATE ATTORNEY
GENERAL, OF COUNSEL: RYAN W. HICKEY, AAG, The
Capitol, Albany, New York 12224, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff, an inmate in the custody of the New York State
Department of Corrections and Community Supervision,
commenced this action pursuant to 42 U.S.C. § 1983, alleging
that Defendants violated his constitutional rights under the
Eighth and Fourteenth Amendments. *See* Dkt. No. 1. After
*sua sponte* review, the Court dismissed Plaintiff's due process
claim against Defendant Rockwood and the supervisory
liability claim against the Superintendent of the Watertown
Correctional Facility ("Watertown C.F."). *See* Dkt. No. 8.
Plaintiff's Eighth Amendment excessive force claims against
Defendants Marzano and Verne, and failure to intervene claim
against Defendant Rozanski survived *sua sponte* review. *See
id.* at 10-11.

On July 1, 2016, the remaining Defendants moved for
summary judgment, alleging that Plaintiff failed to exhaust

his administrative remedies before commencing this action.
*See* Dkt. No. 35. In a Report-Recommendation and
Order dated January 19, 2017, Magistrate Judge Hummel
recommended that the Court deny Defendants' motion. *See*
Dkt. No. 45. Specifically, Magistrate Judge Hummel found
that, although Plaintiff knew how to file a grievance, he did
not know how to proceed when he did not receive a response.
*See id.* at 13. The report further found that Defendants
failed to put forth any evidence showing that Plaintiff
received information about how to pursue administrative
remedies when a grievance is unfiled and unanswered. *See
id.* (citing *Washington v. Westchester Cnty. Dep't of Corr.*,
No. 13 Civ. 5322, 2014 WL 1778410, *4 (S.D.N.Y. Apr.
25, 2014)). Further, Magistrate Judge Hummel found that
"the regulations that govern the appeal of an unfiled and
unanswered grievance have not changed since the Second
Circuit's decision in Williams, and remain as confusing and
arduous as the Court explained in that decision." *Id.* (citing
*Williams v. Priatno*, 829 F.3d 118, 124-25 (2d Cir. 2016)).

On February 6, 2017, Defendants objected to the Magistrate
Judge Hummel's Report-Recommendation and Order. *See*
Dkt. No. 46. First, Defendants argue that the Court
should reject the Report-Recommendation and Order because
Plaintiff's "mere allegation that he submitted a grievance,
unsupported by evidence, is not sufficient to excuse his
failure to exhaust at the summary judgment stage." *Id.* at 1.
Next, Defendants contend that the present matter is factually
distinguishable from *Williams* since that case was before the
court on a motion to dismiss, whereas here Defendants have
filed a motion for summary judgment. *See id.* at 2. As such,
Defendants contend that Plaintiff's bald assertion that he filed
two grievances, unsupported by any evidence other than his
own conclusory allegations, are insufficient. *See id.*

Currently before the Court is Magistrate Judge Hummel's
January 19, 2017 Report-Recommendation and Order and
Defendants' objections thereto.

**II. DISCUSSION**

The Prison Litigation Reform Act ("PLRA") states that "[n]o
action shall be brought with respect to prison conditions under
section 1979 of the Revised Statutes of the United States
(42 U.S.C. § 1983), or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted."
42 U.S.C. § 1997e(a). This exhaustion requirement applies

Reid v. Marzano, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 103 of 141

2017 WL 1040420

to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

**\*2** The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See, e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, \*5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, \*8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, ––– U.S. –––– 136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' " *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' " *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' " *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860). [1]

[1]     In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's

Reid v. Marzano, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 104 of 141

2017 WL 1040420

exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.' " *Id.* at 1862; *see also Williams,* 829 F.3d at 123 (recognizing that the framework set forth in *Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir. 2004) and *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), setting forth a "special circumstances" exception to the PLRA's exhaustion requirement has been abrogated in part by *Ross*). As such, the Supreme Court specifically found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedy unavailable. *See id.* at 1858.

**\*3** In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Defendants' motion for summary judgment should be denied. As Magistrate Judge Hummel noted, Plaintiff's accusation that correction officers discarded his grievances, alone, does not excuse his failure to exhaust administrative remedies. In response to Defendants' motion, Plaintiff alleges that he was never properly instructed on how to file a grievance while at Watertown C.F. *See* Dkt. No. 41 at 2. Plaintiff's testimony at his deposition demonstrated that, although he had a basic knowledge of the grievance process, he never received a formal orientation regarding the grievance process, just a "quick breakdown." Dkt. No. 35-6 at 16-19. Although the record demonstrates that Plaintiff knew how to file a grievance, the true issue, as identified by Magistrate Judge Hummel, is the procedure Plaintiff was required to follow in his situation: how to complete the grievance process when a grievance (or two) goes unanswered. *See id.* at 87-88; Dkt. No. 41 at 2.

In *Williams,* the Second Circuit had to determine whether administrative remedies were "available" when the plaintiff's grievance was allegedly never filed and the plaintiff received no response. *See Williams,* 829 F.3d at 120-21. The Second Circuit concluded that the regulations do not clearly outline the process to appeal an unfiled and unanswered grievance. *See id.* at 124. As such, the Second Circuit held that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* (quoting *Ross,* 136 S. Ct. at 1859).

Defendants' attempt to distinguish the *Williams* case from the present matter is unpersuasive. In *Williams,* the plaintiff, like Plaintiff Reid here, attempted to file a grievance while in the

SHU. *See Williams,* 829 F.3d at 124. The plaintiff in *Williams* also contended that he gave his grievance to a correction officer to be filed, and that the correction officers likely threw away the grievance since the facility had no record of the grievance being filed. *See id.* Accepting the plaintiff's allegations, the court held that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." *Id.* The Second Circuit continues to note in detail the confusing nature of the timelines set forth in the DOCCS regulations governing the grievance procedure. *See id.* at 124-25.

Here, although Plaintiff clearly knew how to file a grievance while in the SHU, accepting Plaintiff's deposition testimony as true, it is clear that Plaintiff did not know how to proceed when he never received a response. Plaintiff's general knowledge of how to file a grievance was rendered useless if he was not properly informed how to proceed after not receiving a response. Plaintiff's situation was further complicated by the fact that the incident at issue occurred on May 10, 2015 and Plaintiff was transferred from Watertown C.F. on May 28, 2015. *See* Dkt. No. 35-3 at ¶¶ 10, 12. Indeed, in *Williams,* the Second Circuit noted that the "obscurity" of the regulations was further "compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer." *Williams,* 829 F.3d at 126. Moreover, Defendants did not put forth any evidence demonstrating that Plaintiff received information about how to pursue administrative remedies when a grievance is unfiled and unanswered. *See Washington v. Westchester Cnty. Dep't of Corr.,* No. 13 Civ. 5322, 2014 WL 1778410, \*4 (S.D.N.Y. Apr. 25, 2014).

In their objections, Defendants contend that allowing this result "would undermine the exhaustion requirement, as it would permit inmates to circumvent the exhaustion rules on the basis of the *mere allegation* of submitting a grievance, without supporting evidence." Dkt. No. 46 at 2 (emphasis in original). Defendants argue that such a result would render the exhaustion requirement meaningless, which was clearly not intended by the PLRA. *See id.* First, it is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers. Although Plaintiff would have ideally made a photocopy of his grievances for his own personal file, inmates in the SHU do not have regular access to the law library like inmates in the general population. Moreover, Plaintiff's

2017 WL 1040420

position is supported by his deposition testimony, which is sufficient to withstand Defendants' motion for summary judgment. Finally, it is not the Court who has created this unfortunate situation. Rather, it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame. In *Williams*, the Second Circuit informed DOCCS how this situation could be avoided going forward. Specifically, the *Williams* court stated as follows: "To avoid confusion going forward, we recommend that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred." *Williams*, 829 F.3d at 126-27. As such, it is not the Court that has created this situation, but DOCCS itself.

**\*4** Accordingly, the Court finds that Magistrate Judge Hummel correctly determined that the Court should deny Defendants' motion for summary judgment.

Finally, in their objections, Defendants request that the Court schedule an evidentiary hearing in the event that their motion for summary judgment is denied. Since disputed factual issues as to exhaustion are to be decided by the Court and not a jury, the Court grants Defendants' request and will schedule an exhaustion hearing forthwith. *See Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).

### III. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's January 19, 2017 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendants' request for an exhaustion hearing is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall schedule an exhaustion hearing in consultation with the parties and the Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1040420

---

**End of Document**                                               © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 106 of 141

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)

2018 WL 1402049

2018 WL 1402049
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joshua PRIDGEN, Plaintiff,
v.
Officer BEATIE, Defendant.

No. 9:16-CV-535 (DNH/CFH)
|
Signed 01/17/2018

**Attorneys and Law Firms**

JOSHUA PRIDGEN, 13-R-2638, Auburn Correctional
Facility, P.O. Box 618, Auburn, New York 13021, pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General for
the State of New York, OF COUNSEL: MICHAEL G.
McCARTIN, ESQ., Assistant Attorney General, The Capitol,
Albany, New York 12224-0341, Attorney for Defendant.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]  This matter was referred to the undersigned for
Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Christian F. Hummel, U.S. Magistrate Judge

*1  Plaintiff pro se Joshua Pridgen ("Pridgen"), an inmate
who was, at all relevant times, in the custody of the
New York Department of Corrections and Community
Supervision ("DOCCS"), brings this action pursuant to 42
U.S.C. § 1983. Pridgen alleges that Defendant Officer Beatie
("Defendant") violated his constitutional rights under the
Eighth Amendment. Dkt. No. 1 ("Compl."). An additional
defendant was named, but the claims against him have since
been dismissed. Dkt. No. 3 at 11-13. [2] Presently before
the Court is Defendant's motion for summary judgment.
Dkt. No. 25. Pridgen opposed the motion, and Defendant
submitted a reply. Dkt. Nos. 39, 40. For the following reasons,
it is recommended that Defendant's motion for summary
judgment be granted.

[2]  Throughout this Report-Recommendation,
references to page numbers in items that appear

on the docket refer to the pagination of the header
numbers generated by the Court's electronic filing
system, CM/ECF, not to the page numbers the
parties assign in the individual documents.

## I. Background

### A. Facts [3]

[3]

Local Rule 7.1(a)(3) states:
    Summary Judgment Motions
Any motion for summary judgment shall contain
a Statement of Material Facts. The Statement
of Material Facts shall set forth, in numbered
paragraphs, each material fact about which
the moving party contends there exists no
genuine issue. Each fact listed shall set forth
a specific citation to the record where the fact
is established. The record for purposes of the
Statement of Material Facts includes the pleadings,
depositions, answers to interrogatories, admissions
and affidavits.

The opposing party shall file a response to the
Statement of Material Facts. The non-movant's
response shall mirror the movant's Statement of
Material Facts by admitting and/or denying each
of the movant's assertions in matching numbered
paragraphs. Each denial shall set forth a specific
citation to the record where the factual issue arises.
The non-movant's response may also set forth
any additional material facts that the non-movant
contends are in dispute. *Any facts set forth in
the Statement of Material Facts shall be deemed
admitted unless specifically controverted by the
opposing party.*

N.D.N.Y. Local Rule 7. 1(a)(3) (emphasis in
original).

Defendant filed a Statement of Material Facts.
Pridgen responded and admits the facts contained
in certain paragraphs of Defendant's Statement of
Material Facts. Additionally, the parties annexed
exhibits to their submissions, without objection
related to the authenticity of any documents.
Therefore, to the extent that the "facts" asserted
by the parties are supported by the record, the
undersigned will consider the facts and relevant
exhibits/documents in the context of the within
motion. See U.S. v. Painting known as Hannibal,

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 107 of 141

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)
2018 WL 1402049

No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. UnumProvident Corp., 261 Fed.Appx. 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party")). In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in non-moving party's favor. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

**\*2** The facts are reviewed in the light most favorable to Pridgen as the non-moving party.[4] See subsection II (A) infra. At the time of the incident described in the Complaint, Pridgen was confined at Watertown Correctional Facility ("Watertown C.F."). See Compl. On June 15, 2014, Pridgen and Defendant were involved in a use of force incident. Compl. at ¶ 15. Pridgen claims that at approximately 11:00 P.M., Defendant blocked Pridgen's path as he attempted to exit the living quarters of his dorm and walk downstairs to wash his dishes. Dkt. No. 25-3 at 7. Pridgen alleges that Defendant told him that talking was not permitted after 11:00 P.M., and "smacked the dishes out of [his] hands." Id. at 7-8. Pridgen asserts that he complied with Defendant's directive to return to his bunk. Id. at 8.

[4]     The record herein contains few undisputed facts. Pridgen and Defendant disagree on many of the events that transpired and provide conflicting accounts of the circumstances surrounding the incidents. Defendant argues that Pridgen's account of the events, presented in his memorandum of law, should not be credited because it is contradicts his deposition testimony. See Dkt. No. 40. To the extent that Pridgen's deposition testimony is at odds with his submissions, the Court will follow the rule that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997). The facts recited are for the relevant time period as referenced in the Complaint.

After five minutes, Pridgen went downstairs and asked another officer for a grievance form. Dkt. No. 25-3 at 8. Defendant overheard this conversation, approached Pridgen,

and told him that he would "shove the grievance ... up [his] behind." Id. Pridgen maintains that he was attempting to walk away when Defendant punched him in the left eye. Id. Pridgen testified that he stumbled, and when Defendant attempted to grab him, they both fell backward. Id. Pridgen rose to his feet and complied with Defendant's order to place his hands on the wall for a frisk. Dkt. No. 25-3 at 8. Pridgen claims that Defendant then "slammed [him] down the stairs to the ground" and continued to "punch [him] in the same left eye" while unidentified officers held him down. Id. at 9.

