UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANCISCO SANTOS,

                                        Plaintiff,

                                                        9:19-cv-01610(BKS/TWD)

v.

B. SCHROEDER, C.O., *et al.*,

                                        Defendants.
_____

APPEARANCES:

FRANCISCO SANTOS
Plaintiff *pro se*

NICHOLAS DORANDO, ESQ.
NYS Assistant Attorney General,
Counsel for Defendants

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **ORDER**

        Presently before the Court in this civil rights action filed by *pro se* plaintiff, Francisco

Santos, who is proceeding *in forma pauperis* ("IFP") is plaintiff's motion to compel discovery, to

appoint counsel, and for sanctions.  (Dkt. No. 75.)  Defendants oppose the motion.  (Dkt. No. 77.)

For the reasons that follow, Plaintiff's motion is granted, in part, and denied, in part in accordance

with this Order.

## I.     **MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

### A.     **Legal  Standard**

Rule 26(b) of the Federal Rules of Civil Procedure ("FRCP") sets forth the scope and

limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

Information is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial. "'[I]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself.'" *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225 at *7 (S.D.N.Y. Oct. 24, 2014) (Pitman, M.J.) (brackets in original), *quoting Arch Assocs., Inc. v. HuAmerica Int'l, Inc.*, 93 Civ. 2168 (PKL), 1994 WL 30487 at *1 (S.D.N.Y. Jan. 28, 1994) (Leisure, D.J.); *see Degulis v. LXR Biotechnology, Inc.,* 176 F.R.D. 123, 125 (S.D.N.Y.1997) (Sweet, D.J.); *Quaker Chair Corp. v. Litton Bus. Sys., Inc.*, 71 F.R.D. 527, 530–31 (S.D.N.Y.1976) (Motley, D.J.).

As the advisory committee notes, the proportionality factors have been restored to their former position in the subsection "defining the scope of discovery," where they had been located prior to the 1993 amendments to the rules. Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. Relevance is still to be "construed broadly to encompass any matter that bears

2

on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  However, the amended rule is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality before ordering production of relevant information.  Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.  The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations."  *Id.*  In general, when disputes are brought before the court, "the parties' responsibilities [ ] remain the same" as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense.  *Id.*; *see also Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York,* 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.").  Moreover, information still "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The advisory committee's notes to the recent amendment of Rule 26 further explain that "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."

3

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  With these principles in mind, the Court makes the following directives.

### B.      Plaintiff's Request for Production of Documents

Defendants responded to plaintiff's demands, however, plaintiff seeks further responses to his Request for Production of Documents ("RFP"), dated May 20, 2021, and November 3, 2021, copies of which defendants have attached to their opposition papers.  (Dkt. No. 75 at 7-11; Dkt. No. 77-1 at 7-33, 40-46.[1])  Defendants argue they have complied with the demands and provided plaintiff with all relevant information that exists, and thus sanctions are not warranted and the motion should be denied.  (*See generally* Dkt. No. 77.)  Defendants also argue plaintiff did not comply with the FRCP and the Northern District of New York's Local Rules ("LR") requiring the parties to confer in good faith to try to resolve their discovery disputes before bringing the issues to the Court.  *Id.*  The Court finds no merit in this argument given plaintiff's pro se status, and notes LR 7.1(a)(2) provides that where an incarcerated individual is involved in an action, such "[p]ro se party [is] not subject to the requirement that a court conference be held prior to filing a non-dispositive motion."  NDNY LR 7.1(a)(2).

Further, a review of the submissions by defendants in opposition to the motion shows that defendants have largely responded appropriately to plaintiff's RFPs.  However, with regard to the RFP dated May 20, 2021, (Dkt. No. 77-1 at 17-33), the Court finds defendants have not adequately

---

[1]      Citations to docket entries refer to the pagination inserted by CM/ECF, the Court's electronic filing system.

responded to RFP Nos. 1, 2, 4, since the information sought is relevant to plaintiff's retaliation claims.  As such, defendants are directed to provide plaintiff with access to listen to the audio and review the video footage as requested in RFP Nos. 1, 2, and 4 but not provide him with copies of them.  Defendants' counsel must make arrangements for such listening and/or viewing to occur no later than August 22, 2022.  Additionally, concerning RFP No. 4, defendants are directed to produce a transcript of the Disciplinary Hearing related to the August 18, 2019, Misbehavior Report.  If the audio tapes and/or video footage and/or transcript of the subject Disciplinary Hearing are no longer available, then defendants' counsel must provide plaintiff with an affidavit from an official of the Auburn Correctional Facility ("ACF") by August 22, 2022, detailing the efforts made to locate such audio and/or video footage, and explain why it is no longer available.

With regard to RFP Nos. 32, 33, 34, and 35, of the May 21, 2021 RFP, (Dkt. No. 77-1 at 17-33), defendant is directed to produce, by August 22, 2022, the name(s) of individual(s), if any, at ACF who were assigned to review and preserve the audio and video for the visiting room are on August 18, 2019, during the time plaintiff was present in that area.  The Court finds this information relevant to plaintiff's claims of retaliation.  If no such individual exists, defendants must provide plaintiff with a clear statement to that effect by August 22, 2022.  As to RFP Nos. 33, 34, and 35, defendants need not produce Directive 4942 for the reasons stated in their response.  (Dkt. No. 77-1 at 10.)  However, defendants are directed to provide plaintiff with an affidavit, by August 22, 2022, from the appropriate official at ACF indicating for how long such audio or video footage is preserved.

Considering RFP Nos. 3, 5 through 31, 36 through 54, in the May 21, 2021 RFP, (Dkt. No. 77-1 at 17-33), the Court finds the defendants have adequately responded to the demands and/or the information requested is not relevant.  Further, plaintiff has failed to adequately explain the ways in which the information sought bears on his claims.  Finally, all such demands pertaining to any of the Doe defendants are improper.

With regard to the RFP dated November 3, 2021, (Dkt. No. 77-1 at 40-46), RFP Nos. 1 through 5 repeat the plaintiff's requests for video, audio, and transcript information as requested in RFP Nos. 1, 2, and 4 of the May 21, 2021, RFP, and therefore defendant shall respond to those requests in the same manner as directed above for the May 21, 2021, RFP.  In reviewing the remaining requests in the November 3, 2021, RFP, the Court finds defendants have adequately responded to these demands and/or the information requested is not relevant.  Thus, no further response is needed.

Because defendants provided responses to plaintiff's RFPs, and did not wilfully disregard their discovery obligations, sanctions are not warranted.  Additionally, the Court is only authorizing the specific discovery as directed herein.  No other discovery is permitted since the discovery deadline has expired.