After the incident, Pridgen was escorted to the Special Housing Unit ("SHU"). Dkt. No. 25-3 at 9-10. Officers warned Pridgen against reporting the incident. Id. Pridgen asked for a "grievance paper" and claims that he heard the officers "ripping up" his grievance. Id. at 10. Pridgen received a misbehavior report charging him with assaulting staff, violent conduct, violating a direct order, interfering with an employee, creating a disturbance, and violating frisk-procedures. Dkt. No. 25-3 at 17-18. During his Tier III disciplinary hearing related to the ticket, Pridgen pleaded guilty to all charges. Id. Pridgen was confined in the Special Housing Unit at Watertown C.F. for eleven days after the incident. Dkt. No. 25-3 at 43. He did not file a grievance at Watertown. Pridgen was transferred to Upstate Correctional Facility ("Upstate C.F."), where he remained for eighteen months. Id. While Pridgen was at Upstate C.F., other inmates told him that he should not file a grievance because he would suffer retaliation from other officers. Id. at 43-46. Thus, Pridgen also did not file a grievance related to the incident while at Upstate. Dkt. No. 25-3 at 41.

On November 5, 2014, Pridgen pleaded guilty to Assault in the Second Degree in violation of N.Y. Penal Law § 120.05(07).[5] Dkt. No. 25-3 at 20-25; Dkt. No. 25-6; Dkt. No. 25-7. During Pridgen's plea allocution, he admitted that he assaulted and caused physical injury to a corrections officer. Dkt. No. 25-8 at 7. On December 24, 2014, Pridgen was sentenced to five years confinement. Dkt. No. 25-3 at 20; Dkt. No. 25-7. Pridgen did not appeal the sentence. Dkt. No. 39-1 at 9. In his Complaint, Pridgen alleges that Defendant attacked him "without provocation." Compl. at ¶ 5(a).

[5]     The elements of second degree assault under N.Y. Penal Law § 120.05(7) are: (1) while confined in a correctional facility, (2) after having been charged with or convicted of a crime, (3) an individual causes physical injury to another person, (4) with

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 108 of 141

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)

2018 WL 1402049

intent to cause such injury. See N.Y. Penal Law § 120.05(7).

**\*3** Defendant disputes Pridgen's account and claims that heard Pridgen speaking loudly with an officer downstairs and descended the stairway to investigate. Dkt. No. 39-2 at 2. As Defendant approached the bottom step, Pridgen "came at [him]" and struck him in the chest causing Defendant to fall down the stairs. Id. Defendant asserts that Pridgen did not comply with frisk procedures or respond to instructions. Id. As a result, Pridgen and Defendant were involved in a physical struggle. Id.

### B. Procedural History

On May 5, 2016, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendant to respond to the Eighth Amendment claim. Dkt. No. 3. On January 19, 2017, Defendant filed an Answer. Dkt. No. 18. On May 26, 2017, Pridgen appeared at a deposition. Dkt. No. 25-3. On August 3, 2017, Defendant filed this motion pursuant to Fed. R. Civ. P. 56, seeking judgment as a matter of law with respect to Pridgen's' Eighth Amendment claim. Dkt. No. 25. Pridgen opposed the motion, and Defendant filed a reply. Dkt. Nos. 39, 40.

### II. Motion for Summary Judgment [6]

[6]    All unpublished decisions cited herein, unless otherwise indicated, are attached to this Report-Recommendation.

Pridgen contends that Defendant used excessive force during the June 15, 2014 incident in violation of the Eighth Amendment. See Comp., generally. Defendant argues that Pridgen's Eighth Amendment is barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or, in the alternative, that Pridgen failed to exhaust his administrative remedies. See Dkt. No. 25, generally.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving

party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997). The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

**\*4** Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Heck v. Humphrey

Defendant argues that Pridgen's excessive force claim is barred by the Heck doctrine because the allegations in the Complaint are "directly inconsistent" with Pridgen's guilty

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 109 of 141

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)

2018 WL 1402049

plea to Assault in the Second Degree. Dkt. No. 25-10 at 4-10. In reply, Pridgen argues that the allegations in the Complaint do not suggest that he was innocent of the charges to which he subsequently pleaded guilty, and that he assaulted Defendant only as an attempt to defend himself from Defendant's unprovoked attack. Dkt. No. 39-1 at 5-10.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Therefore, when an inmate seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Id. at 487, 114 S.Ct. 2364. Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983." Poventud v. City of New York, 750 F.3d 121, 130 (2d Cir. 2014).

"Courts in the Second Circuit have held that excessive force claims brought under § 1983 are barred by Heck when the plaintiff-prisoner has pleaded guilty to an offense that includes the element that the defendant-officer was performing a lawful duty at the time of the altercation." Manley v. Grossman, No. 13-CV-1974, 2017 WL 4326541, at *5 (S.D.N.Y. Sept. 27, 2017) (collecting cases).

> However, the mere fact that a plaintiff has pleaded guilty to assaulting a law enforcement officer does not necessarily implicate Heck. Courts

have held that Heck does not bar § 1983 claims where a reasonable jury could conclude that the defendant used excessive force on the plaintiff during the altercation giving rise to the assault conviction.

Id. "[D]ismissal of the excessive force claim [is] inappropriate [if] there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him." Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("The district court mistakenly concluded that, because appellant pled guilty to assaulting the guards and because his injuries were not severe, his claim failed as a matter of law and no reasonable jury could find in his favor.").

In support of his argument that Heck mandates dismissal because Pridgen's sworn deposition testimony is inconsistent with Pridgen's guilty plea, Defendant cites a case from the United States District Court for the Western District of New York ("Western District"), Shapard v. Attea, 08-CV-6146, 2016 WL 5871360 (W.D.N.Y. Oct. 7, 2016). See Dkt. No. 25-3 at 6-7, 11. In Shapard, the plaintiff, an inmate, was involved in an altercation with corrections officers in June 2005. Shapard, 2016 WL 5871360, at *1. Immediately after the incident, the plaintiff wrote a letter to the facility superintendent claiming that he did not assault the officers. Id. at *2. During his Tier III disciplinary hearing, the plaintiff asserted that he was attacked without provocation. Id. at *2. In July 2007, the plaintiff pleaded guilty to assaulting a corrections officer in violation of New York Penal Law § 120.05(7). Shapard, 2016 WL 5871360 at *1. In 2008, the plaintiff commenced an action in federal court alleging that three corrections officers "viciously" assaulted him in retaliation for filing grievances. Id. at *2. In the Complaint, the plaintiff did not deny that he had assaulted one of the officers. Id. During his deposition however, the plaintiff denied assaulting the officers. Shapard, 2016 WL 5871360 at *2. The District Court dismissed the plaintiff's excessive force claims as barred by Heck. Id. at *1.

*5 After Defendant submitted his motion for summary judgment in this case, the Second Circuit vacated the Western District's decision in Shapard and remanded the matter for further proceedings. See Shapard v. Attea (Shapard II), No. 16-3764, 710 Fed.Appx. 15, 2017 WL 4548439 (2d Cir. Oct. 12, 2017) (summary order). On appeal, the plaintiff's

2018 WL 1402049

counsel argued that "although Shapard believed that he did not assault Officer Attea, the use of force applied by the officers would have been excessive even if he had." Id. at *2. The Second Circuit held that the inmate's excessive force claims were not barred by Heck because "their favorable adjudication would not 'necessarily imply the invalidity' of his prior assault conviction." Id. at *2. The Second Circuit reasoned that, "the elements of excessive force and second degree assault under N.Y. Penal Law § 120.05(7) are not incompatible. Id. (citations omitted). The Court further noted that the plaintiff denied assaulting the officer during his deposition and disciplinary hearing, but he did not deny that he assaulted the officer in the complaint. Id. at *2. Thus, the Second Circuit held that the plaintiff's "plausible claim of excessive force can be reconciled with his assault of Officer Attea, and is therefore not barred by Heck." Id. at *3. Addressing the inconsistency in the plaintiff's accounts of the incident, the Court held that, "[o]n remand, the district court may take appropriate steps to prevent Shapard from disputing the assault, including limiting his testimony and instructing a jury that he assaulted Officer Attea." Id. at *2 (citation omitted).

In a recent decision, this Court applied Shapard II to an excessive force case with facts strikingly similar to the case at hand. In Reid v. Marzano, No. 9:15-CV-761 (MAD/CFH), 2018 WL 324243 (N.D.N.Y. Jan. 8, 2018), the plaintiff was convicted of third degree assault as a result of his conduct during an excessive force incident. See Reid, 2018 WL 324243, at *3. During his disciplinary hearing and deposition, the plaintiff denied assaulting the officer. Id. This Court denied the defendants' motion to dismiss and applied the reasoning set forth in Shapard II holding:

> ... the elements of excessive force are not incompatible with the elements of third degree assault under N.Y. Penal Law § 120.00, and Plaintiff's complaint does not actually deny that he assaulted Officer Marzano. See Dkt. No. 1 at 4. Therefore, the Court finds that Plaintiff's claims against Officer Marzano are not barred by Heck. However, as the Second Circuit noted in Shapard II, the Court may take steps to prevent Plaintiff from disputing his assault conviction, including "limiting his testimony and instructing a jury that he assaulted" Officer Marzano.

Reid, 2018 WL 324243, at *3 (citing Shapard II, 2017 WL 4548439, at *3, 710 Fed.Appx. 15).

In the case at hand, like the plaintiff in Shapard, Pridgen pleaded guilty to assault in the second degree. As discussed

in Shapard II, the elements of assault in the second degree are not "incompatible" with excessive force. Shapard II, 2017 WL 4548439, at 2, 710 Fed.Appx. 15. Additionally, like the plaintiffs in both Shapard and Reid, in the Complaint, Pridgen claims that he was attacked without provocation, but does not explicitly deny that he also assaulted Defendant. See Compl. Also like the plaintiffs in Shapard and Reid, [7] after filing the Complaint, Pridgen testified at his deposition that he did not assault Defendant. Dkt. No. 25-3 at 15-16. Thus, applying the reasoning set forth by the Courts held in Shapard II and Reid, Pridgen's claims are not barred by Heck because his "plausible claim of excessive force can be reconciled with his assault conviction." Reid, 2018 WL 324243, at *3 (citing Shapard II, 2017 WL 4548439, at *3, 710 Fed.Appx. 15). Here, as in Shapard and Reid, the Court is not without options to prevent Pridgen from presenting his conflicting accounts and disputing his assault conviction before a jury.

[7]     "In this case, Plaintiff was also convicted of assault because of his conduct during the incident giving rise to his excessive force claim.2 Additionally, like the plaintiff in Shaphard [sic], Plaintiff told a different story during his Tier III disciplinary hearing and his deposition in this case; in both instances, Plaintiff denied assaulting Officer Marzano." Reid, 2018 WL 324243, at *3.

Accordingly, based upon the holdings in Shapard II and Reid, and for the reasons set forth herein, Pridgen's excessive force claim is not barred by Heck, and it is recommended that Defendant's motion for summary judgment on this ground be denied.

## C. Exhaustion

*6 In the alternative to his Heck argument, Defendant contends that the motion for summary judgment must be granted because Pridgen failed to exhaust his administrative remedies through available grievance procedures. See Dkt. No. 25-10 at 11-15. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong.' " *Mauldin v. Kiff*, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting *Porter*, 534 U.S. at 532, 122 S.Ct. 983). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. *Porter*, 534 U.S. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this district followed a three-part test established by the Second Circuit in *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in *Hemphill*, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances." *Id.* However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in *Hemphill*, is no longer consistent with the statutory requirements of the PLRA. *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in *Ross* eliminates the "special circumstances" exception promulgated by *Hemphill*, courts must still consider the PLRA's "textual exception to mandatory exhaustion." *Ross*, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. *Id.* The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Lastly, administrative remedies are unavailable where "prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

If it is found that the plaintiff has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice. *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.*, 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted). Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner ... can cure the defect by exhausting [the available remedies] and reinstating his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)).

**\*7** Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2015). [8]

[8] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 112 of 141

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)

2018 WL 1402049

### 1. Application

The parties do not dispute that Pridgen failed to exhaust his administrative remedies. Thus, the undersigned must assess only whether administrative remedies were available to Pridgen. In that regard, Pridgen sets forth two plausible arguments to establish that administrative remedies were not available to him. First, Pridgen alleges that he attempted to file a grievance, but that the grievance was thrown out or otherwise destroyed by corrections officers. Dkt. No. 25-3 at 41-43. Next, Pridgen alleges that he did not attempt to file any further grievances due to fear of retaliation. Id. at 44-49.

### a. Allegation that Grievances were Thrown Out by Correction Officers

Administrative remedies may be unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S.Ct. at 1860. However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response on his filed grievance). Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response at the first step of review. Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."); Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]").

**\*8** Here, Pridgen alleges, with no supporting evidence, that he attempted to file a grievance regarding the incidents alleged in the Complaint, but that the grievance was thrown out by correction officers. Dkt. No. 25-3 at 41-43. Pridgen's only support for this accusation is his own testimony. Even assuming, as the Court must, that Pridgen's allegations are true, he has still failed to demonstrate that administrative remedies were unavailable to him because, after his grievance was destroyed, he failed to appeal his grievance to the next level of review. See Arce v. Keane, No. 01 Civ. 2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance"). Thus, Pridgen's accusation that correction officers discarded his grievance, alone, does not excuse his failure to exhaust his administrative remedies.

### b. Fear of Retaliation

Pridgen urges the Court to excuse his failure to exhaust because he declined to file a grievance due to his fear of retaliation. Dkt. No. 25-3 at 44-49. Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable. Ross, 136 S.Ct. at 1860, n.3. However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies. Salmon v. Bellinger, No. 9:14-CV-0827 (LEK/DJS), 2016 WL 4411338, at *5 (N.D.N.Y. July 5, 2016). Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)).