6

## II.     MOTION FOR COUNSEL

### A.     Legal Standard

The statute that governs IFP proceedings provides, in relevant part, that "[t]he court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see also Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).  That provision, however, does not require that counsel be appointed for every indigent civil litigant.  Although the United States Constitution assures that indigent litigants have "meaningful access" to the courts, it does not guarantee that all such parties will receive the benefit of pro bono representation.  *Hodge*, 802 F.2d at 60 (quoting *Bounds v. Smith*, 430 U.S. 817, 823 (1977)).  Instead, Section 1915(e) confers broad discretion on the courts to appoint counsel to deserving indigent litigants in appropriate circumstances.  *Hodge*, 802 F.2d at 60-62.

While the appointment of counsel to represent indigent parties in civil suits is authorized by statute, when that authority is exercised, a court is required to call upon attorneys to donate their time pro bono, to the benefit of indigent litigants and the court.  In deference to the limited resources available to a court to serve the interests of the many indigent litigants who pursue claims before them, and recognizing the "thankless burden" associated with such assignments, *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961), courts should not grant such applications indiscriminately, but instead must exercise sound judgment and restraint in doing so.  *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 171-72 (2d Cir. 1989).

7

There is no bright line test to be applied when a pro se, indigent civil litigant seeks appointment of counsel. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). The factors informing the decision of whether to exercise discretion in favor of appointing counsel were summarized by the Second Circuit in its decision in *Hodge*:

> In deciding whether to appoint counsel . . . , the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62. In weighing these factors, each case must be decided on its own merits. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61). Of these criteria, the Second Circuit has "stressed the importance of the apparent merits of the indigent's claim." *Cooper*, 877 F.2d at 172. While a plaintiff need not demonstrate that he can win his case without the aid of counsel, he does have to show "likely merit." *McDowell v. State of New York*, No. 91-CV-2440, 1991 WL 177271, at *1 (S.D.N.Y. 1991).

**B.      Plaintiff's Request for Counsel**

In this case, plaintiff indicates he does not have the funds for depositions and to prepare for any dispositive motion. (Dkt. No. 75 at 15.) With due regard to plaintiff's pro se status, these are not proper reasons for appointing pro bono counsel. This action is not overly complex and involves

8

retaliation claims asserted against the defendants.  Plaintiff has successfully defended a summary

judgment motion made on exhaustion grounds, and successfully amended his complaint.  (*See* Dkt.

Nos. 28, 30, 50, 51.)  There is nothing in the record that demonstrates that plaintiff is not able to

effectively pursue this action.  In addition, at this time, the Court is not aware of any special reason

why appointment of counsel would be more likely to lead to a just determination of this litigation.

Plaintiff is advised that, in the event this action should proceed to trial, the Court will revisit this

determination and likely appoint counsel for trial.  Accordingly, plaintiff's request for the

appointment of counsel is denied.

Wherefore, it is hereby,

**ORDERED**, that the part of plaintiff's motion to compel (Dkt. No. 75) is **GRANTED**, in

part, and **DENIED**, in part, as set forth herein, and defendant shall produce the discovery as directed

by 8/22/2022; and it is further

**ORDERED**, that the part of plaintiff's motion seeking sanctions (Dkt. No. 75) is **DENIED**;

and it is further

**ORDERED** that the part of plaintiff's motion to appoint counsel (Dkt. No. 75) is **DENIED**

**without prejudice**; and it is further

**ORDERED** that the dispositive motion deadline is reset to 9/26/2022; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on the

parties; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with a copy of the

unpublished decision cited herein in accordance with the Second Circuit decision in *Lebron v.*

*Sanders*, 557 F.3d 76 (2d Cir. 2009).

Dated: July 21, 2022

        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

McDowell v. State of N.Y., Not Reported in F.Supp. (1991)
Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 11 of 23
1991 WL 177271

1991 WL 177271
Only the Westlaw citation
is currently available.
United States District
Court, S.D. New York.

Patrick McDOWELL, Plaintiff,
v.
The STATE OF NEW YORK,
Thomas Coughlin, III,
Commissioner, et al., Defendants.

No. 91 Civ. 2440 (SWK).
|
Sept. 3, 1991.

**Attorneys and Law Firms**

Patrick McDowell, pro se.

Martha O. Shoemaker, Assistant Attorney General of the State of New York, New York City, for defendants.

MEMORANDUM OPINION AND ORDER

BARBARA A. LEE, United States Magistrate Judge.

**\*1** This is a prisoner civil rights action pursuant to 28 U.S.C. § 1983, arising out of the alleged confiscation of plaintiff's "prescribed prothesis." It was referred to me for all purposes by the Hon. Shirley Wohl Kram, U.S.D.J., by Order of Reference entered May 21, 1991. Presently before me is plaintiff's application for appointment of counsel. For the reasons stated below, the motion is denied.

*FACTS*

Plaintiff is an inmate of the Fishkill Correctional Facility, who was granted leave to proceed *in forma pauperis* on April 8, 1991. His complaint, filed on the same day, alleges that on June 14, 1990, plaintiff

was keep-locked and taken to Special Housing Unit (S.H.U.) "O," where C.O.M. Lupo and Sgt. Fredericks maliciously, confiscated, withheld and deprived plaintiff of his doctor prescribed medical devices necessary for the rehabilitation and amelioration of pain due to severe back injury sustained while in the care, custody and control of the N.Y. State D.O.C.S..... Plaintiff did not receive his medically indicated and prescribed necessary back braces (protheses) returned to him until July 17, 1990, over a month, and then only after he was put through the grievance procedure wringer [Cplt. ¶ IV].

As a result, plaintiff claims that he

sustained personal injuries of a serious and permanent nature. To wit, chronic pain in lower back, muscle spasms, pain and stiffness in neck and leg, damage and injury to bones, ligaments, cartilages, tendons, nerves, blood vessels, organs and soft tissues, as well as to the nervous system and skeletal system, plus mental anxiety and humiliation, conscious pain and suffering, emotional and psychological trauma and stress, possible loss of future earning capacity. The aforementioned injuries are claimed to be permanent and progressive in nature [Cplt. ¶ IV–A].

Plaintiff's application for appointment of counsel is made on the following grounds:

I have very limited-knowledge of the Law. Almost none. Someone else did all my writing for me. I will never be able to get to, let alone go through a trail by myself. I have save all my documentary evidence from the start, plus my medical records [Application ¶ 2]. [1]

Plaintiff stated that his previous lawyer in an "unassociated" case "abandoned" him and that his wife "has contacted many different attorneys to no avail," in his efforts to obtain representation by counsel.