Pridgen argues in his response in opposition that he had a "specific fear against defendant Beatie and fellow correction officers which left plaintiff with the understanding of the following equation: grievance = a punch in the eye." See Dkt. No. 39-1 at 12. Pridgen's contention that the grievance procedures were unavailable to him due to his fear of retaliation is belied by his conduct after the incident. Specifically, Pridgen testified that Beatie punched him after he asked for a grievance related to the issue involving the dishes. See Dkt. No. 39-1 at 11. Pridgen also testified that on the way to the SHU, officers told him not to report any of his injuries. Dkt. No. 25-3 at 9. However, despite Beatie's behavior and the subsequent warning, once Pridgen arrived in

Pridgen v. Beatie, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 113 of 141

2018 WL 1402049

the SHU, he "received" and completed a "grievance paper" and gave the grievance to officers. Id. at 10. Pridgen does not state how any specific threat from Beatie or any other officer impacted his ability to exhaust administrative remedies related to the events that occurred on June 15, 2014. See Aviles v. Tucker, No. 14-CV-8636, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016) (finding grievance procedures were available where the plaintiff offers conclusory allegations of fear and does not substantiate what specific fears or past acts preclude him from advancing in grievance procedures); Harrison v. Stallone, No. 9:06-CV-902 (LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of retaliation is not sufficient to excuse the exhaustion requirement ... If an inmate could simply state that he feared retaliation, there would no point in having a grievance procedure.") (citations omitted).

Upon review of the record, the undersigned finds that much of Pridgen's alleged fear is generalized. Indeed, Pridgen offers no evidence establishing that he was threatened by any officers after the June 15, 2014 incident. For example, Pridgen testified that "inmates" at Watertown C.F. told him "generally" that he would suffer retaliation if he filed grievances. Dkt. No. 25-3 at 44-45. While confined at Upstate C.F., Pridgen was not threatened by any officers. Dkt. No. 25-3 at 47. By his own admission, Pridgen denies any actual threats or physical force being used against him which prevented him from taking part in the grievance program. See Salmon, 2016 WL 4411338, at *5 (stating there must be affirmative actions or specific instances of physical assault or threats of retaliation for plaintiff to show unavailability of the grievance process). Insofar as Pridgen suggests that he feared physical retaliation if he were to file a grievance, such a claim is further countered by the fact that the Complaint fails to mention any fear of retaliation.

**\*9** In conclusion, the undersigned finds that Defendant has met his burden of showing that there is no genuine issue of material fact as to Pridgen's failure to exhaust administrative

remedies, and that administrative remedies were available to him. Accordingly, the Court recommends that Defendant's motion be granted on this ground, but that such dismissal be without prejudice. See Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (per curiam) (dismissal of a prisoner's complaint for failure to exhaust administrative remedies should be without prejudice).

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's motion for summary judgment (Dkt. No. 25) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN** FOURTEEN (14) **DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1402049

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Salmon v. Bellinger, Not Reported in Fed. Supp. (2016)

2016 WL 4411338

2016 WL 4411338
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nema SALMON, a/k/a Nemar Salmon, Plaintiff,
v.
Officer BELLINGER, Defendant.

Civ. No. 9:14-CV-0827 (LEK/DJS)
|
Signed 07/05/2016

**Attorneys and Law Firms**

NEMA SALMON, 11-R-2364, Marcy Correctional Facility,
P.O Box 3600, Marcy, New York 13403, Plaintiff, Pro Se.

HON. ERIC T. SCHNEIDERMAN, Attorney General of the
State of New York, The Capitol, OF COUNSEL: JOSHUA L.
FARRELL, ESQ., Assistant Attorney General, Albany, New
York 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** *Pro se* Plaintiff Nema Salmon commenced this action,
pursuant to 42 U.S.C. § 1983, alleging that Defendant
Correctional Officer Donald Bellinger used excessive force
against him at Riverview Correctional Facility ("Riverview
C.F."). Dkt. No. 1, Compl. Presently before the Court is
Defendant's Motion for Summary Judgment based on the
ground that Plaintiff failed to exhaust his administrative
remedies prior to filing this action. Dkt. No. 23, Def.'s Mot.
for Summ. J. Plaintiff did not file a response. For the reasons
that follow, the Court recommends that Defendant's Motion
be **granted**.

**I. BACKGROUND**

Plaintiff alleges the following facts in his Complaint. On
January 17, 2014, Plaintiff was being taken to the special
housing unit ("SHU") at Riverview C.F. Compl. at 1. Upon
arriving at SHU, Defendant Bellinger and an unidentified
officer conducted a strip search of Plaintiff. *Id.* at pp. 1-2.
During the search, a bag of tobacco fell out of Plaintiff's
clothes. *Id.* at p. 2. Plaintiff alleges that the officers then

used excessive force against him. *Id.* Following the incident,
Bellinger warned Plaintiff "to not make [his] voice be heard
or else [he would] get the beating of a life time." *Id.*

Ten days after this incident, on June 27, 2014, Plaintiff
was transferred to Gouverneur Correctional Facility
("Gouverneur C.F."). Dkt. No. 23-10, Def.'s Statement of
Material Facts ("Def.'s SMF"). Plaintiff commenced this
action on July 8, 2014. *See* Compl.

**II. DISCUSSION**

**A. Summary Judgment Standard**

Pursuant to FED. R. CIV. P. 56(a), summary judgment is
appropriate only where "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law." The moving party bears the burden to demonstrate
through "pleadings, depositions, answers to interrogatories,
and admissions on file, together with [ ] affidavits, if any,"
that there is no genuine issue of material fact. *F.D.I.C. v.
Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant
must set out specific facts showing that there is a genuine
issue for trial, and cannot rest merely on allegations or
denials of the facts submitted by the movant. *See* FED. R. CIV.
P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d
Cir. 2003) ("Conclusory allegations or denials are ordinarily
not sufficient to defeat a motion for summary judgment when
the moving party has set out a documentary case."); *Rexnord
Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir.
1994). To that end, sworn statements are "more than mere
conclusory allegations subject to disregard ... they are specific
and detailed allegations of fact, made under penalty of perjury,
and should be treated as evidence in deciding a summary
judgment motion" and the credibility of such statements is
better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289
(citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)
and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*2** When considering a motion for summary judgment, the
court must resolve all ambiguities and draw all reasonable
inferences in favor of the non-movant. *Nora Beverages, Inc.
v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir.
1998). "[T]he trial court's task at the summary judgment
motion stage of the litigation is carefully limited to discerning

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 115 of 141
Salmon v. Bellinger, Not Reported in Fed. Supp. (2016)
2016 WL 4411338

whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*' " *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.' " *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

### B. Exhaustion

Defendant argues that this action must be dismissed because Plaintiff failed to exhaust his administrative remedies. Dkt. No. 23-11, Def.'s Mem. of Law.

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect

to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, ___ S. Ct. ___, 2016 WL 3128839, at *5 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[1]

---

[1]   Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendant properly raised the defense in his Answer. Dkt. No. 18, Answer at ¶ 11.

**\*3** In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Salmon v. Bellinger, Not Reported in Fed. Supp. (2016)

2016 WL 4411338

In addition to the formal grievance procedure described above, the regulations provide for an expedited grievance procedure for claims of employee "harassment." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

If the superintendent determines that the allegations do not represent a bona fide case of harassment, the allegations are automatically routed to the IGRC for resolution according to the formal three-step grievance procedure outlined above. *Id.* at § 701.8(c). If the superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the Inspector General's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigations. *Id.* at §§ 701.8(d); *see also Perez v. Blot,* 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. 2002) (describing the grievance system).

The superintendent must render a decision within twenty-five calendar days of receipt of the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(f). If the superintendent fails to respond within this required time-frame, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk. *Id.* at § 701.8(g). If the inmate receives a response from the superintendent and wishes to appeal to CORC, he must file a notice of decision to appeal with the inmate grievance clerk within seven calendar days of receipt of the response. *Id.* at § 701.8(h).

In sum, the expedited procedure set forth above allows inmates to bypass filing a formal grievance by instead "reporting" the incident. *See Perez v. Blot,* 195 F. Supp. 2d at 544. Such a process is wholly consistent with the underlying concern of employee harassment.

*2. Plaintiff's Failure to Exhaust Administrative Remedies*

In this case, it is undisputed that Plaintiff did not file any grievance relative to the incident alleged in his Complaint and therefore did not exhaust his administrative remedies. There

is no record on file at either Riverview C.F. or Gouverneur C.F. of a grievance filed by Plaintiff regarding the June 17, 2014 excessive force incident. Dkt. No. 23-2, Decl. of Kristina Monnet, dated Sept. 29, 2015, at ¶ 5; Dkt. No. 23-3, Decl. of Laura Looker, dated Oct. 1, 2015, at ¶ 6. Plaintiff's only grievance filed at either of these facilities concerned a deduction from his inmate account for lost sneakers. Looker Decl., Ex. A. There is also no record of Plaintiff having appealed a grievance regarding this incident to CORC. Dkt. No. 23-1, Decl. of Jeffery Hale, dated Sept. 28, 2015, at ¶¶ 15-17.

**\*4** Moreover, Plaintiff admitted at his deposition that he did not file a grievance regarding this incident. Dkt. No. 23-6, Joshua Farrell Decl., Ex. A, Pl.'s Dep., dated July 15, 2105, at pp. 47-49. Instead, Plaintiff sent letters to Anthony Annucci, Acting Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), and the Inspector General of DOCCS. Dkt. No. 23-7, Farrell Decl., Ex. E; Dkt. No. 23-8, Farrell Decl., Ex. F. These letters requested that criminal charges be filed against the correctional officers and that the letter not be treated "as a grievance complaint" because Plaintiff felt his life was in danger. Farrell Decl., Exs E & F. Plaintiff stated that he knew there were grievance procedures in place, but did not want to access it because he did not want his complaint investigated by officers at the facility. *See* Pl.'s Dep. at pp. 47-49. Letters sent outside of the grievance process, such as Plaintiff's letters to Commissioner Annucci and the Inspector General, are insufficient to satisfy the exhaustion requirement. *See Timmons v. Schriro,* 2015 WL 3901637, at \*3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."); *Muhammad v. Pico,* 2003 WL 21792158, at \*8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Grey v. Sparhawk,* 2000 WL 815916, at \*2 (S.D.N.Y. June 23, 2000) ("Any complaint ... made directly to the Inspector General's office does not serve to excuse plaintiff from adhering to the available administrative procedures."). Plaintiff's letters therefore neither satisfy the IGP, nor the expedited alternative for allegations of harassment.

Salmon v. Bellinger, Not Reported in Fed. Supp. (2016)

2016 WL 4411338

### 3. Whether Plaintiff's Failure to Exhaust Administrative Remedies may be Excused

Plaintiff's obligation to exhaust administrative remedies may be nonetheless be excused if remedies were unavailable. *Ross v. Blake,* ___ S. Ct. ____, 2016 WL 3128319, at *7 (2016). As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court stated three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at *7-8. [2]

[2]  The Second Circuit has previously identified three circumstances when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange,* 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004)). The Supreme Court in *Ross* explicitly rejected the "special circumstances" exception, and focused the inquiry on the "availability" of administrative remedies. *Ross v. Blake,* ___ S. Ct. ____, 2016 WL 3128319, at *7. The Court therefore will focus its analysis on the availability of administrative remedies to Plaintiff. The Court will also discuss estoppel, although it is unclear whether the doctrine survives *Ross.*

Plaintiff admits that the grievance process was available to him. Pl.'s Dep. at p. 47. However, Plaintiff claims that he did not file a grievance because he feared retaliation based on threats that Defendant Bellinger had made. *Id.* at pp. 51 & 55. Under *Ross,* threats or other intimidation by prison employees may render administrative remedies unavailable. 2016 WL 3128319, at *8 n.3. The Second Circuit has stated

that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir. 2004).

Plaintiff's claim that Bellinger made a specific threat to retaliate against him if he filed a grievance regarding the assault, Pl.'s Dep. at pp. 43, 51, & 55, would be sufficient to create an issue of material fact as to whether administrative remedies were available to Plaintiff at Riverview C.F. Specific threats of retaliation could reasonably deter a prisoner in Plaintiff's situation from filing a grievance, particularly when the threats followed an assault. *See, e.g., Hemphill v. New York,* 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer threatened to retaliate against the plaintiff if he filed a complaint); *Lunney v. Brureton,* 2007 WL 1544629, at *9 (S.D.N.Y. May, 29, 2007) (finding that "a reasonable factfinder could conclude that a prisoner in [the plaintiff's] situation would be deterred from complaining about an assault that had just occurred); *Hepworth v. Suffolk Cty.,* 2006 WL 2844408, at *6 (E.D.N.Y. Sept. 29, 2006) (finding that officers' threats of violence if the plaintiff reported assault may have deterred person of ordinary firmness from using grievance process). Defendant's argument that Plaintiff's claims are contradicted by the fact that he sent complaint letters to the DOCCS Commissioner and Inspector General is misplaced. Dkt. No. 23-11, Defs.' Mem. of Law at p. 8. In *Hemphill,* the Second Circuit stated "that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." 380 F.3d at 688.

**\*5**  However, Plaintiff has not shown that administrative remedies were unavailable at Gouverneur C.F. Plaintiff was transferred to Gouverneur C.F. on June 27, 2014, ten days after the alleged assault. Monnett Decl. at ¶ 4. An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a). Additionally, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* § 701.6(g). Plaintiff therefore had eleven days to file his grievance and thirty-five days to request an extension after his transfer to Gouverneur C.F. Plaintiff states that he did not file a grievance at Gouverneur C.F. because he believed that officers there might be in contact with officers

2016 WL 4411338

at Riverview C.F. and would retaliate against him. Pl.'s Dep. at p. 51. This amounts to nothing more than a "generalized fear of retaliation," which is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009); *Harrison v. Stallone*, 2007 WL 2789473, at *5-6 (N.D.N.Y. Sept. 24, 2007). Therefore, the Court finds that Plaintiff has not identified any issue of fact as to the availability of administrative remedies at Gouverneur C.F. *See Wallace v. Fisher*, 2015 WL 9275001, at *4 (N.D.N.Y. Dec. 18, 2015) (finding that even if administrative remedies were unavailable to the plaintiff at first correctional facility, there was no issue of material fact that they were available following his transfer to a second correctional facility); *Newman v. Duncan*, 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) (finding that administrative remedies were available to inmate where he was transferred out of facility where officer had threatened him).