## DISCUSSION

The criteria which govern a court's determination whether to appoint counsel for an indigent plaintiff include: the merits of plaintiff's case; plaintiff's ability to pay for private counsel; plaintiff's efforts to obtain a lawyer; availability of counsel; and plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel. *Cooper v. A. Sargenti & Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989); *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986). Of these criteria, the most important, the "threshold requirement," is the merits, or "whether the indigent's position was likely to be of substance." *Cooper,* 877 F.2d at 172. Indigents do not have to demonstrate that they can win their cases without the aid of counsel; they do have to show likely merit. *Id.*

*2 In this case, plaintiff's inability to pay for private counsel is sufficiently shown by the papers on which he was granted leave to proceed *in forma pauperis.* Plaintiff also has attested to several unsuccessful attempts to obtain counsel on his own and with his wife's assistance.

However, a consideration of the merits of plaintiff's case and his ability to gather the facts if unassisted by counsel militate against the granting of plaintiff's application for the appointment of counsel. The question whether plaintiff's claim rises to the level of the violation of a Constitutional right actionable under § 1983 would appear to be a question of law that could be determined upon summary judgment, without any of the difficult issues of credibility or fact-gathering for which counsel would be necessary, *see Hodge v. Police Officers,* 802 F.2d 58.

The availability of counsel is also a pertinent consideration. Since this is a civil case, there is no Constitutional right to counsel as in criminal cases. Nor is the court authorized to order an attorney to represent an indigent party to a civil case. "The court may request an attorney to represent any such person unable to employ counsel," 28 U.S.C. § 1915(d), but no funds have been authorized by Congress to pay attorneys' fees in these kinds of cases. In this district, the court's "request" attorneys to appear for persons who have been granted leave to proceed as poor persons takes the form of a list of cases which the Pro Se Office circulates to the Pro Bono panel each month. I take judicial notice of the fact that the average length of time for a case to be chosen from the list is six months, and that prisoner civil rights actions are rarely chosen because of the high number of these cases on the list. The complaint in this case does not appear

to present any novel question of law which would increase the likelihood of an attorney's volunteering to represent this plaintiff. To place this case on the list would therefore have the effect of substantially delaying the resolution of the claim, without the likelihood that the court's determination would in fact be assisted by a brief filed by a volunteer attorney.

For these reasons, plaintiff's application for appointment of counsel is denied.

The foregoing is a determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed.R.Civ.P.

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1991 WL 177271

## Footnotes

1    Spelling, grammar and punctuation in all quotations from Plaintiff's papers are as in the original.

---

**End of Document**                                  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

1994 WL 30487
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

ARCH ASSOCIATES, INC., Plaintiff,

v.

HuAMERICA INTERNATIONAL, INC., Defendant.

No. 93 CIV. 2168 (PKL).
|
Jan. 28, 1994.

MEMORANDUM ORDER

LEISURE, District Judge,

**\*1** This is an action for copyright infringement, false
description and advertising, and unfair competition. Plaintiff
has moved this Court for an order pursuant to Fed.R.Civ.P.
37(a)(2) and (a)(4) compelling answers to plaintiff's first
set of interrogatories and compelling the production
of documents in accordance with plaintiff's request for
production of documents dated June 15, 1993.

Plaintiff commenced this action on April 5, 1993 alleging,
*inter alia,* copyright infringement by defendant. The
complaint was served on May 25, 1993, and an amended
complaint was filed on July 9, 1993. On June 15, 1993
plaintiff served defendant with a first set of interrogatories
and requests for production of documents pursuant to
Fed.R.Civ.P. 33 and 34. Defendant failed to respond to the
discovery requests. By way of a letter dated July 9, 1993,
plaintiff reminded defendant of the as yet unmet discovery
requests. Defendant still did not respond to plaintiff's
requests. On October 4, 1993 plaintiff served and filed the
instant motion pursuant to Fed.R.Civ.P. 37, with a return date
of October 29, 1993. Defendant did not submit any papers
in response to plaintiff's motion. Nearly ninety days have
passed, and defendant has yet to respond to plaintiff's motion
papers or to plaintiff's discovery requests. Fed.R.Civ.P. 37(a)
provides in relevant part:

(2) If a deponent fails to answer a question proponded or
submitted under rule 30 ... or a party fails to answer an
interrogatory submitted under rule 33 ..., the discovering
party may move for an order compelling an answer,
or a designation, or an order compelling inspection in
accordance with the request.

(4) If the motion is granted, the court shall, after
opportunity for hearing, require the party or deponent
whose conduct necessitated the motion ... to pay the
moving party the reasonable expenses incurred in obtaining
the order, including attorney's fees ...

Fed.R.Civ.P. 37.

Fed.R.Civ.P. 26 delineates the general provisions concerning
discovery. The language in Rule 26(b)(1) as to any matter
"relevant to the subject matter involved in the pending action"
has been construed "broadly to encompass any matter that
bears on, or that reasonably could lead to other matter that
could bear on, any issue that is or may be in the case."
*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351
(1978). While no general rules have been developed for
determining relevance in the context of Rule 26(b)(1), courts
in the Second Circuit have denied discovery requests when
the information requested has no conceivable bearing on
the case. *See, e.g., Lemanik, S.A. v. McKinley Allsopp, Inc.,*
125 F.R.D 602, 608 (S.D.N.Y.1989) (citing *Broadway &
Ninety–Sixth St. Realty Co. v. Loew's Inc.,* 21 F.R.D. 347, 352
(S.D.N.Y.1958)). On the other hand, it is well established that
relevance for the purpose of discovery is broader in scope
than relevance for the purpose of the trial itself. Accordingly,
this Court has applied the "reasonably calculated to lead
to the discovery of admissible evidence" standard of Rule
26(b)(1) in deciding whether discovery of the documents in
question may lead to evidence admissible at trial. *See SEC v.
Downe,* 92 Civ. 4092 (PKL) (S.D.N.Y. Jan. 27, 1994) at 12–
14. Indeed, this Court has interpreted "reasonably calculated"
to mean " '*any possibility* that the information sought may be
relevant to the subject matter of the action.' " *Mallinckrodt
Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348, 353
(S.D.N.Y.1973) (emphasis in original) (quoting C. Wright,
Law of Federal Courts § 81, at 359 n. 47 (2d ed. 1970). [1]

**\*2** Upon a review of the record in this case, this Court
concludes that an order compelling discovery is appropriate.
The requested documents may help plaintiff determine the
extent to which plaintiff's business and goodwill have been
damaged by defendant's alleged infringement. Thus, the
discovery information requested is relevant, and within the
scope of the Federal Rules of Civil Procedure.