The Second Circuit has also held that "the affirmative defense of exhaustion is subject to estoppel." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). The Second Circuit has questioned whether the doctrine of estoppel survived the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), which held that the PLRA requires "proper exhaustion." *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived."); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). The Supreme Court's decision in *Ross* again puts the availability of estoppel in doubt. 2016 WL 3128839, at *5-6. In *Ross*, the Supreme Court made clear that the mandatory nature of the exhaustion required by the PLRA forecloses judicial discretion to craft exceptions. *Id.* at *5; *see also id.* at *6 ("Exhaustion is no longer left to the discretion of the district court." (quoting *Woodford v. Ngo*, 548 U.S. at 85)). Nonetheless, in an abundance of caution, because the Second Circuit has not yet addressed the impact of *Ross* on the inquiry stated in *Hemphill*, the Court will discuss whether Defendant Bellinger would be estopped from asserting the exhaustion defense.

A defendant who "inhibit[s] an inmate's ability to utilize grievance procedures" may be estopped from raising exhaustion as an affirmative defense. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). A prisoner must demonstrate that the "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador v. Andrews*, 655 F.3d at 103. "[V]erbal and physical threats of retaliation, physical assault, denial of grievance

forms or writing implements, and transfers constitute such affirmative action." *Id.* "Estoppel is found where 'an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible.' " *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (quoting *Winston v. Woodward*, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008)).

In this case, for the same reasons that the Court found that administrative remedies were available to Plaintiff at Gouverneur C.F., the Court finds that Defendant Bellinger did not inhibit Plaintiff's ability to exhaust administrative remedies at Gouverneur C.F. There is no evidence in the record that suggests that Plaintiff reasonably feared retaliation by Bellinger at Gouverneur C.F. or that administrative remedies were otherwise unavailable to him there. *See Contino v. City of New York*, 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013) ("An inmate's fear that disciplinary actions will be taken against him if he proceeds with a grievance process must, at a minimum, be reasonable in order to relieve the plaintiff of his obligation to exhaust."); *Goodson v. Silver*, 2012 WL 449937, at *8 (N.D.N.Y. Sept. 25, 2012) ("[E]ven if the Court were to find that Plaintiff was effectively prevented by Defendants from filing a grievance while he was at Clinton C.F., the Court would find that he was not prevented by Defendants (or anyone) from filing that grievance ... once he was transferred from Clinton C.F."); *Mateo v. O'Connor*, 2010 WL 3199690, at *5 (S.D.N.Y. Aug. 12, 2010) ("[I]n this case, the threats were of no consequence. By his own admission, [the plaintiff] was not prevented from following the prison's internal grievance procedure."). Thus, Defendant Bellinger is not estopped from raising exhaustion as an affirmative defense.

**\*6** Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be **granted** on account of Plaintiff's failure to exhaust his administrative remedies.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 23) be **GRANTED** and this action be **DISMISSED**; and it is further

Salmon v. Bellinger, Not Reported in Fed. Supp. (2016)

2016 WL 4411338

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE** **APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4411338

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.  6

Thompson v. Kelly, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 120 of 141

2019 WL 2374119

2019 WL 2374119
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jarrod Christopher THOMPSON, Plaintiff,

v.

Nurse KELLY, et al., Defendants.

Civ. No. 9:18-CV-1235 (LEK/DJS)
|
Signed 04/04/2019

**Attorneys and Law Firms**

JARROD CHRISTOPHER THOMPSON, Plaintiff, Pro Se, 17-A-3501, Hale Creek ASACTC, P.O. Box 950, Johnstown, NY 12095.

HON. LETITIA JAMES, Assistant Attorney General, OF COUNSEL: NICHOLAS LUKE ZAPP, ESQ., New York State Attorney General, The Capitol, Albany, NY 12224, Attorney for Defendant Kelly.

**REPORT-RECOMMENDATION AND ORDER**

Daniel J. Stewart, U.S. Magistrate Judge

**\*1** *Pro se* Plaintiff Jarrod Christopher Thompson brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Dkt. No. 2, Compl. On initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A, the District Court permitted Plaintiff's claims against the individual Defendants to proceed, and dismissed Plaintiff's claim against DOCCS. Dkt. No. 10. Currently before the Court is Defendant Kelly's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that (1) Plaintiff failed to exhaust his administrative remedies prior to commencing this action, and (2) Plaintiff's deliberate indifference claim fails as a matter of law. Dkt. No. 15-1, Def.'s Mem. of Law. Plaintiff has filed an opposition to the Motion. Dkt. No. 17, Pl.'s Opp.

**I. STANDARD OF REVIEW**

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322

(1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, ... matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski,* 1997 WL 394667, at \*2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn,* 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**\*2** A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content

Thompson v. Kelly, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 121 of 141

2019 WL 2374119

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679-80.

## II. FACTS [1]

[1]    The facts here are derived from Plaintiff's Complaint and are stated in the light most favorable to him.

On September 15, 2017, Plaintiff arrived at Franklin Correctional Facility. Compl. at p. 5. He told a nurse that he had a heart problem, and she took his vitals. *Id.* Plaintiff claims he received no help at sick call, and was only told he was scheduled to see a doctor soon. *Id.* On October 10, 2017, Plaintiff had more severe symptoms, and Nurse Kelly gave him cough syrup, and other nurses repeatedly told him he would be seeing a doctor the following week. *Id.* Plaintiff suffered a mild heart attack and had to be flown to Albany Medical Center, and received surgery on January 10, 2018. *Id.* Plaintiff now has to take medicine every day and will have to for the rest of his life; he brings an Eighth Amendment deliberate indifference claim and seeks monetary compensation. *Id.* at pp. 5 & 7.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant moves for dismissal on the basis that Plaintiff failed to exhaust his administrative remedies prior to commencing this action. Def.'s Mem. of Law at pp. 3-7. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo,* 548 U.S. 81, 93 (2006).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett,* 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle,* 534 U.S. at 524); *see also Neal v. Goord,* 267 F.3d

2019 WL 2374119

116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516.

**\*3** Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised, the defendant bears the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord,* 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999) (citations omitted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

Typically, this inquiry is fact specific and would not be appropriate for resolution on a motion to dismiss. However, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *McCoy v. Goord,* 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998)). Thus, if it is apparent from the face of Plaintiff's Complaint that he failed to exhaust his administrative remedies prior to bringing this action, then a Rule 12(b)(6) motion may be the proper vehicle to raise the defense.

Plaintiff submitted a *pro forma* complaint typically utilized by *pro se* inmates seeking to vindicate their rights pursuant to 42 U.S.C. § 1983. Therein, he indicated that there is a grievance procedure at his facility, and that he did not file a grievance about the events described in the Complaint at any correctional facility. Compl. at p. 6. Taking Plaintiff's statements in his Complaint as true, it would appear from the face of the Complaint that he had not completed the administrative remedies available to him prior to bringing this civil action; thus, Defendant may properly raise this affirmative defense by way of her Motion to Dismiss.

### 1. Plaintiff's Failure to Exhaust Administrative Remedies

In this case, Plaintiff admitted in his Complaint that he did not file a grievance regarding the events alleged in the Complaint. Compl. at p. 6. Plaintiff argues in his opposition to the Motion that he "assumed that going to sick call every single week after being told [he] would see a doctor would be considered taking the appropriate measures." Pl.'s Opp. However, the PLRA requires "proper exhaustion," which means using all steps

of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo,* 548 U.S. at 93. To the extent Plaintiff contends that by going to sick call he put corrections staff on notice of his allegations, such informal means of grieving do not satisfy the PLRA's exhaustion requirement. *See Davis v. Doe,* 2017 WL 8640829, at 3 (N.D.N.Y. Dec. 29, 2017); *see also Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.' ") (internal citation omitted). "Regardless of whether ... informal complaints put the prison officials on notice of his grievance 'in a substantive sense,' ... to satisfy the PLRA a prisoner must also procedurally exhaust his available administrative remedies." *Macias v. Zenk,* 495 F.3d at 43. As such, Plaintiff's actions taken in going to sick call do not satisfy the PLRA's exhaustion requirements. *See Crook v. Sanchez,* 2014 WL 7399313, at \*14 (E.D.N.Y. Feb. 12, 2014) (holding that writing to medical did not satisfy the exhaustion requirement, and collecting cases with similar findings).

**\*4** Accordingly, Plaintiff did not exhaust his administrative remedies. The Court will discuss below whether Plaintiff's contentions may provide a valid excuse for his failure to exhaust.

### 2. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross v. Blake,* 136 S. Ct. at 1858. "An inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Supreme Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his Opposition, Plaintiff contends that he did not follow the exhaustion procedure because (1) he believed that using the grievance procedure would be futile, and (2) he feared

Thompson v. Kelly, Not Reported in Fed. Supp. (2019)

2019 WL 2374119

retaliation. Pl.'s Opp. Plaintiff describes that "through [his] experience dealing with the grievance program [he] felt that nothing would come of it." Pl.'s Opp. The case law is clear that "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.' " *Harrison v. Goord,* 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo,* 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude – correctly or incorrectly – that exhaustion is not efficient in that party's particular case."). As such, Plaintiff's contention that he believed nothing would come of filing a grievance is unavailing.

Plaintiff also alleges that he did not submit a grievance because he feared corrections staff would retaliate against him. Pl.'s Opp. Under *Ross,* threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake,* 136 S. Ct. at 1860, n.3. Plaintiff alleges in his Complaint that he did not file a grievance because he feared mistreatment; he filed a grievance about a package and the package room began denying his packages after that. Compl. at pp. 6-7. He elaborates in his Opposition that after he filed a grievance about a package, he never received the package; "nothing favorable came of that grievance," and his next six packages were all refused by the facility. Pl.'s Opp. Significantly, this allegedly occurred in "early 2018," Pl.'s Opp., while Plaintiff alleges Nurse Kelly's alleged indifference occurred in September and October of 2017, and so could not have been the basis for not filing a grievance against Kelly.

"Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable." *Rodriguez v. Cross,* 2017 WL 2791063, at *8 (N.D.N.Y. May 9, 2017) (citing *Ross v. Blake,* 136 S. Ct. at 1860, n. 3). As the Second Circuit has stated, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir. 2004). Here, Plaintiff has merely stated a "generalized fear of retaliation," without allegations of any specific threats or other actions that would prevent him from filing a grievance. *See Brown v. Napoli,* 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance."); *see also Rodriguez v. Cty. of Suffolk,* 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend

to find mere 'generalized fear' when no actual threat was made.") (internal citation omitted). Indeed, here, Plaintiff does not allege that "he was subjected to any specific, affirmative threats of retaliation." *Bookman v. Lindstrand,* 2018 WL 3121688, at *10 (N.D.N.Y. Feb. 14, 2018); *see also Rodriguez v. Cty. of Suffolk,* 2014 WL 3531897, at *5. In any event, "Plaintiff's prior experience filing grievances is not a well-founded basis for him to fear retaliation from filing a grievance relative to the present incident." *White v. Dishaw,* 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017). As such, Plaintiff's fear of retaliation is insufficient to excuse his failure to exhaust. [2]

[2]    Plaintiff also submits a separate letter regarding recent occurrences regarding his medical care that he believes to be retaliatory, although he does not assert what he believes the retaliation was in relation to. Dkt. No. 18. The Court notes that, to the extent Plaintiff intends the letter to explain his fear of retaliation in relation to his failure to exhaust, it appears to relate solely to actions taken after Plaintiff's time to file a grievance expired, and thus would not serve to provide an excuse for his failure to exhaust.

**\*5** Plaintiff has therefore not made allegations that could satisfy any of the three circumstances that could excuse failing to exhaust under *Ross.* Accordingly, the Court finds that Plaintiff has not exhausted his administrative remedies, and that the failure to exhaust was not excusable. The Court therefore recommends that Defendant Kelly's Motion be granted based on Plaintiff's failure to exhaust. [3]

[3]    Because the Court recommends that Defendant Kelly's Motion be granted based upon Plaintiff's failure to exhaust his administrative remedies, it does not reach her contentions regarding the merits of Plaintiff's deliberate indifference claim. Def.'s Mem. of Law at pp. 8-11. However, were the Court to reach this issue, it would recommend denying the Motion. Giving deference to Plaintiff's *pro se* status, "the Court is unable to conclude at this early stage–and on the basis of the Complaint alone–that the Defendant[ ] [was] not deliberately indifferent to [Plaintiff's] serious medical needs. The Court must await further development of the facts." *Silvera v. Conn. Dep't of Corr.*, 726 F. Supp.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 124 of 141

Thompson v. Kelly, Not Reported in Fed. Supp. (2019)

2019 WL 2374119

2d 183, 192 (D. Conn. 2010) (citing *Chance v. Armstrong,* 143 F.3d 698, 703-04 (2d Cir. 1998)).

## B. John Doe Defendants

As to Plaintiff's claims against the four unnamed Nurse Doe Defendants, the Court recommends dismissing these claims as well. Plaintiff's claims against these Defendants cannot proceed for the same reason as his claim against the named Defendant: he has failed to exhaust his administrative remedies. As such, these claims suffer from the same defect and are subject to dismissal. *See Bush v. Danziger,* 2006 WL 3019572, at *3 (S.D.N.Y. Oct. 23, 2006) (dismissing *sua sponte* claims against John Doe Defendants because claims would be barred on the same basis as claims against moving defendants); *Ali v. Ramos,* 2018 WL 1353210, at *1, n.1 (S.D.N.Y. Mar. 14, 2018) (considering *sua sponte* dismissing the Complaint against a John Doe defendant, and noting that such would be appropriate because the plaintiff had an opportunity to be heard through responding to the named defendant's motion to dismiss); *Preterotti v. Lora,* 2016 WL 6810883, at *9 (Oct. 6, 2016).