Defendant has been given ample time to respond to plaintiff's
discovery requests, and has failed to do so. Defendant has
had ample time to submit response papers in opposition to

Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 15 of 23

Arch Associates, Inc. v. HuAmerica Intern., Inc., Not Reported in F.Supp. (1994)

plaintiff's motion, and has failed to respond. Furthermore, plaintiff has attempted to confer with defendant in an effort to resolve the issues raised in this motion pursuant to Local Civil Rule 3(f)Local Civil Rule 3(f). *See James River Corp. v. Interamerica Trust Co., et al.,* 1990 WL 6551, *3 (S.D.N.Y.). Accordingly, plaintiff's motion for an order compelling discovery is hereby granted.

Additionally, pursuant to Fed.R.Civ.P. 37(a)(4) a hearing will be held in this matter to determine if defendant shall be required to pay plaintiff the reasonable expenses incurred in obtaining the order, including attorney's fees.[2] The hearing shall be held before this Court on Tuesday February 8, 1993 at 4:30 pm, in Room 312 of the United States Courthouse, 40 Centre Street, New York, New York.

Conclusion

For the above stated reasons, plaintiff's motion for an order to compel discovery is hereby granted. Defendant is ordered to answer the set of interrogatories propounded to defendant and to produce documents in accordance with plaintiff's first set of interrogatories and requests for production of documents, dated June 15, 1993. A hearing is scheduled before this Court on Tuesday February 8, 1994 at 4:30 p.m., to determine the awarding of the expenses of the motion, and any additional sanctions pursuant to Fed.R.Civ.P. 37(a)(4).

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1994 WL 30487

## Footnotes

1   Recently, the Second Circuit has followed the Fifth Circuit's reasoning in *United States v. Holley,* 942 F.2d 916, 924 (5th Cir.1991), *cert. denied,* 114 S.Ct. 77 (1993), stating that "materiality in a civil discovery deposition is not limited to evidence admissible at trial, but includes matters properly the subject of and material to a deposition under Rule 26(b)(1) [of the Federal Rules Civil Procedure]." *United States v. Kross,* No. 93–1182, slip op. at 1172–73 (2d Cir. Jan. 18, 1994) (defendant convicted of making false declarations in civil deposition in context of civil forfeiture action).

2   The issue before the Court at the February 8, 1994 hearing will be the level of sanctions which are warranted based on defendant's failure to comply with discovery obligations. The mildest sanctions provided by Fed.R.Civ.P. 37 is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent measures to which this Court may turn, include striking out portions of the pleadings, prohibiting introduction of evidence on particular points, and deeming disputed issues determined adversely to the disobedient party. Harshest of all would be an order of dismissal and the entering of a default judgment. *Cine Forty–Second Street Theatre v. Allied Artists,* 602 F.2d 1062, 1066 (2d Cir.1979 (finding that a grossly negligent failure to obey an order compelling discovery may justify the severest disciplinary measures); *United States v. Penn Central Trans.,* 716 F.2d 954, 954–55 (2d Cir.1983) (affirming the District Court's decision striking defendant's answer and entering a default judgment pursuant to Fed.R.Civ.P. 37, for failure to comply with an order for discovery).

**End of Document**                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01610-BKS-TWD Document 79 Filed 07/21/22 Page 16 of 23
Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)
2014 WL 5420225

2014 WL 5420225
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

REFCO GROUP LTD., LLC, Plaintiff,
v.
CANTOR FITZGERALD, L.P., et al., Defendants.

No. 13 Civ. 1654(RA)(HBP).
|
Signed Oct. 24, 2014.

*OPINION AND ORDER*

PITMAN, United States Magistrate Judge.

**\*1** Refco Group Ltd., LLC ("RGL") commenced this action on behalf of nominal defendants, Cantor Index Holdings, L.P. ("CIH"), Cantor Index LLC ("CILLC"), Cantor Fitzgerald Game Holdings, LLC ("CFGH"), Cantor Index Limited ("CIL"), and Cantor Gaming Limited ("CGL"), as well as on its own behalf, alleging that defendants engaged in self-interested transactions to siphon assets away from the subsidiaries of nominal defendant CIH in which RGL holds a 10% interest. By notice of motion dated September 9, 2014 (Docket Item 58), defendants and non-party Cantor Entertainment Technology, Inc. ("CET")[1] move to quash a subpoena issued by plaintiff to Ernst & Young LLP ("E & Y"), the auditor for a planned initial public offering by CET (the "IPO").[2] For the reasons set forth below, the motion to quash is denied.

**I. Background**
The facts underlying this action are set forth in detail in the Memorandum Opinion and Order of the Honorable Ronnie Abrams, United States District Judge, dated June 10, 2014, familiarity with which is assumed. *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, 13 Civ. 1654(RA), 2014 WL 2610608 (S.D.N.Y. June 10, 2014).

Judge Abrams granted defendants' motion to dismiss in part and denied it in part. *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra*, 2014 WL 2610608 at \*44. Plaintiff based its claims on a series of transactions by defendants

allegedly designed to appropriate the CIH Entities'[3] assets for the benefit of defendants and to the detriment of the CIH Entities, thereby diminishing the value of the CIH Entities and plaintiff's interest in them (Am.Compl.¶ 3). Judge Abrams concluded that

> [b]ecause demand was futile with respect to certain of the Challenged Transactions (namely, the 2006 License Agreement, the Asset Purchase Agreement, and the 2011 License Agreement) but not others (namely, the closure of Spreadfair, the transfer of CIL's trading activity to CFE, and the increase in related-party fees paid by CIL), only the former transactions [ (the "Surviving Challenged Transactions") ] may form the basis of RGL's claims.

*Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra*, 2014 WL 2610608 at \*13.

**A. The Surviving Challenged Transactions**
*The 2006 License Agreement.*[4] On February 7, 2006, CIH's wholly-owned subsidiary and nominal defendant CILLC, and non-party CFPH LLC,[5] granted defendant Cantor G & W (Nevada) L.P. ("Cantor Nevada") a "non-exclusive, non-transferable, perpetual, worldwide, royalty-free right and license" to specific patents and patent applications held by CILLC with consideration for the license to "be determined within a reasonable time [after the grant of the license] pursuant to arms-length negotiations in good faith" (Am.Compl.¶¶ 83, 85). Defendant Howard W. Lutnick ("Lutnick"), as Chairman and CEO of both CILLC and Cantor Nevada and as Chairman, President and CEO of CFPH LLC, executed the agreement on behalf of all parties (Am. Compl. ¶ 86 & Ex. B).