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 15) be **GRANTED** and that Plaintiff's claims against Defendant Kelly be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims against Nurse Doe Nos. 1-4 be **DISMISSED** *sua sponte;* and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to the action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[4]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2374119

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2371607
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jerrod Christopher THOMPSON, Plaintiff,

v.

Nurse KELLY, et al., Defendants.

9:18-CV-1235 (LEK/DJS)
|
Signed 06/05/2019

**Attorneys and Law Firms**

Jarrod Christopher Thompson, Johnstown, NY, pro se.

Nicholas Luke Zapp, New York State Attorney General,
Albany, NY, for Defendants.

## DECISION AND ORDER

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

 *1  This matter comes before the Court following a Report-
Recommendation filed on April 4, 2019, by the Honorable
Daniel J. Stewart, U.S. Magistrate Judge, pursuant to 28
U.S.C. § 636(b) and Local Rule 72.3, concerning Defendants'
motion to dismiss. See Dkt. Nos. 15 ("Motion to Dismiss"),
17 ("Plaintiff's Response"), 20 ("Report-Recommendation").

## II. LEGAL STANDARD

Within fourteen days after a party has been served with
a copy of a magistrate judge's report-recommendation, the
party "may serve and file specific, written objections to
the proposed findings and recommendations." Fed. R. Civ.
P. 72(b); L.R. 72.1(c). "The district judge must determine
de novo any part of the magistrate judge's disposition that
has been properly objected to" and it "may accept, reject,
or modify the recommended disposition; receive further
evidence; or return the matter to the magistrate judge with
instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636.
However, "where [the] parties receive clear notice of the
consequences, failure timely to object to a magistrate's report
and recommendation operates as a waiver of further judicial
review of the magistrate's decision." Mario v. P & C Food
Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002); see also
Thomas v. Arn, 474 U.S. 140, 150 (1985) (holding that

Congress did not "intend[ ] to require district court review of
a magistrate's factual or legal conclusions, under a de novo
or any other standard, when neither party objects to those
findings").

The Court may excuse a party's failure to object "in
the interests of justice," and modify or reject the report-
recommendation, if "the magistrate judge committed plain
error in ruling against the defaulting party." Spence v.
Superintendent, Great Meadow Corr. Facility, 219 F.3d 162,
174 (2d Cir. 2000). Therefore, when no party objects to
a magistrate judge's report-recommendation, courts in this
circuit review it only to determine whether the magistrate
judge made a clear error. Boice v. M+W U.S., Inc., 130 F.
Supp. 3d 677, 684 (N.D.N.Y. 2015); see also Fed. R. Civ. P.
72(b), Advisory Committee Notes: 1983 Addition ("When no
timely objection is filed, the court need only satisfy itself that
there is no clear error on the face of the record in order to
accept the recommendation.").

## III. DISCUSSION

The Magistrate Judge notified the parties that the "failure to
object to th[e] Report within fourteen days [would] preclude
appellate review." R & R at 13. No objections were filed in the
allotted time period. Thus, the Court has reviewed the Report-
Recommendation for clear error. It has found none.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 20)
is **APPROVED and ADOPTED in its entirety**; and it is
further

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No.
15) is **GRANTED**; and it is further

**ORDERED**, that this case is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close
this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this
Decision and Order on all parties in accordance with the Local
Rules.

 *2  IT IS SO ORDERED.

**Thompson v. Kelly, Slip Copy (2019)**
2019 WL 2371607

**All Citations**

Slip Copy, 2019 WL 2371607

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 127 of 141
Rodriguez v. County of Suffolk, Not Reported in F.Supp.3d (2014)
2014 WL 3531897

2014 WL 3531897
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Miguel RODRIGUEZ, Plaintiff,

v.

COUNTY OF SUFFOLK, Suffolk County
Correctional Center, P.O. John Does, Defendants.

No. CV 13–2070(SJF)(GRB).
|
Signed June 30, 2014.

**Attorneys and Law Firms**

Nora Constance Marino, Law Office of N. Marino, Great
Neck, NY, for Plaintiff.

Jason Bassett, Hauppauge, NY, for Defendants.

### REPORT & RECOMMENDATION

GARY R. BROWN, United States Magistrate Judge.

 **\*1** Plaintiff Miguel Rodriguez ("plaintiff" or "Rodriguez")
brought this civil rights action against defendants County of
Suffolk, the Suffolk County Correctional Center, and several
John Doe correctional officers (collectively, "defendants"),
setting forth causes of action under 42 U.S.C. § 1983 and
state law, based upon allegations that he was attacked and
beaten while in state custody. *See generally* Compl., Apr.
9, 2013, Docket Entry ("DE") [1]. On September 27, 2013,
defendants filed a motion for summary judgment predicated
upon (1) plaintiff's purported failure to exhaust administrative
remedies under the Prison Litigation Reform Act ("PLRA")
and (2) his alleged noncompliance with New York's General
Municipal Law § 50–h. *See generally* Mot. for Summ. J.
("Mot."), DE [12–1]; Opp'n to Mot. ("Opp'n"), DE [12–
12]; Defs.' Reply ("Reply"), Sept. 27, 2013, DE [12–23].
On December 11, 2013, the Honorable Sandra J. Feuerstein
referred the motion to the undersigned for a report and
recommendation.

For the reasons that follow, I respectfully recommend that
defendants' motion for summary judgment be GRANTED as
to the state law claims, and DENIED as to the federal claims.

### BACKGROUND

The relevant facts are generally undisputed for purposes
of this motion. *See generally* Defs.' Rule 56.1 Statement
("Defs.' Statement"), Sept. 27, 2013, DE [12–2]; Pl.'s Rule
56.1 Statement ("Pl.'s Statement"), Sept. 27, 2013, DE [12–
13]. Because defendants focus on plaintiff's alleged failure to
exhaust under the PLRA, they do not dispute the underlying
factual allegations regarding the correctional officers' attack
on plaintiff. *See generally* Defs.' Statement; Mot.; Reply. The
parties also do not dispute the pertinent facts surrounding
plaintiff's attempted exhaustion of administrative remedies.
*See generally* Defs.' Statement; Pl.'s Statement.

On or about December 14, 2011, plaintiff was arrested
and taken to the Suffolk County Correctional Facility. Pl.'s
Statement ¶ 2; Aff. of Miguel Rodriguez ("Rodriguez Aff.")
¶ 4, Sept. 27, 2013, DE [12–15]; Defs.' Statement ¶ 2.
Upon entry into the correctional facility, plaintiff received
the facility's Inmate Handbook ("Inmate Handbook"). Pl.'s
Statement ¶ 2; Rodriguez Aff. ¶ 5; Defs.' Statement ¶¶ 2–
3. The Handbook contains a section explaining the inmate
grievance process: "All inmates are entitled to file legitimate
grievances and may do so without fear of punishment or
reprisals. An inmate must file a grievance within (5) five
days of the date of the act or occurrence giving rise to the
grievance." Suffolk County Sheriff's Office Inmate Handbook
("Inmate Handbook") 15–16, Sept. 27, 2013, DE [12–6].
The Handbook provides that inmates "may request and will
receive a grievance form to fill out," and "may request and
receive assistance in filling out the grievance forms." *Id.*

On January 11, 2012, while plaintiff was incarcerated in
the Suffolk County Correctional Facility, several correctional
officers attacked and beat him. Pl.'s Statement ¶ 2; Rodriguez
Aff. ¶¶ 5–17. The attack began when several correctional
officers conducted a "shakedown" of plaintiff's cell. Pl.'s
Statement ¶ 2; Rodriguez Aff. ¶ 7. One of the officers,
identified as having three stripes on his uniform, entered
plaintiff's cell and, "without warning, physically attacked and
assaulted" plaintiff. Rodriguez Aff. ¶ 9. The officer sporting
three stripes "grabb[ed]" plaintiff by his neck and arm and
"forcefully push[ed][him] onto [his] back on the lower bunk"
of the cell. Rodriguez Aff. ¶ 10. That officer then "got on
top of [plaintiff] and straddled [him] before beginning to
strike [him] in the face repeatedly." *Id.* The officer struck
plaintiff's face approximately "20 to 30 times." *Id.* Two other
correctional officers were in the cell during the beating, but

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 128 of 141
Rodriguez v. County of Suffolk, Not Reported in F.Supp.3d (2014)
2014 WL 3531897

they "did nothing but watch as the officer with the three stripes struck" plaintiff. *Id.* ¶ 11.

**\*2** The officer then removed plaintiff from the cell and took him to an adjacent walkway. *Id.* ¶¶ 13–14. At the walkway, plaintiff was ordered to put his hands against the wall and spread his feet. As plaintiff was doing so, the officer struck him in the right side of his ribs "five or six times." *Id.* ¶¶ 12–14. Plaintiff then "collapsed into [himself]" and could not breathe. *Id.* ¶ 15. He uttered, through gasps, "I can't breathe," to which the officer responded, "That's good." *Id.* ¶¶ 14–16.

Plaintiff was then allowed to return to his cell, where he found that the cell's garbage pail had been dumped on his personal belongings. *Id.* ¶ 16. The correctional officers returned to the cell, and the officer wearing three stripes "gave a threatening warning to all the inmates, that 'this' could happen again, and at any time." *Id.* ¶ 17. Defendants' motion focuses on plaintiff's alleged failure to exhaust under the PLRA; thus, they do not dispute the underlying factual allegations regarding the correctional officers' attack on plaintiff. *See generally* Defs.' Statement; Mot.; Reply.

After the attack, plaintiff "desperately pleaded for someone —anyone, any corrections officer or staff member—to help [him] and get [him] medical attention." Pl.'s Statement ¶ 2; Rodriguez Aff. ¶ 17. These pleas lasted for approximately nine to ten hours, but he was ignored and received no medical attention. Rodriguez Aff. ¶ 17.

Plaintiff finally placed a call, through the correctional facility's phone, to his cousin, telling her that he needed emergency medical assistance. His cousin said that "she would see what she could do." *Id.* ¶ 18. After about one hour, plaintiff was called down to the medical unit of the correctional facility, where it was determined that plaintiff should be taken to an off-grounds hospital. *Id.* ¶¶ 17–18.

Plaintiff was taken to a hospital where he underwent X–Rays and a CAT scan. He had two broken ribs. *Id.* ¶ 20. He had "severe pain in [his] ribs," "swollen spots" on his lips, and "face and jaw cuts" on his facial area; he also "could not move at all, barely being able to eat or relieve [him]self." *Id.* ¶ 22. After he was released from the hospital, plaintiff was transferred back to the correctional facility, where he stayed in the medical tier for approximately one month. *Id.* ¶¶ 21–22.

During his stay in the medical tier, plaintiff requested a grievance form from one of the correctional officers, but the

officer failed to provide a form. Instead, the officer responded by asking plaintiff in an "intimidating" manner, "[W]hat for[?]" *Id.* ¶ 24. Plaintiff "did not answer and did not ask that officer again." *Id.* Plaintiff claims that

> [a]fter hearing the officer with the three stripe's prior threat, and after having been a victim myself of an assault, and after considering this officer [']s intimidating tone and manner, and being that I had already suffered serious injuries including two broken ribs ..., I was in great fear for my safety and feared telling him why I wanted the form, especially because it was to file a grievance against a colleague of his who beat me up and put me in the medical tier in the first place.

**\*3** *Id.* Defendants do not dispute the factual allegations regarding plaintiff's attempt to exhaust administrative remedies; instead, defendants contend that even assuming *arguendo* the factual allegations are true, plaintiff still failed to properly exhaust his administrative remedies. *See generally* Defs.' Statement; Mot. Reply 6.

After about a month and a half, plaintiff conducted research in the prison library and was "finally able to determine the proper form and procedure required to file a grievance," and "requested it from a corrections officer in the law library." *Id.* ¶¶ 28–29. The correctional officer in the library promptly provided the form to plaintiff. *Id.* ¶ 29.

Plaintiff completed the grievance form on March 18, 2012, but the form was returned on March 30, because it was not filed within five days of the alleged January 11 attack. *Id.* ¶¶ 30–32; Pl.'s Statement ¶¶ 12–13; Defs.' Statement ¶¶ 4–6.

On April 9, 2013, plaintiff commenced this action against defendants for "excessive force, deprivation of liberty, physical abuse, and the denial of medical treatment." *See generally* Compl. Defendants moved for summary judgment, arguing that the action should be dismissed because plaintiff failed to properly exhaust all available administrative remedies under the PLRA. *See generally* Mot.

## DISCUSSION

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure ("Rule") 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Rule 56. To defeat a motion for summary judgment, the non-moving party must produce evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. And a dispute over a material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court views all evidence in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-moving party's favor. *Isabella v. Koubek,* 733 F.3d 384, 387–88 (2d Cir.2013).

### II. Exhaustion of Administrative Remedies under PLRA

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

**\*4** "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Id.* at 524.

Failure to exhaust is an affirmative defense, and is not jurisdictional requisite. *Jones,* 549 U.S. at 211–12; *see also Morrow v. Dupont,* 08–CV–3083, 2010 WL 1005856, at \*7 (E.D.N.Y. Mar.15, 2010) ("[E]xhaustion under the PLRA is an affirmative defense, not a jurisdictional requirement[.]"). Whether the PLRA's exhaustion requirement has been satisfied is generally a question for the court rather than for the jury: there is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA." *Messa v. Goord,* 652 F.3d 305, 308–09 (2d Cir.2011) (per curiam).