**\*2** *The Asset Purchase Agreement.*[6] On April 30, 2010, nominal defendant CIL (CIH's wholly-owned subsidiary) sold its Financial Fixed Odds ("FFO") business to defendant Cantor Gaming & Wagering Limited ("CGWL (UK)") (Cantor Nevada's wholly-owned subsidiary) (Am.Compl.¶ 117). The agreement provided for transfer of all of CIL's assets, goodwill and records associated with the FFO business, as well as the transfer of key CIL employees, to CGWL (UK) for £1.00 as consideration, effective as of midnight on February 1, 2010 (Am.Compl.¶¶ 117–22).

*The 2011 License Agreement.*[7] In June 2011 CILLC, Cantor Nevada and non-party Shuffle Master, Inc., licensed certain CILLC gambling-related patents to Shuffle Master

Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 17 of 23
**Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)**
2014 WL 5420225

but directed that royalties and fees derived from those licenses be paid to Cantor Nevada, not CILLC, the licensor (Am.Compl.¶¶ 129–35). Defendant Lee Amaitis ("Amaitis"), [8] as Executive Managing Director of CILLC and CEO of Cantor Nevada, executed the agreement (Am.Compl.¶ 130).

### B. *The Parties' Claims and Defenses*
Judge Abrams also interpreted plaintiff's allegations that defendants used " 'the CIH Entities' intellectual property, including technology and patents, for the benefit of the Cantor Nevada Entities' as ... describ[ing] the benefits that accrued to Cantor Nevada as a result of the Challenged Transactions but not [as constituting] an independent Challenged Transaction." *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra,* 2014 WL 2610608 at *6 n. 7. [9] Judge Abrams did not preclude the plaintiff from basing its claims, at least in part, on defendants' use of the CIH entities' intellectual property to benefit Cantor Nevada, as long as that benefit resulted from one of the Surviving Challenged Transactions. Thus, presumably, to the extent plaintiff attributes those alleged benefits to the Surviving Challenged Transactions, it has stated a claim.

Finally, Judge Abrams (1) dismissed defendants CIL, CGWL (UK), CFE and CGL from the action, [10] (2) dismissed four of plaintiff's claims [11] as to all defendants, (3) dismissed plaintiff's claim of aiding and abetting the breach of fiduciary duty as to defendant Stephen M. Merkel ("Merkel") [12] and (4) dismissed plaintiff's claim of unjust enrichment as to all defendants except Cantor Nevada, Lutnick, Merkel and Amaitis. *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra,* 2014 WL 2610608 at *44. Plaintiff's remaining claims with respect to the Surviving Challenged Transactions are (1) breach of fiduciary duty brought against CIHLLC, Lutnick, Merkel and Amaitis, (2) aiding and abetting the breach of fiduciary duty against all defendants other than CIHLLC and Merkel, (3) unjust enrichment against Cantor Nevada, Lutnick, Merkel and Amaitis, (4) waste of assets against CIHLLC, Lutnick, Merkel and Amaitis and (5) conversion [13] against Lutnick, Merkel, Amaitis, Cantor Nevada, CFS, CFLP, CIHLLC, CIH, CILLC and CFGH. *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra,* 2014 WL 2610608 at *44.

**\*3** Plaintiff alleges that in 2002, it invested $8 million for a ten percent interest in CIH, which was successful in the gaming technology industry in the years immediately

following plaintiff's investment (Am.Compl.¶ 2). Plaintiff claims that "[d]espite the success of the CIH Entities ..., the Defendants, with Lutnick at the helm, determined to transfer the CIH Entities' businesses and assets for no or only nominal compensation to the control of the Cantor Nevada Entities, [14] in which neither the CIH Entities nor RGL held any ownership interest" (Am.Compl.¶ 82). The transfer of those assets was allegedly the result, at least in part, of the Surviving Challenged Trans-actions (Am.Compl.¶ 83–138). [15] Plaintiffs further contend that each of the Surviving Challenged Transactions was "unfair, as a matter of price and process, to CIH and its wholly-owned subsidiar[ies] ... and constituted a breach of fiduciary duty, conversion and waste" (Am.Compl.¶¶ 93, 124, 138). Moreover, plaintiff argues that Cantor Nevada's success is the result of its use of the CIH Entities' technology (Am.Compl.¶ 159). According to plaintiff, the Surviving Challenged Transactions resulted in the defendant companies' growth, the enrichment of individual defendants and a decrease in value of the CIH Entities, as well as RGL's partnership interest in CIH (Am.Compl.¶¶ 3, 218–19, 228, 231, 236, 241, 254–56). Finally, plaintiff argues that the defendants used the Surviving Challenged Transactions to siphon assets away from the CIH Entities and toward Cantor Nevada in anticipation of the IPO, through which Cantor Nevada would be contributed to CET in return for an estimated "cash infusion to Defendants of approximately $100 million" (Am.Compl.¶¶ 4, 162–71, 210). Defendants deny plaintiff's claims and contend, among other things, that CIH has not suffered or sustained any damages (Defendants' Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, dated July 18, 2014 (Docket Item 44)).

### C. *The Subpoena*
RGL served E & Y with a subpoena *duces tecum,* dated August 8, 2014, seeking (1) "All Documents and Communications Concerning the auditing of any financial statement of Cantor G & W (Nevada) conducted by Ernst & Young during the Relevant Time Period" and (2) "All Documents and Communications Concerning the IPO" (Subpoena annexed as Exhibit A to Declaration of Francis X. Riley III in Support of Defendants' and CET's Motion to Quash the Subpoena Served on Ernst & Young by Plaintiff, dated Sept. 9, 2014, (Docket Item 60) ("Riley Decl.")). The "Relevant Time Period" is defined as "January 1, 2002, through the present" (Riley Decl., Ex. A). "Cantor G & W (Nevada)" is defined as

Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 18 of 23
Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)
2014 WL 5420225

Cantor G & W (Nevada) Holdings, L.P., and each of its direct and indirect subsidiaries, any of their Affiliates doing business in the State of Nevada in connection with the gaming, sports, wagering, gambling, casino or similar business, and each of their agents and representatives, and any of their successors, assignees, managers, directors, officers and employees

*4 (Riley Decl., Ex. A). The "IPO" is "the initial public offering contemplated by Cantor Entertainment Technology, Inc., discussed in the S–1" (Riley Decl., Ex. A). Pursuant to Fed.R.Civ.P. 45, E & Y served objections to the subpoena.[16] Defendants and CET move to quash the subpoena.

## II. *Discussion*

### A. *Legal Standard*

Pursuant to Fed.R.Civ.P. 45, a party may serve a subpoena on a non-party. However, upon timely motion, a court may quash or modify a subpoena that requires "disclosing a trade secret or other *confidential* research, development, or *commercial information."* Fed.R.Civ.P. 45(d)(3)(B)(i) (emphasis added). "[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996) (Edelstein, D.J.) (internal quotation marks and citations omitted).