The PLRA requires "complete" exhaustion in accordance with the prison's applicable procedural rules. *Id.* at 218. An inmate must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

In *Hemphill v. New York,* the Second Circuit set forth a "three-part inquiry" in cases "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." 380 F.3d 680, 686 (2d Cir.2004). First, the court must "ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* Second, the court should "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). And third, "[i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies," the court should "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Id.* (quoting *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004)).

In this instant action, the applicable grievance procedures are set forth in the Inmate Handbook. *See generally* Inmate Handbook 15–16. The Handbook provides that inmates are "entitled" to file grievance forms and that when an inmate requests a grievance form, one will be given to him. *Id.*

Grievance forms must also be filed within five days of the relevant occurrence. *Id.*

**III. Application**

**\*5** Defendants argue that plaintiff's claims must be dismissed because he failed to properly exhaust his administrative remedies in accordance with the PLRA. *See* Mot. 4. Plaintiff does not claim that he properly exhausted all administrative remedies; instead, he argues that he should be excused from the PLRA's exhaustion requirement because the administrative remedies were rendered effectively unavailable. *See generally* Opp'n 3–7, 11–15; Rodriguez Aff. ¶¶ 21–24.

**A. Threats Against Plaintiff**
Under the first prong of the *Hemphill* test, whether administrative remedies were unavailable is an "objective" test: "would a similarly situated individual of ordinary firmness have deemed them available." 380 F.3d at 688 (internal quotation marks omitted). "[T]hreats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance," thus rendering administrative remedies "unavailable." *Id.* However, "[m]ere allegation[s] of a generalized fear of retaliation [are] insufficient" to excuse a failure to file a grievance. *Brown v. Napoli,* 687 F.Supp.2d 295, 297 (W.D.N.Y.2009).

Courts tend to find mere "generalized fear," *see Brown,* 687 F.Supp.2d at 297, when no actual threat was made. *See, e.g., id* . (inmate merely alleged, without more, that he feared retaliation); *Contino v. City of N.Y.,* 11–CV–8537, 2013 WL 4015816, at \*6 (S.D.N.Y. Aug 7, 2013) (plaintiff's "conclusory assertion that he feared retaliation if he completed the grievance process is insufficient to excuse his obligation to exhaust the administrative grievance process."); *Bogard v. Bernal,* 08–CV–1157, 2009 WL 2634483, at \*3 ("Plaintiff speaks of an overall fear of retaliation if he were to file an administrative grievance but provides no specific examples of an actual threat to his physical safety if he were to file such a grievance."); *Harrison v. Stallone,* 06–CV–902, 2007 WL 2789473, at \*5 (N.D.N.Y. Sept.24, 2007) (plaintiff conclusorily claimed he did not file a grievance "due to the fear of retaliation").

After all, every inmate who suffers an attack at the hands of correctional officers has some level of fear of retaliation. *Harrison,* 2007 WL 2789473, at \*6 ("If every plaintiff

bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims."); *see also Porter v. Howard,* 10–CV–1817, 2011 WL 3298885, at \*4 (S.D.Cal. June 14, 2011) (rejecting inmate's argument that "any normal thinking person would be reluctant to report").

On the other hand, courts generally find that specific affirmative threats of retaliation are sufficient to "deter a prisoner of 'ordinary firmness' from filing an internal grievance." *Hemphill,* 380 F.3d at 688 ("[Plaintiff's] complaint specifically recounted [officer's] threatening statements, and the plaintiff's acquiescence"); *see also Morrison v. Hartman ("Morrison II"),* 898 F.Supp.2d 577, 581 (W.D.N.Y.2012); *Morrison v. Hartman ("Morrison I"),* 07–CV6633L, 2010 WL 811319, \*2 (W.D.N.Y. Mar.3, 2010) (threat against plaintiff and his family if grievance was filed excused plaintiff from requirement).

**\*6** When prison officials engage in "affirmative misconduct, such as threats or intimidation," administrative remedies are unavailable. *Hill v. Donoghue,* 08–CV–1045, 2010 WL 3924858, at \*1 (E.D.N.Y. Sept.30, 2010). One plaintiff was excused from the exhaustion requirement when a correctional officer responded to plaintiff's initial filing of a grievance by assaulting him and threatening that he would "get [plaintiff] sooner or later." *McCullough v. Burroughs,* 04–CV–3216, 2005 WL 3164248, at \*2–4 (E.D.N.Y. Nov.29, 2005); *see also Hepworth v. Suffolk Cnty.,* 02–CV–6473, 2006 WL 2844408, at \*4–7 (E.D.N.Y. Sept. 29, 2006) (excusing plaintiff from exhaustion requirement when he was threatened with an additional beating if he attempted to file another grievance form).

In the instant case, following the serious assault of plaintiff, resulting in his hospitalization, a specific threat was issued that the beating could happen again at "any time." While that threat was not specifically tied to the filing of a grievance, this standing threat of additional violence could potentially justify waiver of the exhaustion requirement. This credible threat taken together with the resistance of a second corrections officer in supplying plaintiff with a grievance form gives rise to a set of circumstances that rendered the administrative remedy effectively unavailable to plaintiff. *See Hemphill,* 380 F.3d at 688. When plaintiff asked for the grievance form, the second officer, not only demanded "What for?", but ultimately failed to provide plaintiff with a form, in violation of the County's express policies. *See* Inmate Handbook, 15–

2014 WL 3531897

16 (inmates "may request and will receive a grievance form to fill out"). Taking all these circumstances together, plaintiff was sufficiently deterred from filing a timely grievance, and the administrative remedies were rendered unavailable. *See Hemphill,* 380 F.3d at 688.

B. Failure to Provide Grievance Form Upon Request
Defendants also arguably failed to satisfy the first prong of the *Hemphill* test because defendants did not provide plaintiff with a grievance form upon request. *See* 380 F.3d at 688. Administrative remedies are rendered unavailable if "prison officials refuse to provide the required grievance forms upon request or ignore such a request." *Albino v. Baca,* 697 F.3d 1023, 1034 n. 7 (9th Cir.2012); *see also Lineberry v. Fed. Bureau of Prisons,* 923 F.Supp.2d 284, 293 (D.D.C.2013) (same). Indeed, administrative remedies are, in a very real way, "unavailable" if prison officials fail "to provide inmates with those [grievance] forms when requested." *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004). The failure to provide a form upon request need not be deliberate; even an officer's "innocent[ ]" failure to do so makes administrative remedies unavailable and prevents proper exhaustion. *Jefferson v. Perez,* 09–CV–3008, 2012 WL 5706299, at *5 (E.D.Cal. Nov.15, 2012).

*7 Furthermore, the Inmate Handbook mandates that inmates are "entitled" to file grievance forms and *"will receive* a grievance form" upon request. Inmate Handbook 15–16 (emphasis added). The meaning is plain: when an inmate requests a grievance form, he must receive one. There are no qualifications to this rule. *See id.*

According to plaintiff's Rule 56.1 Statement and his affidavit, when he asked a correctional officer for a grievance form, he did not receive one. *See* Pl.'s Statement ¶ 2; Rodriguez Aff. ¶ 24. After being asked for a grievance form, the officer responded, "What for?" When plaintiff did not reply, the officer neither followed up nor provided a grievance form. *Id.*

In light of the correctional officer's failure to provide a grievance form upon request, defendants rendered their administrative remedies effectively unavailable. A plaintiff's legitimate request for a grievance form should not be ignored. *See Albino,* 697 F.3d at 1034 n. 7; *Lineberry,* 923 F.Supp.2d at 293. Even if the correctional officer's failure to provide a grievance form was innocent, such a failure effectively renders administrative remedies unavailable. *Jefferson,* 2012 WL 5706299, at *5; *see also Albino,* 697 F.3d at 1034 n. 7. If an inmate must properly follow the prescribed grievance

procedures, the correctional facility should certainly be held to the same standards when making grievance forms available to inmates who request them. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir.2005) ("We have ... excused inmates from complying with an institution's grievance procedures ... when officials themselves have failed to comply with the grievance procedures."); *Hill v. Anderson,* 06–CV–4497, 2008 WL 319898, at *6 (D.Minn. Feb.5, 2008) ("if prison officials do not follow their own administrative procedures, a claim may be deemed exhausted.").

The administrative remedies may have been "available" in the "strict sense," in that grievance procedures had been "established and were known to" plaintiff. *Morrison I,* 2010 WL 811319, at *2. However, the availability test is "not [dependent] upon the mere existence of grievance procedures": if correctional officers fail to provide a grievance form upon request, the administrative remedies cease to be actually available. *See id.* Therefore, defendants also fail on *Hemphill's* first-prong availability requirement because their actions rendered the grievance process effectively unavailable.

IV. State Law Claims
Defendants also argue that plaintiff's state law claims should be dismissed because neither plaintiff nor his counsel appeared at a hearing pursuant to New York's General Municipal Law § 50–h. Mot. 5–6.

Generally, a plaintiff who has failed to comply with a demand for a hearing served pursuant to General Municipal Law § 50–h is "precluded from commencing an action against a municipality." *Coleman v. City of Niagara Falls,* 09–CV–157S, 2010 WL 2869529, at *4 (W.D.N.Y. July 20, 2010) (collecting cases). "The law is well established that, until a potential plaintiff has complied with General Municipal Law § 50–h(1), he is precluded from commencing an action against a municipality." *La Vigna v. Cnty. of Westchester,* 160 A.D.2d 564, 554 N.Y.S.2d 1014 (N.Y.App.Div.1990). The purpose of the statute is to allow the county defendant "an opportunity to depose the claimant before an action is commenced to facilitate the possible resolution of any dispute prior to litigation." *Coleman,* 2010 WL 2869529, at *4. And the plaintiff may request an adjournment of the administrative hearing, and the county defendant should "grant a reasonable request[ ] for adjournment of the administrative hearing." *Id.* However, the burden is on "the plaintiff, not the County defendants," to take the necessary steps to reschedule a § 50–h hearing. *Kemp v. Cnty. of Suffolk,* 61 A.D.3d 937, 878

N.Y.S.2d 135, 136 (N.Y.App.Div.2009); *see also Zapata v. Cnty. of Suffolk,* 23 A.D.3d 553, 806 N.Y.S.2d 597, 598 (N.Y.App.Div.2005); *Scalzo v. Cnty. of Suffolk,* 306 A.D.2d 397, 760 N.Y.S.2d 879 (N.Y.App.Div.2003); *Coleman,* 2010 WL 2869529, at *4.

**\*8** Plaintiff claims that he had a criminal case pending and that he did not attend the § 50–h hearing pursuant to his Fifth Amendment privilege against self-incrimination. Opp'n 16. Plaintiff was well within his rights to do so, *see Coleman,* 2010 WL 2869529, at *4–5; *Cnty. of Orange v. Rodriguez,* 283 A.D.2d 494, 724 N.Y.S.2d 477, 479 (N.Y.App.Div.2001); but where the plaintiff invokes his Fifth Amendment privilege against self-incrimination, the civil plaintiff, not the county defendants, is obligated to reschedule the hearing. *See Kemp,* 61 A.D.3d 937, 878 N.Y.S.2d 135; *see also Scalzo,* 306 A.D.2d 397, 760 N.Y.S.2d 879; *Coleman,* 2010 WL 2869529, at *4.

Despite plaintiff's obligation to request an adjournment of the hearing, it is undisputed that plaintiff never submitted, or attempted to submit, a request for adjournment. *See generally* Pl.'s Statement ¶¶ 16–17; Defs.' ¶¶ Statement 10–11; Opp'n 15–18. In fact, plaintiff seems to assume that the burden was on defendants to attempt to reschedule the hearing: "Here, defendants never sought to reschedule the hearing, and have provided nothing evidencing same." Opp'n 17; *see also* Pl.'s Statement ¶¶ 16–17; Defs.' ¶¶ Statement 10–11. Plaintiff's assumption is contrary to the law. *See Kemp,* 61 A.D.3d 937, 878 N.Y.S.2d 135; *Scalzo,* 306 A.D.2d 397, 760 N.Y.S.2d 879. Defendants did not have the burden to attempt a rescheduling of the hearing. The burden and responsibility was on plaintiff. *See Kemp,* 61 A.D.3d 937, 878 N.Y.S.2d 135. Thus, the state law claims must be dismissed because plaintiff did not comply with the hearing requirements of §

50–h. *See Kemp,* 61 A.D.3d 937, 878 N.Y.S.2d 135; *Zapata,* 806 N.Y.S.2d at 598; *Coleman,* 2010 WL 2869529, at *4.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that defendants' motion for summary judgment be GRANTED as to the state law claims, and DENIED as to the federal claims.

## OBJECTIONS

A copy of this Report and Recommendation is being mailed to the representatives of each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed.R.Civ.P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Thomas v. Arn,* 474 U.S. 140, 145, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d Cir.2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

### All Citations

Not Reported in F.Supp.3d, 2014 WL 3531897

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 133 of 141

Curtis v. Bola, Not Reported in Fed. Supp. (2016)

2016 WL 7735755

2016 WL 7735755
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald Lee CURTIS, Plaintiff,
v.
R. BOLA and D.G. DuBrey, Defendants.

9:15-CV-00718 (GLS/TWD)
|
Signed 11/01/2016

**Attorneys and Law Firms**

DONALD LEE CURTIS, 86-A-3111, Five Points
Correctional Facility, Caller Box 119, Romulus, New York
14541, Plaintiff pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General for the
State of New York, The Capitol, OF COUNSEL: JUSTIN
L. ENGEL, ESQ., Assistant Attorney General, Albany, New
York 12224, Counsel for Defendants.