### B. *Standing*

The defendants' and non-party CET's opposition and motion to quash presents a threshold question of standing, because plaintiff issued the subpoena to non-party E & Y, not the movants. "[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Prods., Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 241 (S.D.N.Y.2004) (Ellis, M.J.); *see also Manolis v. Brecher,* 11 Civ. 2750(RMB) (HBP), 2013 WL 4044808 at *2 n. 1 (S.D.N .Y. Aug. 9, 2013) (Pitman, M.J.) ("[A] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."); *Universitas Educ., LLC v. Nova Grp.,*

*Inc.,* 11 Civ. 1590(LTS)(HBP), 2013 WL 57892 at *5 (S.D.N.Y. Jan. 4, 2013) (Pitman, M.J.) ("[A] nonsubpoenaed party has standing only if it has a privilege, privacy or proprietary interest in the documents sought." (citation omitted)); *Solow v. Conseco, Inc.,* 06 Civ. 5988(BSJ)(THK), 2008 WL 190340 at *3 (S.D.N.Y. Jan. 18, 2008) (Katz, M.J.); *Estate of Ungar v. Palestinian Auth.,* 400 F.Supp.2d 541, 554 (S.D.N.Y.2005) (McMahon, D.J.), *aff'd,* 332 Fed. App'x 643 (2d Cir.2009).

In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than "a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Universitas Educ., LLC v. Nova Grp., Inc., supra,* 2013 WL 57892 at *5 (internal quotations omitted). Courts should consider "whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take." *Solow v. Conseco, Inc., supra,* 2008 WL 190340 at *4.

"Information regarding a party's financial records may give rise to a privacy interest." *KGK Jewelry LLC v. ESDNetwork,* 11 Civ. 9236(LTS)(RLE), 2014 WL 1199326 at *3 (S.D.N.Y. Mar. 21, 2014) (Ellis, M.J.) (collecting cases). Courts in this Circuit "have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias–Zeballos v. Tan,* 06 Civ. 1268(GEL)(KNF), 2007 WL 210112 at *1 (S.D.N.Y. Jan. 25, 2007) (Fox, M.J.) (collecting cases); *see also In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 02 Civ. 3400(WCC), 2006 WL 2642192 at *2 (S.D.N.Y. Sept. 13, 2006) (Conner, D.J.) (concluding that party had standing to object to a subpoena served on party's accounting firm based on party's privacy interest in his financial records); *Reserve Solutions, Inc. v. Vernaglia,* 05 Civ. 8622(VM) (RLE), 2006 WL 1788299 at *1 (S.D.N.Y. June 26, 2006) (Ellis, M.J.) (party had standing to challenge subpoena of American Express for his credit card records). Courts have also afforded the same protection to corporations and LLC's. *See Benistar Admin. Servs., Inc. v. United States,* No. 6:11–MC–62 (LEK)(GHL), 2011 WL 7267867 at *1 (N.D.N.Y. Dec. 13, 2011), *aff'd sub nom. Benistar Admin Servs ., Inc. v. United States,* No. 1:11–MC–00062 (LEK)(GHL), 2012 WL 96569 (N.D.N.Y. Jan. 12, 2012); *see also SEC v. Verdiramo,* 10 Civ. 1888(RMB), 2013 WL 5882918 at *2 (S.D.N.Y. Oct. 29, 2013) (Berman, D.J.); *Trump v. Hyatt Corp.,* 93 Civ.

Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 19 of 23
**Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)**

2014 WL 5420225

5242(CSH), 🅐1994 WL 168021 (S.D.N.Y. Apr. 29, 1994) (Haight, D.J.).

**\*5** Relying upon ⸢ ⸣*Solow v. Conseco, Inc., supra,* 2008 WL 190340, movants argue that they have standing because they have a "real interest" in the documents sought from E & Y, many of which were allegedly provided to E & Y by movants, and that the scope of the request "inevitably includes all tax returns and supporting documentation as well as financial statements, work papers, banking and financial records in any way referencing Cantor [Nevada] and any of its many subsidiaries" (Defendants' and NonParty Cantor Entertainment Technology's Brief in Support of Motion to Quash the Subpoena Served on Ernst & Young LLP by Plaintiff, dated Sept. 9, 2014, (Docket Item 59) ("Defs.' Br.") at 6–7). *See* ⸢ ⸣*Solow v. Conseco, Inc., supra,* 2008 WL 190340 at \*3 ("[I]t is well-established that a party with a real interest in the documents has standing to raise objections to their production."). Moreover, movants argue that the documents sought include more than a decade of financial information, are "private and confidential" and relate to Cantor Nevada, which is not publicly held and does not publicly share its financial information (Defs.' Br., at 7–8). Further, they argue that Cantor Nevada has a heightened privacy interest in keeping the financial information out of the hands of competitors (Defs.' Br., at 7–8).[17]

Plaintiff contends that movants lack standing because they fail even to attempt to explain how any interests they may have in the documents will be injured by production (Pl.'s Mem., at 2, 8). Further, plaintiff argues that movants lack standing because RGL is not a competitor of the movants, the information sought is, for the most part, stale and movants' confidentiality concerns can be addressed by a protective order (Pl.'s Mem., at 8–9).

In *Zintner Handling, Inc. v. Gen. Elec. Co., supra,* 2006 WL 3359317, defendant served a subpoena on a non-party accounting firm. The accounting firm had prepared the plaintiff's financial statements that were produced during discovery. Defendant sought "production of tax returns and supporting documentation as well as financial statements, work papers, and supporting documentation." *Zintner Handling, Inc. v. Gen. Elec. Co., supra,* 2006 WL 3359317 at \*3. The Court concluded that because the subpoena "could reasonably require [the accounting firm] to produce banking and financial records," the corporate movants' privacy interests in these documents gave them

standing to object to the subpoena. *Zintner Handling, Inc. v. Gen. Elec. Co., supra,* 2006 WL 3359317 at \*3.

Here, plaintiff seeks all documents concerning E & Y's audit of any Cantor Nevada's financial statements from January 1, 2002 to date and all documents concerning the IPO contemplated by CET. In fact, plaintiff itself stated that it expects that the scope of its subpoena will include not only

> documents on which the auditors relied in conducting their examination (*e.g.,* agreements, resolutions, consents, minutes, and representation letters of management), but also work papers memorializing the auditor's understanding of those related-party transactions. E & Y's work papers with respect to its purchase and tax accounting work would likely also include valuation materials, as would E & Y's assessment of intangible assets

**\*6** (Pl.'s Mem., at 12–13). As in *Zintner,* the subpoena will most likely require E & Y to produce various Cantor Nevada and CET financial records including tax returns and related documents, financial statements, work papers and/or banking records, and, therefore, movants have a privacy interest in the documents sought.