## ORDER AND REPORT AND RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

## I. INTRODUCTION

*1 Pro se Plaintiff Donald Lee Curtis is an inmate in the
custody of the New York Department of Corrections and
Community Supervision ("DOCCS"), currently housed at
Five Points Correctional Facility. Plaintiff commenced this
civil rights action pursuant 42 U.S.C. § 1983 on June 11,
2015. (Dkt. No. 1.) The allegations in the complaint relate
to Plaintiff's previous confinement at Clinton Correctional
Facility ("Clinton"). Id.

Upon initial review under 28 U.S.C. §§ 1915(e) and 1915A,
Plaintiff was found by the Hon. Gary L. Sharpe, Senior
District Judge, to have alleged enough to require a responsive
pleading against Defendants R. Bola ("Bola"), a civilian food
services worker at Clinton, and Clinton Corrections Officer
D.G. DuBrey ("DuBrey") for violation of his rights under
the First Amendment Free Exercise Clause, and retaliation in
violation of his First Amendment rights; and against DuBrey
for violation of his rights under the Eighth Amendment in
connection with the alleged tampering with Plaintiff's food
and water. (Dkt. No. 5 at 10, 12, 20-21.)

Defendants Bola and DuBrey now seek summary judgment
pursuant to Rule 56 of the Federal Rules of Civil
Procedure on the grounds that Plaintiff has failed to exhaust
his administrative remedies. (Dkt. No. 29.) Plaintiff has
responded to the motion (Dkt. No. 31) and Defendants have
filed reply papers. (Dkt. No. 32.)

## II. FACTUAL BACKGROUND

### A. Facts Underlying Plaintiff's Free Exercise and
Retaliation Claims

Plaintiff is Jewish and follows Kosher dietary laws. (Dkt. No.
29-16 at 11.) In early January 2014, Defendant DuBrey began
serving Kosher meals in the mess hall. [1] Id. at 49. DuBrey
served the meals without wearing gloves. Id. at 12. DuBrey
refused Plaintiff's requests to wear gloves. (Dkt. Nos. 1-1 at ¶¶
18, 20, 22-23; 29-16 at 12-15.) When Plaintiff complained to
Defendant Bola, who was tasked with making sure everyone
serving food in the mess hall wore gloves, Bola laughed and
said that "you Jews are always complaining," and DuBrey
could serve the food however he saw fit. (Dkt. Nos. 1-1 at ¶
18; 29-16 at 14.) DuBrey continued serving the Kosher food
without gloves. (Dkt. No. 29-16 at 15-16.)

[1]   "Kosher meals" and "CAD" (cold alternative diet)
      are used interchangeably herein.

In the early part of January 2014, Plaintiff once again asked
DuBrey to use gloves when handling his Kosher food. (Dkt.
No. 1 at ¶ 20.) DuBrey shoved Plaintiff's Kosher tray at him
and told him to "get the fuck away from the counter." Id.
Plaintiff refused to take the tray and went back to his cell
and wrote a letter to David Timmons ("Timmons"), Food
Service Administrator at Clinton, complaining about DuBrey
not wearing gloves when he served the Kosher food. [2] (Dkt.
No. 1-1 at ¶ 19.) Plaintiff continued to argue with DuBrey
about wearing gloves every morning in the mess hall. (Dkt.
Nos. 1-1 at ¶¶ 15, 22; 29-16 at 15.) DuBrey told Plaintiff if he
did not like the way he served the food, Plaintiff should get
off the Kosher meal list. (Dkt. Nos. 1-1 at ¶ 23; 29-16 at 15.)

[2]   Plaintiff's letter to Timmons does not appear
      to be part of the summary judgment record.
      Timmons' January 14, 2014, memorandum in
      response indicates that Plaintiff's letter was dated
      January 6, 2014. (Dkt. No. 1-3 at 11.) Timmons did
      not mention the glove issue in his memorandum.

**Curtis v. Bola**, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-01610-BKS-TWD   Document 28   Filed 02/01/21   Page 134 of 141

2016 WL 7735755

(Dkt. Nos. 1-1 at ¶ 24; 1-3 at 11.) The memorandum informed Plaintiff he would have to raise his concerns about an officer who was out to get him off the Kosher list with security. *Id.* Timmons also noted that Plaintiff had indicated in his letter that he took food back to his cell and informed him that except for a couple of allowed items, food was not be taken from the mess hall. *Id.*

**\*2**  On January 15, 2014, DuBrey continued to serve Plaintiff's Kosher food and cups of hot water without gloves. (Dkt. No. 1-1 at ¶ 25.) In his complaint, Plaintiff alleges that at breakfast that morning he drank tea that he had made with the hot water. (Dkt. No. 1-1 at ¶ 26.) At his deposition, testified he drank coffee. (Dkt. No. 29-16 at 19.) According to Plaintiff, the hot beverage he drank that morning had a strange odor and a taste he was not used to. (Dkt. Nos. 1-1 ¶ 26; 29-16 at 18.) When Plaintiff got back to his cell he felt ill all of a sudden. (Dkt. Nos. 1-1 ¶ 27; 29-16 at 19.) His body was covered with welts, and his legs and ankles became swollen. *Id.* That evening, another inmate told Plaintiff that he had tried to tell him that had seen a corrections officer put something in Plaintiff's water before giving it to him. [3]  (Dkt. No. 29-16 at 22.)

[3]    Annexed as Exhibit P to Plaintiff's complaint is a January 15, 2014, statement by another inmate, affirmed pursuant to 28 U.S.C. § 1746, stating that the inmate had seen DuBrey spray cleaning solution into two Styrofoam cups, put hot water in the cups, and give them to Plaintiff at breakfast on January 15, 2014. (Dkt. No. 1-3 at 42-43.) According to Plaintiff, he informed the Superintendent of the facility about the statement in a February 27, 2014, letter. (Dkt. No. 1-1 at ¶ 39.) In a March 6, 2014, letter to DOCCS Commissioner Annucci, Plaintiff wrote that he had not sent the inmate's statement to the Clinton Superintendent in order to protect the identity of the inmate. (Dkt. No. 1-3 at 39.)

The welts and swelling were gone by morning on January 16, 2014, so Plaintiff went to the mess hall for breakfast where he was again served food and hot water by DuBrey. (Dkt. No. 1-1 at ¶¶ 28-29.) Plaintiff again complained about DuBrey not wearing gloves. *Id.* at ¶ 29. When Plaintiff opened his Styrofoam tray, he discovered that someone had messed up the food, and he again noticed that his hot tea had an odor. *Id.* at ¶ 30. That evening, Plaintiff again broke out in welts, his feet swelled, and he began to sweat. *Id.* at ¶ 31. Plaintiff

requested medical attention but was not taken to the facility hospital until the following day. *Id.* Plaintiff informed the medical staff he believed that poison or something toxic had been added to his hot water by DuBrey, and that Bola was involved. *Id.*; Dkt. No. 29-6 at 26. Plaintiff was given pills and sent back to his cell to rest. (Dkt. No. 1-1 at ¶ 32.)

Plaintiff continued to be ill with vomiting and excessive bowel movements and was seen at the facility hospital again on January 21, 2014, for the welts and swelling and vomiting and excessive bowel movements. *Id.* at ¶ 34. Plaintiff was placed on bed rest and ended up back at the facility hospital on January 24, 2014, with the same ailments. *Id.* at ¶¶ 34-35; Dkt. No 1-3 at 31. Plaintiff continued to be ill until he was placed in SHU in March. (Dkt. Nos. 1-1 at ¶ 37; 1-3 at 33; 29-16 at 53.)

On February 27, 2014, Plaintiff was interviewed by the food service administrator regarding DuBrey not wearing gloves and Plaintiff's suspicion that DuBrey was poisoning him. (Dkt. Nos. 1-1 at ¶ 36; 29-16 at 30.) After the interview, DuBrey threatened Plaintiff, telling him that if he did not get off the Kosher meal line, he would see to it that some harm came to him. (Dkt. Nos. 1-1 at ¶ 36; 29-16 at 30.) Plaintiff returned to his cell and wrote a letter of complaint to the Superintendent and Food Service Administrator at Clinton advising them that because of the threats made by DuBrey, Plaintiff was removing himself from the Kosher meal list effective March 4, 2014. (Dkt. Nos. 1-1 at ¶ 39; 29-16 at 31.) Plaintiff complained in the letter that DuBrey was ransacking his food and poisoning his hot water, and Plaintiff expressed concern for his life. (Dkt. Nos. 1-1 at ¶ 39; 29-16 at 30.) Plaintiff also wrote to DOCCS Commissioner Annucci complaining of the situation regarding his Kosher meals and his belief that he was being poisoned by DuBrey. (Dkt. No. 1-3 at 37.)

**\*3**  Because he still had not been removed from the Kosher meal list, Plaintiff went to the mess hall to sign off the list on March 9, 2014, when DuBrey was not working. (Dkt. Nos. 1-1 at ¶¶ 42-43; 1-3 at 44-45.) Plaintiff went to the regular food line for breakfast on March 10, 2014, and took an empty tray and glass of milk. (Dkt. No. 1-1 at ¶ 45.) DuBrey and Bola came over, asked for Plaintiff's I.D., and told him he was supposed to be in the Kosher line. *Id.* Another civilian employee and corrections officer told DuBrey and Bola that Plaintiff had signed off of the Kosher list the day before, and that the form was in the office. *Id.*

**Curtis v. Bola**, Not Reported in Fed. Supp. (2016)

2016 WL 7735755

Case 9:19-cv-01610-BKS-TWD    Document 28    Filed 02/01/21    Page 135 of 141

According to Plaintiff, he told DuBrey that he had threatened him to get off the Kosher list, and now that Plaintiff had done so, DuBrey was still harassing him. DuBrey and Bola took Plaintiff's I.D. and told him to sit down. *Id.* DuBrey and Bola had Plaintiff put in keeplock and issued a misbehavior report stating that Plaintiff had picked up a regular meal in spite of a court order that he must be provided a CAD diet. (Dkt. No. 1-3 at 53.) The March 10, 2014, Tier III misbehavior report states that Plaintiff became loud and boisterous and made statements that DuBrey and Bola were anti-Semitic, causing the other inmates to take notice. *Id.* Plaintiff was charged with 102.10 threats, 104.13 disturbing conduct, 106.10 direct order, and 107.11 harassment. *Id.*

The same day, Plaintiff wrote another letter to the facility Superintendent complaining that he had been placed in keeplock by DuBrey for a CAD violation despite having signed off the Kosher meal list, and that DuBrey had been harassing him since January 2014. (Dkt. No. 1-3 at 46-47.) Plaintiff informed the Superintendent that the CAD meal sent to his cell on March 10, 2014, where he was being held in keeplock, had a smiley face drawn on it. *Id.* at 48. Plaintiff told the Superintendent that the keeplock was nothing but harassment and a retaliatory tactic. *Id.* at 49.

Plaintiff was found guilty on all of the charges at his disciplinary hearing and given two months in SHU with a corresponding loss of privileges. *Id.* at 56. Albert Prack, Director Special Housing/Inmate Disciplinary Program, reviewed the finding of guilt on appeal, and reversed the determination of guilt on May 27, 2014, after Plaintiff had already spent the two months in SHU. *Id.* at 68; Dkt. No. 29-16 at 72-73. By the time of Prack's determination, Plaintiff had been placed in involuntary protective custody because his signature had been forged on threatening letters written against facility staff. [4] (Dkt. No. 1-4 at 19.)

[4]     On March 13, 2014, while Plaintiff was in SHU, a misbehavior report was issued against him for allegedly sending a facility education supervisor a note which read "I'll kill you bitch." (Dkt. No. 1-4 at 7.) The charges were dismissed when the signature on the note was determined not to belong to Plaintiff. (Dkt. Nos. 1-4 at 9; 29-16 at 54.)

In June 2014, Plaintiff wrote letters to a Clinton County Assistant District Attorney, a New York State Police Captain, and the United States Attorney for the Northern District of New York asking that DuBrey be criminally charged for poisoning him, and complaining about having been falsely charged by DuBrey on March 10, 2014, and placed in cell confinement, and conspiring with others to forge Plaintiff's signature on a threatening letter. (Dkt. No. 1-4 at 24-35.)

**B. Plaintiff's Grievances**

Plaintiff filed two grievances related to his claims against DuBrey and Bola. In Grievance No. CL-65155-14, dated February 9, 2014, Plaintiff complained that his Kosher meals and hot water and cups were being handled and served by un-gloved, non-inmates. (Dkt. No. 1-3 at 16-26.) Plaintiff also complained in the grievance that poison or a caustic cleaning solution had been being placed in his hot water since January 15, 2014. *Id.* The Superintendent rendered a decision on the grievance on March 5, 2014. *Id.* at 27.

**\*4** The Superintendent's decision attached as an exhibit to Plaintiff's complaint shows that Plaintiff signed the appeal statement on the bottom of the decision on March 6, 2010. [5] *Id.* Plaintiff stated that he was appealing to the Central Office Review Committee ("CORC") because the Superintendent's decision was an attempt to cover up wrongdoing; the grievance was not, as the decision suggested, about his being harassed by a food service administrator but was clearly about his meals being tampered with and food being poisoned by DuBrey and Bola, causing him to be sick; and that Plaintiff had been threatened with physical harm if he did not get off the CAD diet. *Id.* at 28-29.

[5]     The copy of the Superintendent's March 5, 2014, decision submitted in support of Defendants' motion for summary judgment does not contain the appeal statement to CORC. (Dkt. No. 29-8 at 2.)

Plaintiff confirmed that Grievance No. CL-65155-14 was about DuBrey and Bola at his deposition. (Dkt. No. 29-16 at 61.) Plaintiff testified at his deposition that he had appealed the Superintendent's decision to CORC, but that all of the grievances concerning DuBrey, and only grievances against DuBrey, that he had appealed to CORC had disappeared. *Id.* at 63, 65.

According to Plaintiff's testimony, he has appealed every grievance he filed to CORC. *Id.* When asked to explain the filing procedure, Plaintiff testified that he would fill out the appeal statement section of the Superintendent's decision, sign and date it, seal it and address it to the Internal Grievance Resolution Committee ("IGRC"), and put it up in the mailbox. *Id.* at 64.