Plaintiff's remaining arguments conflate the issues of standing with the merits. Standing is a threshold inquiry that is distinct from the merits; "[t]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." ⸢ ⸣*Flast v. Cohen,* 392 U.S. 83, 199, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *accord* ⸢ ⸣*Bordell v. Gen. Elec. Co.,* 922 F.2d 1057, 1060 (2d Cir.1991). Plaintiff's contentions that any injury to the movants is attenuated by the staleness of the information, the fact that plaintiff is not a competitor and the potential availability of a protective order all relate to the merits of the motion; they do not defeat the movants' claim that they have at least a fairly arguable privacy interest that the subpoena will invade. *See* ⸢ ⸣*Lerman v. Bd. of Elections,* 232 F.3d 135, 143 n. 9 (2d Cir.2000) (standing focuses on whether a litigant "has alleged an 'injury-in-fact' that is fairly traceable to the challenged conduct and redressable by a favorable

Case 9:19-cv-01610-BKS-TWD Document 79 Filed 07/21/22 Page 20 of 23
**Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)**
2014 WL 5420225

judicial decision[, not with the existence of] a valid claim on the merits.")

Thus, I conclude that movants have standing to challenge the subpoena.

### C. The Merits of the Motion to Quash

If the movants have standing, "the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests ... asserted." *Solow v. Conseco, Inc., supra,* 2008 WL 190340 at *4. "The burden of demonstrating relevance is on the party seeking discovery," but "general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.,* 12 Civ. 6811(CM)(JCF), 2012 WL 5395249 at *3 (S.D.N.Y. Nov. 5, 2012) (Francis, M.J.) (internal quotation marks, brackets and citations omitted). Once the party seeking production of the materials meets its "burden of showing relevance sufficient to justify discovery, the burden shifts to [the movant] to show why discovery should not be had." *A.I.A. Holdings S.A. v. Lehman Bros.,* 97 Civ. 4978(LMM)(HBP), 2000 WL 763848 at *3 (S.D.N.Y. June 12, 2000) (Pitman, M.J.), citing *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987); and *Penthouse Int'l Ltd. v. Playboy Enters.,* 663 F.2d 371, 391 (2d Cir.1981) ("Where ... the documents are relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause."). Thus, "[t]he burden of persuasion in a motion to quash a subpoena ... is borne by the movant." *Jones v. Hirschfeld,* 219 F.R.D. 71, 74–75 (S.D.N.Y.2003) (Gorenstein, M.J.), citing *Dove v. Alt. Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992); *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH,* 85 Civ. 3412(LBS)(NRB), 1998 WL 338106 at *1 (S.D.N.Y. June 25, 1998) (Buchwald, M.J.); and *Concord Boat Corp. v. Brunswick Corp., supra,* 169 F.R.D. at 48–49. Ultimately, "[m]otions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the district court.' " *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir.2003), quoting *United States v. Sanders,* 211 F.3d 711, 720 (2d Cir.2000).

*7 "[I]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Arch Assocs., Inc. v. HuAmerica Int'l, Inc.,* 93 Civ. 2168(PKL), 1994 WL 30487 at *1 (S.D.N.Y. Jan. 28,

1994) (Leisure, D.J.); see *Degulis v. LXR Biotechnology, Inc.,* 176 F.R.D. 123, 125 (S.D.N.Y.1997) (Sweet, D.J.); *Quaker Chair Corp. v. Litton Bus. Sys., Inc.,* 71 F.R.D. 527, 530–31 (S.D.N.Y.1976) (Motley, D.J.). Pursuant to Rule 26(b)(1), the general scope of discovery includes

> any nonprivileged matter that is relevant to *any party's claim or defense* .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1) (emphasis added). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y.2004) (Leisure, D.J.) (citation omitted). However, "[w]hile relevance is broadly construed in the context of discovery, it is proper to deny discovery of matter that is relevant *only* to claims or defenses that have been stricken." *Treppel v. Biovail Corp.,* 233 F.R.D. 363, 375–76 (S.D.N.Y.2006) (Francis, M.J.) (emphasis added) (internal quotations and citation omitted) (compelling discovery of documents relevant to a dismissed claim because they were also relevant to the surviving claims).

The movants contend that "the only discovery relevant to RGL's legal causes of action or the defenses thereto is that which is *specifically related* to the" Surviving Challenged Transactions and that the documents sought by plaintiff from E & Y are irrelevant because the subpoena (1) is overly broad, seeking over a decade of documents, (2) seeks information regarding a party dismissed from the action (CET) and concerning an IPO that never happened and (3) is not tailored to seek information concerning only the Surviving Challenged Transactions (Defs.' Br., at 8–9 (emphasis added)). Thus, movants contend, plaintiff's assertion that the documents are relevant is "sheer speculation" and the "requests in the subpoena have nothing whatsoever to do with" the Surviving Challenged Transactions (Defs.' Br., at 9).

Case 9:19-cv-01610-BKS-TWD Document 79 Filed 07/21/22 Page 21 of 23
**Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)**
2014 WL 5420225

Plaintiff argues that the material sought relates both to the "nature of Cantor Nevada's use of technology attributable to CIH's subsidiaries" and "damages resulting from that use," because the documents will show the value of Cantor Nevada's assets resulting from the Surviving Challenged Transactions, as well as the value of the benefit to Cantor Nevada from the Surviving Challenged Transactions (Pl.'s Mem., at 13–14). Further, because the Form S–1/A provided that, upon completion of the contemplated IPO, Cantor Nevada would be contributed to CET as its operating subsidiary, plaintiff contends that as auditor for the contemplated IPO of CET, E & Y would have conducted a detailed review of Cantor Nevada's finances, "includ[ing] not only the material documents on which the auditors relied ..., but also work papers memorializing the auditors' understanding of those related-party transactions." Plaintiff also claims that "E & Y [allegedly] should have traced the S–1/A's disclosures concerning contributions of technology, licenses, intellectual property and other assets," which, plaintiff argues, is also relevant to the Surviving Challenged Transactions (Am. Compl. ¶ 162, Pl.'s Mem., at 12–13). Therefore, plaintiff contends, the E & Y documents are "reasonably likely" to lead to evidence regarding the Surviving Challenged Transactions and the benefits of those transactions conferred on Cantor Nevada and Lutnick.