Curtis v. Bola, Not Reported in Fed. Supp. (2016)

2016 WL 7735755

In Grievance No. CL-65307-14, dated March 10, 2014, Plaintiff referenced Grievance No. CL-65155-14, which he described as having complained of staff serving CAD meals and hot water without gloves, and DuBrey and Bola tampering with his CAD meals and putting caustic cleaning solution in his food and hot water. (Dkt. No. 29-7 at 2.) Plaintiff complained that DuBrey threatened him harm if he did not get off CAD, and then when he did, DuBrey wrote him up for receiving regular food even after Plaintiff informed him that the sign off form with his signature was in the kitchen. *Id.* at 5. Plaintiff also complained in the grievance that DuBrey's March 10, 2014, false misbehavior report constituted retaliation. *Id.* at 6.

Grievance No. CL-65307-14 was denied by the Superintendent in a decision dated March 25, 2014. (Dkt. No. 1-3 at 52.) The signed appeal statement appealing to CORC, dated March 26, 2014, attached as an exhibit to Plaintiff's complaint,[6] states "I appeal on the same grounds as stated in the grievance because the retaliation is clearly obvious and all code 49 decisions are partial to DOCCS employees." *Id.* Plaintiff testified at his deposition that he had appealed the Superintendent's decision on Grievance No. CL-65307-14 to CORC. (Dkt. No. 29-16 at 69.)

[6]    The copy of the Superintendent's March 25, 2014, decision submitted in support of Defendants' motion for summary judgment does not contain the appeal statement to CORC. (Dkt. No. 29-9 at 2.)

According to Plaintiff, having received no response from CORC on his appeal of Grievance No. CL-65155-14, he "smelled a rat" and checked with the Inmate Grievance Program ("IGP") Supervisor.[7] (Dkt. No. 1-1 at ¶ 66.) The IGP Supervisor, C. Gregory, in an August 3, 2014, memorandum, informed Plaintiff that no CORC appeal to his grievance had been received, and it was beyond the time frame to appeal to CORC. (Dkt. No. 1-4 at 53.)

[7]    At his deposition, Plaintiff was shown an August 3, 2014, letter to the IGRC inquiring about a grievance decision involving DuBrey. (Dkt. No. 29-16 at 74.)

**\*5** The following day, Plaintiff filed Grievance No. CL-65890-14, dated August 5, 2014, complaining that his grievances were being tampered with and destroyed by the IGP staff as well as other facility staff. (Dkt. No. 29-11 at 2.)

Plaintiff stated in the grievance that his appeal on Grievance No. CL-65155-14 had disappeared and accused the IGP staff of destroying it. *Id.* Plaintiff also complained that he had not yet received a decision on Grievance No. CL-65307-14, which is inconsistent with the Superintendent's decision on the grievance, dated March 25, 2014, and Plaintiff's March 26, 2014, appeal statement submitted by Plaintiff as an exhibit to his complaint, and his deposition testimony. (Dkt. Nos. 1-3 at 52; 29-16 at 69.)

The IGRC issued a decision finding that no CORC appeals had been filed on the two grievances on August 13, 2014. (Dkt. No. 29-12 at 2.) The Acting Superintendent issued a decision on Grievance No. CL-65890-14 upholding the IGRC decision on September 5, 2014. (Dkt. No. 29-13 at 2.) He found that a decision had been issued on Grievance No. CL-65307-14 on March 25, 2014, and that no appeal to CORC had been received and no inquiry as to the status had been received from Plaintiff. *Id.* The decision acknowledged that Plaintiff had inquired as to the status of Grievance No. CL-65115-14, and that a status report had been issued on August 4, 2014. *Id.* The Superintendent noted that the staff had denied destroying Plaintiff's grievance complaints. *Id.* CORC upheld the decision on appeal. (Dkt. No. 29-14 at 2.)

In addition to filing the grievance, Plaintiff wrote to Karen Bellamy ("Bellamy"), DOCCS IGP Director, on August 5, 2014. (Dkt. No. 1-4 at 55-57.) Plaintiff wrote to Bellamy to complain about Clinton IGP Supervisor Gregory purposefully destroying his Code 49 appeals to CORC and withholding decisions on his Code 49 grievances which he had against DuBrey. (Dkt. No. 1-4 at 55.) Plaintiff specifically addressed his appeal to CORC on Grievance No. CL-65155-14. *Id.* According to Plaintiff, he sent his CORC appeal on the grievance to Gregory and retained a copy, and Gregory claimed that the appeal was never received. *Id.* In the letter, Plaintiff repeated his claim that he had not received a decision on Grievance No. CL-65307-14. *Id.* at 56.

Bellamy responded to Plaintiff's letter on August 12, 2014. *Id.* at 58. Bellamy wrote that contact with Clinton administration revealed that Plaintiff did not submit appeals for Grievance Nos. CL-65155-14 and Cl-65307-14. *Id.* Bellamy noted that Grievance No. CL-65890-14, dealing with the appeal issue, was pending, and she advised Plaintiff that DOCCS Directive # 4040 made no provision for an inmate to refer grievances directly to Central Office. *Id.* Bellamy told Plaintiff that grievance concerns should be addressed to the IGP Supervisor for the most expeditious resolution. *Id.*

**Curtis v. Bola, Not Reported in Fed. Supp. (2016)**

2016 WL 7735755

Defendants have submitted the Declaration of Assistant Director of the DOCCS IGP, Jeffrey Hale ("Hale"), who conducted a search of the CORC database for records of appeals to CORC on Grievance Nos. CL-65155-14 and CL-65307-14. (Dkt. No. 29-4 at ¶¶ 1, 14.) According to Hale, his search revealed that Plaintiff never appealed either of the grievances to CORC, nor did he appeal any other grievance complaining of his Kosher meals being poisoned or retaliation at Clinton between January and March 2014. *Id.* Plaintiff does not dispute that he commenced this action on June 11, 2015, without CORC having issued decisions on Grievance Nos. CL-65155-14 and Cl-65307-14 and, as discussed above, claims that his appeals to CORC of those grievances were destroyed.

### III. APPLICABLE SUMMARY JUDGMENT LEGAL STANDARDS

**\*6** Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified

complaint is to be treated as an affidavit. [8] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist....") (citations omitted).

[8]   The Court finds that Plaintiff's complaint this case was adequately verified under 28 U.S.C. § 1746 by the language " '[p]ursuant to 28 USC § 1746, Plaintiff verifies and affirms under the penalties that all the above is true to his knowledge and belief.' " (Dkt. No. 1-1 at 42.)

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." "To defeat summary judgment, ... nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at \*3 (S.D.N.Y. Oct. 28, 1999) [9] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

[9]   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with

Curtis v. Bola, Not Reported in Fed. Supp. (2016)

2016 WL 7735755

*LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

## IV. ANALYSIS

### A. Plaintiff's Failure to Respond to Defendants' Statement of Material Facts

**\*7** While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve [a pro se] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the Statement of Material Facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3). [10] Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, [11] and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. [12] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's pro se status, the Court has opted to review the entire record in determining if there are material facts in dispute.

[10]    L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

[11]    L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."

However, *see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[12]    Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion. (Dkt. No. 29 at 3.)

### B. Exhaustion of Administrative Remedies

#### 1. Legal Standard for Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, DOCCS has a well-established IGP. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id.* at § 701.5(b)(2)), and issues a written decision within two

working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

**\*8** Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* at § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93. Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at \*4 (N.D.N.Y. Mar. 31, 2010); *Bailey v. Fortier*, No. 09-CV-0742 (GLS/DEP), 2012 WL 6935254, at \*6 (N.D.N.Y. Oct. 4, 2012) (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence).

A prisoner's failure to exhaust, however, does not end a court's exhaustion review. For more than ten years, courts in this district were guided by the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Under *Hemphill*, the Second Circuit established a three-part inquiry to determine whether, *inter alia*, a plaintiff's failure to exhaust available administrative remedies could nevertheless be justified by "special circumstances." [13] *Id.* However, on June 6, 2016, the Supreme Court rejected the "special circumstances" exception applied by many circuits, and held that "[c]ourts may not engraft an unwritten 'special circumstance' onto the PLRA's exhaustion requirement." *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1862 (2016). In *Ross*, the question before the Court was whether there is a "special circumstances" exception under the PLRA when the inmate erroneously believed that he had satisfied the exhaustion requirement. *Id.* at 1855. In an opinion by Justice Elena Kagan, the Supreme Court held that there is no such exception:

> the [PLRA] mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. The court below adopted an unwritten "special circumstances" exception to that provision, permitting some prisoners to pursue litigation even when they have failed to exhaust available administrative remedies. Today, we reject that freewheeling approach to exhaustion as inconsistent with the PLRA.

*Id.* at 1854-55. (internal citation omitted).

[13]     Generally, the "special circumstances" exception was applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterpreted the statutory requirements of the appeals process. *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004), *abrogated by Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850 (2016).

The Supreme Court rejection of the "special circumstances" exception still does not end a court's review "because the PLRA contains its own, textual exception to mandatory exhaustion." *Id.* at 1858. Under the PLRA, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Thus, courts are still tasked with determining whether or not a prisoner's administrative remedies are, in fact "available."

**\*9** To guide courts in this analysis, the Supreme Court identified "three kinds of circumstances" in which an administrative remedy, "although officially on the books," is not "available." *Id.* at 1853. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 1853-54. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Curtis v. Bola, Not Reported in Fed. Supp. (2016)

2016 WL 7735755

2. <u>Analysis of the Exhaustion Issue</u>

In support of their motion for summary judgment, Defendants have submitted evidence that DOCCS records reveal that no appeals from Grievance Nos. CL-65155-14 and Cl-65307-14 were filed with CORC. (Dkt. Nos. 29-4 at ¶ 14; 29-10 at 2-5.) Defendants have also submitted copies of the Superintendent's decisions on both grievances on which the appeal statement is blank to show that Plaintiff did not appeal to CORC (Dkt. Nos. 29-8 at 2; 29-9 at 2), and the IGRC's, Superintendent's, and CORC's decisions on Grievance No. CL-65890-14 finding that Plaintiff did not appeal to CORC on Grievance Nos. CL-65155-14 and Cl-65307-14, and that there was no malfeasance on the part of staff. (Dkt. Nos. 29-12 at 2; 29-13 at 2; 29-14 at 2.)

In addition, Defendants have submitted Plaintiff's deposition testimony in which he testified that he had filed appeals with CORC on Grievance Nos. CL-65155-14 and Cl-65307-14. (Dkt. No. 29-16 at 63, 69). Plaintiff has alleged in his verified complaint that he sent an appeal to CORC on Grievance No. 65155-14 to the IGRC via the mailbox and never received a response. (Dkt. No. 1-1 at ¶ 66.) Plaintiff has submitted as exhibits to his complaint copies of the Superintendent's decisions on Grievance Nos. CL-65155-14 and Cl-65307-14 which include signed and dated appeal statements. (Dkt. No. 1-3 at 27, 52.) Plaintiff also made status inquiries regarding his appeal to CORC on Grievance No. 65155-14 to both IGP Supervisor Gregory and Director Bellamy and filed a grievance complaining of the destruction of his appeals to CORC on grievances involving DuBrey. (Dkt. Nos. 1-4 at 53, 55-57; 29-11 at 2.)

When questions of fact and issues of credibility exist regarding the failure to exhaust administrative remedies, a court should neither engage in fact finding nor make determinations as to credibility in addressing a defendant's motion for summary judgment for failure to exhaust. *See, e.g., White v. Clark*, No. 9:12-CV-986 (NAM/DJS), 2016 U.S. Dist. LEXIS 17689, at * 16-18 (N.D.N.Y. Feb. 11, 2016) [14] (finding that assessments of credibility are not proper on summary judgment and disputed issues of material fact had to await an exhaustion hearing); *Nelson v. Plumley*, No. 9:12-CV-422 (TJM/DEP), 2014 WL 4659327, at * 13 (N.D.N.Y. Sept. 17, 2014) (denial of summary judgment and referral for an exhaustion hearing where issues of fact were found in the question of exhaustion); *Bailey*, 2010 WL 4005258, at *7 and n.7 (summary judgment not appropriate where genuine issues of fact exist as to whether plaintiff was precluded from exhausting administrative remedies by the actions of prison officials); *Collins v. Goord*, 438 F. Supp. 2d 399, 414 (S.D.N.Y. 2006) (summary judgment denied where plaintiff's submissions found sufficient to raise an issue of fact on whether the IGP process was, in fact, "available" to him).

[14]    There is no Westlaw cite for this Report-Recommendation, nor is it contained in the official reporters.

**\*10**    As discussed above, in *Ross*, an administrative procedure, "although officially on the books," is not "available" when prison administrators thwart an inmate from taking advantage of the grievance process through "machination, misrepresentation, or intimidation." 136 S.Ct. at 1853-55. The Court finds that Plaintiff's claim that all of his appeals to CORC on grievances involving DuBrey were destroyed by the IGP Supervisor or his staff, or facility staff, rather than sent to CORC for review, raises an issue as to the "availability" of the DOCCS IGP. Moreover, the Court finds that there are material issues of fact on the issue of availability of the DOCCS IGP with respect to Grievance Nos. CL-65155-14 and Cl-65307-14.

Given the finding that there are material issues of fact in dispute, the Court is unable to determine as a matter of law on this motion whether Plaintiff has exhausted his administrative remedies in this case. Therefore, the Court recommends that Defendants' motion for summary judgment be denied, and that an evidentiary hearing in which the exhaustion issue can be determined as a matter of law be ordered by the District Court.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 29) be **DENIED**; and it is further

**RECOMMENDED** that the District Court direct that this matter be scheduled for an evidentiary hearing on the issue of exhaustion of administrative remedies; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7735755

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.