**\*8** Here, the materials sought are sufficiently relevant to be discoverable. Movants' view of the scope of discovery in this case is unduly restrictive. The plaintiff is not limited, by Rule 26 or Judge Abrams's Order, to discovery "specifically related" to the Surviving Challenged Transactions. Instead, pursuant to Rule 26(b) (1), plaintiff is entitled to that which is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

The gravamen of the remaining claims concerns the benefits, if any, to Cantor Nevada, Lutnick and others, and the resultant damages to CIH and its subsidiaries from the Surviving Challenged Transactions. The value of the intellectual property rights transferred to Cantor Nevada through the Surviving Challenged Transactions is central to these claims. As the value, if any, of the rights transferred increases, the adequacy of the consideration arguably becomes more of an issue. Because Cantor Nevada was intended to be contributed to CET as its operating subsidiary, it is reasonable to infer that E & Y would have considered, as part of its audit work, the importance and value of the intellectual property rights that were transferred to Cantor Nevada. Thus, plaintiff's assertion

that the documents sought are relevant to the remaining claims and defenses goes beyond "sheer speculation."

E & Y audited the financial statements of Cantor Nevada, and plaintiff seeks documents and communications concerning the audit from January 1, 2002 to present. The request is reasonably likely to contain information related, directly or indirectly, to the nature of the three Surviving Challenged Transactions and the financial impact of those transactions on Cantor Nevada and Lutnick. Even though plaintiff seeks more than a decade of information from the audit, it is still reasonably calculated to shed light on the impact of the Surviving Challenged Transactions on Cantor Nevada, i.e., it will give pictures of Cantor Nevada's financial state both before and after the Surviving Challenged Transactions. In order for the plaintiff to assess the impact of the Surviving Challenged Transactions and to calculate potential damages, it will need to differentiate between the financial results of the Surviving Challenged Transactions and those previously dismissed. To limit discovery as movants' suggest would provide plaintiff with an incomplete understanding of Cantor Nevada's finances and the impact on the CIH Entities.

The relevance of the documents to the claims and defenses in this action far outweighs any general privacy interest asserted by movants. Movants have failed to identify any specific harm that they will suffer as a result of production, other than having to produce information in which they have a privacy interest to plaintiff. Many of the documents are old and unlikely to contain commercially sensitive information, particularly in light of the fact that RGL is not a competitor of movants; to the extent there is any risk of harm from the disclosure of sensitive information, that harm can be eliminated by a protective order. Thus, defendants and CET's motion to quash is denied.

III. *Conclusion*
**\*9** Accordingly, for all the foregoing reasons, defendants and CET's motion to quash (Docket Item 58) is denied. E & Y shall produce the requested documents within twenty days of the date of this Order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5420225

Case 9:19-cv-01610-BKS-TWD   Document 79   Filed 07/21/22   Page 22 of 23
**Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., Not Reported in F.Supp.3d (2014)**
2014 WL 5420225

## Footnotes

1   Plaintiff voluntarily dismissed CET from this action without prejudice after CET withdrew a registration statement filed with the SEC and ceased to be an operating entity (Plaintiff's Memorandum of Law in Opposition to Defendants' and Non–Party Cantor Entertainment Technology, Inc.'s Motion to Quash the Subpoena Served on Ernst & Young LLP, dated Sept. 16, 2014, (Docket Item 62) ("Pl.'s Mem.") at 7).

2   The IPO never actually occurred (Pl.'s Mem., at 7).

3   The CIH Entities include CIH, CIH's wholly-owned subsidiaries (Hollywood Stock Exchange, LLC, CIL, CFGH and CILLC) and CFGH's wholly-owned subsidiary CGL (Amended Complaint, dated Apr. 15, 2013, (Docket Item 25) ("Am.Compl.") ¶ 28).

4   Attached to Am. Compl. as Exhibit B.

5   CFPH LLC does not appear to have given or gained anything pursuant to the 2006 License Agreement. It is, therefore, unclear why it is a party to the agreement.

6   Attached to Am. Compl. as Exhibit D.

7   Attached to Am. Compl. as Exhibit E.

8   Amaitis has also served or is serving as a director and/or employee of CIH, CIL, CGL and CGWL (UK) (Am.Compl.¶ 13).

9   Movants argue that this aspect of Judge Abrams's decision restricts plaintiff's discovery and that plaintiff is "constrained to the events and facts relevant only to the Three Transactions" (Defendants' and Non–Party Cantor Entertainment Technology's Reply Brief in Further Support of Their Motion to Quash the Subpoena Served on Ernst & Young LLP by Plaintiff, dated Sept. 18, 2014, (Docket Item 63) ("Defs'. Reply Br.") at 3). Plaintiff, on the other hand, argues that this aspect of the decision merely limits the basis of plaintiff's claims to those benefits accruing to Cantor Nevada from the use of the CIH Entities' intellectual property as a result of the Surviving Challenged Transactions (see Pl.'s Mem., at 16–17).

10   The remaining defendants are Lutnick, Merkel, Amaitis, Cantor Nevada, Cantor Fitzgerald Securities ("CFS"), Cantor Fitzgerald, L .P. ("CFLP"), Cantor Index Holdings Limited Partnership LLC ("CIHLLC"), CIH, CILLC and CFGH.

11   Judge Abrams dismissed plaintiff's claim for breach of the Limited Partnership Agreement by CIHLLC, claims of fraudulent conveyance under both New York and Delaware law and a claim for an accounting of the finances and activities of CIH and its subsidiaries by CIHLLC. *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P .,* *supra,* 2014 WL 2610608 at *44.

12   "Merkel served as a director and/or officer of one or more of the CIH Entities, including [CIH]," as well as "Executive Vice President, Chief Legal Officer, General Counsel and Secretary of Cantor Nevada ... [and] as the Executive Managing Director, General Counsel, and Secretary of [CFLP]" (Am.Compl.¶¶ 14, 33, 46).

13   This claim "survives only to the extent that Defendants converted CIL's tangible assets through the Asset Purchase Agreement or converted CILLC's patents through the 2006 License Agreement or 2011 License Agreement." *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra,* 2014 WL 2610608 at *39.

14   The Cantor Nevada Entities include "Cantor Nevada and its direct and indirect parent and subsidiary entities" (Am.Compl.¶ 35).

15   Each of the Surviving Challenged Transactions allegedly involves Cantor Nevada or a Cantor Nevada subsidiary and the transfer of some asset or intellectual property from CIH or a CIH subsidiary.

16   *See* Objections of Non–Party Ernst & Young LLP to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated Aug. 22, 2014, annexed as Exhibit A to Supplemental Declaration of Francis X. Riley III in Further Support of Defendants' and CET's Motion to Quash the Subpoena Served on Ernst & Young by Plaintiff, dated Sept. 18, 2014 (Docket Item 64).

17   CET's interests are also implicated because Cantor Nevada was going to be contributed through the contemplated IPO by CET.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.